PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., | Adversary Proceeding No.<br><br>21-03000-sgj |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

HIGHLAND INCOME FUND, NEXPOINT
STRATEGIC OPPORTUNITIES FUND,
NEXPOINT CAPITAL, INC., AND CLO
HOLDCO, LTD.,

                        Defendants.

### DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO

Highland Capital Management, L.P., the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), and the debtor and debtor-in-possession (the "Debtor" or "Highland") in the above-captioned chapter 11 case ("Bankruptcy Case"), submits this memorandum of law (the "Memorandum") in support of the *Debtor's Motion for a Temporary Restraining Order and Preliminary Injunction against Certain Entities Owned and/or Controlled by Mr. James Dondero* (the "Motion"), pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for a temporary restraining order ("TRO") and preliminary injunction enjoining defendants Highland Capital Management Fund Advisors, L.P. ("HCMFA"), NexPoint Advisors, L.P. ("NPA," and together with HCMFA, the "Advisors"), Highland Income Fund, NexPoint Strategic Opportunities Fund, NexPoint Capital, Inc. (collectively, the "Funds"), and CLO Holdco, Ltd. ("CLO Holdco," and together with the Advisors and Funds, the "Defendants") from engaging in any Prohibited Conduct.[2] In support of its Motion, the Debtor states as follows:

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Declaration of Mr. James P. Seery, Jr. in Support of the Debtor's Motion for a Temporary Restraining Order Against Certain Entities Owned and Controlled by Mr. James Dondero*, being filed contemporaneously herewith (the "Seery Dec.").

2

# I.
# INTRODUCTION

1. Highland's immediate need for injunctive relief stems from Defendants' recent and repeated interference with the Debtor's operations and contractual rights. These actions include, in pertinent part, Defendants' interference with the sale of certain collateralized loan obligation ("CLO") assets and Defendants' threats to initiate a process to terminate the Debtor's CLO management agreements (the "CLO Management Agreements").

2. The Debtor assumed that the Defendants would have gotten the message on December 16, 2020, when this Court granted the Debtor's motion for a directed verdict dismissing their prior motion—characterized by the Court as, among other things, "frivolous"—on these very topics. The Debtor was wrong. With the support and encouragement of Mr. James Dondero, Defendants not only persist but have expanded their threats and refuse to back down.

3. Mr. Dondero directly or indirectly (a) owns and controls each of the Advisors, (b) owns and/or controls CLO Holdco, and (c) controls each of the Funds. In a recent deposition, Mr. Dondero candidly admitted that he supports all of the actions taken by the Defendants. But pursuant to the "corporate governance" settlement approved by the Court a year ago, Mr. Dondero is prohibited from causing Defendants to terminate any agreements with the Debtor, including the CLO Management Agreement. Moreover, pursuant to Temporary Restraining Order, Mr. Dondero is enjoined from, among other things, interfering with the Debtor's business, or from causing or encouraging any entity controlled by Mr. Dondero to interfere with the Debtor's business.

4. As discussed below, injunctive relief is necessary because if Defendants are not enjoined from interfering with the Debtor's ability to manage the Debtor's operations and sale of CLO assets, pursuant to the CLO Management Agreements—conduct which Defendants have no

legal or equitable right to engage in—the Debtor will be unable to fulfill its duties, and the Debtor's estate will be irreparably harmed.

5. The Debtor has, therefore, filed the Motion and commenced a separate adversary proceeding, (1) bringing a cause of action against Defendants for tortious interference with contract, and (2) seeking declaratory relief and an order to temporarily, preliminarily, and permanently enjoin Defendants from: (a) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's (i) management of the CLOs, (ii) decisions concerning the purchase or sale of any assets on behalf of the CLOs, or (iii) contractual right to serve as the portfolio manager (or other similar title) of the CLOs; (b) otherwise violating section 362(a) of the Bankruptcy Code; (c) seeking to terminate the portfolio Management Agreements and/or servicer agreements between the Debtor and the CLOs (collectively, (2)(a)-(c) constitute the "Prohibited Conduct"); (d) conspiring, colluding, or collaborating with (x) Mr. Dondero, (y) any entity owned and/or controlled by Mr. Dondero, and/or (z) any person or entity acting on behalf of Mr. Dondero or any entity owned and/or controlled by him, to, directly or indirectly, engage in any Prohibited Conduct; and (e) engaging in any Prohibited Conduct with respect to any of the Successor Parties (as that term is defined below).

