PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | § § § § § § § | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., | § § § § § § § § § § | Adversary Proceeding No.<br><br>21-03000-sgj |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

HIGHLAND INCOME FUND, NEXPOINT
STRATEGIC OPPORTUNITIES FUND,
NEXPOINT CAPITAL, INC., AND CLO
HOLDCO, LTD,
                                    Defendants.

**DECLARATION OF MR. JAMES P. SEERY, JR. IN SUPPORT OF THE DEBTOR'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO**

I, James P. Seery, Jr., pursuant to 28 U.S.C. § 1746(a), declare under penalty of perjury as follows:

1. I am a member of the Board of Directors (the "Board") of Strand Advisors, Inc. ("Strand"), the general partner of Highland Capital Management, L.P. (the "Debtor"), and the Debtor's Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO"). I submit this Declaration in support of the *Debtor's Motion for a Temporary Restraining Order and Preliminary Injunction against Certain Entities Owned and/or Controlled by Mr. James Dondero* (the "Motion"), being filed concurrently with this declaration. Unless stated otherwise, this declaration is based on my personal knowledge, my review of the documents described below, and my communications with certain of the Debtor's employees, directors, and counsel.

2. The defendants in this action are (a) two registered investment advisors, Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NPA," and together with HCMFA, the "Advisors"), (b) three investment funds managed by the Advisors, Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. (collectively, the "Funds,"),[2] and (c) CLO Holdco, Ltd. ("CLO Holdco" and together with the Advisors and the Funds, the "Defendants"), a wholly-owned subsidiary of the Charitable DAF Fund, L.P. (the "DAF").

---

[2] HCMFA is the investment advisor for Highland Income Fund, and NPA is the investment advisor for NexPoint Strategic Opportunities Fund and NexPoint Capital, Inc.

2

3. On information and belief, Mr. James Dondero ("Mr. Dondero") directly or indirectly (a) owns and controls each of the Advisors, (b) owns and/or effectively controls CLO Holdco, and (c) controls each of the Funds through his portfolio management of the funds and influence over the directors. As set forth below and as reflected in written communications attached as exhibits to my declaration, the Defendants have interfered with and impeded the Debtor's business, and they have threatened to initiate a process aimed at removing the Debtor as the portfolio manager of certain investment funds denominated as collateralized loan obligation vehicles ("CLOs"). The Funds invested in certain of the CLOs at the direction of the Advisors. CLO Holdco also invested in the CLOs.

4. I am advised that the Defendants' actions and threatened actions violate two court orders and the automatic stay, and that the Defendants would have no right to take the actions and threatened actions even if that were not the case. The Debtor brings this Motion to protect its contractual rights and to otherwise enforce this Court's prior orders.

A. **Mr. James Dondero Owns and/or Controls Each of the Defendants**

5. There can be no genuine dispute that Mr. Dondero owns and/or effectively controls each of the Defendants.

*The Advisors and the Funds*

6. On December 16, 2020, Mr. Dustin Norris ("Mr. Norris") testified under oath in support of the *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* that was brought by the Advisors and Funds [Docket No. 1528] (the "Restriction Motion").

7. Mr. Norris is the Executive Vice President of each the Advisors and each of the Funds. *See* Transcript of December 16, 2020, hearing on the Restriction Motion (the "Hearing"), a true and correct copy of which is attached as **Exhibit 1**, at 38:15-39:2.

3

8. During the hearing, Mr. Norris testified that Mr. Dondero (a) directly or indirectly owns and controls each of the Advisors, and (b) is the portfolio manager of each of the Funds, each of which is advised by one of the Advisors. **Exhibit 1** at 35:15-37:13.

9. This portion of Mr. Norris's testimony is corroborated by, among other things, (a) the Funds' public filings with the Securities and Exchange Commission in which each of the Funds disclosed that the Advisors were owned and controlled by Mr. Dondero, and that Mr. Dondero was the portfolio manager for each of the Funds, and (b) the assertion in a letter dated December 31, 2020, sent on behalf of the Advisors and the Funds, that "Mr. Dondero is the lead (and in some cases the sole) portfolio manager for certain of the Funds. He is intimately involved in the day-to-day operations and investment decisions regarding those Funds and the operations of the Advisors."

### *CLO Holdco*

10. CLO Holdco is a wholly-owned and controlled subsidiary of the DAF. On information and belief, the DAF is managed by the Charitable DAF Holdco, Ltd. ("DAF Holdco"), which is the managing member of the DAF.

11. On information and belief, DAF Holdco is owned by three different charitable foundations: Highland Dallas Foundation, Inc., Highland Santa Barbara Foundation, Inc., and Highland Kansas City Foundation, Inc. (collectively, the "Highland Foundations"). On information and belief, Mr. Dondero is the president and one of the three directors of each of the Highland Foundations. On information and belief, Mr. Grant Scott ("Mr. Scott") is and intellectual property lawyer based in Raleigh, North Carolina, Mr. Dondero's college roommate, and serves as an officer and director of each of the Highland Foundations.

