# EXHIBIT M

EXECUTION VERSION

## PREFERENCE SHARES PAYING AGENCY AGREEMENT

As of December 21, 2006

Investors Bank & Trust Company, as
Preference Shares Paying Agent
Attn:  CDO Services, Brentwood CDO, Ltd.
200 Clarendon Street
Mail Code EUC 108
Boston, Massachusetts 02116

Ladies and Gentlemen:

Brentwood CLO, Ltd., an exempted company with limited liability incorporated under the laws of the Cayman Islands (the "**Issuer**"), has resolved to appoint Investors Bank & Trust Company ("**IBT**"), as preference shares paying agent (the "**Preference Shares Paying Agent**") for the Class I Preference Shares and the Class II Preference Shares issued by the Issuer (collectively, the "**Preference Shares**"). The Issuer hereby appoints IBT as such under the terms set forth below and confirms IBT's agreement to distribute any funds to be paid to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture (as defined herein) and in accordance with the laws of the Cayman Islands.  Reference is also made to the indenture, dated as of December 21, 2006, among the Issuer, Brentwood CLO, Corp., as co-issuer (the "**Co-Issuer**"), and IBT, as Trustee (the "**Indenture**"). Capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Indenture or, if not defined therein, certain resolutions passed at a meeting of the Issuer's Board of Directors that was held on December 20, 2006, as reflected in the minutes thereof, including Annex A ("**Annex A**") therein (the "**Resolutions**" and, together with this Agreement and the Issuer's Amended and Restated Memorandum and Articles of Association, the "**Preference Share Documents**").   The Preference Shares will be issued, and may be transferred, subject to the procedures set forth in Annex A to the Resolutions.

On the Closing Date, (i) all of the Class I Preference Shares will be offered and sold directly by the Issuer to Brentwood Investors Corp., an exempted company with limited liability incorporated under the laws of the Cayman Islands ("**Investors Corp.**") and (ii) all of the Class II Preference Shares will be offered and sold by the Issuer directly to Highland Financial Partners, L.P. ("**HFP**") (an Affiliate of the Servicer) and/or one or more of its subsidiaries.  Investors Corp. will finance its purchase of the Class I Preference Shares by issuing preference shares (the "**Holding Preference Shares**") in a number equal to the aggregate number of, at a price equal to the price of, such Class I Preference Shares purchased by it from the Issuer.

Section 1.     <u>Notice of Distribution to Directors</u>.   The Preference Shares Paying Agent, promptly after receipt of the Valuation Report, shall forward or make available to the directors of the Issuer (as identified to it by the Issuer) the Valuation Report which identifies the Interest Proceeds and Principal Proceeds, payable to the Holders of the Preference Shares on the applicable Payment Date.

Section 2.     <u>Payments of Dividends and Other Distributions, Amounts Not Distributable</u>

(a)     The Preference Shares Paying Agent shall, subject to paragraphs (b), (c), (d) and (e) below, pay or cause to be paid, on behalf of the Issuer from the Preference Share Distribution Account or the Class II Preference Share Special Payment Account, as applicable, on each applicable Payment Date, the Interest Proceeds and Principal Proceeds received from the Trustee to the Holders of the

Preference Shares as a distribution of dividend on such Payment Date.  Such distributions of Interest Proceeds and Principal Proceeds by way of dividend to the Holders of Preference Shares shall be paid *pro rata* in the proportion that the number of Preference Shares held by each such Holder bears to the total number of Preference Shares.  The Issuer, or the Share Registrar on its behalf, shall provide the Preference Shares Paying Agent with a copy of the Preference Share register on the Closing Date and thereafter, the Share Registrar will promptly notify the Preference Shares Paying Agent of any changes to the Preference Share register.  The Preference Shares Paying Agent shall notify the Issuer and the Share Registrar of any transfers of Preference Shares known to it and all information known to it with respect to the Preference Shares necessary to prepare and maintain the Preference Share Register.  The Share Registrar shall be entitled to rely on any such information provided to it pursuant to the preceding sentence without any liability on its part.  Any Class II Preference Share Special Payment that constitutes part of any such distribution will not be allocable to the Class I Preference Shareholders, rather such amounts will be available for distribution on the Class II Preference Shares.

(b)     Notwithstanding anything in this Agreement to the contrary, distributions of Interest Proceeds and Principal Proceeds by way of dividend to the Holders of Preference Shares on any Payment Date shall (i) be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such payment as determined by the Issuer and (ii) be made only to the extent that the Issuer has sufficient distributable profits and/or share premium out of which to make such payment as determined by the Issuer.  If the Issuer determines that the conditions set forth in either clause (i) or (ii) above are not satisfied with respect to any portion of Interest Proceeds or Principal Proceeds payable on such Payment Date, the Issuer shall instruct the Preference Shares Paying Agent in writing not later than one Business Day prior to such Payment Date that such portion of Interest Proceeds or Principal Proceeds, as applicable, should not be paid, and the Preference Shares Paying Agent shall not pay the same, to the Holders of the Preference Shares until the first succeeding Payment Date, or (in the case of any payments which would otherwise be payable on the Redemption Date or any Scheduled Preference Shares Redemption Date) until the first succeeding Business Day, upon which the Issuer notifies the Preference Shares Paying Agent in writing that each such condition is satisfied, at which time the Preference Shares Paying Agent shall distribute such amounts.  To the extent available, distributions shall be made first out of distributable profits for the current Due Period, then out of distributable profits in excess of dividends for prior Due Periods and then out of share premium.

(c)     Notwithstanding anything in this Agreement to the contrary, distributions of the Redemption Price by way of redemption of the Preference Shares shall be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such distribution as determined by the Issuer.  For purposes of this subsection (c), a determination as to whether the Issuer is solvent on the Redemption Date shall be made by the Issuer (A) after giving effect to any payments to be made on such Redemption Date and (B) in light of the fact that the obligations of the Issuer to the Holders of the Notes, the other Secured Parties and the other Persons subject to the Priority of Payments are limited in recourse to the Collateral, and not to amounts (i) in the Preference Shares Distribution Account, (ii) any other amounts released from the Collateral in accordance with the Indenture and held by or on behalf of the Issuer for the benefit of the Holders of the Preference Shares or (iii) amounts on deposit in the Issuer's bank account in the Cayman Islands, and that after the assets in the Collateral are exhausted, such parties will have no further claim against the Issuer.  If the Issuer determines that such condition is not satisfied on a Redemption Date with respect to any portion of the Redemption Price, the Issuer shall instruct the Preference Shares Paying Agent in writing not later than one Business Day prior to such Redemption Date that such portion should not be distributed, and the Preference Shares Paying Agent shall not distribute the same, to the Holders of the Preference Shares until the first succeeding Business Day upon which the Issuer notifies the Preference Shares Paying Agent in writing that such condition is

satisfied, and the amounts so retained in the Preference Shares Distribution Account will be held therein until such amounts are paid.

(d)     On each Payment Date during the first two years following the Closing Date, the Preference Shares Paying Agent shall distribute, on behalf of the Issuer, amounts received by it from amounts on deposit in the Class II Preference Share Special Payment Account pursuant to Section 10.3(k) of the Indenture that are equal to the products of (a) the Class II Preference Share Portion for such Payment Date and (b) the Servicing Fees then due and payable to the Servicer as described in Section 11.1(a)(i) of the Indenture, for payment *pro rata* to the Holders of the Class II Preference Shares as the Class II Preference Share Special Payment.  After the two-year anniversary of the Closing Date, the Preference Shares Paying Agent shall make distribution of such Class II Preference Share Special Payment *pro rata* to the Holders of the Class II Preference Shares in an amount equal to any portion (between 0% and 100%) of the Servicing Fees then due and payable that the Servicer elects to waive at any time in its sole discretion.

(e)     Dividends to the Holders of the Preference Shares (other than Class II Preference Share Special Payments) may be paid, in whole or in part on any Payment Date, with any Eligible Equity Securities held by, or on behalf of, the Issuer at such time in lieu of a distribution of Interest Proceeds. The Servicer, on behalf the Issuer, shall have the right to direct the Trustee in writing to distribute any Eligible Equity Securities *pro rata* to the Consenting Holders of the Preference Shares (as identified to the Trustee by the Preference Shares Paying Agent) with respect to such Payment Date to the extent that the Market Value of such Eligible Equity Securities (determined by the Servicer as of the relevant Market Value Determination Date) is equal to or lower than the aggregate amount of Interest Proceeds that would otherwise be due and payable on such Payment Date to such Consenting Holders of the Preference Shares.  Interest Proceeds in an amount equal to the Market Value of such Eligible Equity Securities (determined by the Servicer as of the relevant Market Value Determination Date) distributed to the Consenting Holders of the Preference Shares with respect to any such Payment Date shall be treated for all purposes by the Issuer and the Servicer as Principal Proceeds available for distribution on the relevant Payment Date. The amount of Interest Proceeds available on the relevant Payment Date shall be reduced and the amount of Principal Proceeds available on the relevant Payment Date shall be increased accordingly.

