# EXHIBIT V

**EXECUTION COPY**

Preference Shares Paying Agency Agreement
As of October 13, 2005

JPMorgan Chase Bank, National Association, as
Preference Shares Paying Agent
Worldwide Securities Services
Gleneagles CLO, Ltd.
600 Travis Street, 50th Floor
Houston, Texas 77002

Ladies and Gentlemen:

Gleneagles CLO, Ltd., a company existing under the laws of the Cayman Islands (the "**Issuer**"), has resolved to appoint JPMorgan Chase Bank, National Association ("**JPMCB**"), as Preference Shares Paying Agent (the "**Preference Shares Paying Agent**") for the Issuer's Preference Shares (the "**Preference Shares**"). We hereby appoint JPMCB as such under the terms set forth below and confirm JPMCB's agreement to hold any funds to be paid to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture (as defined herein) in a segregated account described below. Reference is also made to the Indenture, dated as of October 13, 2005, among the Issuer, Gleneagles CLO Corp., as Co-Issuer (the "**Co-Issuer**") and JPMorgan Chase Bank, National Association, as trustee (the "**Indenture**"). Capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Indenture or, if not defined therein, certain resolutions passed at a meeting of the Issuer's Board of Directors that was held on October 12, 2005, as reflected in the minutes thereof, including Annex A ("**Annex A**") therein (the "**Resolutions**"). The Preference Shares will be issued, and may be exchanged or transferred, subject to the procedures set forth in Annex A to the Resolutions.

Except as otherwise specified herein or as the context may otherwise require or dictate or unless the Combination Securities are explicitly addressed in the same context, (A) all references in this Agreement to the "Preference Shares" include the "Preference Share Component" of the Class 1 Combination Securities and the Class 2 Combination Securities and (B) all references in this Agreement to the rights of the Holders of the Preference Shares (including with respect to any payments, distributions, redemptions, votes or consents to be given by such Holders) include the rights of the Holders of the Class 1 Combination Securities and the Class 2 Combination Securities to the extent of the Preference Share Component of the Class 1 Combination Securities and the Class 2 Combination Securities, respectively.

Section 1. <u>Notice of Distribution to Directors</u>. The Preference Shares Paying Agent, promptly after receipt of the Valuation Report, shall forward to the Directors the Valuation Report which identifies the Interest Proceeds and Principal Proceeds, payable to the Holders of the Preference Shares on the applicable Payment Date.

Section 2. <u>Payments of Dividends and Other Distributions, Amounts Not Distributable</u>. (a) The Preference Shares Paying Agent shall, subject to paragraphs (b) and (c) below, pay or cause to be paid, on behalf of the Issuer on such Payment Date, the Interest

Proceeds and Principal Proceeds received from the Trustee to the Holders of the Preference Shares as a distribution on such Payment Date. Distributions of Interest Proceeds and Principal Proceeds to the Holders of Preference Shares shall be paid *pro rata* in the proportion that the number of Preference Shares held by each such Holder bears to the total number of Preference Shares. The Issuer, or the Share Registrar on its behalf, shall provide the Preference Shares Paying Agent with a copy of the Preference Share register on the Closing Date and thereafter, the Share Registrar shall promptly notify the Preference Shares Paying Agent of any changes to the Preference Share register. The Preference Shares Paying Agent shall notify the Issuer and the Share Registrar of any transfers.

(b) Notwithstanding anything in this Agreement to the contrary, distributions of Interest Proceeds and Principal Proceeds by way of dividend to the Holders of Preference Shares on any Payment Date out of amounts on deposit in the Preference Shares Distribution Account shall (i) be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such payment as determined by the Issuer and (ii) be made only to the extent that the Issuer has sufficient distributable profits and/or share premium out of which to make such payment as determined by the Issuer. If the Issuer determines that the conditions set forth in either clause (i) or (ii) above are not satisfied with respect to any portion of Interest Proceeds or Principal Proceeds payable on such Payment Date, the Issuer shall instruct the Preference Shares Paying Agent in writing no later than one Business Day prior to such Payment Date that such portion of Interest Proceeds or Principal Proceeds, as applicable, should not be paid, and the Preference Shares Paying Agent shall not pay the same, to the Holders of the Preference Shares until the first succeeding Payment Date, or (in the case of any payments which would otherwise be payable on the Redemption Date or any Scheduled Preference Shares Redemption Date) until the first succeeding Business Day, upon which the Issuer notifies the Preference Shares Paying Agent in writing that each such condition is satisfied, at which time the Preference Shares Paying Agent shall distribute such amounts. To the extent available, distributions shall be made first out of distributable profits for the current Due Period, then out of distributable profits in excess of dividends for prior Due Periods and then out of share premium.