## II.
## FACTUAL BACKGROUND

**A.    Mr. James Dondero Owns and/or Controls Each of the Defendants**

6. There can be no genuine dispute that Mr. Dondero owns and/or controls each of the Defendants. (Seery Dec. ¶ 5).

***The Advisors and the Funds***

7. On December 16, 2020, Mr. Dustin Norris ("Mr. Norris") testified under oath in support of the *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* [Docket No. 1528] that was brought by the Advisors and Funds (the "Restriction Motion").

8. Mr. Norris is the Executive Vice President of each the Advisors and each of the Funds. *See* Transcript of December 16, 2020, hearing on the Restriction Motion (the "Hearing"). Seery Dec. ¶ 7; Exhibit 1, at 38:15-39:2.

9. During the hearing, Mr. Norris testified that Mr. Dondero (a) owns and controls, directly or indirectly, each of the Advisors, and (b) is the portfolio manager of each of the Funds, each of which is advised by one of the Advisors. Seery Dec. ¶ 8; Exhibit 1, at 35:15-37:13.

10. In their public filings with the Securities and Exchange Commission, each of the Funds disclosed that the Advisors were owned and controlled by Mr. Dondero and that Mr. Dondero was the portfolio manager for each of the Funds. Seery Dec. ¶ 9.

***CLO Holdco***

11. CLO Holdco is a wholly-owned and controlled subsidiary of the DAF. On information and believe, the DAF is managed by the Charitable DAF Holdco, Ltd. ("DAF Holdco"), which is the managing member of the DAF. Seery Dec. ¶ 10.

12. DAF Holdco is owned by three different charitable foundations: Highland Dallas Foundation, Inc., Highland Santa Barbara Foundation, Inc., and Highland Kansas City Foundation, Inc. (collectively, the "Highland Foundations"). Mr. Dondero is the president and one of the three directors of each of the Highland Foundations. Mr. Grant Scott ("Mr. Scott") – Mr. Dondero's college roommate – is also an officer and director of each of the Highland Foundations. Seery Dec. ¶ 11.

13. Although the Debtor is the investment manager for the DAF, neither the Board nor Mr. Seery, as CEO and CRO of the Debtor, have any right or ability to control or direct the DAF or CLO Holdco. That control is exercised by Mr. Scott at the direction of Mr. Dondero. Seery Dec. ¶ 12.

**B.** **This Court has Entered Three Orders that are Implicated by the Defendants' Actions and Threatened Actions**

14. This Court has entered three Orders that are relevant to the Motion and the relief sought by the Debtor.

15. On December 27, 2019, the Debtor filed that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] (the "Settlement Motion"). On January 9, 2019, this Court entered an Order granting the Settlement Motion [Docket No. 339] (the "Settlement Order"). Seery Dec. ¶ 14; Exhibit 2.

16. As part of the Settlement Order, this Court also approved a term sheet (the "Term Sheet") [Docket No. 354-1] between the Debtor and the Official Committee of Unsecured Creditors (the "Committee") pursuant to which Mr. John S. Dubel, Mr. Russell Nelms, and Mr. Seery were appointed to the Board. Seery Dec. ¶ 15; Exhibit 3.

17. As required by the Term Sheet, on January 9, 2020, Mr. James Dondero resigned from his roles as an officer and director of Strand and as the Debtor's President and Chief Executive Officer. Seery Dec. ¶ 16; Exhibit 4.