4

12. Although the Debtor is the non-discretionary investment advisor to the DAF, neither the Board nor I, as the Debtor's CEO and CRO, have any right or ability to control or direct the DAF or CLO Holdco. Instead, on information and belief, the DAF takes and considers investment and payment advice from the Debtor, but ultimate decisions are in the control of Mr. Scott who acts substantially at Mr. Dondero's direction.

**B. This Court Has Entered Two Orders that Are Implicated by the Defendants' Actions and Threatened Actions**

13. This Court has entered two Orders that are relevant to the Motion and the relief sought by the Debtor.

14. On December 27, 2019, the Debtor filed that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] (the "Settlement Motion"). On January 9, 2019, this Court entered an Order granting the Settlement Motion [Bankruptcy Case Docket No. 339] (the "Settlement Order"). A true and correct copy of the Settlement Order is attached as **Exhibit 2**.

15. As part of the Settlement Order, this Court also approved a term sheet (the "Term Sheet") [Bankruptcy Case Docket No. 354-1] between the Debtor and the Official Committee of Unsecured Creditors (the "Committee") pursuant to which Mr. John S. Dubel, Mr. Russell Nelms, and I were appointed to the Board. A true and correct copy of the Term Sheet is attached as **Exhibit 3**.

16. As required by the Term Sheet, on January 9, 2020, Mr. James Dondero resigned from his roles as an officer and director of Strand and as the Debtor's President and Chief Executive Officer. True and correct copies of Mr. Dondero's resignation letters dated January 9, 2020, are attached as **Exhibit 4**.

5

17. The Settlement Order directed Mr. Dondero not to "cause any Related Entity to terminate any agreements with the Debtor." **Exhibit 2** ¶9.

18. I understand that each of the Defendants is a "Related Entity" as defined in the Term Sheet because each of the Defendants is directly or indirectly owned and/or controlled by Mr. Dondero and/or Mr. Scott. *See* **Exhibit 3**, Ex. D (Reporting Requirements) ¶1.D(A)(i) and (ii).

19. I also understand that the Defendants' actions and threatened actions implicate the *Order Granting Debtor's Motion for a Temporary Restraining Order against James Dondero* [Adv. Pro. No. 20-03190-sgj, Docket No. 10], entered on December 10, 2020 (the "TRO" and together with the Settlement Order, the "Orders"). A true and correct copy of the TRO is attached as **Exhibit 5**.

20. Pursuant to the TRO, the Court temporarily enjoined and restrained Mr. Dondero from, among other things, "interfering with or otherwise impeding, directly or indirectly, the Debtor's business" and from "causing, encouraging, or conspiring with (a) any entity owned or controlled by [Mr. Dondero], and/or (b) any person or entity acting on his behalf, from, directly or indirectly, engaging in any Prohibited Conduct [as defined in the TRO]," including interfering or impeding the Debtor's business. **Exhibit 5** ¶¶2(d), 3.

C. **Defendants Interfere with and Impede the Debtor's Business and Threaten to Terminate the Debtor's Management Contracts**

21. In addition to filing the Restriction Motion, on at least four separate occasions within the last two weeks, the Defendants have either interfered with and impeded the Debtor's business or have threatened to do so by initiating the process for removing the Debtor as the portfolio manager of the CLOs. I am advised that such conduct violates the Orders and flouts the Court's decision on the Restriction Motion and the Court's observations made at the Hearing.

22. *First*, on December 22, 2020, employees of NPA and HCMFA interfered with and impeded the Debtor's business by refusing to settle the CLOs' sale of AVYA and SKY securities that I had personally authorized. The Advisors engaged in this conduct notwithstanding (a) the denial of the Restriction Motion and the Court's pointed comments during the Hearing, and (b) Mr. Norris's sworn acknowledgments on behalf of the Advisors and Funds during the Hearing that (i) the Debtor's management of the CLOs is governed by written contracts as to which none of the Advisors or Funds are parties (**Exhibit 1** at 41:25-42-7; (ii) the Debtor has the exclusive duty and responsibility to buy and sell assets on behalf of the CLOs (*id*. at 42:17-43:3); and (iii) as the Advisors knew when they caused the Funds to invest in the CLOs, holders of preference shares (such as the Funds) have no right to make investment decisions on behalf of the CLOs (*id*. at 43:4-11).

23. Notably, the Advisors' interference with trades that I authorized on behalf of the CLOs is the same type of conduct that led the Court to impose the TRO against Mr. Dondero. *See Declaration of Mr. James P. Seery, Jr. in Support of Debtor's Motion for a Temporary Restraining Order against Mr. James Dondero* [Adv. Pro. No. 20-03190-sgi, Docket No. 4 ¶¶21-23, Ex. 8].

24. *Second*, also on December 22, 2020, the Defendants wrote to the Debtor and renewed their "request" that the Debtor refrain from selling any assets on behalf of the CLOs until the confirmation hearing (the "December 22 Letter"). In support of their "request," the Defendants re-asserted almost verbatim the arguments advanced in connection with the Restriction Motion – all of which were soundly rejected by the Court.