Section 3.     Payments and Redemption

(a)     The Preference Shares Paying Agent shall make payments or distributions (other than distributions of Eligible Equity Securities) to each registered Holder on the relevant Record Date (as set out in Annex A to the Resolutions) by wire transfer in immediately available funds to a U.S. Dollar account maintained by such Holder as notified to the Preference Shares Paying Agent or, in the absence of such notification, by U.S. Dollar check mailed to such Holder at its address of record. The Issuer shall, or shall procure that the Share Registrar will, provide the Preference Shares Paying Agent with all relevant information regarding the registered Holders of the Preference Shares as the Preference Shares Paying Agent may reasonably require to the extent such information is in possession or control of the Issuer or Share Registrar.

(b)     If the Servicer, on behalf of the Issuer, desires to make distributions of Eligible Equity Securities on any Payment Date in lieu of Interest Proceeds that are otherwise available for distribution to the Holders of Preference Shares on such Payment Date pursuant to the Priority of Payments as described in Section 2(e) above, the Servicer will notify the Trustee, the Preference Shares Paying Agent and the Holding Preference Shares Paying Agent in writing pursuant to the Servicing Agreement not later than 20 calendar days prior to such Payment Date and provide the Trustee, the Issuer, the Preference Shares Paying Agent (for forwarding on the Record Date or promptly thereafter, but in no

event later than two Business Days after the Record Date, to each Holder of the Preference Shares registered as such on the Record Date for such Payment Date) and the Holding Preference Shares Paying Agent (for forwarding on the Record Date or promptly thereafter, but in no event later than two Business Days after the Record Date, to each Holder of the Holding Preference Shares registered as such on the Record Date for such Payment Date) with (i) details of the Eligible Equity Securities to be distributed, (ii) the Market Value of such Eligible Equity Securities determined as of the relevant Market Value Determination Date, (iii) any other information considered necessary by the Servicer in connection with such proposed distribution and (iv) any information as otherwise required by the Trustee, the Preference Shares Paying Agent and/or the Holding Preference Shares Paying Agent with respect to such proposed distribution. The Preference Shares Paying Agent shall then mail such materials, within two Business Days of its receipt thereof from the Servicer, to each registered Holder of Preference Shares on the Record Date for such Payment Date along with a form of notice and consent (in a form attached hereto in Schedule I) seeking the written consent of each such Holder of Preference Shares to distribute such Eligible Equity Securities to such Holder in lieu of all or a portion of the Interest Proceeds available for distribution to such Holder on such Payment Date. Each Holder of the Preference Shares wishing to receive such Eligible Equity Securities in lieu of a distribution of all or a portion of the Interest Proceeds available for distribution to such Holder on such applicable Payment Date (each such Holder with respect to such Payment Date, a "**Consenting Holder of the Preference Shares**") is required to deliver to the Preference Shares Paying Agent a written consent (which consent will be irrevocable) no later than five Business Days prior to such Payment Date. If any Holder of Preference Shares does not timely deliver its written consent to the Preference Shares Paying Agent in the manner set forth in such notice indicating its consent to the receipt of such Eligible Equity Securities in lieu of a distribution of all or a portion of the Interest Proceeds available for distribution to such Holder on such Payment Date, such Holder shall be deemed to have not given its consent and shall not be a Consenting Holder of Preference Shares with respect to such Payment Date. On each applicable Payment Date (or as soon thereafter as reasonably practicable), Eligible Equity Securities shall be distributed *pro rata* to each Consenting Holder of the Preference Shares with respect to such Payment Date. Each Holder of Preference Shares that is not a Consenting Holder of the Preference Shares (and, for the avoidance of doubt, each Consenting Holder of the Preference Shares to the extent the Market Value as of the relevant Market Value Determination Date of the *pro rata* portion of Eligible Equity Securities distributed to it on such Payment Date is less than the *pro rata* portion of the Interest Proceeds that it would have received on such Payment Date had the Eligible Equity Securities not been distributed on such Payment Date) on any applicable Payment Date shall receive a distribution of Interest Proceeds to the extent available in accordance with the Priority of Payments on such Payment Date in accordance with Section 2(e) herein and the Indenture.

(c) The Issuer or the Preference Shares Paying Agent shall not be obligated to pay any additional amounts to Holders or beneficial owners of the Preference Shares as a result of any withholding or deduction for, or on account of, any present or future taxes, duties, assessments or governmental charges. As a condition to payment of any amount, the Preference Shares Paying Agent, on behalf of the Issuer, may require certification acceptable to it to enable the Issuer and the Preference Shares Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments or distributions in respect of Preference Shares under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under such law or regulation. Amounts properly withheld under the Code by any Person from a payment or distribution to a Holder of Preference Shares shall be considered as having been paid by the Issuer or the Preference Shares Paying Agent to such Holder for all purposes herein. The Issuer and the Preference Shares Paying Agent hereby provide notice to each Holder or beneficial owner of the Preference Shares that the failure to provide the Preference Shares Paying Agent with appropriate tax certifications will result in amounts being withheld from payments to such Holders or

beneficial owners of the Preference Shares under this Agreement (<u>provided</u> that amounts withheld pursuant to applicable tax laws shall be considered as having been paid by the Issuer as provided herein).

(d) The Issuer, the Share Registrar and the Preference Shares Paying Agent may deem and treat the Holder of any Preference Shares as the absolute owner of such Preference Shares, notwithstanding any notation of ownership or other writing on any certificate representing such Preference Shares, for the purpose of paying dividends and other distributions thereon, and for all other purposes, and none of the Issuer, the Share Registrar or the Preference Shares Paying Agent shall be affected by any notice to the contrary. All such payments (including distributions of Eligible Equity Securities) so made to such Holder or upon such Holder's order shall be valid and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for the monies payable upon any such Preference Share.

(e) All payments by the Preference Shares Paying Agent hereunder shall be made without charging any commission or fee to the Holders of the Preference Shares.

(f) On the Scheduled Preference Shares Redemption Date, subject to the Issuer having sufficient distributable profits and/or share premium of the Preference Shares out of which to pay such amounts, the Issuer shall redeem the Preference Shares for a redemption price equal to all amounts distributable to the Preference Shares Paying Agent by the Trustee for distribution to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture, unless the Preference Shares have been redeemed earlier through an optional redemption or otherwise. Upon final payment due on the Preference Shares (whether on the Scheduled Preference Shares Redemption Date or any earlier Redemption Date), the Holder thereof shall present and surrender the certificates, if any, representing the Preference Shares at the office of the Preference Shares Paying Agent on or prior to such final payment date. On the Scheduled Preference Shares Redemption Date, all payments on redemption of Preference Shares to the Holders of the Preference Shares shall be made *pro rata* in accordance with their respective holdings.

Notice of final payment to the Holders of the Preference Shares pursuant to an optional redemption in conjunction with an optional redemption of the Notes shall be given as set forth in Section 9.3 of the Indenture. Notice of any other final payment shall be given by the Preference Shares Paying Agent by first-class mail, postage prepaid, mailed not later than 10 Business Days nor earlier than 30 days before the applicable Redemption Date to each Holder of Preference Shares at such Holder's address as set forth in the Preference Share register.

All notices of redemption shall state:

(i) the Redemption Date on which the Preference Shares are to be redeemed;

(ii) the applicable Redemption Price for the Preference Shares being redeemed;

(iii) the place or places where such Preference Shares to be redeemed are to be surrendered for payment of the applicable Redemption Price, which shall be the office of the Preference Shares Paying Agent; and

(iv) in the case of an optional redemption, the latest possible date upon which such notice of redemption may be withdrawn.