(c) Notwithstanding anything in this Agreement to the contrary, distributions of the Redemption Price by way of redemption of the Preference Shares shall be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such distribution as determined by the Issuer. For purposes of this subsection (c), a determination as to whether the Issuer is solvent on the Redemption Date shall be made by the Issuer (A) after giving effect to any payments to be made on such Redemption Date and (B) in light of the fact that the obligations of the Issuer to the Holders of the Securities, the other Secured Parties and the other Persons subject to the Priority of Payments are limited in recourse to the Collateral (and, in respect of the Class 2 Combination Securities, the Class 2 Collateral), and not to amounts (i) in the Preference Shares Distribution Account, (ii) any other amounts released from the Collateral or the Class 2 Collateral in accordance with the Indenture or held by or on behalf of the Issuer for the benefit of the Holders of the Preference Shares or (iii) amounts on deposit in the Issuer's bank account in the Cayman Islands, and that after the assets in the

2

Collateral or the Class 2 Collateral are exhausted, such parties will have no further claim against the Issuer. If the Issuer determines that such condition is not satisfied on a Redemption Date with respect to any portion of the Redemption Price, the Issuer shall instruct the Preference Shares Paying Agent in writing no later than one Business Day prior to such Redemption Date that such portion should not be distributed, and the Preference Shares Paying Agent shall not distribute the same, to the Holders of the Preference Shares until the first succeeding Business Day upon which the Issuer notifies the Preference Shares Paying Agent in writing that such condition is satisfied, and the amounts so retained in the Preference Shares Distribution Account will be held therein until such amounts are paid.

Section 3. <u>Payments and Redemption</u>. (a) The Preference Shares Paying Agent shall make payments or distributions to each registered Holder on the relevant Record Date (as set out in Annex A to the Resolutions) by wire transfer in immediately available funds to a U.S. Dollar account maintained by the Holder as notified to the Preference Shares Paying Agent or, in the absence of such notification, by U.S. Dollar check mailed to the Holder at its address of record. The Issuer will, or will procure that the Share Registrar will, provide the Preference Shares Paying Agent with all relevant information regarding the registered Holders of the Preference Shares as the Preference Shares Paying Agent may reasonably require to the extent such information is in possession or control of the Issuer or Share Registrar.

(b) The Issuer or the Preference Shares Paying Agent shall not be obligated to pay any additional amounts to Holders or beneficial owners of the Preference Shares as a result of any withholding or deduction for, or on account of, any present or future taxes, duties, assessments or governmental charges. As a condition to payment of any amount, the Preference Shares Paying Agent, on behalf of the Issuer, may require certification acceptable to it to enable the Issuer and the Preference Shares Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments or distributions in respect of Preference Shares under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under such law or regulation. Amounts properly withheld under the Code by any Person from a payment or distribution to a Holder of Preference Shares shall be considered as having been paid by the Issuer or the Preference Shares Paying Agent to such Holder for all purposes herein. The Issuer and the Preference Shares Paying Agent hereby provide notice to each Holder or beneficial owner of the Preference Shares that the failure to provide the Preference Shares Paying Agent with appropriate tax certifications will result in amounts being withheld from payments to such Holders or beneficial owners of the Preference Shares under this Agreement (<u>provided</u> that amounts withheld pursuant to applicable tax laws shall be considered as having been paid by the Issuer as provided herein).

(c) The Issuer, the Share Registrar and the Preference Shares Paying Agent may deem and treat the Holder of any Preference Shares as the absolute owner of such Preference Shares, notwithstanding any notation of ownership or other writing on any certificate representing such Preference Shares, for the purpose of paying dividends and other distributions thereon, and for all other purposes, and neither the Issuer nor the Preference Shares Paying Agent shall be affected by any notice to the contrary. All such payments so made to such Holder or

3

upon such Holder's order shall be valid and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for the monies payable upon any such Preference Share.

(d) All payments by the Preference Shares Paying Agent hereunder shall be made without charging any commission or fee to the Holders of the Preference Shares.

(e) On the Scheduled Preference Shares Redemption Date, the Issuer shall redeem the Preference Shares for a redemption price equal to all amounts distributable to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture, unless the Preference Shares have been redeemed earlier through an optional redemption or otherwise. Upon final payment due on the Preference Shares (whether on the Scheduled Preference Shares Redemption Date or any earlier Redemption Date), the Holder thereof shall present and surrender the certificates, if any, representing the Preference Shares at the office of the Preference Shares Paying Agent on or prior to such final payment date. On the Scheduled Preference Shares Redemption Date, all payments on redemption of Preference Shares to the Holders of the Preference Shares shall be made *pro rata* in accordance with their respective holdings.

Notice of final payment of the Preference Shares pursuant to an optional redemption in conjunction with an optional redemption of the Notes shall be given as set forth in Section 9.3 of the Indenture. Notice of any other final payment shall be given by the Preference Shares Paying Agent by first-class mail, postage prepaid, mailed not later than 10 Business Days nor earlier than 30 days before the applicable Redemption Date to each Holder of Preference Shares at such Holder's address as set forth in the Preference Share register.

All notices of redemption shall state:

(i) the Redemption Date on which the Preference Shares are to be redeemed;

(ii) the applicable Redemption Price for the Preference Shares being redeemed;

(iii) the place or places where such Preference Shares to be redeemed are to be surrendered for payment of the applicable Redemption Price, which shall be the office of the Preference Shares Paying Agent; and

(iv) in the case of an optional redemption, the latest possible date upon which such notice of redemption may be withdrawn.