18. The Settlement Order directed Mr. Dondero not to "cause any Related Entity to terminate any agreements with the Debtor." Seery Dec. ¶ 17; Exhibit 2 ¶ 9.

19. Upon information and belief, each of the Defendants is a "Related Entity" as defined in the Term Sheet because each of the Defendants is directly or indirectly owned and/or

6

controlled by Mr. Dondero and/or Mr. Scott. Seery Dec. ¶ 18 Exhibit 3, Ex. D (Reporting Requirements) ¶ 1.D(A)(i) and (ii).

20. Defendants' actions and threatened actions also implicate the *Order Granting Debtor's Motion for a Temporary Restraining Order Against James Dondero* [Adv. Pro. No. 20-03190-sgj, Docket No. 10], entered on December 10, 2020 (the "TRO" and together with the Settlement Order, the "Orders"). Seery Dec. ¶ 19; Exhibit 5.

21. Pursuant to the TRO, the Court temporarily enjoined and restrained Mr. Dondero from, among other things, "interfering with or otherwise impeding, directly or indirectly, the Debtor's business" and from "causing, encouraging, or conspiring with (a) any entity owned or controlled by [Mr. Dondero], and/or (b) any person or entity acting on his behalf, from, directly or indirectly, engaging in any Prohibited Conduct [as defined in the TRO]," including interfering or impeding the Debtor's business. *Id*. ¶¶ 2(d), 3.

22. Finally, on December 8, 2020, Defendants (except CLO Holdco) filed the Restriction Motion. The Restriction Motion sought to prevent the Debtor from fulfilling its duties as the portfolio manager of certain CLOs by impeding any attempted sale of assets. After hearing the testimony of Dustin Norris, the Court called the Defendants' Motion "frivolous," granted the Debtor's motion for a directed verdict, and subsequently entered an order denying the Restriction Motion.

**C. Defendants Interfere with and Impede the Debtor's Business and Threaten to Terminate the Debtor's Management Agreements**

23. In addition to filing the Restriction Motion, on recent three occasions, Defendants have either interfered with and impeded the Debtor's business or have threatened to do so by initiating the process for removing the Debtor as the portfolio manager of the CLOs. Such

7

conduct also violates the Orders and flouts the Court's decision on the Restriction Motion and the Court's observations made at the Hearing. Seery Dec. ¶ 21.

24. *First*, on December 22, 2020, employees of NPA and HCMFA interfered with and impeded the Debtor's business by refusing to settle the CLOs' sale of AVYA and SKY securities that Mr. Seery had personally authorized. The Advisors engaged in this conduct notwithstanding (a) the denial of the Restriction Motion and the Court's pointed comments during that Hearing on the Restriction Motion, and (b) Mr. Norris's sworn acknowledgments on behalf of the Advisors and Funds during the Hearing that (i) the Debtor's management of the CLOs is governed by written contracts as to which none of the Advisors or Funds are parties, Seery Dec. ¶ 22; Exhibit 1 at 41:25-42-7; (ii) the Debtor has the exclusive duty and responsibility to buy and sell assets on behalf of the CLOs, *id.* at 42:17-43:3; and (iii) as the Advisors knew when they invested in the CLOs on behalf of the Funds, that holders of preference shares (such as the Funds) have no right to make investment decisions on behalf of the CLOs, *id.* at 43:4-11.

25. Notably, the Advisors' interference with trades that Mr. Seery authorized on behalf of the CLOs is the same type of conduct that lead the Court to impose the TRO against Mr. Dondero. *See Declaration of Mr. James P. Seery, Jr. in Support of Debtor's Motion for a Temporary Restraining Order Against Mr. James Dondero* [Adv. Pro. No. Docket No. 4] ¶¶ 21-23, Ex. 8.