25. The Debtor responded on December 24, 2020, by demanding that the Defendants withdraw their December 22 Letter and confirm, by the close of business on December 28, 2020,

that neither the Defendants nor anyone acting on their behalf will take any further steps to interfere with the Debtor's directions as the CLOs' portfolio manager. A true and correct copy of the December 22 Letter and the Debtor's response is attached as **Exhibit 6**. The Defendants have not complied with the Debtor's demands.

26. ***Third***, the Defendants threatened to seek to remove the Debtor as the portfolio manager of the CLOs. Specifically, in a letter dated December 23, 2020 (the "December 23 Letter"), the Defendants informed the Debtor that one or more of them "intend to notify the relevant trustee and/or issuers that the process of removing the Debtor as fund manager should be initiated, subject to and with due deference for the applicable provisions of the United State Bankruptcy Code, including the automatic stay of Section 362."

27. The Debtor responded to the December 23 Letter the next day and advised the Defendants that the Settlement Order prohibited the termination of the Debtor's management agreements with the CLOs, and that there was no factual, legal, or contractual basis to remove the Debtor as the CLOs' portfolio manager in any event. The Debtor demanded that the Defendants withdraw their December 23 Letter and commit, by the close of business on December 28, 2020, not to take any actions, directly or indirectly, to terminate the CLO management agreements. A true and correct copy of the December 23 Letter and the Debtor's response is attached as **Exhibit 7**. The Defendants have not complied with the Debtor's demands.

28. Because Mr. Dondero owns and/or effectively controls the Defendants, the Debtor forwarded the correspondence between the Debtor and the Defendants, including the Defendant's Letters, to Mr. Dondero's counsel. In response, Mr. Dondero's counsel contended that "[w]hile there are relationships between my client and some of the movants, I believe they

8

are separate entities and should be treated as such." A true and correct copy of the communications between counsel for Mr. Dondero and the Debtor is attached as **Exhibit 8**.

29. I understand that during a "meet and confer" call with Defendants' counsel on December 30, 2020, the Debtor specifically requested that the Defendants promptly bring the matters to the Court for resolution by bringing a motion to terminate the CLO management agreements and for related relief, or the Debtors would be forced to commence an action for declaratory relief and bring this Motion in order to bring clarity to the Debtor's contractual rights. I also understand that, in response, Defendants' counsel would not commit to bring any motion, only that they would file an objection to Debtor's plan of reorganization. The Debtor believes that its disputes with the Defendants can and must be promptly resolved.

30. *Finally,* because Mr. Dondero continues to interfere with the Debtor's business and engage in disruptive behavior, the Debtor gave notice to Mr. Dondero on December 23, 2020, that the Debtor would evict him and terminate all services provided to him, as of December 30, 2020. A true and correct copy of the Debtor's letter dated December 23, 2020, letter is attached hereto as **Exhibit 9**. On December 31, 2020, counsel to the Advisors and the Funds sent a letter to Debtor's counsel (the "December 31 Letter" and together with the December 22 Letter and December 23 Letter, the "Defendants' Letters") contending that the Debtor's decision to remove Mr. Dondero from the Debtor's offices and services was damaging the Advisors and the Funds and implied that the Debtor would be economically responsible for such damage. Mr. Dondero's counsel was copied on that letter. A true and correct copy of the December 31 Letter is attached hereto as **Exhibit 10**.

31. On January 4, 2021, the Debtor responded to the December 31 Letter by noting that (a) Mr. Dondero did not seek judicial relief, make any of the contentions the advanced in the

9

December 31 Letter, or even complain to the Debtor, (b) no action was taken against Entities, only against Mr. Dondero, (c) Mr. Dondero was given reasonable notice of his eviction and the termination of the Debtor's services to him, such that he could have and should have made alternative arrangements to avoid any disruption, and (d) nothing prevents Mr. Dondero from continuing to work on behalf of the Entities.  The Debtor also noted that it will take all steps to protect its interests against any further frivolous claims and threats made by the Defendants.  A true and correct copy of the Debtor's January 4, 2021, letter is attached as **Exhibit 11**.

32. To the best of my knowledge, Mr. Dondero has taken no steps to cause the Defendants—entities that he indisputably owns and/or effectively controls and that are each a "Related Entity" under the Term Sheet—to comply with the Debtor's demands made in response to the Defendants' Letters.

### D. The Debtor's Request for a Temporary Restraining Order

33. The Defendants cannot be permitted to continue to interfere with, or impede, the Debtor's business.

34. Based on the foregoing, as a member of the Board and as the Debtor's CEO and CRO, I respectfully request that the Court grant the Motion in its entirety and enter the proposed Temporary Restraining Order in the form affixed to the Motion.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: January 6, 2021

*/s/ James P. Seery, Jr.*
James P. Seery, Jr.