The Issuer shall have the option to withdraw any such notice of redemption up to the fourth Business Day before the scheduled Redemption Date by written notice to the Trustee, the Servicer, the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) and the Holding Preference Shares Paying Agent (for forwarding to the Holders of the Holding Preference Shares) in each case only if either (i) in the case of a redemption pursuant to Section 9.2(a) of the Indenture, the Servicer does not deliver the sale agreement or certifications required under the Indenture (as described in Section 9.3(c) and 12.1(f) of the Indenture), as the case may be, in form satisfactory to the Trustee, (ii) in the case of a redemption pursuant to Section 9.2(a) or Section 9.2(b)(i) of the Indenture, the Issuer receives the written direction of a Majority of the Preference Shares to withdraw the notice of redemption and (iii) in the case of a redemption pursuant to Section 9.2(b)(ii) of the Indenture, the Issuer receives the unanimous written direction of the Holders of the Preference Shares to withdraw the notice of redemption (and the Issuer thereby agrees for the benefit of the directing person to withdraw the applicable notice of redemption if it receives the written direction referred to in the preceding clause (ii) or this clause (iii)). Notice of any such withdrawal shall be delivered pursuant to Section 9.3 of the Indenture.

Failure to give notice of redemption, or any defect therein, to the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) or the Holding Preference Shares Paying Agent (for forwarding to the Holders of the Holding Preference Shares) shall not impair or affect the validity of the redemption of any other Preference Shares.

(g)     On any Payment Date on or after payment in full of the Notes, so long as all administrative fees and expenses and other fees (without regard to any payment limitations) payable under the Priority of Payments (including the Senior Servicing Fee and the Subordinated Servicing Fee), all amounts owing under the Indenture and all amounts owing under the Indenture and any Hedge Agreement to any Hedge Counterparty have been discharged:

(i)     at the direction of a Majority of the Preference Shares, the Issuer shall cause the Trustee to make payments to the Preference Share Distribution Account for distribution by the Preference Share Paying Agent to the Holders of the Preference Shares, in redemption of all of the Preference Shares, in an aggregate amount equal to all of the proceeds from the sale or other disposition of all of the remaining Collateral less any fees and expenses owed by the Issuer (including the Redemption Price of any Notes being simultaneously redeemed), the aggregate amount to be distributed to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares *pro rata* in accordance with their respective holdings; or

(ii)     at the unanimous direction of the Holders of the Preference Shares, voting as a single Class or group, the Issuer shall cause the Trustee to make payments in redemption of all or a directed portion (representing less than all) of the Preference Shares to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares based upon such direction.

(h)     If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Notes in accordance with Section 9.2(a) of the Indenture, such Holder shall notify the Preference Shares Paying Agent, the Trustee, the Issuer, and the Servicer in writing not later than 45 days before the Payment Date on which the redemption is to be made. If the Holders of at least a Super Majority of the Preference Shares direct the Issuer to optionally redeem the Notes, the Issuer shall effect an Optional Redemption of the Notes pursuant to the procedures described in the Indenture.

(i)     If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Preference Shares after the redemption or repayment of the Notes and in accordance with paragraphs (g)(i) and (ii) above, such Holder shall notify the Preference Shares Paying Agent not later

than 30 Business Days (or with the Servicer's consent, not later than 20 Business Days) prior to the proposed Redemption Date (which must be a Payment Date). Upon receiving such notice, the Preference Shares Paying Agent shall promptly (and in no event later than two Business Days thereafter) notify the Issuer and each Holder of the Preference Shares thereof. Each Holder of Preference Shares that also wishes to direct the Issuer to optionally redeem the Preference Shares must so notify the Preference Shares Paying Agent (who shall promptly notify the Issuer and the Servicer of such direction) within 20 Business Days after receipt of such notice. If the aggregate number of Preference Shares that have directed the Issuer to optionally redeem the Preference Shares equals or exceeds the minimum threshold set forth in paragraphs (g)(i) and (ii) above, the Issuer shall effect an optional redemption of the Preference Shares pursuant to the procedures described in the Preference Share Documents. Notwithstanding the foregoing, the Preference Shares must be redeemed on or prior to the Scheduled Preference Shares Redemption Date. The Preference Shares shall be redeemed from the proceeds of any Collateral remaining after giving effect to the redemption or repayment of the Notes and payment in full of all expenses of the Co-Issuers.

Section 4.    Accounts

(a)    On or prior to the Closing Date, the Preference Shares Paying Agent shall establish a single, segregated non-interest bearing trust account that shall be designated as the "Preference Shares Distribution Account" (the "**Preference Shares Distribution Account**") that shall be held in trust in the name of the Preference Shares Paying Agent for the benefit of the Issuer, over which the Preference Shares Paying Agent shall have exclusive control and the sole right of withdrawal. The Preference Shares Paying Agent shall direct the Trustee to make any payment pursuant to the Priority of Payments by wire transfer (or by internal transfer if the Trustee and the Preference Shares Paying Agent are the same Person) to the Preference Shares Distribution Account in immediately available funds. All sums received by the Preference Shares Paying Agent from the Trustee or the Issuer for payment of dividends or other distributions (other than the Class II Preference Share Special Payments) or the Redemption Price in respect of the Preference Shares shall be deposited promptly in the Preference Shares Distribution Account until the first Payment Date or, in the case of the payment of the Redemption Price in respect of the Preference Shares, the first Business Day, on which, in either case, the Issuer notifies the Preference Shares Paying Agent that such distribution can be made to the Holders of the Preference Shares in accordance with Section 2 hereof. The Preference Shares Paying Agent shall then apply such funds as provided for in Section 3 hereof. All sums payable by the Preference Shares Paying Agent hereunder shall be paid out of the Preference Shares Distribution Account.

(b)    On or prior to the Closing Date, the Preference Shares Paying Agent shall establish a single, segregated non-interest bearing trust account that shall be designated as the "Class II Preference Share Special Payment Account" (the "**Class II Preference Share Special Payment Account**") that shall be held in trust in the name of the Preference Shares Paying Agent for the benefit of the Issuer, over which the Preference Shares Paying Agent shall have exclusive control and the sole right of withdrawal. The Preference Shares Paying Agent shall direct the Trustee to make any payment pursuant to the Priority of Payments by wire transfer (or by internal transfer if the Trustee and the Preference Shares Paying Agent are the same Person) to the Class II Preference Share Special Payment Account in immediately available funds. All sums received by the Preference Shares Paying Agent from the Trustee or the Issuer for payment of the Class II Preference Share Special Payments in respect of the Class II Preference Shares shall be deposited promptly in the Class II Preference Share Special Payment Account until the first Payment Date on which, in either case, the Issuer notifies the Preference Shares Paying Agent that such distribution can be made to the Holders of the Class II Preference Shares in accordance with Section 2 hereof. The Preference Shares Paying Agent shall then apply such funds as provided for in Section 3 hereof. All sums payable by the Preference Shares Paying Agent hereunder shall be paid out of the Class II Preference Share Special Payment Account.

(c)     Notwithstanding anything herein, the Preference Shares Paying Agent shall not incur any personal liability to pay amounts due to Holders of the Preference Shares and shall only be required to make payments or other distributions (including the Redemption Price thereof) to the Holders of the Preference Shares if the Issuer is solvent at the time of and immediately after any such payment or distribution in accordance with Cayman Islands law (as determined by the Issuer) there are sufficient monies in the Preference Shares Distribution Account or the Class II Preference Share Special Payment Account, as applicable, to make such payments or other distributions.

(d)     The Preference Shares Paying Agent shall have no right of set off with respect to amounts on deposit in the Preference Shares Distribution Account or the Class II Preference Share Special Payment Account.

(e)     Amounts on deposit in the Preference Shares Distribution Account and the Class II Preference Share Special Payment Account that are not paid out may be deposited in an interest-bearing account as directed in writing by the Issuer.

Section 5.     Unclaimed Payments.  Except as otherwise required by applicable law, any money deposited with the Preference Shares Paying Agent and held in the Preference Shares Distribution Account or the Class II Preference Share Special Payment Account or otherwise held for payment on any Preference Share and remaining unclaimed for two years after such payment has become due and payable shall be paid to the Issuer upon Issuer Request; and the Holder of such Preference Share shall thereafter look only to the Issuer for payment of such amounts and all liability of the Preference Shares Paying Agent with respect to such money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease.  The Preference Shares Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer any reasonable means of notification of such release of payment, including, but not limited to, arranging with the Share Registrar for the Share Registrar to mail notice of such release to Holders of Preference Shares whose right to or interest in monies due and payable but not claimed is determinable from the records of the Issuer or Preference Shares Paying Agent, as applicable, at the last address of record of each such Holder.