The Issuer shall have the option to withdraw any such notice of redemption up to the fourth Business Day before the scheduled Redemption Date by written notice to the Trustee, the Portfolio Manager and the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) in each case only if either (i) in the case of a redemption pursuant to Section 9.2(a) of the Indenture, the Portfolio Manager does not deliver the sale agreement or certifications required under the Indenture (as described in Section 9.3(c) and 12.1(f) of the Indenture), as the case may be, in form satisfactory to the Trustee, (ii) in the case of a redemption pursuant to Section 9.2(a) or Section 9.2(b)(i) of the Indenture, the Issuer receives the written

4

direction of a Majority of the Preference Shares to withdraw the notice of redemption and (iii) in the case of a redemption pursuant to Section 9.2(b)(ii) of the Indenture, the Issuer receives the unanimous written direction of the Holders of the Preference Shares to withdraw the notice of redemption (and the Issuer thereby agrees for the benefit of the directing person to withdraw the applicable notice of redemption if it receives the written direction referred to in the preceding clause (ii) or this clause (iii)). Notice of any such withdrawal shall be delivered pursuant to Section 9.3 of the Indenture.

Failure to give notice of redemption, or any defect therein, to the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) shall not impair or affect the validity of the redemption of any other Preference Shares.

(f) On any Payment Date on or after payment in full of the Notes, so long as all administrative and other fees (without regard to any payment limitations) payable under the Priority of Payments (including the Senior Management Fee and the Subordinated Management Fee), all amounts owing under the Indenture and all amounts owing under the Indenture and any Hedge Agreement to any Hedge Counterparty have been discharged:

(i) at the direction of a Majority of the Preference Shares, the Issuer shall cause the Trustee to make payments in redemption of all of the Preference Shares, in an aggregate amount equal to all of the proceeds from the sale or other disposition of all of the remaining Collateral _less_ any fees and expenses owed by the Issuer (including the Redemption Price of any Notes being simultaneously redeemed), the aggregate amount to be distributed to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares _pro rata_ in accordance with their respective holdings; or

(ii) at the unanimous direction of the Holders of the Preference Shares, voting as a single Class or group, the Issuer shall cause the Trustee to make payments in redemption of all or a directed portion (representing less than all) of the Preference Shares to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares based upon such direction.

(g) If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Notes in accordance with Article 9 of the Indenture, such Holder shall notify the Preference Shares Paying Agent, the Trustee, the Issuer, and the Portfolio Manager not later than 45 days before the Payment Date on which the redemption is to be made. If the Holders of at least 66 $^2/_3$% of the Preference Shares direct the Issuer to optionally redeem the Notes, the Issuer shall effect an Optional Redemption of the Notes pursuant to the procedures described in the Indenture.

(h) If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Preference Shares after the redemption or repayment of the Notes and in accordance with Section (f)(i) and (ii) above, such Holder shall notify the Preference Shares Paying Agent not later than 30 (or with the Portfolio Manager's consent, not later than 10) Business Days prior to the proposed Redemption Date (which must be a Payment Date). Each Holder of Preference Shares that also wishes to direct the Issuer to optionally redeem the Preference Shares must so

5

notify the Preference Shares Paying Agent (who shall promptly notify the Issuer and the Portfolio Manager of such direction) within 10 Business Days after receipt of such notice. If the aggregate number of Preference Shares that have directed the Issuer to optionally redeem the Preference Shares equals or exceeds the minimum threshold set forth in Section (f)(i) and (ii) above, the Issuer shall effect an optional redemption of the Preference Shares pursuant to the procedures described in the Preference Share Documents and this Agreement. Notwithstanding the foregoing, the Preference Shares must be redeemed on or prior to the Scheduled Preference Shares Redemption Date. The Preference Shares shall be redeemed from the proceeds of any Collateral remaining after giving effect to the redemption or repayment of the Notes and payment in full of all expenses of the Co-Issuers.

Section 4. <u>Preference Shares Distribution Account</u>. (a) On or prior to the Closing Date, the Preference Shares Paying Agent shall establish a single, segregated non-interest bearing trust account that shall be designated as the "Preference Shares Distribution Account" (the "**Preference Shares Distribution Account**") that shall be held in trust in the name of the Preference Shares Paying Agent for the benefit of the Issuer, over which the Preference Shares Paying Agent shall have exclusive control and the sole right of withdrawal. The Preference Shares Paying Agent shall cause the Trustee to make any payment pursuant to the Priority of Payments by wire transfer (or by internal transfer if the Trustee and the Preference Shares Paying Agent are the same Person) to the Preference Shares Distribution Account in immediately available funds. All sums received by the Preference Shares Paying Agent from the Trustee or the Issuer for payment of dividends or other distributions or the Redemption Price in respect of the Preference Shares shall be deposited promptly in the Preference Shares Distribution Account until the first Payment Date or, in the case of the payment of the Redemption Price in respect of the Preference Shares, the first Business Day, on which, in either case, the Issuer notifies the Preference Shares Paying Agent that such distribution can be made to the Holders of the Preference Shares in accordance with Section 2. The Preference Shares Paying Agent shall then apply such funds as provided for in Section 3. All sums payable by the Preference Shares Paying Agent hereunder shall be paid out of the Preference Shares Distribution Account.

(b) Notwithstanding anything herein, the Preference Shares Paying Agent shall not incur any personal liability to pay amounts due to Holders of the Preference Shares and shall only be required to make payments or other distributions (including the Redemption Price thereof) if there are sufficient monies in the Preference Shares Distribution Account to make such payments or other distributions.