26. *Second*, also on December 22, 2020, the Defendants wrote to the Debtor and renewed their "request" that the Debtor refrain from selling any assets on behalf of the CLOs until the confirmation hearing (the "December 22 Letter"). In support of their "request," the Debtor re-asserted almost verbatim the arguments advanced in connection with the Restriction Motion – all of which were soundly rejected by the Court. Seery Dec. ¶ 24.

27. The Debtor responded on December 24, 2020, demanding that Defendants withdraw their December 22 Letter and confirm that neither the Defendants nor anyone acting on their behalf will take any further steps to interfere with the Debtor's directions as the CLOs' portfolio manager by the close of business on December 28, 2020. Seery Dec. ¶ 25; Exhibit 6. The Defendants have not complied with (or even responded to) the Debtor's demands. *Id.*

28. *Finally*, the Defendants recently threatened to seek to remove the Debtor as the portfolio manager of the CLOs. Specifically, in a letter dated December 23, 2020 (the "December 23 Letter" and together with the December 22 Letter, the "Defendants' Letters"), the Defendants informed the Debtor that one or more of them "intend to notify the relevant trustee and/or issuers that the process of removing the Debtor as fund manager should be initiated, subject to and with due deference for the applicable provisions of the United State Bankruptcy Code, including the automatic stay of Section 362." Seery Dec. ¶ 26.

29. The Debtor responded to the December 23 Letter the next day, and advised the Defendants that the Settlement Order prohibited the termination of the Debtor's Management Agreements with the CLOs, and that there was no factual, legal, or contractual basis to remove the Debtor as the CLOs' portfolio manager in any event. The Debtor demanded that the Defendants withdraw their December 23 Letter and commit not to take any actions, directly or indirectly, to terminate the CLO Management Agreements, by the close of business on December 28, 2020. The Defendants have not complied with (or even responded to) the Debtor's demands. Seery Dec. ¶ 27; Exhibit 7.

30. Because Mr. Dondero owns and/or controls the Defendants, the Debtor forwarded the correspondence between the Debtor and the Defendants, including the Defendant's Threatening Letters, to Mr. Dondero's counsel. In response, Mr. Dondero's counsel contended

that "[w]hile there are relationships between my client and some of the movants, I believe they are separate entities and should be treated as such." Seery Dec. ¶ 28; Exhibit 8.

31. Upon information and belief, Mr. Dondero has taken no steps to cause the Defendants – entities that he indisputably owns and/or controls and that are each a "Related Entity" under the Term Sheet – to comply with the Debtor's demands made in response to the Defendants' Letters. Seery Dec. ¶ 29.

### III.
### LEGAL STANDARD

32. Pursuant to section 105(a) of the Bankruptcy Code, bankruptcy courts are authorized to "issue any order, process, of judgment that is necessary or appropriate to carry out the provisions of the Code. *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012) (quoting 11 U.S.C. § 105); *see also In re OGA Charters, LLC*, 554 B.R. 415, 424 (Bankr. S.D. Tex. 2016) ("The Court may issue injunctions as part of its equitable powers, pursuant to 11 U.S.C. § 105."). In other words, courts have broad authority to take actions necessary to "protect the integrity of the bankruptcy estate" and to "enjoin actions that 'might impede the reorganization process.'" *FiberTower*, 482 B.R. at 182 (quoting *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.1988)). "A preliminary injunction seeks to 'prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" *OGA Charters*, 554 B.R. at 424 (quoting *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985)).

33. Injunctive relief is warranted under section 105(a) where the movant shows: (1) a likelihood that it will prevail on the merits; (2) irreparable injury in the absence of injunctive relief; (3) that the balance of the equities favor the movant; and (4) that the injunction would serve the public interest. *See OGA Charters, 554 B.R. at 424*; *Green v. Wells Fargo Bank, N.A.*,

575 Fed.Appx. 322, 323 n. 3 (5th Cir. 2014) (stating the four prong test for a preliminary injunction as likelihood of success, irreparable harm, balance of the equities, and the public interest); *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1189 (5th Cir. 1986) (same); *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 219 (5th Cir. 2010) (same).