Section 6.     Additional Issuance of Preference Shares

(a)     At any time during the Replacement Period, the Issuer may issue and sell additional Preference Shares and use the proceeds from such issuance and sale to purchase additional Collateral Obligations or as otherwise permitted under the Preference Share Documents and the Indenture; provided that the following conditions are met: (i) the terms of the Preference Shares issued shall be identical to the terms of previously issued Preference Shares and (ii) the net proceeds of any additional Preference Shares shall be used to purchase additional Collateral Obligations.  Such additional Preference Shares may be offered and sold at prices that differ from the initial offering prices of the outstanding Preference Shares; provided that the initial offering prices of additional Preference Shares shall not be below 100% of the face amount thereof.  The Issuer shall cause purchases of additional Preference Shares made pursuant to an additional issuance of Preference Shares to comply individually and in the aggregate with the applicable purchase and transfer restrictions for the Preference Shares set forth herein in Section 9 hereof and all applicable laws, rules and regulations (including, without limitation, any rules, regulations and procedures of any securities exchange, self-regulatory organization or clearing agency).

(b)     Any additional Preference Shares issued shall, to the extent reasonably practicable, be offered by the Issuer first to the existing Holders of the Preference Shares, in such amounts as are necessary to preserve their *pro rata* holdings of the Preference Shares.

Section 7.    Purchase and Redesignation of Preference Shares

(a)    Each Holder or beneficial owner of a Preference Share, by its ownership of such Preference Share, acknowledges and agrees that each Non-Consenting Holder of Preference Shares with respect to an amendment of the Indenture (which includes Holders that fail to respond to a consent solicitation within the applicable period) will be forced to sell its applicable Preference Shares pursuant to Section 9.6 of the Indenture, whereby the Amendment Buy-Out Purchaser is permitted to purchase the Preference Shares held by any such Non-Consenting Holder thereof at the applicable Amendment Buy-Out Purchase Price; provided that if any Non-Consenting Holder holds Class II Preference Shares, (i) such Non-Consenting Holder will sell such Class II Preference Shares to Investors Corp. and such Preference Shares will be redesignated as Class I Preference Shares, (ii) Investors Corp. will issue additional Holding Preference Shares in a number equal to the aggregate number of, and at a price equal to the price of, such redesignated Preference Shares purchased by it and (iii) the Amendment Buy-Out Purchaser will purchase such additional Holding Preference Shares in lieu of such redesignated Preference Shares.

(b)    Each Holder or beneficial owner of a Preference Share will have the right to sell such Preference Share to an Extension Qualifying Purchaser upon a Maturity Extension pursuant to Section 2.4 of the Indenture at the applicable Extension Purchase Price and absent such sale shall be subject to an extension of the Scheduled Preference Shares Redemption Date as set forth in the Indenture and the other aspects of a Maturity Extension under the Indenture; provided that if any Holder of Class II Preference Shares delivers an Extension Sale Notice notifying the Issuer and the Trustee of its intention to sell all or a portion of its Class II Preference Shares, (i) such Holder will sell such Class II Preference Shares to Investors Corp. and such Preference Shares will be redesignated as Class I Preference Shares, (ii) Investors Corp. will issue additional Holding Preference Shares in a number equal to the aggregate number of, and at a price equal to the price of, such redesignated Preference Shares purchased by it and (iii) the Extension Qualifying Purchaser will purchase such additional Holding Preference Shares in lieu of such redesignated Preference Shares.

(c)    The Share Registrar will record in the register maintained by it those Preference Shares which it has been notified in writing are held by HFP or any of its subsidiaries Class II Preference Shares or Class II Preference Shares, as appliable.  Such Preference Shares shall be designated by the Share Registrar as Class II Preference Shares.  HFP and its subsidiaries will agree not to transfer any of the Class II Preference Shares that they hold to any Person (including pursuant to the Amendment Buy-Out Option and a Maturity Extension as set out in paragraphs (a) and (b) above) other than Investors Corp.  The Share Registrar will redesignate (i) Class II Preference Shares as Class I Preference Shares upon any transfer of such Class II Preference Shares by HFP or any of its subsidiaries to Investors Corp. and (ii) Class I Preference Shares as Class II Preference Shares upon any transfer of Class I Preference Shares by Investors Corp. to HFP or any of its subsidiaries.

(d)    Notwithstanding anything to the contrary herein, in the event that any Holder of Class II Preference Shares wishes to transfer all of a portion of its Class II Preference Shares (the "**Class II Seller**") to Investor Corp. (the "**Class II Buyer**") such transfer shall only be effected by the Issuer redeeming such Class II Preference Shares and correspondingly issuing new Class I Preference Shares to Investor Corp. and Investor Corp. issuing new Holding Preference Shares in accordance with this Section and the applicable provisions of the Articles of Association of each of the Issuer and Investors Corp..  At least 10 days prior to any transfer by a Class II Seller to a Class II Buyer, such Class II Seller and Class II Buyer shall jointly notify the Issuer, the Preference Share Paying Agent, Servicer and Investor Corp. of their intention to effect such transfer of Class II Preference Shares, in the form of Exhibit C (attached hereto) indicating the number of Class II Preference Shares to be sold and the corresponding number of Class I Preference Shares to be issued and transferred to Investors Corp. and the number of Holding

Preference Shares to be issued and acquired by the Class II Buyer, the price for such purchase and sale and the date on which such purchase and sale is expected to occur (such notice, the "**Sale Notice**"). The Issuer shall, on the date indicated in the Sale Notice subject to such redemption being approved in writing by the Board of Directors of the Issuer, redeem the indicated number of Class II Preference Shares to be sold by the Class II Seller and issue an equal number of Class I Preference Shares registered in the name of Investor Corp..

(e)     Simultaneously with such redemption and new issuance by the Issuer, Investors Corp., pursuant to the Holding Preference Shares Paying Agency Agreement and its Articles of Association, shall issue new Holding Preference Shares to the Class II Buyer equal in number to the number of Class II Preference Shares being sold by the Class II Seller as indicated in the Sale Notice. The Class II Buyer shall pay Investors Corp. for its subscription to such newly issued Holding Preference Shares in an amount indicated in the Sale Notice and Investors Corp. shall immediately apply such amount to pay the subscription price to the Issuer for the newly issued Class I Preference Shares, and the Issuer shall immediately apply such amount to pay the redemption price to the Class II Seller for the redemption of such Class II Seller's Class II Preference Shares.

Section 8.     Execution, Delivery and Dating. The certificates (if required by the Resolutions) relating to the Preference Shares shall be executed on behalf of the Issuer as provided for in the Memorandum and Articles of Association.

At any time and from time to time after the execution and delivery of this Agreement, the Issuer may deliver Preference Share certificates (the "**Preference Share Certificates**") executed by the Issuer to the Preference Shares Paying Agent, and the Preference Shares Paying Agent, upon Issuer Order, shall deliver such Preference Share Certificates as provided in this Agreement and not otherwise.

Each Preference Share Certificate delivered by the Preference Shares Paying Agent to or upon Issuer Order on the Closing Date shall be dated the Closing Date. All other Preference Share Certificates that are delivered after the Closing Date for any other purpose under this Agreement shall be dated the date of their delivery.

Section 9.     Registration and Registration of Transfer

(a)     Subject to Section 7 above, when the Preference Shares Paying Agent receives a request for transfer of Preference Shares, the Preference Shares Paying Agent shall comply with its obligations as set forth in Section 5 of Annex A to the Resolutions.