(c) The Preference Shares Paying Agent shall have no right of set off with respect to amounts on deposit in the Preference Shares Distribution Account.

(d) Amounts on deposit in the Preference Shares Distribution Account that are not paid out may be invested in an interest-bearing account as directed in writing by the Issuer.

Section 5. <u>Unclaimed Payments</u>. Except as otherwise required by applicable law, any money deposited with the Preference Shares Paying Agent and held in the Preference Shares Distribution Account or otherwise held for payment on any Preference Share and

6

remaining unclaimed for two years after such payment has become due and payable shall be paid to the Issuer on Issuer Request; and the Holder of such Preference Share shall thereafter look only to the Issuer for payment of such amounts and all liability of the Preference Shares Paying Agent with respect to such money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease. The Preference Shares Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer any reasonable means of notification of such release of payment, including, but not limited to, arranging with the Share Registrar for the Share Registrar to mail notice of such release to Holders of Preference Shares whose right to or interest in monies due and payable but not claimed is determinable from the records of the Issuer or Preference Shares Paying Agent, as applicable, at the last address of record of each such Holder.

Section 6. Purchase of Preference Shares. (a) Each Holder or beneficial owner of a Preference Share, by its ownership of such Preference Share, acknowledges and agrees that such Holder or beneficial owner of a Preference Share will be required to sell its beneficial interest in such Preference Share in the following circumstances:

(i) any Non-Consenting Holder of Preference Shares with respect to an amendment of the Indenture (which includes Holders that fail to respond to a consent solicitation with the applicable period) will be forced to sell its applicable Preference Shares pursuant to Section 9.6 of the Indenture, whereby the Amendment Buy-Out Purchaser is permitted to purchase the beneficial interest in the Preference Shares held by any such Non-Consenting Holder thereof at the applicable Amendment Buy-Out Purchase Price; or

(ii) any Holder of a Directing Preference Share with respect to the removal of the Portfolio Manager without cause will be forced to sell its applicable Preference Shares pursuant to Section 12(c) of the Management Agreement, whereby the Portfolio Manager is permitted to purchase the beneficial interest in all Directing Preference Shares held by any such Holder thereof at the applicable Buy-Out Amount; and

(b) Each Holder or beneficial owner of a Preference Share will have the right to sell its beneficial interest in such Preference Share to an Extension Qualifying Purchaser upon a Maturity Extension pursuant to Section 2.4 of the Indenture at the applicable Extension Purchase Price.

Section 7. Execution, Delivery and Dating. The certificates (if required by the Resolutions) relating to the Preference Shares shall be executed on behalf of the Issuer as provided for in the Articles.

At any time and from time to time after the execution and delivery of this Agreement, the Issuer may deliver Preference Share certificates (the "**Preference Share Certificates**") executed by the Issuer to the Preference Shares Paying Agent, and the Preference Shares Paying Agent, upon Issuer Order, shall deliver such Preference Share Certificates as provided in this Agreement and not otherwise.

7

MNNYIMANAGE 64161v7

Each Preference Share Certificate delivered by the Preference Shares Paying Agent to or upon Issuer Order on the Closing Date shall be dated the Closing Date. All other Preference Share Certificates that are delivered after the Closing Date for any other purpose under the Preference Shares Paying Agency Agreement shall be dated the date of their delivery.

Section 8. Registration, Registration of Transfer and Exchange. (a) When the Preference Shares Paying Agent receives a request for transfer or exchange of Preference Shares, the Preference Shares Paying Agent shall comply with its obligations as set forth in Section 5 of Annex A to the Resolutions.

(b) No exchange or transfer of the Preference Shares shall be honored unless the transferee represents or is deemed to represent that (i) no Benefit Plan Investor or Controlling Person will be permitted to purchase Preference Shares unless its purchase, holding and disposition of such Preference Shares (x) will not cause participation by Benefit Plan Investors to be "significant" within the meaning of the Plan Asset Regulations and (y) if the purchaser is a Benefit Plan Investor, the acquisition, holding and disposition of such Preference Shares or any interest therein will not constitute or result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code or any similar federal, state, local or non-U.S. law applicable to any governmental, church, non-U.S. or other plan, as applicable, for which no exemption is available and (ii) no purchase or transfer may be made to a purchaser or transferee that wishes to take delivery in the form of a Regulation S Global Preference Share that is a Benefit Plan Investor or a Controlling Person.

(c) Notwithstanding anything else contained herein to the contrary, the Preference Shares Paying Agent shall not be responsible for ascertaining whether any purchase or transfer complies with, including but not limited to, the registration provisions of or exemptions from the Securities Act, applicable state laws, the Code, ERISA, the Plan Asset Regulations or the Investment Company Act; provided that if a certificate or other written representation is specifically required by the express terms of this Agreement or Section 5 of Annex A to the Resolutions to be delivered to the Preference Shares Paying Agent by the purchaser or transferee of a Preference Share, the Preference Shares Paying Agent shall be under a duty to receive and examine the same to determine whether the same substantially conforms on its face with the terms of this Agreement or Section 5 of Annex A to the Resolutions, as applicable, and shall promptly notify the party delivering the same if such certificate does not comply with such terms.