34. A temporary restraining order should be granted pending a hearing for a preliminary injunction where it appears that "immediate and irreparable injury, loss or damage will result to the movant." *See* Fed. R. Bankr. P. 7065 (incorporating by reference Fed. R. Civ. P. 65); *see also In re Seatco, Inc.*, 259 B.R. 279, 285 (Bankr. N.D. Tex. 2001) (noting that Fed. R. Civ. P. 65 applies in adversary proceedings, "except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor-in-possession without compliance with Rule 65(c)[.]"). The issuance of an injunction is within the broad discretion of the court. *See In re Compton Corp.*, 90 B.R. 798, 806 (Bankr.N.D.Tex. 1988) ("It is [] clear that the issuance of an injunction, as a general matter, is within the discretion of the court."); *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986) (noting that the decision to issue or not to issue an injunction is subject to "considerable discretion" in the district court); *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) ("The district court has wide discretion in determining whether to grant a preliminary injunction, and this Court reviews the district court's determination only for abuse of discretion.").

35. For the reasons that follow, the Debtor satisfies the standard for injunctive relief.

## IV.
## ARGUMENT

36. Injunctive relief is necessary to prevent the imminent and irreparable harm that would be caused to the Debtor if Defendants are permitted to engage in any of the Prohibited Conduct.

37. The Debtor is likely to succeed on the merits of its underlying claim for tortious interference with contractual relations because Defendants' interference with the Debtor's CLO Management Agreements cannot be disputed (they are in writing), and such interference is causing the Debtor's estate irreparable damages. Moreover, the relief sought—the protection of its bankruptcy estate during its chapter 11 proceedings—is precisely the type of relief authorized under sections 105 and 362 of the Bankruptcy Code. *See OGA Charters*, 554 B.R. at 432-33 (granting injunctive relief to protect the debtor's assets during chapter 11 proceedings, and noting that a "preliminary injunction, is, in essence, merely an extension of § 362's stay" of the debtor's bankruptcy estate asset).

38. The equities strongly (if not exclusively) favor the Debtor because the Debtor's ability to operate and comply with its obligations will be jeopardized if Defendants are permitted to engage in the Prohibited Conduct—conduct which Defendants have no legal or equitable right to engage in. Moreover, the Court has already considered and summarily denied the Restriction Motion, rendering the Defendants' conduct indefensible.

39. Finally, and for all these same reasons, granting injunctive relief serves the public interest because the Debtor's chances of a successful liquidation will be severely jeopardized if injunctive relief is not granted.

A.  **The Debtor will Suffer Irreparable Harm in the Absence of Injunctive Relief**

40. The Debtor's estate will be severely injured if Defendants are not enjoined from engaging in the Prohibited Conduct. Irreparable harm is "a harm 'for which there is no adequate remedy at law.'" *OGA Charters,* 554 B.R. at 424 (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)); *see also Compass Bank v. Veytia*, EP-11-CV-228-PRM, 2011 WL 13234883, at *2 (W.D. Tex. Sept. 21, 2011) ("The general rule in the Fifth Circuit is that 'harm is irreparable where there is no adequate remedy at law, such as monetary damages.'") (quoting *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010)).

41. In the bankruptcy context, "irreparable harm" refers to either "irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate." *In re Hunt*, 93 B.R. 484, 495 (Bankr. N.D. Tex. 1988) (internal quotations omitted). The element of irreparable injury to the debtor's estates is described as "irreparable harm to the creditors and estates from disruption of th[e] Court's exclusive authority to effectively manage the[] cases." *Id.* Moreover, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Compass Bank*, 2011 WL 13234883, at *2 (citing *Janvey*, 647 F.3d at 600); (holding that "dissipation of assets ... would impair the court's ability to grant an effective remedy").