(b)     No transfer of the Preference Shares shall be registered if such transfer will result in persons that have represented that they are Benefit Plan Investors (as defined below) owning 25% or more of the aggregate outstanding amount of either the Class I Preference Shares or the Class II Preference Shares immediately after such transfer (excluding for purposes of such determination any Preference Shares held by any Controlling Person (as defined below) and its affiliates (such as the Preference Shares held by the Servicer or its affiliates) that is not also a Benefit Plan Investor) determined in accordance with the Plan Asset Regulation issued by the United States Department of Labor and found at 29 C.F.R. Section 2510.3-101 and Section 3(42) of ERISA (the "**Plan Asset Regulation**"). Each purchaser or transferee of a Preference Share will be required to represent and agree whether or not such purchaser is, or is using the assets of, or will at any time throughout its holding and disposition of such Preference Share be or become, (i) an "employee benefit plan" as defined in Section 3(3) of the United States Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), subject to Part 4 of Title I of ERISA, (ii) a "plan" to which Section 4975(c)(1) of the Internal Revenue Code of 1986 (the "**Code**") applies or (iii) any entity whose underlying assets include "plan assets" of any of the foregoing

by reason of an investment in the entity by such a plan or arrangement.  In addition, each purchaser or transferee of a Preference Share (other than the Servicer or its affiliates) will be required to represent and agree whether or not it is, or is using the assets of, or will at any time throughout its holding and disposition of such Preference Share be or become the Servicer or any other person that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer or any "affiliate" (as defined in the Plan Asset Regulation) of any such person (any such person, a "**Controlling Person**").  If, after a purchaser's or transferee's initial acquisition of Preference Shares, the purchaser or transferee determines or the Issuer, the Share Registrar or the Preference Shares Paying Agent obtain actual knowledge that such purchaser or transferee has breached any of the foregoing representations, such purchaser or transferee will dispose of its interest in the Preference Shares in a manner consistent with the requirements set forth in Annex A to the Resolutions. Each purchaser or transferee of a Preference Share will be required to represent that either (i) it is not, and is not acquiring such Preference Share with the assets of, an "employee benefit plan" as defined under Section 3(3) of ERISA and that is subject to Part 4 of Title I of ERISA, any "plan" to which Section 4975 of the Code applies or a governmental or church plan subject to any federal, state or local law that is substantially similar to Section 406 of ERISA or Section 4975 of the Code (each such plan, a "**Covered Plan**") and throughout the holding of such Preference Share, it will not become or transfer its interest to any Covered Plan or to an entity using the assets thereof, or (ii) the acquisition and holding of such Preference Share by the purchaser or transferee, throughout its holding and disposition of such Preference Share, will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental or church plan, a violation of any similar law), because such purchase, holding and disposition either (x) is not, and will not become, subject to such laws or (y) is covered by an exemption from all applicable prohibited transactions, all of the conditions of which are and will be satisfied upon its acquisition of, and throughout its holding and disposition of, such Preference Share. Each purchaser or transferee of a Preference Share will be required to represent and agree that it will not transfer such Preference Share in violation of any of the foregoing representations and agreements, that any purported transfer that does not comply with such representations and agreements will be null and void *ab initio* and will vest in the transferee no rights against the Preference Shares Paying Agent or the Issuer, and that such purchaser or transferee, as applicable, and any fiduciary or other Person causing it to acquire such Preference Share shall, to the fullest extent permissible under applicable law, indemnify and hold harmless the Issuer, the Co-Issuer, the Trustee, the Preference Share Paying Agent, the Servicer, the Share Registrar, the Placement Agents and their respective affiliates from any cost, damage or loss incurred by them as a result of any transfer in violation of any of the foregoing.

(c)     The Preference Shares Paying Agent agrees that, after the initial distribution of the Class D Notes and the Preference Shares, neither it nor any of its affiliates will acquire any Class D Notes or Preference Shares (including pursuant to a Maturity Extension or the Amendment Buy-Out Option) unless such acquisition would not, as determined by the Trustee pursuant to the applicable terms of the Indenture, result in persons that have represented that they are Benefit Plan Investors owning 25% or more of the aggregate outstanding amount of any of the Class D Notes, the Class I Preference Shares or the Class II Preference Shares immediately after such acquisition (determined in accordance with the Plan Asset Regulation, the Indenture and the Preference Share Documents).  The Class D Notes and the Preference Shares held by the Preference Shares Paying Agent or any of its affiliates (as defined in the Plan Asset Regulation) that have represented that they are Controlling Persons will be disregarded and will not be treated as outstanding for purposes of determining compliance with such 25% limitation to the extent that such person has represented that it is not a Benefit Plan Investor.

(d)     Notwithstanding anything else contained herein to the contrary, neither the Preference Shares Paying Agent nor the Share Registrar shall be responsible for ascertaining whether any purchase or transfer complies with the registration provisions of or exemptions from the Securities Act,

applicable state laws, the Code, ERISA, the Plan Asset Regulation or the Investment Company Act; provided that if a certificate or other written representation is specifically required by the express terms of this Agreement or Section 5 of Annex A to the Resolutions to be delivered to the Preference Shares Paying Agent by the purchaser or transferee of a Preference Share, the Preference Shares Paying Agent shall be under a duty to receive and examine the same to determine whether the same substantially conforms on its face with the terms of this Agreement or Section 5 of Annex A to the Resolutions, as applicable, and shall promptly notify the party delivering the same if such certificate does not comply with such terms.

(e)     The Issuer shall (and shall cause the Share Registrar to) consult the Preference Shares Paying Agent in connection with all transfers of Preference Shares and shall  (and shall cause the Share Registrar to) direct all transferors and transferees to correspond through the Preference Shares Paying Agent.  The Share Registrar will not be required to determine whether any proposed transfer, redemption or other transaction in relation to the Preference Shares complies with any restrictions imposed by law or under the terms of the Indenture or the Preference Share Documents but shall be entitled to rely completely in that respect on the Issuer or the Preference Shares Paying Agent.

(f)     In the event that the Preference Shares Paying Agent is notified by the Issuer (or the Servicer on behalf of the Issuer) that any Holder of Preference Shares has failed to provide the Issuer with the applicable United States federal income tax certifications, the Preference Shares Paying Agent shall notify the Share Registrar and request that it not record such transfer.  Except as expressly provided herein or as required by this Agreement in connection with the Preference Shares Paying Agent's obligations to the Holders of Preference Shares, the Preference Shares Paying Agent shall have no obligation to oversee or participate in any such transfer of Preference Shares.

Section 10.     Fees and Indemnification.  The fee to be paid in connection with the Preference Shares Paying Agent's appointment and duties as Preference Shares Paying Agent shall be paid pursuant to a letter agreement dated November, 2006 between the Preference Shares Paying Agent, the Holding Preference Shares Paying Agent, the Servicer on behalf of Investors Corp. and the Issuer.  The fees payable hereunder shall be paid by the Issuer to the Preference Shares Paying Agent's account as directed by the Preference Shares Paying Agent.  The Issuer will indemnify the Preference Shares Paying Agent and its officers, directors, employees and agents, against any loss, liability or expense (including reasonable legal fees and out-of-pocket expenses of counsel) incurred in connection with their appointment and duties hereunder, except such as result from their own gross negligence, bad faith or willful misconduct.  Notwithstanding the foregoing, the Preference Shares Paying Agent agrees that such fees and indemnification shall be treated as an Administrative Expense of the Issuer as defined in the Indenture and paid pursuant to the Priority of Payments.  Anything in this Agreement notwithstanding, in no event shall the Preference Shares Paying Agent be liable for special, indirect or consequential losses or damages of any kind whatsoever (including but not limited to loss of profits), even if the Preference Shares Paying Agent has been advised of such loss or damage and regardless of the form of action.  The obligation of the Issuer to indemnify the Preference Shares Paying Agent under this Section 10 shall survive retirement of the Preference Shares and any resignation or removal of the Preference Shares Paying Agent but shall remain subject to the provisions of Section 23 hereof.

Section 11.     Liabilities

(a)     The Preference Shares Paying Agent shall not be responsible or accountable to anyone for any reason whatsoever with respect to the validity of this Agreement or of the Preference Shares, or for any act done or omitted by it in good faith, or for anything whatsoever in connection with this Agreement, except for its own gross negligence, bad faith or willful misconduct in the performance of any duty to be performed by the Preference Shares Paying Agent hereunder.

(b)     The Preference Shares Paying Agent may consult as to legal matters with lawyers selected with due care by it, who may be employees of or regular independent counsel to the Issuer, and the Preference Shares Paying Agent shall be protected from and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion or advice of such lawyers.

(c)     The Preference Shares Paying Agent shall be protected from and shall incur no liability for or in respect of any action taken or thing suffered by it in reliance upon any Preference Shares, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been delivered or signed by the proper parties, except as may result from its own gross negligence, bad faith or willful misconduct or that of its directors, officers, employees or agents.

(d)     The Preference Shares Paying Agent shall not be under any liability for interest on any money at any time received by it pursuant to any of the provisions of this Agreement, except as otherwise agreed in writing with the Issuer.

(e)     The Preference Shares Paying Agent shall not incur any liability with respect to the validity or value of any of the Preference Shares unless otherwise specified herein.