(d) The Issuer shall (and shall cause the Share Registrar to) consult the Preference Shares Paying Agent in connection with all transfers of Preference Shares and shall (and shall cause the Share Registrar to) direct all transferors and transferees to correspond through the Preference Shares Paying Agent. The Share Registrar shall not be required to determine whether any proposed exchange, transfer, redemption or other transaction in relation to the Preference Shares complies with any restrictions imposed by law or under the terms of the Indenture or the Preference Share Documents but shall be entitled to rely completely in that respect on the Issuer or the Preference Shares Paying Agent.

(e) In the event that the Preference Shares Paying Agent is notified by the Issuer (or the Portfolio Manager on behalf of the Issuer) that any Holder of Preference Shares has

8

failed to provide the Issuer with the applicable United States federal income tax certifications, the Preference Shares Paying Agent shall notify the Share Registrar and request it to record such transfer. Except as expressly provided herein or as required by this Agreement in connection with the Preference Shares Paying Agent's obligations to the Holders of Preference Shares, the Preference Shares Paying Agent shall have no obligation to oversee or participate in any such transfer of Preference Shares.

Each purchaser or subsequent transferee (other than a subsequent transferee of Regulation S Global Preference Shares) of Preference Shares will be required to provide to the Issuer and the Trustee written certification in a form acceptable to the Issuer and the Trustee as to whether it is an Affected Bank and each subsequent transferee of Regulation S Global Preference Shares will be deemed to represent to the Issuer and to the Trustee that it is not an Affected Bank. No transfer of any Preference Share to an Affected Bank will be effective, and the Trustee will not recognize any such transfer, unless such transfer is specifically authorized by the Issuer in writing; provided, however, that the Issuer shall authorize any such transfer if (x) such transfer would not cause more than 33 1/3% of the aggregate outstanding amount of the Preference Shares (including the Preference Share Components of the Combination Securities) to be owned by Affected Banks or (y) the transferor is an Affected Bank previously approved by the Issuer.

Section 9. <u>Additional Preference Shares</u>. (a) In accordance with the Indenture, at any time during the Reinvestment Period, the Issuer may issue and sell additional Preference Shares and use the proceeds to purchase additional Collateral Obligations or as otherwise permitted under the Preference Share Documents and the Indenture; provided, that the following conditions are met:

(i) The terms of the Preference Shares issued must be identical to the terms of previously issued Preference Shares (except that the price at which such additional Preference Shares may be offered may differ from the applicable initial offering price).

(ii) The net proceeds of any additional Preference Shares shall be used to purchase additional Collateral Obligations.

Additional Preference Shares may be offered at prices that differ from the applicable initial offering price; provided that such initial offering price shall not be below 100% of the face amount of the additional Preference Shares being offered.

(b) Additional Preference Shares may be executed by the Issuer and delivered to the Preference Share Paying Agent and thereupon the same shall be delivered to the Issuer by the Preference Share Paying Agent upon Issuer Order and upon receipt by the Preference Share Paying Agent of the following:

(i) <u>Officers' Certificates of the Issuer Regarding Corporate Matters</u>. An Officer's certificate of the Issuer (1) evidencing the authorization by Board Resolution of the execution and delivery of the Additional Preference Shares applied for by it and specifying the Scheduled Preference Share Redemption Date and the face amount of such Additional Preference Shares and (2) certifying that (a) the attached copy of such Board Resolution is a true and

9

complete copy thereof, (b) such resolutions have not been rescinded and are in full force and effect on and as of the Additional Preference Shares Closing Date and (c) the Officers authorized to execute and deliver such documents hold the offices and have the signatures indicated thereon.

(ii) <u>Governmental Approvals</u>. From the Issuer either (A) a certificate of the Issuer, or other official document evidencing the due authorization, approval or consent of any governmental body or bodies, at the time having jurisdiction in the premises, together with an Opinion of Counsel of the Issuer that no other authorization, approval or consent of any governmental body is required for the valid issuance of such Additional Preference Shares, or (B) an Opinion of Counsel of the Issuer that no such authorization, approval or consent of any governmental body is required for the valid issuance of such Additional Preference Shares except as have been given.

(iii) <u>U.S. Counsel Opinions</u>. Opinions of McKee Nelson LLP, special U.S. counsel to the Issuer, or other counsel acceptable to the Trustee, dated the Additional Preference Shares Closing Date, substantially in the form of Exhibit C attached to the Indenture, each with additions or deletions reflecting the additional issuance.

(iv) <u>Cayman Counsel Opinion</u>. An opinion of Maples and Calder, Cayman Islands counsel to the Issuer, or other counsel acceptable to the Trustee, dated the Additional Preference Shares Closing Date, substantially in the form of Exhibit D attached to the Indenture.