42. Here, in the absence of injunctive relief, both the Debtor's estate and its creditors will face imminent and irreparable harm that cannot be adequately remedied. If Defendants continue to engage in the Prohibited Conduct, the Debtor's ability to perform under the CLO management agreements will be severely impaired. Given the Defendants' threats and demands,

the harm is thus the not merely "speculative, theoretical, or remote," but imminent and irreparable. *FiberTower Network Services*, 482 B.R. at 187.

**B.     The Debtor Demonstrates Likelihood of Success on the Merits**

43.     The Debtor is likely to succeed on the merits of its underlying claim for tortious interference with contract. To satisfy the likelihood of success element, the movant need only present their "prima facie case but need not show that [they] are certain to win." *Janvey*, 647 F.3d at 595 (internal quotations omitted). Moreover, the relevant "merits" question in this case is not whether Debtor is likely to prevail on appeal, but rather "whether this [C]ourt is authorized and likely to grant the requested relief." *FiberTower*, 482 B.R. at 183–84 (citing COLLIER ON BANKRUPTCY ¶ 105.03[1][a] (16th ed. 2012) ("In connection with the 'likelihood' argument, many courts have looked to the purpose of the requested injunction ... the likelihood of success argument will track closely the bankruptcy right sought to be vindicated."); *see also Hunt*, 93 B.R. at 493 ("[t]he inquiry [for success on the merits] for a preliminary injunction necessarily focuses on the outcome of a later proceeding, at which time the merits giving rise to the litigation will be decided" rather than success on the merits "so that reorganization efforts mandated by the Bankruptcy Code will not be thwarted by the [enforcement] proceeding.") (internal quotations omitted).

44.     Here, the Debtor demonstrates a likelihood of success on the merits of its underlying claim. To succeed on a claim for tortious interference with contract, the plaintiff must show: (1) the existence of a valid contract; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference was a proximate cause of the plaintiff's injuries; and (4) the plaintiff suffered actual damages or loss. *See In re Cantu*, 400 B.R. 104, 111 (Bankr. S.D. Tex. 2008). Proximate causation is shown where the defendant "interfered by actively persuading a party to breach a contract or otherwise causing the contract to be more difficult to

fulfill or of less or no value." *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 576 (S.D. Tex. 2020). Here, there can be no dispute that the CLO Management Agreements constitute valid contracts. Defendants are willfully and intentionally interfering with the Management Agreements by, among other things, (1) threatening to initiate the process for removing the Debtor as the portfolio manager of the CLOs, (2) refusing to allow the sale of certain CLO assets and securities, in direct contravention of the Board's explicit business judgment and authorization to do so, and (3) otherwise attempting to influence and interfere with the Board's decisions concerning the purchase or sale of any assets on behalf of the CLOs. Such interferences are hindering the Board's ability to fulfill its duties and contractual rights under the CLO Management Agreements to manage the Debtor's assets and smoothly wind down the Debtor's business. Defendants' interferences, which include thwarting the Debtor's efforts to effectuate certain CLO trades, have damaged the Debtor's estate.

45. Moreover, the relief the Debtor seeks is precisely the type contemplated by the Bankruptcy Court's broad powers to grant injunctive relief under Section 105. *See* 11 U.S.C § 105(a) (authorizing the bankruptcy court to "issue any order, process, of judgment that is necessary or appropriate to carry out the provisions of the Code."); *see also* 11 U.S.C. § 362. The Debtor seeks to enjoin Defendants from attempting to control, manage, or otherwise influence the Debtor's management and sale of its CLO assets. Injunctive relief is, therefore, warranted for the purpose of protecting the Board's ability to manage the Debtor's assets, and in turn, to protect the integrity of the Debtor's bankruptcy estate. *See FiberTower*, 482 B.R. at 182. Furthermore, as noted above, there can be no credible dispute that Defendants engaged in the conduct complained of because it is reflected in contemporaneous, written communications.