Section 12.     <u>Conflicts</u>

(a)     The Preference Shares Paying Agent and its officers, directors and employees may, subject to the restrictions set forth in Section 9(c) hereof, become the Holder of, or acquire any interest in, any Preference Shares, with the same rights that it or they would have if it were not the Preference Shares Paying Agent hereunder, or they were not such officers, directors, or employees, and may engage or be interested in any fiscal or other transaction with the Issuer and may act on, or as depository, trustee or agent for, any committee or body of Holders of Preference Shares or other indebtedness of the Issuer as freely as if it were not the Preference Shares Paying Agent hereunder or they were not such officers, directors, or employees.

(b)     The Preference Shares Paying Agent shall be obliged to perform such duties and only such duties as are specifically set forth herein, and no implied duties or obligations shall be read into this Agreement or the Indenture against the Preference Shares Paying Agent.  Except as otherwise expressly provided in Section 5 of Annex A to the Resolutions (to the extent they do not contradict this Agreement), the Preference Shares Paying Agent shall have no duties under Annex A to the Resolutions. The Preference Shares Paying Agent shall not be under any obligation to take any action hereunder that may tend to involve it in any expenses or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it.  The Preference Shares Paying Agent shall not be accountable or under any duty or responsibility in case of any default of which the Preference Shares Paying Agent has knowledge by the Issuer in the performance of its obligations contained in the Amended and Restated Memorandum and Articles of Association and Annex A to the Resolutions (including, without limitation, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or to make any demand for payment upon the Issuer).

(c)     In acting under this Agreement, the Preference Shares Paying Agent is acting solely as agent of the Issuer and does not assume any obligations to, or relationship of agency or trust for or with any of the owners or Holders of the Preference Shares.  All funds held by the Preference Shares Paying Agent for payment on the Preference Shares shall be held in trust for the Issuer, until paid.

(d)     The Preference Shares Paying Agent shall, as between itself and the Holders of the Preference Shares, with respect to all the obligations, powers, authorities and discretions, vested in it hereunder Amended and Restated Memorandum and Articles of Association and the Resolutions, have absolute and uncontrolled discretion as to the exercise thereof whether in relation to the manner or as to the mode of and time for the exercise thereof and, in the absence of gross negligence, bad faith or willful misconduct on its part or that of its officers, directors or employees shall be in no way responsible for any loss, costs, damages or inconvenience that may result from the exercise or non-exercise thereof.

Section 13.     <u>Amendment</u>

(a)     This Agreement may be amended by the parties hereto, without the consent of the Holders of any Preference Shares, for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective provision contained herein, or in regard to matters or questions arising under this Agreement as the Issuer and the Preference Shares Paying Agent may deem necessary or desirable and which shall not materially adversely affect the interests of Holders of the Preference Shares. In addition, this Agreement may be amended without the consent of any Holders of the Preference Shares and without regard to whether or not such amendment adversely affects the interest of the Holders of the Preference Shares in order to prevent the Issuer from becoming an "investment company" as defined in the Investment Company Act or to better assure compliance with the requirements of Rule 3a-7 and/or to remove transfer restrictions and other requirements relating to Section 3(c)(7); <u>provided</u> that, as a condition to the effectiveness of any such supplemental indenture, each of the Issuer, the Trustee, the Preference Shares Paying Agent and the Servicer shall have received a customary opinion of counsel (which may be supported as to factual matters by any relevant certificates or other documents necessary or advisable in the judgment of counsel delivering such opinion) from a nationally recognized law firm providing that, after giving effect to such supplemental indenture, the Issuer is exempt from registration as an "investment company" under the Investment Company Act in reliance on the exemption provided by Rule 3a-7.

(b)     Unless otherwise as set forth in subsection (a) above, this Agreement may be amended with the consent of Holders of a Majority of the Preference Shares materially and adversely affected thereby.

(c)     Any amendment to this Agreement must be in writing executed by each party hereto.

(d)     The Preference Shares Paying Agent shall be entitled to receive, and (subject to its duties and obligations herein) shall be fully protected in relying upon, an opinion of counsel, consent or certificate of the Issuer in determining whether or not any proposed amendment is permitted hereunder.

(e)     Any amendment to this Agreement that would necessitate a change to the Amended and Restated Memorandum and Articles of Association may only be made after a Special Resolution (as therein defined) has been passed to permit the Memorandum and Articles of Association to be altered to conform with such proposed amendment.

(f)     The Preference Shares Paying Agent shall, at the Issuer's expense, provide prompt notice to S&P of any amendment to this Agreement at the address for notice set out in Section 14.3 of the Indenture.

Section 14.     <u>Resignation or Removal of the Preference Shares Paying Agent</u>.  The Preference Shares Paying Agent may at any time resign as the Preference Shares Paying Agent, by giving written notice to the Issuer of its resignation, specifying the date on which its resignation shall become effective

(which date shall not be less than 60 days after the date on which such notice is given unless the Issuer shall agree to a shorter period). The Issuer may remove the Preference Shares Paying Agent at any time by giving written notice of not less than 60 days to the Preference Shares Paying Agent specifying the date on which such removal shall become effective. Such resignation or removal shall only take effect upon the appointment by the Issuer of a successor Preference Shares Paying Agent and upon the acceptance of such appointment by such successor Preference Shares Paying Agent; provided, however, that if the successor Preference Shares Paying Agent has not been appointed within 60 days after such notice of resignation or removal, then the Preference Shares Paying Agent, or any Holder of Preference Shares, may, on behalf of himself and others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Preference Shares Paying Agent; provided, further, that after the retirement of the Notes, if the Issuer determines that no material distributions will be paid on the Preference Shares, the Issuer may remove the Preference Shares Paying Agent at any time, by giving written notice of not less than 10 days, and assume the duties of the Preference Shares Paying Agent itself. The Preference Shares Paying Agent shall, at the Issuer's expense, provide prior notice to S&P of its resignation or removal under this Agreement at the address for notice set out in Section 14.3 of the Indenture.

Section 15.     Assignment.   No party hereto may assign or novate any of its rights or obligations hereunder except with the prior written consent of all the parties hereto.

Section 16.     Merger, Conversion, Consolidation or Succession to Business of Preference Shares Paying Agent.  Any entity into which the Preference Shares Paying Agent may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Preference Shares Paying Agent is a party, or any entity succeeding to all or substantially all of the corporate trust business of the Preference Shares Paying Agent, shall be the successor of the Preference Shares Paying Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

Section 17.     Reports and Notices.  The Issuer hereby authorizes the Preference Shares Paying Agent to deliver or request the Trustee to deliver all Monthly Reports and Valuation Reports (each a "**Report**" and, collectively, "**Reports**") prepared pursuant to the Indenture to the Holders of the Preference Shares and the Preference Shares Paying Agent shall deliver, or shall cause the Trustee to deliver a copy of any such Report to such Holders within two Business Days of receipt of any such Report.  In addition, the Preference Shares Paying Agent shall deliver, or shall cause the Trustee to deliver, a copy of any other notice or information that it has received from the Trustee under the Indenture to the Holders of the Preference Shares within two Business Days of receipt of such notice and information.  Any notices or information to be delivered by the Preference Shares Paying Agent to the Holders of the Preference Shares pursuant to this Agreement shall be delivered, in each case, (i) by first-class mail, postage prepaid, to each Holder of a Preference Share at the address appearing in the Preference Share register or (ii) with respect to delivery of the Reports, by making such Reports available via its internet website, initially located at www.cdocalc.com/ibt/cdo.  All information made available on the Preference Shares Paying Agent's website shall be restricted and the Preference Shares Paying Agent shall only provide access to such reports to those parties entitled thereto pursuant to the Preference Shares Paying Agency Agreement. In connection with providing access to its website, the Preference Shares Paying Agent may require registration and the acceptance of a disclaimer.  Questions regarding the Preference Shares Paying Agent's website may be directed to the Preference Shares Paying Agent's customer service desk at (617) 937-5585.

Section 18.     Notices

(a) All communications by or on behalf of the Issuer relating to the transfer or payment of a Preference Share or any interest therein shall be directed to the Preference Shares Paying Agent at its address set forth in clause (b)(ii) below. The Preference Shares Paying Agent shall mail any notice it receives from the Trustee (for forwarding to the Holders of the Preference Shares) to the Holders of the Preference Shares on the Business Day it receives such notice.