(v) <u>Officer's Certificates of Issuer Regarding Indenture</u>. An Officer's certificate of the Issuer stating that it is not in default under this Indenture and that the issuance of the Additional Preference Shares applied for by it will not result in a default or a breach of any of the terms, conditions or provisions of, or constitute a default under, its organizational documents, any indenture or other agreement or instrument to which it is a party or by which it is bound, or any order of any court or administrative agency entered in any Proceeding to which it is a party or by which it may be bound or to which it may be subject; that all conditions precedent provided in this Preference Share Paying Agency Agreement and the Indenture relating to the execution and delivery of the Additional Preference Shares applied for have been complied with; and that all expenses due or accrued with respect to the offering of the Additional Preference Shares or relating to actions taken on or in connection with the Additional Preference Shares Closing Date have been paid or reserved. The Officer's certificate of the Issuer shall also state that all of its representations and warranties contained herein and in the Indenture are true and correct as of the Additional Preference Shares Closing Date.

(vi) <u>Officer's Certificate of Issuer Regarding Use of Proceeds</u>. An Officer's certificate of the Issuer directing the Trustee to deposit the net proceeds from the issuance of the Additional Preference Shares into the Collection Account as Principal Proceeds.

(vii) <u>Cayman Islands Listing</u>. If the initial Preference Shares are listed on the Cayman Islands Stock Exchange, an Officer's certificate of the Issuer to the effect that application has been made to list such Additional Preference Shares on the Cayman Islands Stock Exchange.

10

(viii) <u>Tax Opinion</u>. An opinion of tax counsel of nationally recognized standing in the United States experienced in such matters shall be delivered to the Trustee to the effect that such additional issuance will not result in the Issuer being deemed to engage in a trade or business in the United States for U.S. federal income tax purposes.

(ix) <u>Other Documents</u>. Such other documents as the Preference Share Paying Agent may reasonably require; <u>provided</u>, that nothing in this clause (ix) shall imply or impose a duty on the Preference Share Paying Agent to so require any other documents.

Any Additional Preference Shares issued shall, to the extent reasonably practicable, be offered first to the existing Holder or beneficial owners of the Preference Shares, in such amounts as necessary to preserve their *pro rata* holdings of Preference Shares. Notwithstanding anything in this Agreement or the Indenture to the contrary, no consent of any Holder of Securities shall be required for the issuance of Additional Preference Shares.

Section 10. <u>Fees and Indemnification</u>. The fee to be paid in connection with the Preference Shares Paying Agent's appointment and duties as Preference Shares Paying Agent is U.S.$ 5,000 for each year any Preference Shares are outstanding. The fees payable hereunder shall be paid by the Issuer to the Preference Shares Paying Agent's account as directed by the Preference Shares Paying Agent. The Issuer will indemnify the Preference Shares Paying Agent and its officers, directors, employees and agents, against any loss, liability or expense (including reasonable legal fees and out-of-pocket expenses of counsel) incurred in connection with their appointment and duties hereunder, except such as result from their own gross negligence, bad faith or willful misconduct. Notwithstanding the foregoing, the Preference Shares Paying Agent agrees that such fees and indemnification shall be treated as an Administrative Expense of the Issuer as defined in the Indenture and paid pursuant to the Priority of Payments. Anything in this Agreement notwithstanding, in no event shall the Preference Shares Paying Agent be liable for special, indirect or consequential losses or damages of any kind whatsoever (including but not limited to loss of profits), even if the Preference Shares Paying Agent has been advised of such loss or damage and regardless of the form of action. The obligation of the Issuer to indemnify the Preference Shares Paying Agent under this Section 10 shall survive retirement of the Preference Shares and any resignation or removal of the Preference Shares Paying Agent but shall remain subject to the provisions of Section 22.

Section 11. <u>Liabilities</u>. (a) The Preference Shares Paying Agent shall not be responsible or accountable to anyone for any reason whatsoever with respect to the validity of this Agreement or of the Preference Shares, or for any act done or omitted by it in good faith, or for anything whatsoever in connection with this Agreement, except for its own gross negligence, bad faith or willful misconduct in the performance of any duty to be performed by the Preference Shares Paying Agent hereunder.

(b) The Preference Shares Paying Agent may consult as to legal matters with lawyers selected with due care by it, who may be employees of or regular independent counsel to the Issuer, and the Preference Shares Paying Agent shall be protected from and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion or advice of such lawyers.

11

(c) The Preference Shares Paying Agent shall be protected from and shall incur no liability for or in respect of any action taken or thing suffered by it in reliance upon any Preference Shares, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been delivered or signed by the proper parties, except as may result from its own gross negligence, bad faith or willful misconduct or that of its directors, officers, employees or agents.

(d) The Preference Shares Paying Agent shall not be under any liability for interest on any money at any time received by it pursuant to any of the provisions of this Agreement, except as otherwise agreed in writing with the Issuer.

(e) The Preference Shares Paying Agent shall not incur any liability with respect to the validity or value of any of the Preference Shares unless otherwise specified herein.

Section 12. <u>Conflicts</u>. (a) The Preference Shares Paying Agent and its officers, directors and employees may become the holder of, or acquire any interest in, any Preference Shares, with the same rights that it or they would have if it were not the Preference Shares Paying Agent hereunder, or they were not such officers, directors, or employees, and may engage or be interested in any fiscal or other transaction with the Issuer and may act on, or as depository, trustee or agent for, any committee or body of holders of Preference Shares or other indebtedness of the Issuer as freely as if it were not the Preference Shares Paying Agent hereunder or they were not such officers, directors, or employees.