C. **The Equities Strongly Favor the Debtor**

46. The balance of the equities also tip decisively in the Debtor's favor. In the absence of injunctive relief, the Debtor faces imminent and irreparable harm. If Defendants are not prevented from continuing to interfere with the Debtor's business, management of its assets, and ability to perform and fulfill its duties as portfolio manager to the CLOs under the CLO Management Agreements, the Debtor's ability to successfully liquidate and satisfy its claims will be threatened. By contrast, there are no equities that favor denying injunctive relief. Defendants have no legal or equitable right to engage in any of the Prohibited Conduct, all of which is adverse to the Debtor's interests, and all of which undermine this Court's Orders. Indeed, the Court already told them that less than a month ago when denying the Restriction Motion.

47. In sum, the potential harm to the Debtor in the absence of injunctive relief far outweighs any harm to Defendants if injunctive relief issues. *See FiberTower*, 482 B.R. at 189 (finding that the balance of equities favored the debtors where "[t]he potential harm to Debtors … far outweighs the possible harm to Defendant" if injunctive relief is granted "because, among other reasons, the Debtors "face the loss of cash collateral[.]").

D. **Injunctive Relief Serves the Public Interest**

48. Injunctive relief will further the public interest because it is necessary to protect the Debtor's ability to successfully liquidate its assets and satisfy its claims. "Courts have often held that injunctions that facilitate reorganizations serve the public interest." *FiberTower*, 482 B.R. at 189 (citing *SAS Overseas Consultants v. Benoit*, No. 99–1663, 2000 WL 140611, at *5 (E.D.La. Feb. 7, 2000); *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr.E.D.N.Y.1993)). In other words, "[i]n bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate, such that the debtor may be able to gain a fresh start, by satisfying valid claims against

that estate." *OGA Charters*, 554 B.R. at 426; *see also In re Hunt*, 93 B.R. at 497 ("Chapter 11 expresses the public interest of preserving the going-concern values of businesses, protecting jobs, ensuring the equal treatment of and payment of creditors, and if possible saving something for the equity holders.").

49. To this end, "[t]he Bankruptcy Court is vested with management duties to further this interest and ensure a meaningful process for all of these competing entities." *Id.* (citing *In re Timbers of Inwood Forest Assocs., LTD.*, 808 F.2d 363, 373 (5th Cir.1987) ("Early and ongoing judicial management of Chapter 11 cases is essential if the Chapter 11 process is to survive and the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved."). Thus, in general, preventing the dissipation of potential assets belonging to the debtor that, pursuant to 11 U.S.C. § 541, may be brought into the bankruptcy estate is in the public interest. *See OGA Charters*, 554 B.R. at 426 (finding that the "public interest may be served where the purpose of the preliminary injunction is such that it serves to" uphold a core "pillar of bankruptcy by preserving a debtor's … assets that can be potentially used to satisfy valid claims against the bankruptcy estate.").

50. Here, if Defendants are not enjoined from engaging in the Prohibited Conduct, the Debtor's liquidation process will be jeopardized at the expense of its creditors. *See FiberTower Network Services*, 482 B.R. at 189 (holding that an injunction would serve the public interest where, the "Debtors' chances of successfully reorganizing will be jeopardized unless injunctive relief is granted," further noting that "if the Debtors were to liquidate, their employees and customers would be adversely affected."). By contrast, the public interest would not be served by allowing Defendants to continue to interfere with the Debtor's CLO Management Agreements, and overall liquidation process. The Debtor's management must be able to fully

execute its duties of managing and selling its assets so that the Debtor can properly wind down, satisfy valid claims against the estate, and maximize the value of the Debtor's assets for the benefit of all stakeholders.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion and enter an Order in the form annexed thereto as Exhibit A, and grant any further relief as the Court deems just and proper.

Dated: January 6, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
 ikharasch@pszjlaw.com
 jmorris@pszjlaw.com
 gdemo@pszjlaw.com
 hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*