Where this Agreement provides for notice to Holders of the Preference Shares of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if such notice is in writing and mailed, first-class postage prepaid, to each Holder of the Preference Shares affected by such event, at such Holder's address as it appears on the Preference Share register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

Neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of Preference Shares shall affect the sufficiency of such notice with respect to other Holders. Any notice that is given in the manner herein provided shall conclusively be presumed to have been duly given whether or not actually received by such Holder. Any notice to Holders of the Preference Shares provided for in this Agreement will be deemed to have been given on the date of mailing.

Any notice by any Holder of Holding Preference Shares delivered to the Holding Preference Shares Paying Agent shall be treated by the Preference Shares Paying Agent, for the purposes of this Agreement, as a notice, by a Holder of Preference Shares with respect to a number of Preference Shares equal to the number of Holding Preference Shares with respect to which such notice relates, delivered to the Preference Shares Paying Agent on the same date such notice is delivered to the Holding Preference Shares Paying Agent.

Where this Agreement provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

In the event that, by reason of the suspension of the regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Holders of the Preference Shares when such notice is required to be given pursuant to any provision of this Agreement, then any manner of giving such notice as shall be satisfactory to the Preference Shares Paying Agent shall be deemed to be a sufficient giving of such notice.

(b) Notices and other communications hereunder shall (except to the extent otherwise expressly provided) be in writing and shall be addressed as follows, or to such other addresses as the parties hereto shall specify from time to time:

(i) if to the Issuer:

Brentwood CLO Ltd.
PO Box 1093GT, Queensgate House
South Church Street
George Town, Grand Cayman
Cayman Islands
Fax: (345) 945-7100
Attention: The Directors

(ii) if to the Preference Shares Paying Agent:

Investors Bank & Trust Company
200 Clarendon Street
Mail Code EUC 108
Boston, Massachusetts 02116
Fax: (617) 351-4358
Attention: CDO Services Group (Brentwood CLO, Ltd)

Section 19. <u>Covenants of the Issuer</u>. The Issuer shall not take any action under this Agreement or the Indenture that requires the authorization, direction or consent from the Holders of the Preference Shares without obtaining such authorization, direction or consent from the Holders of the Preference Shares. It shall be the responsibility of the Issuer to satisfy the Preference Shares Paying Agent as to the compliance with the foregoing condition (on which the Preference Shares Paying Agent may rely on in good faith).

Section 20. <u>Transfer of Issuer Ordinary Shares</u>. For so long as any of the Preference Shares are Outstanding, the Issuer shall not agree to the transfer of any Issuer Ordinary Shares to U.S. Persons (as defined in the Code), and shall not transfer any such Issuer Ordinary Shares to any Person other than a Person which is a resident of the Cayman Islands.

Section 21. <u>Certain Tax Matters</u>

(a) On demand of the Issuer, a Holder or beneficial owner of a Preference Share will notify the Issuer whether or not the Holder or beneficial owner of such Preference Share is a United States person within the meaning of Section 7701(a)(30) of the Code and the name and status of such Holder or beneficial owner as an individual, partnership, corporation, or other entity and such other information as the Issuer shall reasonably request for purposes of tax reporting of the Issuer or other Holders of the Preference Shares.

(b) The Issuer will cause the Independent accountants to make a determination as to whether a Holder's investment in the Preference Shares has become a "reportable transaction" as described in Treasury Regulation Section 1.6011-4 because, after the Closing Date, the Issuer entered into a transaction whereby the Issuer recognized a significant loss or otherwise. If the Holder's investment in the Preference Shares has become such a "reportable transaction," then the Issuer shall provide to Holders of Preference Shares any information available to it which may be reasonably necessary for such Holders of Preference Shares to comply with any disclosure requirements under Section 6011 of the Code and the Treasury Regulations promulgated thereunder with respect to its investment in the Preference Shares.

(c) The Issuer will provide or cause to be provided to each Holder or beneficial owner of the Preference Shares (or its designee), upon written request therefor, any information that such Holder or beneficial owner reasonably requests to assist such Holder or beneficial owner with regard to its or its equity owners' U.S. federal income tax filing requirements.

(d) Each Holder and beneficial owner of the Preference Shares agrees to treat the Preference Shares as equity of the Issuer and the Notes as debt of the Issuer for U.S. federal, state and local income tax purposes, if applicable.

(e) The Issuer will make an election to be treated as a partnership, and will take all necessary actions to maintain its status as a partnership (or, if the Issuer is treated as owned by one person, as a disregarded entity of such person) for U.S. federal income tax purposes.

(f)     The Issuer shall not participate in listing or including the Class D Notes or Preference Shares on or in any Established Securities Markets, and shall not participate in establishing any Established Securities Market for its Class D Notes or Preference Shares.  In addition, the Issuer shall not recognize any transfers made on any Established Securities Markets with respect to its Class D Notes or Preference Shares (including any transfers of any financial instrument (other than the Senior Notes) or contract the value of which is determined in whole or in part by reference to the Issuer).

(g)     Transfers of Preference Shares may only be made upon receipt by the Preference Shares Paying Agent of (1) appropriate documentation required under the Code and the applicable Treasury regulations establishing that the beneficial owner of the Preference Shares to be transferred is either not a U.S. person (e.g., an IRS Form W-8BEN or an IRS Form W-8IMY with appropriate attachments) or a U.S. person (e.g., an IRS Form W-9) and (2) if such beneficial owner of Preference Shares to be transferred is treated as a partnership, S-corporation or grantor trust for U.S. federal income tax purposes, a written representation from such beneficial owner that (i) there will not be any interests in such beneficial owner where substantially all of the value of such interest is attributable to the value of the Preference Shares proposed to be transferred to such beneficial owner, together with the value of any Class D Notes, Holding Preference Shares and Preference Shares already held by such beneficial owner and (ii) such beneficial owner is not a part of any arrangement a principal purpose of which is to cause the Class D Notes and Preference Shares to be treated as owned by 100 persons or less within the meaning of Treasury Regulation section 1.7704-1(h).  In addition, neither the Preference Shares Paying Agent nor the Issuer shall recognize any transfers of Preference Shares, and any such proposed transfer shall be null and void, if (a) the proposed transfer will cause the Issuer to have more than ninety-nine beneficial owners (as determined for purposes of the provisions of Treasury Regulation section 1.7704-1(h)) of its Class D Notes and Preference Shares unless it receives the consent of all of the Holders of the Preference Shares and an Opinion of Counsel to the effect that Holders of the Notes will not recognize gain or loss for U.S. federal income tax purposes as a result of such transfer, and will be subject to U.S. federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such transfer had not been made or (b) such transfer was made pursuant to a trade on an Established Securities Market. The Preference Shares Paying Agent shall contact the Trustee to request, and shall be entitled to rely upon the information it receives from the Trustee to determine, the number of beneficial owners of the Class D Notes.  The Preference Shares Paying Agent shall provide, upon request by the Trustee, the number of beneficial owners of the Preference Shares referenced on, and in reliance upon, the transfer certificates received pursuant to the terms of this Agreement.

Section 22.    <u>Minimum Lots</u>.  Preference Shares must be held in minimum lots of 100 Preference Shares per investor and integral multiples of one Preference Share in excess thereof.

Section 23.    <u>Limited Recourse; No Petition</u>.  The Preference Shares Paying Agent hereby acknowledges and agrees that the Issuer's obligations hereunder will be solely the corporate obligations of the Issuer, and that the Preference Shares Paying Agent will not have any recourse to any of the directors, officers, employees, shareholders or Affiliates of the Issuer with respect to any claims, losses, damages, liabilities, indemnities or other obligations in connection with any transactions contemplated hereby.  Notwithstanding any other provisions of this Agreement, recourse in respect of any obligations of the Issuer hereunder will be limited to the proceeds of the Collateral, paid pursuant to the Priority of Payments and on the exhaustion thereof all obligations of and all claims against the Issuer arising from this Agreement or any transactions contemplated hereby shall be extinguished and shall not thereafter revive.  The Preference Shares Paying Agent, by entering into this Agreement, hereby covenants and agrees that it will not, prior to the date which is one year and one day (or, if longer, the applicable preference period) after the payment in full of all amounts owing under the Indenture this Agreement and all securities issued by the Issuer, institute against the Issuer, or voluntarily join in any institution against the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or

other proceedings under any United States federal or state bankruptcy or similar law of any jurisdiction within or without the United States in connection with any obligations relating to the Preference Shares or this Agreement. The provisions of this Section 23 shall survive termination of this Agreement for any reason whatsoever.