(b) The Preference Shares Paying Agent shall be obliged to perform such duties and only such duties as are specifically set forth herein, and no implied duties or obligations shall be read into this Agreement or the Indenture against the Preference Shares Paying Agent. Except for Section 5 of Annex A to the Resolutions (to the extent they do not contradict this Agreement), the Preference Shares Paying Agent shall have no duties under Annex A to the Resolutions. The Preference Shares Paying Agent shall not be under any obligation to take any action hereunder that may tend to involve it in any expenses or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it. The Preference Shares Paying Agent shall not be accountable or under any duty or responsibility in case of any default of which the Preference Shares Paying Agent has knowledge by the Issuer in the performance of its obligations contained in the Articles and Annex A to the Resolutions (including, without limitation, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or to make any demand for payment upon the Issuer).

(c) In acting under this Agreement, the Preference Shares Paying Agent is acting solely as agent of the Issuer and does not assume any obligations to, or relationship of agency or trust for or with any of the owners or Holders of the Preference Shares. All funds held by the Preference Shares Paying Agent for payment on the Preference Shares shall be held in trust for the Issuer, until paid.

(d) The Preference Shares Paying Agent shall, as between itself and the Holders of the Preference Shares, with respect to all the obligations, powers, authorities and discretions, vested in it hereunder and under the Articles and the Resolutions, have absolute and

12

uncontrolled discretion as to the exercise thereof whether in relation to the manner or as to the mode of and time for the exercise thereof and, in the absence of gross negligence, bad faith or willful misconduct on its part or that of its officers, directors or employees shall be in no way responsible for any loss, costs, damages or inconvenience that may result from the exercise or non-exercise thereof.

Section 13. **Amendment.** (a) This Agreement may be amended by the parties hereto, without the consent of the Holders of any Preference Shares, for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective provision contained herein, or in regard to matters or questions arising under this Agreement as the Issuer and the Preference Shares Paying Agent may deem necessary or desirable and which shall not materially adversely affect the interests of Holders of the Preference Shares.

(b) Unless otherwise as set forth in subsection (a) above, this Agreement may be amended with the consent of Holders of a Majority of the Preference Shares materially and adversely affected thereby, as evidenced by Opinion of Counsel.

(c) Any amendment to this Agreement must be in writing executed by each party hereto.

(d) The Preference Shares Paying Agent shall be entitled to receive, and (subject to its duties and obligations herein) shall be fully protected in relying upon, an opinion of counsel, consent or certificate of the Issuer in determining whether or not any proposed amendment is permitted hereunder.

Section 14. **Resignation or Removal of the Preference Shares Paying Agent.** The Preference Shares Paying Agent may at any time resign as the Preference Shares Paying Agent, by giving written notice to the Issuer of its resignation, specifying the date on which its resignation shall become effective (which date shall not be less than 60 days after the date on which such notice is given unless the Issuer shall agree to a shorter period). The Issuer may remove the Preference Shares Paying Agent at any time by giving written notice of not less than 60 days to the Preference Shares Paying Agent specifying the date on which such removal shall become effective. Such resignation or removal shall only take effect upon the appointment by the Issuer of a successor Preference Shares Paying Agent and upon the acceptance of such appointment by such successor Preference Shares Paying Agent; *provided, however,* that in any event, such resignation or removal shall take effect not later than 90 days from the date of such notice of resignation or removal; *provided, further,* that after the retirement of the Notes, if the Issuer determines that no material distributions will be paid on the Preference Shares, the Issuer may remove the Preference Shares Paying Agent at any time, by giving written notice of not less than 10 days, and assume the duties of the Preference Shares Paying Agent itself.

Section 15. **Assignment.** No party hereto may assign or novate any of its rights or obligations hereunder except with the prior written consent of all the parties hereto.

Section 16. **Reports and Notices.** The Issuer hereby authorizes the Preference Shares Paying Agent to deliver or request the Trustee to deliver all Monthly Reports and

13

Valuation Reports (each a "**Report**" and, collectively, "**Reports**") prepared pursuant to the Indenture to the Holders of the Preference Shares and the Preference Shares Paying Agent will deliver, or shall cause the Administrator or the Trustee to deliver a copy of any such Report to such Holders within two Business Days of receipt of any such Report. In addition, the Preference Shares Paying Agent will deliver, or shall cause the Administrator or the Trustee to deliver, a copy of any other notice or information that it has received from the Trustee under the Indenture to the Holders of the Preference Shares within two Business Days of receipt of such notice and information.

Section 17. <u>Notices</u>. (a) All communications by or on behalf of the Issuer relating to the transfer, exchange, or payment of a Preference Share or any interest therein shall be directed to the Preference Shares Paying Agent at its address set forth in clause (b)(ii) below.

Where this Agreement provides for notice to Holders of the Preference Shares of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if such notice is in writing and mailed, first-class postage prepaid, to each Holder of the Preference Shares affected by such event, at such Holder's address as it appears on the Preference Share register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

Neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of Preference Shares shall affect the sufficiency of such notice with respect to other Holders. Any notice that is given in the manner herein provided shall conclusively be presumed to have been duly given whether or not actually received by such Holder. Any notice to Holders of the Preference Shares provided for in this Agreement will be deemed to have been given on the date of mailing.