Section 24.  (a) <u>GOVERNING LAW</u>.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(b) <u>WAIVER OF JURY TRIAL</u>.  EACH OF THE ISSUER AND THE PREFERENCE SHARES PAYING AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PREFERENCE SHARES OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(c) <u>Service of Process</u>.  The Issuer irrevocably appoints Investors Bank & Trust Company (the "**Process Agent**") located at 33 Maiden Lane, 4th Floor, NY, NY 10038, to receive, for it and on its behalf, service of process in any suit, action or proceeding relating to this Agreement. If for any reason the Process Agent is unable to act as such, the Issuer shall promptly notify the Preference Shares Paying Agent and within 30 days appoint a substitute process agent acceptable to the Preference Shares Paying Agent.

Section 25.  <u>Signatures</u>.  This Agreement may be signed in two or more counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.  A facsimile signature shall be considered due execution and shall be binding upon the signatory thereto with the same force and effect as if the signature were an original.

**[The Remainder Of This Page Has Been Intentionally Left Blank.]**

Please indicate your acceptance of this appointment and the terms of this Agreement by signing and returning the enclosed copy of this Agreement. The Issuer by signing this Agreement confirms its agreement to the terms stated herein.

Very truly yours,

BRENTWOOD CLO, LTD.

By: _____
Name: **Phillipa White**
Title: **Director**

Accepted and agreed to as of the date first above written.

INVESTORS BANK & TRUST COMPANY

By:
Name    Brian Peterson
Title:    Director

**SCHEDULE I**

**Notice of Distribution of Eligible Equity Securities**


Date:    [_____]


[Name of Holder]
[address]
Attention: [_____]

Copy:

Brentwood CLO, Ltd.
P.O. Box 1093GT
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands
Attention: the Directors


Re:    Brentwood CLO, Ltd.
       Distribution of Eligible Equity Securities in lieu of Interest
Proceeds

Ladies and Gentlemen:

This letter is to inform you that Highland Capital Management, L.P., in its capacity as servicer (the "**Servicer**") with respect to that certain servicing agreement, dated as of December 21, 2006, by and between Brentwood CLO, Ltd. (the "**Issuer**") and the Servicer, on behalf of the Issuer, would like to distribute Eligible Equity Securities on the Payment Date of [_____], 20[__] to the Holders of the Preference Shares in lieu of the Interest Proceeds, in whole or in part, that are otherwise due and payable to such Holders on such Payment Date.  Such Eligible Equity Securities will be distributed in accordance with Sections 2(e) and 3(b) of that certain paying agency agreement, dated as of December 21, 2006 (the "**Preference Shares Paying Agency Agreement**"), by and between the Issuer and Investors Bank & Trust Company, in its capacity as preference shares paying agent (the "**Preference Shares Paying Agent**")  and Section 11.1(a)(i) of that certain indenture, dated as of December 21, 2006, by and between the Issuer, Brentwood CLO Corp. and Investors Bank & Trust Company, in its capacity as trustee (the "**Trustee**").  Any capitalized terms used without definition herein are used with the meanings assigned to such terms in the Indenture.

Details with respect to the proposed distribution of such Eligible Equity Securities are attached hereto as Exhibit A.

Each Holder of the Preference Shares wishing to receive such Eligible Equity Securities in lieu of all or a portion of the Interest Proceeds available for distribution to such Holder (each such Holder, a "**Consenting Holder**") must deliver the consent notice attached hereto as Exhibit B (the "**Consent Notice**") to the Preference Shares Paying Agent not later than five Business Days prior to such Payment

Date. Each Consenting Holder must indicate in the Consent Notice the portion of Preference Shares held by such Holder for which such Holder wishes to receive a distribution of Eligible Equity Securities in lieu of Interest Proceeds. Any Consent Notice that is not delivered to the Preference Shares Paying Agent in the manner set forth herein shall be deemed to have not been delivered.

Please contact [_____] ([*insert e-mail address*]) at [(___) __-___] with any questions.

Sincerely,

Investors Bank & Trust Company
as Preference Shares Paying Agent

By:_____
Name:
Title:

**EXHIBIT A**

**CONSENT NOTICE**

The undersigned hereby consents to a distribution of Eligible Equity Securities in lieu of the Interest Proceeds due and payable as dividends with respect to [____] of the Preference Shares held by the undersigned on the Payment Date of [____], 20[__].

Date: _____, 20[__]

_____
Print Name of Holder

By:_____
Signature of Authorized Signatory

_____
Print Name of Authorized Signatory

_____
Print Title of Authorized Signatory

EXHIBIT C

## FORM OF SALE NOTICE

**FROM:**

| | |
|---|---|
| [Party requesting redemption of Class II Preference Shares – Name and Address Fax number – [        ]] (the "**Redeeming Party**") | [Subscriber for Investor Corp. Preference Shares – Name and Address Fax number – [        ]] (the "**Subscriber**") |

**TO:**

| | |
|---|---|
| Brentwood CLO Ltd. PO Box 1093GT Queensgate House South Church Street George Town Grand Cayman Cayman Islands Attention: The Directors Fax: 1 345 945 7100 | Brentwood Investors Corp. PO Box 1093GT Queensgate House South Church Street George Town Grand Cayman Cayman Islands Attention: The Directors Fax: 1 345 945 7100 |
| Investors Bank & Trust Company 200 Clarendon Street Boston Massachusetts 02116 | Highland Financial Partners L.P. Two Galleria Tower 13455 Noel Road, Suite 1300 Dallas, Texas 75240 Attention: [        ] Fax: 1 972 628 4147 |

**[INSERT DATE OF NOTICE]**

Dear Sirs

       SALE NOTICE RELATING TO THE REDEMPTION OF BRENTWOOD CLO LTD. CLASS II PREFERENCE SHARES AND SUBSCRIPTION FOR BRENTWOOD INVESTORS CORP. PREFERENCE SHARES

As required by the Articles of Association of each of Brentwood CLO Ltd. and Brentwood Investors Corp. and the applicable Paying Agency Agreements relating to the Preference Shares of each of Brentwood CLO Ltd. and Brentwood Investors Corp., we hereby give you notice of the following:

EXHIBIT C

## 1. REQUEST FOR REDEMPTION OF BRENTWOOD CLO LTD. CLASS II PREFERENCE SHARES

(a)     Redemption Date: [Insert date – to be 10 or more days from the date of this notice]

(b)     Number of Class II Preference Shares to be redeemed (if approved): [Insert number]

(c)     Redemption Price: [Insert total redemption price requested]

The Redeeming party hereby requests that Brentwood CLO Ltd. approves the proposed redemption as set forth in 1 above.

## 2. REQUEST FOR SUBSCRIPTION FOR BRENTWOOD INVESTORS CORP. PREFERENCE SHARES

(a)     Subscription Date: [Insert date – must be same as in 1(a) above]

(b)     Number of Preference Shares to be subscribed for (if approved): [Insert number - must be same as in 1(b) above ]

(c)     Subscription Price: [Insert subscription price requested – must be same as in 1(c) above]

The Subscriber hereby requests that Brentwood Investors Corp. approves the proposed redemption as set forth in 1 above.


_____
[Approved][Not approved]
**For and on behalf of**
**Brentwood CLO Ltd.**



_____
[Approved][Not approved]
**For and on behalf of**
**Brentwood Investors Corp.**

**FORM TO BE FAXED BACK BY BRENTWOOD CLO LTD. AND BRENTWOOD INVESTORS CORP. TO ALL PARTIES ON THE NOTICE AS SOON AS POSSIBLE**

**IF APPROVED BY BRENTWOOD CLO LTD. AND BRENTWOOD INVESTORS CORP., THIS SIGNED NOTICE WILL CONSTITUTE DEEMED NOTICE TO BRENTWOOD CLO LTD. FROM BRENTWOOD INVESTORS CORP. (WITHIN THE**

**EXHIBIT C**

**REQUIRED TIME LIMIT) OF A REQUEST FOR REDEMPTION OF AN EQUIVALENT NUMBER OF CLASS I PREFERENCE SHARES OF BRENTWOOD CLO LTD. ON THE SAME TERMS AND CONDITIONS AS THE REDEMPTION OF THE BRENTWOOD INVESTORS CORP. PREFERENCE SHARES**