Where this Agreement provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

In the event that, by reason of the suspension of the regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Holders of the Preference Shares when such notice is required to be given pursuant to any provision of this Agreement, then any manner of giving such notice as shall be satisfactory to the Preference Shares Paying Agent shall be deemed to be a sufficient giving of such notice.

(b) Notices and other communications hereunder shall (except to the extent otherwise expressly provided) be in writing and shall be addressed as follows, or to such other addresses as the parties hereto shall specify from time to time:

(i) if to the Issuer:

Gleneagles CLO, Ltd.
c/o Maples Finance Limited
P.O. Box 1093 GT

14

MNNYIMANAGE 64161v7

       Queensgate House, South Church Street
       George Town, Grand Cayman
       Cayman Islands
       Fax: (345) 945-1700
       Attention: Directors

       (ii)    if to the Preference Shares Paying Agent:

JPMorgan Chase Bank, National Association
600 Travis Street, 50th Floor
Houston, Texas 77002
Fax: (713) 216-2101
Attention: Worldwide Securities Services - Gleneagles CLO, Ltd.

       Section 18.    <u>Covenants of the Issuer</u>. The Issuer shall not take any action under this Agreement or the Indenture that requires the authorization, direction or consent from the Holders of the Preference Shares without obtaining such authorization, direction or consent from the Holders of the Preference Shares. It shall be the responsibility of the Issuer to satisfy the Preference Shares Paying Agent as to the compliance with the foregoing condition (on which the Preference Shares Paying Agent may rely on in good faith).

       Section 19.    <u>Transfer of Issuer Ordinary Shares</u>. For so long as any of the Preference Shares are outstanding, the Issuer shall not agree to the transfer of any Issuer Ordinary Shares to U.S. Persons (as defined in the Code), and shall not transfer any such Issuer Ordinary Shares to any Person other than a Person which is a resident of the Cayman Islands.

       Section 20.    <u>Identification of Holders</u>. On demand of the Issuer, a Holder or beneficial owner of a Preference Share will notify the Issuer whether or not the Holder or beneficial owner of such Preference Share is a United States person within the meaning of Section 7701(a)(30) of the Code and the name and status of such Holder or beneficial owner as an individual, partnership, corporation, or other entity and such other information as the Issuer shall reasonably request for purposes of tax reporting of the Issuer or other Holders of the Preference Shares.

       Section 21.    <u>Minimum Lots</u>. Preference Shares (excluding any Preference Share Component) must be held in minimum lots of 250 Preference Shares per investor and integral multiples of 1 Preference Share in excess thereof.

       Section 22.    <u>Limited Recourse; No Petition</u>. The Preference Shares Paying Agent hereby acknowledges and agrees that the Issuer's obligations hereunder will be solely the corporate obligations of the Issuer, and that the Preference Shares Paying Agent will not have any recourse to any of the directors, officers, employees, shareholders or affiliates of the Issuer with respect to any claims, losses, damages, liabilities, indemnities or other obligations in connection with any transactions contemplated hereby. Notwithstanding any other provisions of this Agreement, recourse in respect of any obligations of the Issuer hereunder will be limited to the proceeds of the Collateral, paid pursuant to the Priority of Payments and on the exhaustion

15

thereof all obligations of and all claims against the Issuer arising from this Agreement or any transactions contemplated hereby shall be extinguished and shall not thereafter revive. The Preference Shares Paying Agent, by entering into this Agreement, hereby covenants and agrees that it will not, prior to the date which is one year and one day (or, if longer, the applicable preference period) after the payment in full of all amounts owing under the Indenture and this Agreement, institute against the Issuer, or voluntarily join in any institution against the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law of any jurisdiction within or without the United States in connection with any obligations relating to the Preference Shares or this Agreement. The provisions of this Section 22 shall survive termination of this Agreement for any reason whatsoever.

Section 23. (a) GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(b) WAIVER OF JURY TRIAL. EACH OF THE ISSUER AND THE PREFERENCE SHARES PAYING AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PREFERENCE SHARES OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 24. Signatures. This Agreement may be signed in two or more counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument. A facsimile signature shall be considered due execution and shall be binding upon the signatory thereto with the same force and effect as if the signature were an original.

**[The remainder of this page has been intentionally left blank.]**

     Please indicate your acceptance of this appointment and the terms of this Agreement by signing and returning the enclosed copy of this Agreement. The Issuer by signing this Agreement confirms its agreement to the terms stated herein.

          Very truly yours,

          GLENEAGLES CLO, LTD.

By: _____/s/ Wendy Ebanks_____
    Name:   **Wendy Ebanks**
    Title:    Director

Accepted and agreed to on this 13th day of October, 2005.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By: _____
    Name:
    Title:

MNNYIMANAGE 64161

    Please indicate your acceptance of this appointment and the terms of this Agreement by signing and returning the enclosed copy of this Agreement. The Issuer by signing this Agreement confirms its agreement to the terms stated herein.

                              Very truly yours,

                              GLENEAGLES CLO, LTD.

                              By:_____
                                  Name:
                                  Title:

Accepted and agreed to on this 13th day of October, 2005.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By:_____
    Name: Richard Johnson
    Title: Vice President

MNNYIMANAGE 64161