# EXHIBIT II

## PREFERENCE SHARES PAYING AGENCY AGREEMENT

As of June 29, 2005

JPMorgan Chase Bank, National Association, as
Preference Shares Paying Agent
Worldwide Securities Services
Jasper CLO Ltd.
600 Travis Street, 50th Floor
Houston, Texas 77002

Ladies and Gentlemen:

       Jasper CLO Ltd., a company existing under the laws of the Cayman Islands (the "**Issuer**"), has resolved to appoint JPMorgan Chase Bank, National Association ("**JPMCB**"), as Preference Shares Paying Agent (the "**Preference Shares Paying Agent**") for the Issuer's Preference Shares (the "**Preference Shares**"). We hereby appoint JPMCB as such under the terms set forth below and confirm JPMCB's agreement to hold any funds to be paid to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture (as defined herein) in a segregated account described below. Reference is also made to the indenture, dated as of June 29, 2005, among the Issuer, Jasper CLO Corp., as Co-issuer (the "**Co-Issuer**"), and JPMorgan Chase Bank, National Association, as trustee (the "**Indenture**"). Capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Indenture or, if not defined therein, certain resolutions passed at a meeting of the Issuer's Board of Directors that was held on June 28, 2005, as reflected in the minutes thereof, including Annex A ("**Annex A**") therein (the "**Resolutions**"). The Preference Shares will be issued, and may be exchanged or transferred, subject to the procedures set forth in Annex A to the Resolutions.

       Except as otherwise specified herein or as the context may otherwise require or dictate or unless the Composite Securities are explicitly addressed in the same context, (A) all references in this Agreement to the "Preference Shares" include the "Preference Share Components" of the Class 1 Composite Securities and Class 2 Composite Securities and (B) all references in this Agreement to the rights of the Holders of the Preference Shares (including with respect to any payments, distributions, redemptions, votes or consents to be given by such Holders) include the rights of the Holders of the Class 1 Composite Securities and the Holders of the Class 2 Composite Securities to the extent of the Preference Share Components of the Class 1 Composite Securities and the Class 2 Composite Securities, as applicable.

       Section 1.    <u>Notice of Distribution to Directors</u>. The Preference Shares Paying Agent, promptly after receipt of the Valuation Report, shall forward to the Directors the Valuation Report which identifies the Interest Proceeds and Principal Proceeds, payable to the Holders of the Preference Shares on the applicable Payment Date.

       Section 2.    <u>Payments of Dividends and Other Distributions, Amounts Not Distributable</u>. (a) The Preference Shares Paying Agent shall, subject to paragraphs (b) and (c) below, pay or cause to be paid, on behalf of the Issuer on such Payment Date, the Interest Proceeds and Principal Proceeds received from the Trustee to the Holders of the Preference Shares as a distribution on such Payment Date. Distributions of Interest Proceeds and Principal Proceeds to the Holders of Preference Shares shall be paid *pro rata* in the proportion that the number of Preference Shares held by each such Holder bears to the total number of Preference Shares. The Issuer, or the Share Registrar on its behalf, shall provide the Preference Shares Paying Agent with a copy of the Preference Share register on the

Closing Date and thereafter, the Share Registrar shall promptly notify the Preference Shares Paying Agent of any changes to the Preference Share register. The Preference Shares Paying Agent shall notify the Issuer and the Share Registrar of any transfers of Preference Shares.

(b)      Notwithstanding anything in this Agreement to the contrary, distributions of Interest Proceeds and Principal Proceeds by way of dividend to the Holders of Preference Shares on any Payment Date out of amounts on deposit in the Preference Shares Distribution Account shall (i) be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such payment as determined by the Issuer and (ii) be made only to the extent that the Issuer has sufficient distributable profits and/or share premium out of which to make such payment as determined by the Issuer. If the Issuer determines that the conditions set forth in either clause (i) or (ii) above are not satisfied with respect to any portion of Interest Proceeds or Principal Proceeds payable on such Payment Date, the Issuer shall instruct the Preference Shares Paying Agent in writing no later than one Business Day prior to such Payment Date that such portion of Interest Proceeds or Principal Proceeds, as applicable, should not be paid, and the Preference Shares Paying Agent shall not pay the same, to the Holders of the Preference Shares until the first succeeding Payment Date, or (in the case of any payments which would otherwise be payable on the Redemption Date or any Scheduled Preference Shares Redemption Date) until the first succeeding Business Day, upon which the Issuer notifies the Preference Shares Paying Agent in writing that each such condition is satisfied, at which time the Preference Shares Paying Agent shall distribute such amounts. To the extent available, distributions shall be made first out of distributable profits for the current Due Period, then out of distributable profits in excess of dividends for prior Due Periods and then out of share premium.

(c)      Notwithstanding anything in this Agreement to the contrary, distributions of the Redemption Price by way of redemption of the Preference Shares shall be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such distribution as determined by the Issuer. For purposes of this subsection (c), a determination as to whether the Issuer is solvent on the Redemption Date shall be made by the Issuer (A) after giving effect to any payments to be made on such Redemption Date and (B) in light of the fact that the obligations of the Issuer to the Holders of the Securities, the other Secured Parties and the other Persons subject to the Priority of Payments are limited in recourse to the Collateral, and not to amounts (i) in the Preference Shares Distribution Account, (ii) any other amounts released from the Collateral in accordance with the Indenture and held by or on behalf of the Issuer for the benefit of the Holders of the Preference Shares or (iii) amounts on deposit in the Issuer's bank account in the Cayman Islands, and that after the assets in the Collateral are exhausted, such parties will have no further claim against the Issuer. If the Issuer determines that such condition is not satisfied on a Redemption Date with respect to any portion of the Redemption Price, the Issuer shall instruct the Preference Shares Paying Agent in writing no later than one Business Day prior to such Redemption Date that such portion should not be distributed, and the Preference Shares Paying Agent shall not distribute the same, to the Holders of the Preference Shares until the first succeeding Business Day upon which the Issuer notifies the Preference Shares Paying Agent in writing that such condition is satisfied, and the amounts so retained in the Preference Shares Distribution Account will be held therein until such amounts are paid.

Section 3.      Payments and Redemption.  (a) The Preference Shares Paying Agent shall make payments or distributions to each registered Holder on the relevant Record Date (as set out in Annex A to the Resolutions) by wire transfer in immediately available funds to a U.S. Dollar account maintained by the Holder as notified to the Preference Shares Paying Agent or, in the absence of such notification, by U.S. Dollar check mailed to the Holder at its address of record. The Issuer will, or will procure that the Share Registrar will, provide the Preference Shares Paying Agent with all relevant

2

information regarding the registered Holders of the Preference Shares as the Preference Shares Paying Agent may reasonably require to the extent such information is in possession or control of the Issuer or Share Registrar.

(b)     The Issuer or the Preference Shares Paying Agent shall not be obligated to pay any additional amounts to Holders or beneficial owners of the Preference Shares as a result of any withholding or deduction for, or on account of, any present or future taxes, duties, assessments or governmental charges. As a condition to payment of any amount, the Preference Shares Paying Agent, on behalf of the Issuer, may require certification acceptable to it to enable the Issuer and the Preference Shares Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments or distributions in respect of Preference Shares under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under such law or regulation. Amounts properly withheld under the Code by any Person from a payment or distribution to a Holder of Preference Shares shall be considered as having been paid by the Issuer or the Preference Shares Paying Agent to such Holder for all purposes herein. The Issuer and the Preference Shares Paying Agent hereby provide notice to each Holder or beneficial owner of the Preference Shares that the failure to provide the Preference Shares Paying Agent with appropriate tax certifications will result in amounts being withheld from payments to such Holders or beneficial owners of the Preference Shares under this Agreement (provided that amounts withheld pursuant to applicable tax laws shall be considered as having been paid by the Issuer as provided herein).

(c)     The Issuer, the Share Registrar and the Preference Shares Paying Agent may deem and treat the Holder of any Preference Shares as the absolute owner of such Preference Shares, notwithstanding any notation of ownership or other writing on any certificate representing such Preference Shares, for the purpose of paying dividends and other distributions thereon, and for all other purposes, and neither the Issuer nor the Preference Shares Paying Agent shall be affected by any notice to the contrary. All such payments so made to such Holder or upon such Holder's order shall be valid and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for the monies payable upon any such Preference Share.

(d)     All payments by the Preference Shares Paying Agent hereunder shall be made without charging any commission or fee to the Holders of the Preference Shares.

(e)     On the Scheduled Preference Shares Redemption Date, the Issuer shall redeem the Preference Shares for a redemption price equal to all amounts distributable to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture, unless the Preference Shares have been redeemed earlier through an optional redemption or otherwise. Upon final payment due on the Preference Shares (whether on the Scheduled Preference Shares Redemption Date or any earlier Redemption Date), the Holder thereof shall present and surrender the certificates, if any, representing the Preference Shares at the office of the Preference Shares Paying Agent on or prior to such final payment date. On the Scheduled Preference Shares Redemption Date, all payments on redemption of Preference Shares to the Holders of the Preference Shares shall be made *pro rata* in accordance with their respective holdings.

Notice of final payment of the Preference Shares pursuant to an optional redemption in conjunction with an optional redemption of the Notes shall be given as set forth in Section 9.3 of the Indenture. Notice of any other final payment shall be given by the Preference Shares Paying Agent by first-class mail, postage prepaid, mailed not later than 10 Business Days nor earlier than 30 days before the applicable Redemption Date to each Holder of Preference Shares at such Holder's address as set forth in the Preference Share register.

3

All notices of redemption shall state:

> (i) the Redemption Date on which the Preference Shares are to be redeemed;

> (ii) the applicable Redemption Price for the Preference Shares being redeemed;

> (iii) the place or places where such Preference Shares to be redeemed are to be surrendered for payment of the applicable Redemption Price, which shall be the office of the Preference Shares Paying Agent; and

> (iv) in the case of an optional redemption, the latest possible date upon which such notice of redemption may be withdrawn.

The Issuer shall have the option to withdraw any such notice of redemption up to the fourth Business Day before the scheduled Redemption Date by written notice to the Trustee, the Portfolio Manager and the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) in each case only if either (i) in the case of a redemption pursuant to Section 9.2(a) of the Indenture, the Portfolio Manager does not deliver the sale agreement or certifications required under the Indenture (as described in Section 9.3(c) and 12.1(f) of the Indenture), as the case may be, in form satisfactory to the Trustee, (ii) in the case of a redemption pursuant to Section 9.2(a) or Section 9.2(b)(i) of the Indenture, the Issuer receives the written direction of a Majority of the Preference Shares to withdraw the notice of redemption and (iii) in the case of a redemption pursuant to Section 9.2(b)(ii) of the Indenture, the Issuer receives the unanimous written direction of the Holders of the Preference Shares to withdraw the notice of redemption (and the Issuer thereby agrees for the benefit of the directing person to withdraw the applicable notice of redemption if it receives the written direction referred to in the preceding clause (ii) or this clause (iii)). Notice of any such withdrawal shall be delivered pursuant to Section 9.3 of the Indenture.

Failure to give notice of redemption, or any defect therein, to the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) shall not impair or affect the validity of the redemption of any other Preference Shares.

(f) On any Payment Date on or after payment in full of the Notes, so long as all administrative and other fees (without regard to any payment limitations) payable under the Priority of Payments (including the Senior Management Fee and the Subordinated Management Fee), all amounts owing under the Indenture and all amounts owing under the Indenture and any Hedge Agreement to any Hedge Counterparty have been discharged:

> (i) at the direction of a Majority of the Preference Shares, the Issuer shall cause the Trustee to make payments in redemption of all of the Preference Shares, in an aggregate amount equal to all of the proceeds from the sale or other disposition of all of the remaining Collateral less any fees and expenses owed by the Issuer (including the Redemption Price of any Notes being simultaneously redeemed), the aggregate amount to be distributed to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares *pro rata* in accordance with their respective holdings; or

> (ii) at the unanimous direction of the Holders of the Preference Shares, voting as a single Class or group, the Issuer shall cause the Trustee to make payments in redemption of all or a directed portion (representing less than all) of the Preference Shares to the

4

Preference Shares Paying Agent for distribution to the Holders of the Preference Shares based upon such direction.

(g)     If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Notes in accordance with Article 9 of the Indenture, such Holder shall notify the Preference Shares Paying Agent, the Trustee, the Issuer, and the Portfolio Manager not later than 45 days before the Payment Date on which the redemption is to be made. If the Holders of at least a Super Majority of the Preference Shares direct the Issuer to optionally redeem the Notes, the Issuer shall effect an Optional Redemption of the Notes pursuant to the procedures described in the Indenture.

(h)     If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Preference Shares after the redemption or repayment of the Notes and in accordance with Section (f)(i) and (ii) above, such Holder shall notify the Preference Shares Paying Agent not later than 30 (or with the Portfolio Manager's consent, not later than 10 Business Days prior to the proposed Redemption Date (which must be a Payment Date). Each Holder of Preference Shares that also wishes to direct the Issuer to optionally redeem the Preference Shares must so notify the Preference Shares Paying Agent (who shall promptly notify the Issuer and the Portfolio Manager of such direction) within 10 Business Days after receipt of such notice. If the aggregate number of Preference Shares that have directed the Issuer to optionally redeem the Preference Shares equals or exceeds the minimum threshold set forth in Section (f)(i) and (ii) above, the Issuer shall effect an optional redemption of the Preference Shares pursuant to the procedures described in the Preference Share Documents and this Agreement. Notwithstanding the foregoing, the Preference Shares must be redeemed on or prior to the Scheduled Preference Shares Redemption Date. The Preference Shares shall be redeemed from the proceeds of any Collateral remaining after giving effect to the redemption or repayment of the Notes and payment in full of all expenses of the Co-Issuers.

Section 4.     Preference Shares Distribution Account. (a) On or prior to the Closing Date, the Preference Shares Paying Agent shall establish a single, segregated non-interest bearing trust account that shall be designated as the "Preference Shares Distribution Account" (the "**Preference Shares Distribution Account**") that shall be held in trust in the name of the Preference Shares Paying Agent for the benefit of the Issuer, over which the Preference Shares Paying Agent shall have exclusive control and the sole right of withdrawal. The Preference Shares Paying Agent shall cause the Trustee to make any payment pursuant to the Priority of Payments by wire transfer (or by internal transfer if the Trustee and the Preference Shares Paying Agent are the same Person) to the Preference Shares Distribution Account in immediately available funds. All sums received by the Preference Shares Paying Agent from the Trustee or the Issuer for payment of dividends or other distributions or the Redemption Price in respect of the Preference Shares shall be deposited promptly in the Preference Shares Distribution Account until the first Payment Date or, in the case of the payment of the Redemption Price in respect of the Preference Shares, the first Business Day, on which, in either case, the Issuer notifies the Preference Shares Paying Agent that such distribution can be made to the Holders of the Preference Shares in accordance with Section 2. The Preference Shares Paying Agent shall then apply such funds as provided for in Section 3. All sums payable by the Preference Shares Paying Agent hereunder shall be paid out of the Preference Shares Distribution Account.

(b)     Notwithstanding anything herein, the Preference Shares Paying Agent shall not incur any personal liability to pay amounts due to Holders of the Preference Shares and shall only be required to make payments or other distributions (including the Redemption Price thereof) if there are sufficient monies in the Preference Shares Distribution Account to make such payments or other distributions.

(c)     The Preference Shares Paying Agent shall have no right of set off with respect to amounts on deposit in the Preference Shares Distribution Account.

(d)     Amounts on deposit in the Preference Shares Distribution Account that are not paid out may be invested in an interest-bearing account as directed in writing by the Issuer.

Section 5.     Unclaimed Payments.  Except as otherwise required by applicable law, any money deposited with the Preference Shares Paying Agent and held in the Preference Shares Distribution Account or otherwise held for payment on any Preference Share and remaining unclaimed for two years after such payment has become due and payable shall be paid to the Issuer on Issuer Request; and the Holder of such Preference Share shall thereafter look only to the Issuer for payment of such amounts and all liability of the Preference Shares Paying Agent with respect to such money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease.  The Preference Shares Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer any reasonable means of notification of such release of payment, including, but not limited to, arranging with the Share Registrar for the Share Registrar to mail notice of such release to Holders of Preference Shares whose right to or interest in monies due and payable but not claimed is determinable from the records of the Issuer or Preference Shares Paying Agent, as applicable, at the last address of record of each such Holder.

Section 6.     Purchase of Preference Shares.  (a) Each Holder or beneficial owner of a Preference Share, by its ownership of such Preference Share, acknowledges and agrees that such Holder or beneficial owner of a Preference Share will be required to sell its beneficial interest in such Preference Share in the following circumstances:

(i)     any Non-Consenting Holder of Preference Shares with respect to an amendment of the Indenture (which includes Holders that fail to respond to a consent solicitation with the applicable period) will be forced to sell its applicable Preference Shares pursuant to Section 9.6 of the Indenture, whereby the Amendment Buy-Out Purchaser is permitted to purchase the beneficial interest in the Preference Shares held by any such Non-Consenting Holder thereof at the applicable Amendment Buy-Out Purchase Price; or

(ii)     any Holder of a Directing Preference Share with respect to the removal of the Portfolio Manager without cause will be forced to sell its applicable Preference Shares pursuant to Section 12(c) of the Management Agreement, whereby the Portfolio Manager is permitted to purchase the beneficial interest in all Directing Preference Shares held by any such Holder thereof at the applicable Buy-Out Amount; and

(b)     Each Holder or beneficial owner of a Preference Share will have the right to sell its beneficial interest in such Preference Share to an Extension Qualifying Purchaser upon a Maturity Extension pursuant to Section 2.4 of the Indenture at the applicable Extension Purchase Price.

Section 7.     Execution, Delivery and Dating.  The certificates (if required by the Resolutions) relating to the Preference Shares shall be executed on behalf of the Issuer as provided for in the Articles.

At any time and from time to time after the execution and delivery of this Agreement, the Issuer may deliver Preference Share certificates (the "**Preference Share Certificates**") executed by the Issuer to the Preference Shares Paying Agent, and the Preference Shares Paying Agent, upon Issuer Order, shall deliver such Preference Share Certificates as provided in this Agreement and not otherwise.

6

Each Preference Share Certificate delivered by the Preference Shares Paying Agent to or upon Issuer Order on the Closing Date shall be dated the Closing Date. All other Preference Share Certificates that are delivered after the Closing Date for any other purpose under the Preference Shares Paying Agency Agreement shall be dated the date of their delivery.

Section 8. Registration, Registration of Transfer and Exchange. (a) When the Preference Shares Paying Agent receives a request for transfer or exchange of Preference Shares, the Preference Shares Paying Agent shall comply with its obligations as set forth in Section 5 of Annex A to the Resolutions.

(b) No exchange or transfer of the Preference Shares shall be honored if such exchange or transfer will result in persons that have represented that they are Benefit Plan Investors owning 25% or more of the Aggregate Outstanding Amount of the Preference Shares (including the Preference Share Components of the Composite Securities) immediately after such exchange or transfer (excluding for purposes of such determination any Preference Shares (and Preference Share Components) held by any Controlling Person and its affiliates that is not also a Benefit Plan Investor) determined in accordance with the Plan Asset Regulation. Each purchaser or transferee of a Certified Preference Share or interest wherein and each purchaser of a Preference Share represented by a Regulation S Global Preference Share or interest therein acquired through the Placement Agents will be required to represent and agree whether or not such purchaser is, or is using the assets of, or will at any time throughout its holding and disposition of such Preference Share be or become, (i) an "employee benefit plan" as defined in Section 3(3) of ERISA, whether or not subject to ERISA and including any foreign, church or governmental plan, (ii) a "plan" described in Section 4975(c)(1) of the Code or (iii) an entity that is deemed to hold assets of either of the foregoing by reason of a plan's investment in such entity. In addition, each purchaser or transferee of a Certified Preference Share or interest therein and each purchaser of a Preference Share represented by a Regulation S Global Preference Share or interest therein acquired through the Placement Agents will be required to represent and agree whether or not it is, or is using the assets of, or will at any time throughout its holding and disposition of such Preference Share be or become the Portfolio Manager or any other person that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer or any "affiliate" (as defined in the Plan Asset Regulation) or any such person (any such person, a "Controlling Person"). Furthermore, no exchange or transfer of an interest in a Regulation S Global Preference Shares will be honored if the transferee has represented that it is a Benefit Plan Investor or a Controlling Person. Each subsequent purchaser or transferee of a Regulation S Global Preference Share or interest therein not acquired directly from the Issuer or through the Placement Agents will be deemed to represent and agree that it is not, is not using the assets of, and throughout its holding and disposition of such Regulation S Global Preference Share will not be or become or transfer any interest therein to, a Benefit Plan Investor or Controlling Person. If, after a purchaser's or transferee's initial acquisition of Preference Shares, the purchaser or transferee determines, it is determined by another person, or the Preference Shares Paying Agent becomes aware that such purchaser or transferee has breached any of the foregoing representations, such purchaser or transferee will dispose of its interest in the Preference Shares in a manner consistent with the requirements set forth in Annex A to the Resolutions. Each purchaser or transferee of a Preference Share or interest therein will be required or deemed to represent that either (i) it is not, and is not acquiring such Preference Share with the assets of, an "employee benefit plan" as defined under Section 3(3) of ERISA and that is subject to Title I of ERISA, any "plan" described in Section 4975(e) of the Code or a foreign, governmental or church plan subject to any federal, state, local or foreign law that is substantially similar to Section 406 of ERISA or Section 4975 of the Code (each such plan, a "Covered Plan") and throughout the holding of such Preference Share, it will not become or transfer its interest to any Covered Plan to an entity using the assets thereof, or (ii) the acquisition and holding of such Preference Share by the purchaser or transferee, throughout its holding and disposition of such Preference Share, will not result in a non-exempt

7

prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a foreign, governmental or church plan, any similar law), because such purchase, holding and disposition either (x) is not, and will not become, subject to such laws or (y) is covered by an exemption from all applicable prohibited transactions, all of the conditions of which are and will be satisfied upon its acquisition of, and throughout its holding and disposition of, such Preference Share. Each purchaser or transferee of a Preference Share will be required or deemed to represent and agree that it will not transfer such Preference Share or interest therein in violation of any of the foregoing representations and agreements, that any purported transfer that does not comply with such representations and agreements will be null and void ab initio and will vest in the transferee no rights against the Preference Shares Paying Agent or the Issuer, and that such purchaser or transferee, as applicable, and any fiduciary or other Person causing it to acquire such Preference Share shall, to the fullest extent permissible under applicable law, indemnify and hold harmless the Issuer, the Co-Issuer, the Trustee, the Preference Share Paying Agent, the Portfolio Manager, the Placement Agents and their respective Affiliates from any cost, damage or loss incurred by them as a result of any transfer in violation of any of the foregoing.

(c)      Notwithstanding anything else contained herein to the contrary, the Preference Shares Paying Agent shall not be responsible for ascertaining whether any purchase or transfer complies with, including but not limited to, the registration provisions of or exemptions from the Securities Act, applicable state laws, the Code, ERISA, the Plan Asset Regulation or the Investment Company Act; provided that if a certificate or other written representation is specifically required by the express terms of this Agreement or Section 5 of Annex A to the Resolutions to be delivered to the Preference Shares Paying Agent by the purchaser or transferee of a Preference Share, the Preference Shares Paying Agent shall be under a duty to receive and examine the same to determine whether the same substantially conforms on its face with the terms of this Agreement or Section 5 of Annex A to the Resolutions, as applicable, and shall promptly notify the party delivering the same if such certificate does not comply with such terms.

(d)      The Issuer shall (and shall cause the Share Registrar to) consult the Preference Shares Paying Agent in connection with all transfers of Preference Shares and shall (and shall cause the Share Registrar to) direct all transferors and transferees to correspond through the Preference Shares Paying Agent. The Share Registrar shall not be required to determine whether any proposed exchange, transfer, redemption or other transaction in relation to the Preference Shares complies with any restrictions imposed by law or under the terms of the Indenture or the Preference Share Documents but shall be entitled to rely completely in that respect on the Issuer or the Preference Shares Paying Agent.

(e)      In the event that the Preference Shares Paying Agent is notified by the Issuer (or the Portfolio Manager on behalf of the Issuer) that any Holder of Preference Shares has failed to provide the Issuer with the applicable United States federal income tax certifications, the Preference Shares Paying Agent shall notify the Share Registrar and request it to record such transfer. Except as expressly provided herein or as required by this Agreement in connection with the Preference Shares Paying Agent's obligations to the Holders of Preference Shares, the Preference Shares Paying Agent shall have no obligation to oversee or participate in any such transfer of Preference Shares.

Section 9.      Fees and Indemnification.  The fee to be paid in connection with the Preference Shares Paying Agent's appointment and duties as Preference Shares Paying Agent shall be paid pursuant to a letter agreement dated March 10, 2005 between the Preference Shares Paying Agent and the Issuer. The fees payable hereunder shall be paid by the Issuer to the Preference Shares Paying Agent's account as directed by the Preference Shares Paying Agent. The Issuer will indemnify the Preference Shares Paying Agent and its officers, directors, employees and agents, against any loss, liability or expense (including reasonable legal fees and out-of-pocket expenses of counsel) incurred in connection with their appointment and duties hereunder, except such as result from their own gross

8

negligence, bad faith or willful misconduct. Notwithstanding the foregoing, the Preference Shares Paying Agent agrees that such fees and indemnification shall be treated as an Administrative Expense of the Issuer as defined in the Indenture and paid pursuant to the Priority of Payments. Anything in this Agreement notwithstanding, in no event shall the Preference Shares Paying Agent be liable for special, indirect or consequential losses or damages of any kind whatsoever (including but not limited to loss of profits), even if the Preference Shares Paying Agent has been advised of such loss or damage and regardless of the form of action. The obligation of the Issuer to indemnify the Preference Shares Paying Agent under this Section 9 shall survive retirement of the Preference Shares and any resignation or removal of the Preference Shares Paying Agent but shall remain subject to the provisions of Section 21.

Section 10. <u>Liabilities</u>. (a) The Preference Shares Paying Agent shall not be responsible or accountable to anyone for any reason whatsoever with respect to the validity of this Agreement or of the Preference Shares, or for any act done or omitted by it in good faith, or for anything whatsoever in connection with this Agreement, except for its own gross negligence, bad faith or willful misconduct in the performance of any duty to be performed by the Preference Shares Paying Agent hereunder.

(b) The Preference Shares Paying Agent may consult as to legal matters with lawyers selected with due care by it, who may be employees of or regular independent counsel to the Issuer, and the Preference Shares Paying Agent shall be protected from and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion or advice of such lawyers.

(c) The Preference Shares Paying Agent shall be protected from and shall incur no liability for or in respect of any action taken or thing suffered by it in reliance upon any Preference Shares, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been delivered or signed by the proper parties, except as may result from its own gross negligence, bad faith or willful misconduct or that of its directors, officers, employees or agents.

(d) The Preference Shares Paying Agent shall not be under any liability for interest on any money at any time received by it pursuant to any of the provisions of this Agreement, except as otherwise agreed in writing with the Issuer.

(e) The Preference Shares Paying Agent shall not incur any liability with respect to the validity or value of any of the Preference Shares unless otherwise specified herein.

Section 11. <u>Conflicts</u>. (a) The Preference Shares Paying Agent and its officers, directors and employees may become the holder of, or acquire any interest in, any Preference Shares, with the same rights that it or they would have if it were not the Preference Shares Paying Agent hereunder, or they were not such officers, directors, or employees, and may engage or be interested in any fiscal or other transaction with the Issuer and may act on, or as depository, trustee or agent for, any committee or body of holders of Preference Shares or other indebtedness of the Issuer as freely as if it were not the Preference Shares Paying Agent hereunder or they were not such officers, directors, or employees.

(b) The Preference Shares Paying Agent shall be obliged to perform such duties and only such duties as are specifically set forth herein, and no implied duties or obligations shall be read into this Agreement or the Indenture against the Preference Shares Paying Agent. Except for Section 5 of Annex A to the Resolutions (to the extent they do not contradict this Agreement), the Preference Shares Paying Agent shall have no duties under Annex A to the Resolutions. The Preference Shares Paying Agent shall not be under any obligation to take any action hereunder that may tend to involve it in any

9

expenses or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it. The Preference Shares Paying Agent shall not be accountable or under any duty or responsibility in case of any default of which the Preference Shares Paying Agent has knowledge by the Issuer in the performance of its obligations contained in the Articles and Annex A to the Resolutions (including, without limitation, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or to make any demand for payment upon the Issuer).

(c)     In acting under this Agreement, the Preference Shares Paying Agent is acting solely as agent of the Issuer and does not assume any obligations to, or relationship of agency or trust for or with any of the owners or Holders of the Preference Shares. All funds held by the Preference Shares Paying Agent for payment on the Preference Shares shall be held in trust for the Issuer, until paid.

(d)     The Preference Shares Paying Agent shall, as between itself and the Holders of the Preference Shares, with respect to all the obligations, powers, authorities and discretions, vested in it hereunder and under the Articles and the Resolutions, have absolute and uncontrolled discretion as to the exercise thereof whether in relation to the manner or as to the mode of and time for the exercise thereof and, in the absence of gross negligence, bad faith or willful misconduct on its part or that of its officers, directors or employees shall be in no way responsible for any loss, costs, damages or inconvenience that may result from the exercise or non-exercise thereof.

Section 12.     Amendment. (a) This Agreement may be amended by the parties hereto, without the consent of the Holders of any Preference Shares, for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective provision contained herein, or in regard to matters or questions arising under this Agreement as the Issuer and the Preference Shares Paying Agent may deem necessary or desirable and which shall not materially adversely affect the interests of Holders of the Preference Shares.

(b)     Unless otherwise as set forth in subsection (a) above, this Agreement may be amended with the consent of Holders of a Majority of the Preference Shares materially and adversely affected thereby.

(c)     Any amendment to this Agreement must be in writing executed by each party hereto.

(d)     The Preference Shares Paying Agent shall be entitled to receive, and (subject to its duties and obligations herein) shall be fully protected in relying upon, an opinion of counsel, consent or certificate of the Issuer in determining whether or not any proposed amendment is permitted hereunder.

Section 13.     Resignation or Removal of the Preference Shares Paying Agent. The Preference Shares Paying Agent may at any time resign as the Preference Shares Paying Agent, by giving written notice to the Issuer of its resignation, specifying the date on which its resignation shall become effective (which date shall not be less than 60 days after the date on which such notice is given unless the Issuer shall agree to a shorter period). The Issuer may remove the Preference Shares Paying Agent at any time by giving written notice of not less than 60 days to the Preference Shares Paying Agent specifying the date on which such removal shall become effective. Such resignation or removal shall only take effect upon the appointment by the Issuer of a successor Preference Shares Paying Agent and upon the acceptance of such appointment by such successor Preference Shares Paying Agent; provided, however, that if the successor Preference Shares Paying Agent has been appointed within 60 days after such notice of resignation or removal, then the Preference Shares Paying Agent, or any Holder of Preference Shares, may, on behalf of himself and others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Preference Shares Paying Agent; provided, further, that after the

10

retirement of the Notes, if the Issuer determines that no material distributions will be paid on the Preference Shares, the Issuer may remove the Preference Shares Paying Agent at any time, by giving written notice of not less than 10 days, and assume the duties of the Preference Shares Paying Agent itself.

Section 14. <u>Assignment</u>. No party hereto may assign or novate any of its rights or obligations hereunder except with the prior written consent of all the parties hereto.

Section 15. <u>Reports and Notices</u>. The Issuer hereby authorizes the Preference Shares Paying Agent to deliver or request the Trustee to deliver all Monthly Reports and Valuation Reports (each a "**Report**" and, collectively, "**Reports**") prepared pursuant to the Indenture to the Holders of the Preference Shares and the Preference Shares Paying Agent will deliver, or shall cause the Trustee to deliver a copy of any such Report to such Holders within two Business Days of receipt of any such Report. In addition, the Preference Shares Paying Agent will deliver, or shall cause the Trustee to deliver, a copy of any other notice or information that it has received from the Trustee under the Indenture to the Holders of the Preference Shares within two Business Days of receipt of such notice and information.

Section 16. <u>Notices</u>. (a) All communications by or on behalf of the Issuer relating to the transfer, exchange, or payment of a Preference Share or any interest therein shall be directed to the Preference Shares Paying Agent at its address set forth in clause (b)(ii) below.

Where this Agreement provides for notice to Holders of the Preference Shares of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if such notice is in writing and mailed, first-class postage prepaid, to each Holder of the Preference Shares affected by such event, at such Holder's address as it appears on the Preference Share register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

Neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of Preference Shares shall affect the sufficiency of such notice with respect to other Holders. Any notice that is given in the manner herein provided shall conclusively be presumed to have been duly given whether or not actually received by such Holder. Any notice to Holders of the Preference Shares provided for in this Agreement will be deemed to have been given on the date of mailing.

Where this Agreement provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

In the event that, by reason of the suspension of the regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Holders of the Preference Shares when such notice is required to be given pursuant to any provision of this Agreement, then any manner of giving such notice as shall be satisfactory to the Preference Shares Paying Agent shall be deemed to be a sufficient giving of such notice.

(b) Notices and other communications hereunder shall (except to the extent otherwise expressly provided) be in writing and shall be addressed as follows, or to such other addresses as the parties hereto shall specify from time to time:

(i) if to the Issuer:

NY\1019917.11

Jasper CLO Ltd.
P.O. Box 1234
Queensgate House, South Church Street
George Town, Grand Cayman
Cayman Islands
Fax: (345) 945-6265
Attention: The Directors

(ii)     if to the Preference Shares Paying Agent:

JPMorgan Chase Bank, National Association
Worldwide Securities Services
600 Travis Street, 50th Floor
Houston, Texas 77002
Fax: (713) 216-2101
Attention: Worldwide Securities Services — Jasper CLO Ltd.

Section 17.     Covenants of the Issuer. The Issuer shall not take any action under this Agreement or the Indenture that requires the authorization, direction or consent from the Holders of the Preference Shares without obtaining such authorization, direction or consent from the Holders of the Preference Shares. It shall be the responsibility of the Issuer to satisfy the Preference Shares Paying Agent as to the compliance with the foregoing condition (on which the Preference Shares Paying Agent may rely on in good faith).

Section 18.     Transfer of Issuer Ordinary Shares. For so long as any of the Preference Shares are outstanding, the Issuer shall not agree to the transfer of any Issuer Ordinary Shares to U.S. Persons (as defined in the Code), and shall not transfer any such Issuer Ordinary Shares to any Person other than a Person which is a resident of the Cayman Islands.

Section 19.     Certain Tax Matters. (a) On demand of the Issuer, a Holder or beneficial owner of a Preference Share will notify the Issuer whether or not the Holder or beneficial owner of such Preference Share is a United States person within the meaning of Section 7701(a)(30) of the Code and the name and status of such Holder or beneficial owner as an individual, partnership, corporation, or other entity and such other information as the Issuer shall reasonably request for purposes of tax reporting of the Issuer or other Holders of the Preference Shares.

(b)     The Issuer will cause the Independent accountants to make a determination as to whether a Holder's investment in the Preference Shares has become a "reportable transaction" as described in Treasury Regulation Section 1.6011-4 because, after the Closing Date, the Issuer entered into a transaction having a book-tax difference or recognized a significant loss or otherwise. If the Holder's investment in the Preference Shares has become such a "reportable transaction", then the Issuer shall include with the PFIC Annual Information Statement, and provide to any other Holder of Preference Shares that makes a written request, any information available to it which may be reasonably necessary for such Holder of Preference Shares to comply with any disclosure requirements under Section 6011 of the Code and the Treasury Regulations promulgated thereunder with respect to its investment in the Preference Shares, provided, that the foregoing will not require the Issuer to keep a set of books in accordance with U.S. GAAP or other general accounting principles.

(c)     The Issuer will cause its Independent accountants within 60 days after the end of each calendar year to provide to each Holder or beneficial owner of the Preference Shares (or its designee), upon written request therefor, all information that a U.S. shareholder making a "qualified

electing fund" election as defined in the Code, is required to obtain from the Issuer for U.S. federal income tax purposes, a "PFIC Annual Information Statement" as described in United States Treasury Regulation 1.1295-1(g)(1) (or any successor Internal Revenue Service release or Treasury Regulation) (including all representations and statements required by such statement (or protective election)), and the Issuer will take or cause to be taken any other reasonable steps to facilitate such election by a Holder or beneficial owner of the Preference Shares.

(d)     The Issuer will provide or cause to be provided to each Holder or beneficial owner of the Preference Shares (or its designee), upon written request therefor, any information that such Holder or beneficial owner reasonably requests to assist such Holder or beneficial owner with regard to filing requirements the Holder or beneficial owner is required to satisfy as a result of the controlled foreign corporation rules under the Code.

(e)     Each Holder and beneficial owner of the Preference Shares agree to treat the Preference Shares as equity of the Issuer for U.S. federal, state and local income tax purposes, if applicable.

Section 20.     <u>Minimum Lots</u>.  Preference Shares must be held in minimum lots of 100 Preference Shares per investor and integral multiples of 1 Preference Share in excess thereof.

Section 21.     <u>Limited Recourse; No Petition</u>.  The Preference Shares Paying Agent hereby acknowledges and agrees that the Issuer's obligations hereunder will be solely the corporate obligations of the Issuer, and that the Preference Shares Paying Agent will not have any recourse to any of the directors, officers, employees, shareholders or affiliates of the Issuer with respect to any claims, losses, damages, liabilities, indemnities or other obligations in connection with any transactions contemplated hereby.  Notwithstanding any other provisions of this Agreement, recourse in respect of any obligations of the Issuer hereunder will be limited to the proceeds of the Collateral, paid pursuant to the Priority of Payments and on the exhaustion thereof all obligations of and all claims against the Issuer arising from this Agreement or any transactions contemplated hereby shall be extinguished and shall not thereafter revive.  The Preference Shares Paying Agent, by entering into this Agreement, hereby covenants and agrees that it will not, prior to the date which is one year and one day (or, if longer, the applicable preference period) after the payment in full of all amounts owing under the Indenture and this Agreement, institute against the Issuer, or voluntarily join in any institution against the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law of any jurisdiction within or without the United States in connection with any obligations relating to the Preference Shares or this Agreement.  The provisions of this Section 21 shall survive termination of this Agreement for any reason whatsoever.

Section 22.     (a)     <u>GOVERNING LAW</u>.     THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(b)     <u>WAIVER OF JURY TRIAL</u>.     EACH OF THE ISSUER AND THE PREFERENCE SHARES PAYING AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PREFERENCE SHARES OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 23.     <u>Signatures</u>.  This Agreement may be signed in two or more counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.  A facsimile

signature shall be considered due execution and shall be binding upon the signatory thereto with the same force and effect as if the signature were an original.

**[The Remainder Of This Page Has Been Intentionally Left Blank.]**

NY\1019917.11

Please indicate your acceptance of this appointment and the terms of this Agreement by signing and returning the enclosed copy of this Agreement. The Issuer by signing this Agreement confirms its agreement to the terms stated herein.

Very truly yours,

JASPER CLO LTD.

By: _____

Name: **VIJAYABALAN MURUGESU**
Title: **Director**

Accepted and agreed to on this 2 4th day of June, 2005.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By: _____

Name
Title: **SHELLY A. STERLING**
**VICE PRESIDENT**

ANNEX A

To the Minutes of the Resolutions of the Board of Directors of

JASPER CLO LTD.

The Issuer may perform any of the functions set forth in this Annex A through the Preference Shares Paying Agent under the Preference Shares Paying Agency Agreement or the Administrator in its capacity as Share Registrar under the Administration Agreement.

Section 1.    Definitions.

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Annex A, and the definitions of such terms are equally applicable both to the singular and plural forms of such terms and to the masculine, feminine and neuter genders of such terms.  Capitalized terms used in this Annex A and not defined herein will have the meanings given to them in the Indenture, dated as of June 29, 2005, by and among Jasper CLO Ltd. (the **"Issuer"**), Jasper CLO Corp., as co-issuer and JPMorgan Chase Bank, National Association, as trustee.

Except as otherwise specified herein or as the context may otherwise require or dictate or unless the Composite Securities are explicitly addressed in the same context, (A) all references in this Annex A to the "Preference Shares" include the "Preference Share Components" of the Class 1 Composite Securities and the Class 2 Composite Securities and (B) all references in this Annex A to the rights of the Holders of the Preference Shares (including with respect to any payments, distributions, redemptions, votes or consents to be given by such Holders) include the rights of the Holders of the Class 1 Composite Securities and Holders of the Class 2 Composite Securities to the extent of the Preference Share Components of the Class 1 Composite Securities and the Class 2 Composite Securities.

**"Accredited Investor"**: Any Person that, at the time of its acquisition, purported acquisition or proposed acquisition of Preference Shares, is an accredited investor as defined in Rule 501(a) of Regulation D under the Securities Act.

**"Authorized Amount"**: 100 Preference Shares and integral multiples of 1.

**"Certificated Preference Shares"**: Preference Shares sold or transferred (i) to a person who is (a) a Qualified Institutional Buyer or an Accredited Investor and (b)(1) a Qualified Purchaser, (2) a Knowledgeable Employee or (3) an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees, or (ii) in an Offshore Transaction to a non-U.S. Person pursuant to Regulation S and evidenced by a physical certificate in definitive, fully registered form in the form set forth in Exhibit A hereto.

**"Controlling Person"**: Any person that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer or any "affiliate" (as defined in 29 C.F.R. Section 2510.3-101(f)(3)) of any such person.

**"Corporate Trust Office"**: The corporate trust office of the Preference Shares Paying Agent at which the Preference Shares Paying Agent performs its duties under the Preference Shares Paying Agency Agreement, currently having an address of 600 Travis Street, 50th Floor, Houston, Texas 77002, telecopy no. (713) 216-2101, Attention: Worldwide Securities Services—Jasper CLO Ltd. or any other address the Preference Shares Paying Agent designates from time to time by notice to the Noteholders, the Portfolio Manager, the Trustee, the Issuer and each Rating Agency or the principal corporate trust office of any successor Preference Shares Paying Agent.

**"ERISA Plan"**: Any "employee benefit plan" (as defined in Section 3(3) of ERISA) subject to the fiduciary responsibility provisions of Title I of ERISA, any "plan" described in Section 4975(e)(1) of the Code subject to Section 4975 of the Code and any entity whose underlying assets include the assets of any such employee benefit plan and/or plan.

**"Extended Scheduled Preference Shares Redemption Date"**: If a Maturity Extension has occurred, the sixteenth Payment Date after the then current Extended Scheduled Preference Shares Redemption Date (or, in the case of the first Extended Scheduled Preference Shares Redemption Date, the Payment Date in August, 2021); provided that the "Extended Scheduled Preference Shares Redemption Date" will in no event be a date later than the Payment Date in August, 2033.

**"Non-Permitted Benefit Plan Investor"**: The meaning specified in Section 10(b).

**"Non-Permitted U.S. Holder"**: The meaning specified in Section 10(a).

**"Offshore Transactions"**: The meaning specified in Section 2.

**"Plan Asset Regulation"**: The regulation issued by the United States Department of Labor and found at 29 C.F.R. Section 2510.3-101.

**"Record Date"**: The date on which Holders of Preference Shares entitled to receive dividends with respect to the next following Payment Date is determined, which date shall be the same Record Date as is set by the Trustee pursuant to the Indenture.

**"Regulation S Global Preference Share"**: One or more permanent global security certificates for the Preference Shares sold in reliance on exemption from registration under Regulation S in definitive, fully registered form in the form set forth in Exhibit A hereto.

**"Resolutions"**: The meaning specified in the minutes to which this Annex A is attached.

**"Responsible Officer"**: Any officer of the Share Registrar or within the Corporate Trust Office of the Preference Shares Paying Agent (or any successor group of the Preference Shares Paying Agent), as applicable, including any director, vice-president, assistant vice-president, associate or any other officer or assistant officer of the Share Registrar or the Preference Shares Paying Agent, respectively, customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred within the Share Registrar or the Corporate Trust Office, respectively, because

2

of his or her knowledge of and familiarity with the particular subject and having direct responsibility for the administration of this Agreement.

"**Scheduled Preference Shares Redemption Date**": The Payment Date in August, 2017 or, upon a Maturity Extension (if any), the applicable Extended Scheduled Preference Shares Redemption Date.

"**Shareholders**" or "**Holders**": With respect to any Preference Shares, the Person in whose name such Preference Shares are registered in the Share Register.

"**Share Register**": The meaning specified in Section 5(a).

"**Share Registrar**": The meaning specified in Section 5(a).

"**Transferee Certificate**": A certificate substantially in the form of <u>Exhibit B</u> attached hereto, duly completed as appropriate.

Section 2.    <u>Form of Preference Shares</u>.

Preference Shares shall be issued in the form of one or more Certificated Preference Shares or Regulation S Global Preference Shares as set forth in <u>Exhibit A</u> hereto; provided, <u>however</u>, that the Preference Shares underlying the Preference Share Components of the Class 1 Composite Securities and Class 2 Composite Securities shall be issued solely in the form of Certificated Preference Shares or Regulation S Global Preference Shares.

Preference Shares may be offered, sold or delivered or resold in the United States or to, or for the benefit of, U.S. Persons, only to both (x) either (i) in the case of the initial offering and sale and resales, Accredited Investors who purchase such Preference Shares in transactions exempt from the registration requirements under the Securities Act or (ii) in the case of resales, Qualified Institutional Buyers who purchase such Preference Shares for their own account or for the account of Qualified Institutional Buyers in reliance on Rule 144A under the Securities Act and (y) either (i) Qualified Purchasers, (ii) Knowledgeable Employees or (iii) an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees.   In addition, Preference Shares may be offered, sold or delivered in offshore transactions ("**Offshore Transactions**") to non-U.S. Persons in reliance on Regulation S.

Section 3.    <u>Authorized Minimum Number of Preference Shares</u>.

The Preference Shares (excluding any Preference Share Components) shall be issuable only in an Authorized Amount.   The Share Registrar shall not register any sale or transfer of Preference Shares (excluding any Preference Share Components) if, after giving effect to such transfer, any transferee and any transferor that continues to hold Preference Shares would not hold less than an Authorized Amount of Preference Shares.

NY\1025431.15

Section 4.     Execution.

The certificates representing the Preference Shares shall be executed on behalf of the Issuer by one of the Authorized Officers of the Issuer. The signature of such Authorized Officers on the Preference Share certificates may be manual or facsimile.

Preference Share certificates bearing the manual or facsimile signatures of individuals who were at any time the Authorized Officers of the Issuer shall bind the Issuer, notwithstanding the fact that such individuals or any of them have ceased to hold such offices prior to the execution and delivery of such Preference Share certificates or did not hold such offices at the date of issuance of such Preference Share certificates.

Preference Share certificates issued upon transfer, exchange or replacement of other Preference Shares shall be issued in an Authorized Amount reflecting the original number of Preference Shares so transferred, exchanged or replaced.

No Holder of Preference Shares shall be entitled to any benefit under the Preference Share Documents until such time as the Holder thereof and the number of Preference Shares have been recorded in the Share Register. Notwithstanding delivery of a Preference Share certificate, the Share Register shall be conclusive evidence, and the only evidence, of the issuance and registered Holders of Preference Shares.

Section 5.     Registration, Registration of Transfer and Exchange.

(a)     The Issuer shall cause to be kept a register (the **"Share Register"**) in the Cayman Islands in which, subject to such reasonable regulations as it may prescribe, the Issuer shall provide for the registration and registration of transfers thereof of Preference Shares, including the registration of the uncertificated Preference Shares underlying the Preference Share Components of the Class 1 Composite Securities and the Class 2 Composite Securities which shall be registered in the name of the Composite Securityholders registered in the Indenture Register. The Administrator is appointed the **"Share Registrar"** pursuant to the Administration Agreement for the purpose of registering Preference Shares and transfers of Preference Shares. Upon any resignation or removal of the Share Registrar, the Issuer shall promptly appoint a successor or, in the absence of such appointment, assume the duties of Share Registrar. The Share Registrar shall promptly provide the Preference Shares Paying Agent with copies of all notices, certificates and requests received with respect to the Preference Shares and promptly provide notice of all transfers and exchanges of Preference Shares. The Share Registrar shall not be required to determine whether any proposed exchange, transfer, redemption or other transaction in relation to the Preference Shares complies with any restrictions imposed by law or under the terms of the Indenture or the Preference Share Documents but shall be entitled to rely completely in that respect on the Issuer or the Preference Shares Paying Agent.

The Issuer will give the Preference Shares Paying Agent prompt written notice of the appointment of any successor Share Registrar and of the location, and any change in the location, of the Share Registrar, and the Preference Shares Paying Agent shall have the right to inspect the Share Register at all reasonable times and to obtain copies thereof and the Preference Shares Paying Agent shall have the right to rely upon a certificate executed on behalf of such

4

Share Registrar by an Officer thereof as to the names and addresses of the Shareholders and the numbers of such Preference Shares. If the Preference Shares Paying Agent resigns or is removed in accordance with the terms of the Preference Share Paying Agency Agreement, the Issuer shall promptly appoint a successor.

Subject to this Section 5, upon surrender of a Preference Share certificate for registration of transfer thereof at the offices of the Preference Shares Paying Agent in compliance with the provisions set forth in the Preference Shares Paying Agency Agreement, the Preference Shares Paying Agent shall notify the Issuer and the Share Registrar thereof and the Issuer shall execute and the Preference Shares Paying Agent shall deliver, in the name of the designated transferee or transferees, one or more new Preference Share certificates of like terms and of a like number, and the Share Register shall be amended accordingly. The Issuer shall (and shall cause the Share Registrar to) refuse to transfer any Preference Share to the fullest extent allowed under Cayman Islands law if such transfer would violate any of the transfer restrictions provided in this Section 5 or the transferee fails to provide a required transfer certificate. Notwithstanding anything to the contrary contained herein, the uncertificated Preference Shares may only be transferred in connection with a transfer of the Class 1 Composite Securities and the Class 2 Composite Securities in accordance with the provisions set forth in the Indenture.

At the option of the Shareholder, Preference Share certificates may be exchanged for one or more Preference Share certificates of like terms, each in an Authorized Amount. Upon surrender of the Preference Share certificates to be exchanged at the office of the Preference Shares Paying Agent and upon satisfaction of the requirements set forth in this Section 5, but subject to the Preference Shares Paying Agent's obligations set forth in the Preference Shares Paying Agency Agreement, the Preference Shares Paying Agent shall instruct the Share Registrar to make the appropriate entries in the Share Register and the Issuer shall execute and the Preference Shares Paying Agent shall deliver the Preference Share certificates.

All Preference Share certificates presented or surrendered for registration of transfer or exchange shall be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Issuer, the Preference Shares Paying Agent and the Share Registrar, duly executed by the Holder of Preference Shares thereof or its attorney duly authorized in writing.

No service charge shall be made to a Holder for any registration of transfer or exchange of Preference Shares, but the Preference Shares Paying Agent or Transfer Agent may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

(b) No Preference Share may be sold or transferred (including, without limitation, by pledge or hypothecation) unless such sale or transfer is exempt from the registration requirements of the Securities Act and is exempt under applicable state securities law.

No Preference Share may be offered, sold or delivered in a non-Offshore Transaction or to, or for the benefit of, U.S. Persons except in accordance with this Section 5.

The Preference Shares may also be sold or resold, as the case may be, in an Offshore Transaction to non-U.S. Persons in reliance on Regulation S. None of the Issuer, the Preference Shares Paying Agent or any other Person may register the Preference Shares under the Securities Act or any state securities law.

For so long as any of the Securities are Outstanding, neither the Issuer nor the Share Registrar shall register any transfer of any Issuer Ordinary Shares to U.S. Persons.

So long as Preference Shares remain Outstanding, transfers and exchanges of Preference Shares, in whole or in part, shall only be made in accordance with the following provisions:

(i) <u>Certificated Preference Shares to Regulation S Global Preference Shares</u>. If a Holder of Certificated Preference Shares wishes at any time to exchange its interest in such Certificated Preference Shares for an interest in the corresponding Regulation S Global Preference Shares, or to transfer its interest in such Certificated Preference Shares to a Person who wishes to take delivery thereof in the form of an interest in the corresponding Regulation S Global Preference Shares, such Holder may, subject to the immediately succeeding sentence and the rules and procedures of the Depository, exchange or transfer or cause the exchange or transfer of such interest for an equivalent beneficial interest in Regulation S Global Preference Shares. Upon receipt by the Preference Shares Paying Agent of (A) instructions given in accordance with the Depository's procedures from a participant thereof directing the Preference Shares Paying Agent to instruct the Depository to cause to be credited a beneficial interest in Regulation S Global Preference Shares in an amount equal to the interest in the Certificated Preference Shares to be exchanged or transferred, (B) a written order given in accordance with the Depository's procedures containing information regarding the participant account of the Depository and the Euroclear and Clearstream accounts to be credited with such increase and (C) a certificate substantially in the form of <u>Exhibit B</u> attached hereto given by the transferee of the Regulation S Global Preference Shares stating that the Holder of the Certificated Preference Share (in the case of an exchange) or the Person acquiring such interest (in the case of transfer) is not a U.S. Person and that, in either case, such Holder or transferee is not a Benefit Plan Investor or Controlling Person and that the exchange or transfer of such Certificated Preference Shares has been made in compliance with the transfer restrictions applicable to the Certificated Preference Shares, including in accordance with Rule 903 or 904 of Regulation S, the Share Registrar shall cancel the Certificated Preference Shares to be transferred and upon surrender by or on behalf of the Depository of the existing Regulation S Global Preference Share Certificates, the Preference Shares Paying Agent shall instruct the Share Registrar to (i) cancel the same and deliver new Regulation S Global Preference Share Certificates registered in the name of the Depository or its nominee in the number of Preference Shares required and (ii) update the Share Register to reflect such exchange or transfer.

(ii) <u>Regulation S Global Preference Shares to Certificated Preference Shares</u>. If a Holder of a beneficial interest in Regulation S Global Preference Shares registered in the name of the Depository wishes at any time to exchange its interest in such Regulation

6

S Global Preference Shares for Certificated Preference Shares or to transfer its interest in such Regulation S Global Preference Shares to a Person who wishes to take delivery thereof in the form of Certificated Preference Shares, such Holder may, subject to the immediately succeeding sentence and the rules and procedures of Euroclear, Clearstream or the Depository, as the case may be, cause the exchange or transfer of such interest for an equivalent number of Certificated Preference Shares. Upon receipt by the Preference Shares Paying Agent of (A) instructions from Euroclear, Clearstream or the Depository, as the case may be, directing the Preference Shares Paying Agent to cause to be issued a certificate equal to the beneficial interest in the Regulations S Global Preference Shares to be exchanged or transferred, but not less than the Authorized Amount, such instructions to contain information regarding the participant account with the Depository to be credited with such decrease, and (B) a certificate substantially in the form of Exhibit B attached hereto given by the transferee of such beneficial interest and stating, among other things, that, in the case of transfer, (1) either the Person acquiring such interest in the Preference Shares is a Qualified Institutional Buyer, or the Person acquiring such interest in the Certificated Preference Shares is an Accredited Investor and, in either case, the Person acquiring the interest in the Certificated Preference Shares is a Qualified Purchaser, a Knowledgeable Employee or an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees, or (2) the Person acquiring such interest in the Preference Shares is a non-U.S. Person, or that, in the case of an exchange, the Holder is (1) a Qualified Institutional Buyer or an Accredited Investor and, in each case, a Qualified Purchaser, a Knowledgeable Employee or an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees, or (2) a non-U.S. Person, then Euroclear or Clearstream or the Preference Shares Paying Agent will instruct the Depository to submit the Regulation S Global Preference Share to the Preference Shares Paying Agent, who shall instruct the Share Registrar to (i) cancel the same and deliver a new Regulation S Global Preference Share Certificate registered in the name of the Depository or its nominee in the number of Preference Shares required and the Share Registrar will issue Certificated Preference Shares in an amount equal to the original number of Preference Shares represented by such beneficial interest and (ii) update the Share Register to reflect such exchange or transfer.

(iii) <u>Certificated Preference Shares to Certificated Preference Shares</u>. If a Holder of a Certificated Preference Shares wishes at any time to transfer its interest in such Certificated Preference Shares to a Person who wishes to take delivery thereof in the form of Certificated Preference Shares, such Holder may cause the transfer of such interest for an equivalent number of Certificated Preference Shares, subject to the restrictions set forth herein. Upon receipt by the Preference Shares Paying Agent of (A) such Holder's Certificated Preference Share certificates duly endorsed and (B) a certificate substantially in the form of <u>Exhibit B</u> attached hereto given by the transferee of such Certificated Preference Shares and stating, among other things, that (1) either the Person acquiring such interest in the Preference Shares is a Qualified Institutional Buyer, or the Person acquiring such interest in the Certificated Preference Shares is an Accredited Investor and, in either case, the Person acquiring the interest in the Certificated Preference Shares is a Qualified Purchaser, a Knowledgeable Employee or an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees, or (2) the Person acquiring such interest in the Preference Shares is a non-U.S. Person,

7

then the Preference Shares Paying Agent shall instruct the Share Registrar to, and the Share Registrar shall (i) cancel the Certificated Preference Shares certificate representing such Certificated Preference Shares and the Share Registrar will issue to such transferee Certificated Preference Shares in an amount equal to the number of the Preference Shares to be transferred and (ii) update the Share Register to reflect such exchange or transfer.

The Components of the Composite Securities, whether such Composite Securities are in the form of Certificated Composite Securities or Regulation S Global Composite Securities, are not separately transferable. Subject to and in compliance with the provisions of the Indenture, a Holder of a Class 1 Composite Security or a Holder of a Class 2 Composite Security may exchange its Class 1 Composite Security or Class 2 Composite Security, respectively, for proportional interests in the underlying securities represented by the Components thereof.

Any transfer will be subject to the requirement that any transferee (and transferor, in the case of a partial transfer) acquire Preference Shares in an Authorized Amount.

Each Transferee Certificate furnished pursuant to this Section 5(b) may be relied on conclusively by the Preference Shares Paying Agent and the Share Registrar. None of the Issuer, the Preference Shares Paying Agent, the Share Registrar or any other Person shall be required to register the Preference Shares under the Securities Act or any state securities laws.

Notwithstanding any provision to the contrary herein, so long as any Regulation S Global Preference Shares remain Outstanding and are held by or on behalf of the Depository, transfers of Regulation S Global Preference Shares or any beneficial interests therein shall only be made in accordance with this Annex A. Transfers of interests in Regulation S Global Preference Shares may be made (a) by book-entry transfer of beneficial interests within the relevant Clearing Agency or (b) in the case of transfers of interests between Certificated Preference Shares and Regulation S Global Preference Shares, in accordance with this Section 5. In each case of a transfer of a beneficial interest in a Regulation S Global Preference Share that requires the Preference Shares Paying Agent to instruct the Depository to reduce or increase the aggregate number of Preference Shares represented by a Regulation S Global Preference Share certificate, the Preference Shares Paying Agent shall cancel such Regulation S Global Preference Share certificate, and shall instruct the Issuer to issue a new Regulation S Global Preference Share certificate registered in the name of the Depository in an amount equal to the aggregate outstanding face amount of the Preference Shares represented by the Regulation S Global Preference Shares after such transfer as reflected in the Share Register. The new Regulation S Global Preference Share certificate shall be deposited with the Preference Shares Paying Agent as custodian for the Depository; provided that, the Issuer shall not be required to issue a Regulation S Global Preference Share certificate if the aggregate outstanding face amount of the Preference Shares represented by such Regulation S Global Preference Share certificate is zero, but will, at the request of the Preference Shares Paying Agent, provide a certificate to the Preference Shares Paying Agent stating that the Preference Shares remain eligible to be held by the Depository in the event of future transfer and exchanges.

In the event that Regulation S Global Preference Shares are transferred to the Beneficial Owners thereof pursuant to this Section 5, such Preference Shares may be transferred

only in accordance with such procedures and restrictions as are substantially consistent with the provisions above (including certification requirements intended to ensure that such transfers comply with Rule 144A or another exemption from registration requirements of the Securities Act, or are to non-U.S. Persons and non-U.S. residents (as determined for purposes of the Investment Company Act), or otherwise comply with Regulation 5, as the case may be) and as may be from time to time adopted by the Issuer.

(c)     By delivery of a Subscription Agreement on the Closing Date in connection with the initial issuance of the Certificated Preference Shares, or upon delivery of a certificate substantially in the form of <u>Exhibit B</u> upon the transfer of Certificated Preference Shares, each Holder of a Certificated Preference Share will represent, warrant and agree with the Issuer to what is in <u>Exhibit B</u> and set forth in <u>Exhibit B</u>.  By delivery of a Subscription Agreement on the Closing Date in connection with the initial issuance of the beneficial interests in the Regulation S Global Preference Shares, or upon delivery of a certificate substantially in the form of <u>Exhibit B</u> upon the transfer of an interest in Certificated Preference Shares for an interest in a Regulation S Global Preference Share or upon any other transfer of an interest in a Regulation S Global Preference Share, each Holder of a beneficial interest in a Regulation S Global Preference Share shall represent, warrant and agree or be deemed to have represented, warranted and agreed, as the case may be, to what is in <u>Exhibit B</u> with the Issuer, in each case as set forth in <u>Exhibit B</u>.

If Preference Share certificates are issued upon the transfer, exchange or replacement of Preference Share certificates and a request is made to remove the applicable legend on such Preference Share certificates, the Preference Share certificates so issued shall bear such applicable legend, or such applicable legend shall not be removed, as the case may be, unless there is delivered to the Issuer such satisfactory evidence, which may include an opinion of counsel as may be reasonably required by the Issuer to the effect that neither such applicable legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A under, Section 4 of, or Regulation S under, the Securities Act, as applicable, or the Investment Company Act.  Upon provision of such satisfactory evidence, the Issuer shall execute and the Preference Shares Paying Agent shall deliver Preference Share certificates that do not bear such applicable legend.

(d)     At any time when the Issuer is not subject to Section 13 or 15(d) of the Exchange Act and is not exempt from reporting pursuant to Rule 12g3-2(b) under the Exchange Act, upon the request of any Holder or Beneficial Owner of Preference Shares, the Issuer shall promptly furnish Rule 144A Information to such Holder or Beneficial Owner, to a prospective purchaser of any Preference Share designated by such Holder or Beneficial Owner or to the Preference Shares Paying Agent for delivery to such Holder or Beneficial Owner or a prospective purchaser designated by such Holder or Beneficial Owner, as the case may be, in order to permit compliance by such Holder or Beneficial Owner with Rule 144A under the Securities Act in connection with the resale of such Preference Share by such Holder or Beneficial Owner.

Section 6.    Mutilated, Defaced, Destroyed, Lost or Stolen Preference Share certificates.

If any mutilated or defaced Preference Share certificate is surrendered to the Preference Shares Paying Agent, or if there shall be delivered to the Issuer and the Preference Shares Paying Agent (i) evidence to their reasonable satisfaction of the destruction, loss or theft of any Preference Share certificate and (ii) such security or indemnity as may be required by them to save each of them and any agent of any of them harmless that such Preference Share has been acquired by a protected purchaser, then, the Issuer shall execute and, upon Issuer Request, the Preference Shares Paying Agent shall deliver, in lieu of any such mutilated, defaced, destroyed, lost or stolen Preference Share, a new Preference Share certificate identical in all respects to the entry in the Share Register with respect to such Preference Shares represented thereby, including the same date of issuance, number of Preference Shares and name of the Holder thereof, dated the date of its execution and bearing a number not contemporaneously Outstanding. Upon the execution and delivery of any new Preference Share certificates under this Section 6, the Issuer or the Preference Shares Paying Agent may require the payment by the registered Holder thereof of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Preference Shares Paying Agent, if applicable) connected therewith.

If, after delivery of such new Preference Share certificate, a protected purchaser of the Preference Shares represented by the predecessor Preference Share certificate presents for payment, transfer or exchange such predecessor Preference Share certificate, the Issuer, the Share Registrar and the Preference Share Paying Agent shall be entitled to recover such new Preference Share certificate from the Person to whom it was delivered or any Person taking therefrom, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer and the Preference Share Paying Agent in connection therewith.

Section 7.    Payment of Distributions on Preference Shares.

Pursuant to the Indenture, amounts may be paid to the Preference Shares Paying Agent on behalf of the Issuer on each Payment Date, on the Redemption Date or on the Scheduled Preference Shares Redemption Date. Unless the Preference Shares Paying Agent has received contrary instructions from the Directors of the Issuer prior to a Payment Date, the Redemption Date or the Scheduled Preference Shares Redemption Date in accordance with the Preference Shares Paying Agency Agreement, all amounts received as dividends by the Preference Shares Paying Agent pursuant to the Indenture shall be paid to the Holders of Preference Shares (i) in respect of a Payment Date or the Scheduled Preference Shares Redemption Date, *pro rata* on the Preference Shares on such Payment Date or Scheduled Preference Shares Redemption Date by way of a dividend on the Preference Shares or, if applicable, as redemption price therefor or (ii) in respect of the Redemption Date, in accordance with Section 3(f) of the Preference Shares Paying Agency Agreement. If, prior to the date of distribution in accordance with the Preference Shares Paying Agency Agreement, the Directors instruct the Preference Shares Paying Agent not to distribute all or any portion of monies to be received by the Preference Shares Paying Agent with respect to a Payment Date, the Redemption Date or the Scheduled Preference Shares Redemption Date (which instruction shall be made if

10

such distributions would be impermissible under Cayman law, and then only to the extent such distributions would be impermissible), the Preference Shares Paying Agent shall retain such monies in the Preference Shares Distribution Account and shall pay such amounts as soon as practicable after being instructed to do so by the Directors.

The Preference Shares Paying Agent shall make payments or distributions to each registered Holder of Preference Shares on the relevant Record Date by wire transfer in immediately available funds to a U.S. Dollar account maintained by each such Holder as notified to the Preference Shares Paying Agent or, in the absence of such notification, by U.S. Dollar check mailed to such Holder at its address of record as set forth in the Share Register. As a condition to payment of any amount hereunder without the imposition of U.S. withholding tax, the Preference Shares Paying Agent, on behalf of the Issuer, may require certification acceptable to it to enable the Issuer and the Preference Shares Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments or distributions in respect of Preference Shares under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under such law or regulation. All payments of distributions by the Preference Shares Paying Agent shall be made without charging any commission or fee to the Holders of the Preference Shares.

Section 8.    Persons Deemed Owners.

The person listed in the Share Register (which shall, in the case of the Preference Share Components of the Class 1 Composite Securities and the Class 2 Composite Securities, which shall be in the name of the Composite Securityholder in the Indenture Register) shall be treated as the owner of Preference Shares related thereto for all purposes, notwithstanding the possession of any certificates for the Preference Shares by another Person.

Section 9.    Cancellation.

All Preference Share certificates representing Preference Shares surrendered for payment, registration of transfer, exchange or redemption, or deemed lost or stolen, shall promptly be canceled by the Share Registrar in accordance with its policy and may not be reissued or resold. No Preference Share certificates shall be issued in lieu of or in exchange for any Preference Shares cancelled as provided in this Section 9, except as expressly permitted by this Annex A. All cancelled Preference Share certificates held by the Share Registrar shall be placed in the minute books in the corporate records of the Issuer. Any certificates issued in respect of Preference Shares repurchased by the Issuer shall be immediately delivered to the Share Registrar for cancellation.

Section 10.    Preference Shares Owned by Non-Permitted U.S. Holders; Non-Permitted Benefit Plan Investors; Non-Permitted Holders.

(a)    Notwithstanding anything to the contrary herein, any transfer of a Preference Share to a U.S. Person that is not both (x) either a Qualified Institutional Buyer or an Accredited Investor and (y) either a Qualified Purchaser, a Knowledgeable Employee, or an

11

NY\1025431.15

entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees (any such Person a **"Non-Permitted U.S. Holder"**) shall be null and void *ab initio* and any such purported transfer of which the Issuer or the Preference Shares Paying Agent shall have notice may be disregarded by the Issuer and the Preference Shares Paying Agent for all purposes.

If any Non-Permitted U.S. Holder shall become the owner of any Preference Shares, the Issuer shall, promptly after discovery that such Person is a Non-Permitted U.S. Holder by the Issuer or the Preference Shares Paying Agent (and notice by the Preference Shares Paying Agent to the Issuer, if the Preference Shares Paying Agent makes the discovery), send notice to such Non-Permitted U.S. Holder demanding that such Non-Permitted U.S. Holder transfer its Preference Shares to a Person that is eligible to purchase such Preference Shares hereunder within 30 days of the date of such notice. If such Non-Permitted U.S. Holder fails to so transfer its Preference Shares, the Issuer shall have the right, without further notice to the Non-Permitted U.S. Holder, to sell such Preference Shares to a purchaser selected by the Issuer that is eligible to purchase such Preference Shares hereunder on such terms as the Issuer may choose. The Issuer, or the Preference Shares Paying Agent acting on behalf of the Issuer, may select the purchaser by soliciting one or more bids from one or more brokers or other market professionals that regularly deal in securities similar to the Preference Shares, and selling such Preference Shares to the highest such bidder. However, the Issuer or the Preference Shares Paying Agent acting on behalf of the Issuer may select a purchaser by any other means determined by it in its sole discretion. The Holder of each Preference Share, the Non-Permitted U.S. Holder and each other Person in the chain of title from the Holder to the Non-Permitted U.S. Holder, by its acceptance of the Preference Shares, agrees to cooperate with the Issuer and the Preference Shares Paying Agent to effect such transfers. The proceeds of such sale, net of any commissions, expenses and taxes due in connection with such sale, shall be remitted to the Non-Permitted U.S. Holder. The terms and conditions of any sale under this Section shall be determined in the sole discretion of the Issuer, and neither the Issuer nor the Preference Shares Paying Agent shall be liable to any Person having an interest in the Preference Shares sold as a result of any such sale or the exercise of such discretion.

(b)    Notwithstanding anything to the contrary herein, no person shall be permitted to acquire Preference Shares if such acquisition would result in persons who have represented that they are Benefit Plan Investors owing 25% or more of the aggregate amount of the Preference Shares (including Preference Share Components) outstanding immediately after such acquisition (excluding for purposes of this determination the Preference Shares held by any Controlling Person and its Affiliates that are not also Benefit Plan Investor), determined in accordance with the Plan Asset Regulation. Furthermore, no person shall be permitted to acquire Preference Shares if such person, or any account on behalf of which such person is acquiring the Preference Shares, is either (1) an ERISA Plan or (2) a Benefit Plan Investor that is not an ERISA Plan, but whose purchase, holding or disposition of a Preference Share or any beneficial interest therein will result in a non-exempt violation of any federal, state, foreign or local law substantially similar to Section 406 of ERISA or Section 4975 of the Code. Any person described in the first sentence of this subsection (b) and any person described in clause (1) or (2) of the preceding sentence is referred to herein as a "**Non-Permitted Benefit Plan Investor**." Any transfer of Preference Shares or Preference Share Components to a Non-Permitted Benefit Plan Investor shall be null and void *ab initio* and any such purported transfer of which the Issuer

12

or the Preference Shares Paying Agent shall have notice may be disregarded by the Issuer and the Preference Shares Paying Agent for all purposes.

If any Non-Permitted Benefit Plan Investor shall become the owner of Preference Shares, the Issuer shall, promptly after discovery that such person is a Non-Permitted Benefit Plan Investor by the Issuer or the Preference Shares Paying Agent (and notice by the Preference Shares Paying Agent to the Issuer, if the Preference Shares Paying Agent makes the discovery), send notice to such Non-Permitted Benefit Plan Investor demanding that such Non-Permitted Benefit Plan Investor transfer its Preference Shares to a Person that is eligible to purchase such Preference Shares hereunder within 30 days of the date of such notice. If such Non-Permitted Benefit Plan Investor fails to so transfer such Preference Shares, the Issuer shall have the right, without further notice to the Non-Permitted Benefit Plan Investor, to sell such Preference Shares to a purchaser selected by the Issuer that is eligible to purchase such Preference Shares hereunder on such terms as the Issuer may choose. The Issuer, or the Preference Shares Paying Agent acting on behalf of the Issuer, may select the purchaser by soliciting one or more bids from one or more brokers or other market professionals that regularly deal in securities similar to the Preference Shares and selling such Preference Shares to the highest such bidder. However, the Issuer or the Preference Shares Paying Agent acting on behalf of the Issuer may select a purchaser by any other means determined by it in its sole discretion. The Holder of each Preference Share, the Non-Permitted Benefit Plan Investor and each other Person in the chain of title from the Holder to the Non-Permitted Benefit Plan Investor, by its acceptance of Preference Shares agrees to cooperate with the Issuer and the Preference Shares Paying Agent to effect such transfers. The proceeds of such sale, net of any commissions, expenses and taxes due in connection with such sale shall be remitted to the Non-Permitted Benefit Plan Investor. The terms and conditions of any sale under this subsection shall be determined in the sole discretion of the Issuer, and the Issuer shall not be liable to any Person having an interest in the Preference Shares sold as a result of any such sale or the exercise of such discretion.

Any Holder that becomes a Non-Permitted U.S. Holder or a Non-Permitted Benefit Plan Investor or any Holder who has made an ERISA-related representation required by this Annex A that was at the time made, or has subsequently become, false or misleading, must immediately give written notice to the Issuer of such event. Any Holder of Preference Shares that proposes or attempts a transfer that would result in the holding of Preference Shares by a Non-Permitted U.S. Holder or that the Holder knows or has reason to know would result in the holding of Preference Shares by a Non-Permitted Benefit Plan Investor, must give at least 15 days prior written notice to the Issuer of such proposed transfer. In any case, the notifying party must provide the Issuer such information as it may request in order to determine the effect, if any, of such event on the Issuer with respect to its compliance with the Securities Act, the 1940 Act, ERISA and the Code.

Section 11.    Return of Undistributed Dividends.

Except as otherwise required by applicable law, any monies deposited with the Preference Shares Paying Agent and held in the Preference Shares Distribution Account or otherwise held for the payment of dividends with respect to the Preference Shares and remaining unclaimed for two years after such amounts have become payable shall be paid to the Issuer on Issuer Request; and the Holder of such Preference Shares shall thereafter look only to the Issuer

13

for payment of such amounts and all liability of the Preference Shares Paying Agent with respect to such Money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease. The Preference Shares Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer, any reasonable means of notification of such release of payment, including, but not limited to, mailing notice to Holders whose right to or interest in such unclaimed monies is determinable from the records of the Preference Shares Paying Agent or Share Registrar, or in the case of the Preference Shares underlying the Preference Share Components of the Class 1 Composite Securities and the Class 2 Composite Securities, the Indenture Registrar, at the last address of record of each such Holder.

Section 12.     Disclosure of Tax Treatment.

In order to ensure the Holders' and Beneficial Owners' acquisition of the Preference Shares pursuant to this Agreement are not treated as offered under conditions of confidentiality, the Holders and Beneficial Owners of the Preference Shares (and each of their respective employees, representatives or other agents) are hereby permitted to disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this Agreement (including the ownership and disposition of the Preference Shares). For this purpose, the tax treatment of a transaction is the purported or claimed U.S. federal income or state and local tax treatment of the transaction, and the tax structure of a transaction is any fact that may be relevant to understanding the purported or claimed U.S. federal income or state and local tax treatment of the transaction.

Section 13.     Certain Tax Matters.

The Issuer and each Holder and each Beneficial Owner of a Preference Share, by acceptance of its Preference Share, or its interest in a Preference Share, shall be deemed to have agreed to treat, and shall treat, such Preference Share as equity of the Issuer for United States federal income tax purposes.

The Issuer will not elect to be treated as a partnership for U.S. federal income tax purposes.

The Issuer shall file, or cause to be filed, any tax return, including information tax returns, required by any governmental authority; provided, however, that the Issuer shall not file, or cause to be filed, any income or franchise tax return in any state of the United States unless it shall have obtained an Opinion of Counsel from a tax counsel of nationally recognized standing experienced in such matters prior to such filing that, under the laws of such jurisdiction, the Issuer is required to file such income or franchise tax return.

Each Holder and Beneficial Owner of a Preference Share, by acceptance of its Preference Share or its interest in a Preference Share, shall be deemed to understand and acknowledge that failure to provide the Issuer, the Trustee or the Preference Shares Paying Agent with the applicable U.S. federal income tax certifications (generally, a United States Internal Revenue Service Form W-9 (or successor applicable form) in the case of a person that is a "United States person" within the meaning of Section 7701(a)(30) of the Code or an

14

appropriate United States Internal Revenue Service Form W-8 (or successor applicable form) in the case of a person that is not a "United States person" within the meaning of Section 7701(a)(30) of the Code) may result in U.S. federal back-up withholding from payments in respect of such Preference Share.

The Issuer shall cause its independent accountants, within 90 days after the end of each calendar year, to provide to each Holder of the Preference Shares and, upon written request therefor certifying that it is a Holder of a beneficial interest in a Preference Share, to such Holder (or its designee), all information that a U.S. shareholder making a "qualified electing fund" election (as defined in the Code) with respect to the Preference Shares is required to obtain from the Issuer for U.S. federal income tax purposes and a "PFIC Annual Information Statement" as described in United States Treasury Regulation section 1.1295-1(g)(1) (or any successor Treasury Regulation) (including all representations and statements required by such statement), and the Issuer will take or cause to be taken any other reasonable steps to facilitate such election by a Holder of the Preference Shares or Beneficial Owner of the Preference Shares.

The Issuer shall provide, or cause to be provided, upon the request of a Holder of a Preference Share and, upon written request certifying that it is a Holder of a beneficial interest in a Preference Share, to such Holder (or its designee), any information that a Holder or Beneficial Owner of the Preference Shares reasonably requests to assist such Holder of the Preference Shares or Beneficial Owner with regard to filing requirements the Holder of the Preference Shares or Beneficial Owner of the Preference Shares is required to satisfy as a result of the controlled foreign corporation rules under the Code.

If the Issuer is aware that it has purchased an interest in a "reportable transaction" within the meaning of Section 6011 of the Code, and a Holder of a Preference Shares requests information about any such transactions in which the Issuer is an investor, the Issuer shall provide such information it has reasonably available as soon as practicable after such request.

The Issuer shall not become the owner of any asset if the ownership or disposition of such asset (without regard to the other activities of the Issuer) would cause the Issuer to be engaged, or deemed to be engaged, in a trade or business within the United States for U.S. federal income tax purposes, it being understood that the purchase of Collateral Obligations pursuant to the acquisition standards set forth in the Collateral Acquisition Agreement will not be deemed to cause the Issuer to be engaged in a trade or business with the United States for U.S. federal income tax purposes.

**[The remainder of this page has been intentionally left blank.]**

NY\1025431.15

**Exhibit A**

**FORM OF [REGULATION S GLOBAL] [CERTIFICATED] PREFERENCE SHARE**

**JASPER CLO LTD.**

PREFERENCE SHARES, PAR VALUE $0.01 PER SHARE

THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "**INVESTMENT COMPANY ACT**"). THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, EXCEPT (A)(1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER, IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A SO LONG AS THE PREFERENCE SHARES ARE ELIGIBLE FOR RESALE IN ACCORDANCE WITH RULE 144A, (2) TO AN ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a) UNDER REGULATION D UNDER THE SECURITIES ACT) IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT, OR (3) TO A NON-U.S. PERSON IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT AND, IN THE CASE OF CLAUSES (1) AND (2), TO A PURCHASER THAT (X) IS A QUALIFIED PURCHASER WITHIN THE MEANING OF SECTION 3(C)(7) OF THE INVESTMENT COMPANY ACT THAT WAS NOT FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER (EXCEPT WHEN EACH BENEFICIAL OWNER OF THE PURCHASER IS A QUALIFIED PURCHASER OR KNOWLEDGEABLE EMPLOYEE) THAT HAS RECEIVED THE NECESSARY CONSENT FROM ITS BENEFICIAL OWNERS WHEN THE PURCHASER IS A PRIVATE INVESTMENT COMPANY FORMED ON OR BEFORE APRIL 30, 1996, (Y) IS A KNOWLEDGEABLE EMPLOYEE (AS DEFINED IN RULE 3C-5 UNDER THE INVESTMENT COMPANY ACT) WITH RESPECT TO THE ISSUER OR (Z) IS AN ENTITY OWNED EXCLUSIVELY BY QUALIFIED PURCHASERS AND/OR KNOWLEDGEABLE EMPLOYEES, (B) IN EACH CASE, IN A NUMBER OF NOT LESS THAN 100 PREFERENCE SHARES FOR THE PURCHASER AND FOR EACH SUCH ACCOUNT FOR WHICH IT IS ACTING, AND (C) IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION. EACH TRANSFEROR OF THE PREFERENCE SHARES REPRESENTED HEREBY OR ANY BENEFICIAL INTEREST THEREIN WILL PROVIDE NOTICE OF THE TRANSFER RESTRICTIONS AS SET FORTH HEREIN TO ITS PURCHASER. EACH PURCHASER OF THE PREFERENCE SHARES REPRESENTED HEREBY WILL BE REQUIRED TO MAKE (OR WILL BE DEEMED TO MAKE) THE APPLICABLE REPRESENTATIONS AND AGREEMENTS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. THE PREFERENCE SHARES REPRESENTED HEREBY MAY BE PURCHASED BY OR TRANSFERRED TO A BENEFIT PLAN

INVESTOR OR CONTROLLING PERSON (EACH AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) ONLY UPON THE SATISFACTION OF CERTAIN CONDITIONS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE PREFERENCE SHARES PAYING AGENT OR ANY INTERMEDIARY. IN ADDITION TO THE FOREGOING, THE ISSUER MAINTAINS THE RIGHT TO RESELL ANY PREFERENCE SHARES PREVIOUSLY TRANSFERRED TO NON-PERMITTED U.S. HOLDERS OR NON-PERMITTED BENEFIT PLAN INVESTOR (AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE PREFERENCE SHARE DOCUMENTS.

THE FAILURE TO PROVIDE THE ISSUER AND ANY PAYING AGENT, WHENEVER REQUESTED BY THE ISSUER OR THE PORTFOLIO MANAGER ON BEHALF OF THE ISSUER, WITH THE APPLICABLE U.S. FEDERAL INCOME TAX CERTIFICATIONS (GENERALLY, AN INTERNAL REVENUE SERVICE FORM W-9 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE OR AN APPROPRIATE INTERNAL REVENUE SERVICE FORM W-8 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS NOT A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE) SHALL RESULT IN THE IMPOSITION OF U.S. FEDERAL BACK-UP WITHHOLDING FROM PAYMENTS TO THE HOLDER IN RESPECT OF THE PREFERENCE SHARES REPRESENTED HEREBY.

[*INSERT FOR REGULATION S GLOBAL PREFERENCE SHARE ONLY*] EACH PURCHASER OF THE PREFERENCE SHARES REPRESENTED HEREBY WILL BE DEEMED TO REPRESENT, WARRANT AND COVENANT THAT UPON THE ACQUISITION OF, AND THROUGHOUT ITS HOLDING AND DISPOSITION OF THIS PREFERENCE SHARE OR ANY INTEREST HEREIN, IT IS NOT, IS NOT USING THE ASSETS OF, AND WILL NOT BECOME OR TRANSFER ITS INTEREST TO AN EMPLOYEE BENEFIT PLAN WITHIN THE MEANING OF SECTION 3(3) OF THE UNITED STATES EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("**ERISA**"), WHETHER OR NOT SUBJECT TO ERISA, A "PLAN" DESCRIBED IN SECTION 4975 OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**CODE**"), AN ENTITY DEEMED TO HOLD ASSETS OF EITHER OF THE FOREGOING, THE ISSUER, THE CO-ISSUER, THE PORTFOLIO MANAGER OR OTHER "CONTROLLING PERSON" OR "AFFILIATE" THEREOF (WITHIN THE MEANINGS OF THE PLAN ASSET REGULATION). EACH PURCHASER WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE IN A FORM PRESCRIBED IN THE PREFERENCE SHARE DOCUMENTS OR WILL BE DEEMED TO HAVE MADE THE REPRESENTATIONS AND AGREEMENT SET FORTH IN THE PREFERENCE SHARE DOCUMENTS.

UNLESS THIS PREFERENCE SHARE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("**DTC**") TO THE SHARE

REGISTRAR FOR REGISTRATION OF TRANSFER OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

[*INSERT FOR CERTIFICATED PREFERENCE SHARE ONLY*] EACH TRANSFEREE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE IN A FORM PRESCRIBED IN THE PREFERENCE SHARE DOCUMENTS.

NY\1025431.15

# JASPER CLO LTD.

Number [P] [S] -

CUSIP NO.:                                                              xxxxx Preference Shares

Existing under the laws of the Cayman Islands
**US$950** divided into 250 Ordinary Shares
of a nominal par value of **US$1.00** each
and 70,000 Preference Shares of a nominal or par value of **US$0.01** each

THIS IS TO CERTIFY THAT
**XXX**
is the registered Holder of

*- XXX Preference Shares -*

in the above-named Company subject to the Amended and Restated Memorandum and Articles of Association thereof

A-4

THIS CERTIFICATE IS ISSUED BY the said Company on this 29th day of June, 2005.
EXECUTED on behalf of the said Company by:

DIRECTOR_____

## FORM OF TRANSFEREE CERTIFICATE FOR PREFERENCE SHARES

Jasper CLO Ltd.
P.O. Box 1234
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

JPMorgan Chase Bank, National Association
  as Preference Shares Paying Agent
600 Travis Street, 50th Floor
Houston, Texas 77002
Attention: Worldwide Securities Services — Jasper CLO Ltd.

> Re:  Jasper CLO Ltd.
>      Preference Shares, Par Value $0.01 Per Share

Dear Sirs:

Reference is hereby made to the Issuer's Memorandum and Articles of Association (the **"Articles"**) and certain resolutions adopted at a meeting of the Issuer's Board of Directors on or about June 28, 2005 (the **"Resolutions"**), as reflected in the minutes thereof. Reference is also made to the Preference Shares Paying Agency Agreement, dated as of June 29, 2005 (the **"Agreement"**) by and between Jasper CLO Ltd., as Issuer and JPMorgan Chase Bank, National Association, as Preference Shares Paying Agent. Capitalized terms used but not defined herein shall have the meanings set forth in the Resolutions, including Annex A thereto (**"Annex A"**), and if not defined in the Resolutions, in the Offering Memorandum.

This certificate relates to _____ Preference Shares which are to be transferred to the undersigned transferee (the **"purchaser"**) in the form of a [Certificated] [Regulation S Global] Preference Share of such Class pursuant to Section 5(b) of Annex A.

1.     The purchaser hereby represents, warrants and covenants for the benefit of the Issuer that the transfer has been effected in accordance with the transfer restrictions set forth in Section 5(b) of Annex A and the Offering Memorandum, dated June 27, 2005 (the **"Offering Memorandum"**) relating to the Preference Shares and that:

> (1)     The purchaser hereby certifies that it is (check one):
>
> ____     a person that is not a "U.S. person" as defined in Regulation S under the Securities Act; or

_____  a Qualified Institutional Buyer as defined in Rule 144A under the Securities Act and it is a Qualified Purchaser for purposes of the Investment Company Act; or

_____  an Accredited Investor as defined in Rule 501(a) under the Securities Act and it is a Qualified Purchaser for purposes of the Investment Company Act.

(2)     If the purchaser is:

(A)     (i) a Qualified Institutional Buyer, such purchaser is aware that the sale of the Preference Shares to it is being made in reliance on an exemption from the registration requirements under the Securities Act and is acquiring the Preference Shares for its own account or for one or more accounts, each of which is a Qualified Institutional Buyer, and as to each of which the purchaser exercises sole investment discretion, and in a number not less than the minimum lot, in each case for the purchaser and for each such account, or (ii) an Accredited Investor, such purchaser is aware that the sale of Preference Shares to it is being made in reliance on an exemption from the registration requirements under the Securities Act and is acquiring the Preference Shares for its own account in a number not less than the minimum lot, or

(B)     a non-U.S. Person, such purchaser is purchasing the Preference Shares in an Offshore Transaction not involving any directed selling efforts in the United States, is aware that the sale of Preference Shares to it is being made in reliance on the exemption from the registration requirements under the Securities Act provided by Regulation S and is acquiring the Preference Shares for its own account in a number not less than the minimum lot.

2.     The purchaser has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of its investment in the Preference Shares, and the purchaser, and any accounts for which it is acting, are each able to bear the economic risk of the purchaser's or its investment.

3.     The purchaser understands that the Preference Shares are being offered only in a transaction not involving any public offering in the United States within the meaning of the Securities Act, the Preference Shares have not been and will not be registered under the Securities Act, and, if in the future the purchaser decides to offer, resell, pledge or otherwise transfer the Preference Shares, such Preference Shares may be offered, resold, pledged or otherwise transferred only in accordance with the legend in respect of such Preference Shares set forth in clause (10) below and the restrictions set forth in the Preference Share Documents. The purchaser acknowledges that no representation is made by the Issuer, the Portfolio Manager or the Placement Agents or any of their respective affiliates as to the availability of any exemption under the Securities Act or other applicable laws of any jurisdiction for resale of the Preference Shares.

4.      The purchaser agrees that it will not offer or sell, transfer, assign, or otherwise dispose of the Preference Shares or any interest therein except (i) pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and any applicable state securities laws or the applicable laws of any other jurisdiction and (ii) in accordance with the Preference Share Documents, to which provisions the purchaser hereby agrees it is subject.

5.      The purchaser is not purchasing the Preference Shares with a view to the resale, distribution or other disposition thereof in violation of the Securities Act.  The purchaser understands that the Preference Shares will be highly illiquid and are not suitable for short-term trading.  The Preference Shares are a leveraged investment in the Collateral Obligations that may expose the Preference Shares to disproportionately large changes in value.  Payments in respect of the Preference Shares are not guaranteed as they are dependent on the performance of the Issuer's portfolio of Collateral Obligations.  The purchaser understands that  it is possible that, due to the structure of the transaction and the performance of the Issuer's portfolio of Collateral Obligations, dividends or other distributions in respect of the Preference Shares may be reduced or eliminated entirely.  Furthermore, the Preference Shares constitute equity in the Issuer, are not secured by the Collateral and will rank behind all creditors (secured and unsecured and whether known or unknown) of the Issuer, including, without limitation, the Holders of the Notes, and any Hedge Counterparties.  The Issuer has assets limited to the Collateral for payment of all Classes of the Notes and dividends and other distributions on the Preference Shares, and the Preference Shares bear, pro rata, the first risk of loss.  The purchaser understands that an investment in the Preference Shares involves certain risks, including the risk of loss of all or a substantial part of its investment.  The purchaser has had access to such financial and other information concerning the Issuer, the Preference Shares and the Collateral as it deemed necessary or appropriate in order to make an informed investment decision with respect to its purchase of the Preference Shares, including an opportunity to ask questions of and request information from the Issuer and the Placement Agents.

6.      (i) None of the Issuer, the Co-Issuer, the Placement Agents, any Hedge Counterparty, the Preference Shares Paying Agent, or the Portfolio Manager is acting as a fiduciary or financial or investment advisor for the purchaser, (ii) the purchaser is not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of the Issuer, the Co-Issuer, the Placement Agents, any Hedge Counterparty, the Preference Shares Paying Agent or the Portfolio Manager or any of their respective affiliates other than in a current offering memorandum for the Preference Shares and any representations expressly set forth in a written agreement with such party; (iii) none of the Issuer, the Co-Issuer, the Placement Agents, any Hedge Counterparty, the Preference Shares Paying Agent or the Portfolio Manager or any of their respective affiliates has given to the purchaser (directly or indirectly through any other Person or documentation for the Preference Shares) any assurance, guarantee or representation whatsoever as to the expected or projected success, profitability, return, performance, result, effect, consequence or benefit (including legal, regulatory, tax, financial, accounting or otherwise) of the Preference Shares or an investment therein; (iv) the purchaser has consulted with its own legal, regulatory, tax, business, investment, financial and accounting advisors to the extent it has deemed necessary, and it has made its own investment decisions (including decisions regarding the suitability of any transaction pursuant to the documentation for the Preference Shares) based upon its own judgment and upon any advice

from such advisors as it has deemed necessary and not upon any view expressed by the Issuer, the Co-Issuer, the Placement Agent, any Hedge Counterparty, the Preference Shares Paying Agent or the Portfolio Manager or any of their respective affiliates; (v) the purchaser has determined that the rates, prices or amounts and other terms of the purchase and sale of the Preference Shares reflect those in the relevant market for similar transactions; (vi) if the purchaser is acting for the account of another investor, the purchaser represents that the investment on behalf of such account is based on a determination that the investment is suitable based on the risks referred to in the Offering Memorandum (including, without limitation, the "Risk Factors" and the "Transfer Restrictions for the Preference Shares"), given the investment objectives of the account for which the purchase is being made, and that the investment is consistent with any applicable legal requirements; (vii) the purchaser is purchasing the Preference Shares with a full understanding of all of the terms, conditions and risks thereof (economic and otherwise), and it, and each account for which it is acquiring Preference Shares, is capable of assuming and willing to assume (financially and otherwise) those risks; and (viii) the purchaser is a sophisticated investor.

7.     If the purchaser is acquiring the Preference Shares pursuant to paragraph (2)(A) above, (A) the purchaser and each account for which the purchaser is acquiring Preference Shares is (i) a Qualified Purchaser, (ii) a Knowledgeable Employee or (iii) an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees, (B) the purchaser (or if the purchaser is acquiring Preference Shares for any account, each such account) is acquiring the Preference Shares as principal for its own account for investment and not for sale in connection with any distribution thereof, (C) the purchaser (or if the purchaser is acquiring Preference Shares for any account, each such account) was not formed solely for the purpose of investing in the Preference Shares (except when each beneficial owner of the purchaser or any such account is (i) a Qualified Purchaser or (ii) a Knowledgeable Employee), (D) to the extent the purchaser or any account for which the purchaser is acquiring Preference Shares is a private investment company formed before April 30, 1996, the purchaser or such account has received the necessary consent from its beneficial owners, (E) the purchaser (or if the purchaser is acquiring Preference Shares for any account, each such account) agrees that it shall not hold such Preference Shares for the benefit of any other Person and shall be the sole beneficial owner thereof for all purposes and that it shall not sell participation interests in the Preference Shares or enter into any other arrangement pursuant to which any other Person shall be entitled to a beneficial interest in the dividends or other distributions on the Preference Shares (except when each person is (i) a Qualified Purchaser or (ii) a Knowledgeable Employee) and (F) the purchaser understands and agrees that any purported transfer of the Preference Shares to a purchaser that does not comply with the requirements of this paragraph shall be null and void *ab initio*.

8.     The purchaser understands that, prior to any sale or other transfer of any interest in Preference Shares held in the form of a Certificated Preference Share, it (or the transferee, as applicable) will be required to provide to the Issuer and the Preference Shares Paying Agent a duly executed transfer certificate substantially in the form of <u>Exhibit B</u> attached to <u>Annex A</u> and such other certificates and other information as they may reasonably require to confirm that the proposed transfer complies with the restrictions in the legend placed on each certificate representing the Preference Shares and in the Preference Share Documents.

9.     The purchaser understands and agrees that (i) no purchase or transfer may be made that would result in any person or entity holding beneficial ownership in any Preference Shares in less than an authorized number as set forth in Annex A and (ii) no purchase or transfer of Preference Shares that would have the effect of requiring either of the Co-Issuers or the pool of Collateral to register as an investment company under the Investment Company Act will be permitted.

10.     (i)     The purchaser understands that the Preference Shares (a) will be represented by either one or more Certificated Preference Shares or Regulation S Global Preference Share which will bear the legend substantially in the form set forth below unless the Issuer determines otherwise in accordance with applicable law, and (b) (i) in the case of Preference Shares represented by an interest in a Certificated Preference Share, may only be resold, pledged or transferred to (x) non-U.S. Persons or (y) U.S. Persons that are either Qualified Institutional Buyers or Accredited Investors and either (a) Qualified Purchasers, (b) Knowledgeable Employees or (c) entities owned exclusively by Qualified Purchasers and/or Knowledgeable Employees and (ii) in the case of Preference Shares represented by an interest in a Regulation S Global Preference Share, may not at any time be held by or on behalf of any person that is a U.S. Person.  The purchaser understands that before the Preference Shares represented by an interest in Certificated Preference Shares may be offered, resold, pledged or otherwise transferred, the transferee will be required to provide the Preference Shares Paying Agent and the Issuer with a written certification as to compliance with the transfer restrictions.

THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE **"SECURITIES ACT"**), AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE **"INVESTMENT COMPANY ACT"**). THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, EXCEPT (A)(1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER, IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A SO LONG AS THE PREFERENCE SHARES ARE ELIGIBLE FOR RESALE IN ACCORDANCE WITH RULE 144A, (2) TO AN ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a) UNDER REGULATION D UNDER THE SECURITIES ACT) IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT, OR (3) TO A NON-U.S. PERSON IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT AND, IN THE CASE OF CLAUSES (1) AND (2), TO A PURCHASER THAT (X) IS A QUALIFIED PURCHASER WITHIN THE MEANING OF SECTION (3)(C)(7) OF THE INVESTMENT COMPANY ACT THAT WAS NOT FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER (EXCEPT WHEN EACH BENEFICIAL OWNER OF THE PURCHASER IS A QUALIFIED PURCHASER OR KNOWLEDGEABLE EMPLOYEE) THAT HAS RECEIVED THE NECESSARY CONSENT FROM ITS BENEFICIAL OWNERS WHEN THE PURCHASER IS A PRIVATE INVESTMENT COMPANY FORMED ON OR BEFORE APRIL 30, 1996, (Y) IS A KNOWLEDGEABLE EMPLOYEE (AS DEFINED IN RULE 3C-5 UNDER THE

INVESTMENT COMPANY ACT) WITH RESPECT TO THE ISSUER OR (Z) IS AN ENTITY OWNED EXCLUSIVELY BY QUALIFIED PURCHASERS AND/OR KNOWLEDGEABLE EMPLOYEES, (B) IN EACH CASE, IN A NUMBER OF NOT LESS THAN 100 PREFERENCE SHARES FOR THE PURCHASER AND FOR EACH SUCH ACCOUNT FOR WHICH IT IS ACTING, AND (C) IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION. EACH TRANSFEROR OF THE PREFERENCE SHARES REPRESENTED HEREBY OR ANY BENEFICIAL INTEREST THEREIN WILL PROVIDE NOTICE OF THE TRANSFER RESTRICTIONS AS SET FORTH HEREIN TO ITS PURCHASER. EACH PURCHASER OF THE PREFERENCE SHARES REPRESENTED HEREBY WILL BE REQUIRED TO MAKE (OR WILL BE DEEMED TO MAKE) THE APPLICABLE REPRESENTATIONS AND AGREEMENTS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. THE PREFERENCE SHARES REPRESENTED HEREBY MAY BE PURCHASED BY OR TRANSFERRED TO A BENEFIT PLAN INVESTOR OR CONTROLLING PERSON (EACH AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) ONLY UPON THE SATISFACTION OF CERTAIN CONDITIONS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID *AB INITIO*, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE PREFERENCE SHARES PAYING AGENT OR ANY INTERMEDIARY. IN ADDITION TO THE FOREGOING, THE ISSUER MAINTAINS THE RIGHT TO RESELL ANY PREFERENCE SHARES PREVIOUSLY TRANSFERRED TO NON-PERMITTED U.S. HOLDERS OR NON-PERMITTED BENEFIT PLAN INVESTOR (AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE PREFERENCE SHARE DOCUMENTS.

THE FAILURE TO PROVIDE THE ISSUER AND ANY PAYING AGENT, WHENEVER REQUESTED BY THE ISSUER OR THE PORTFOLIO MANAGER ON BEHALF OF THE ISSUER, WITH THE APPLICABLE U.S. FEDERAL INCOME TAX CERTIFICATIONS (GENERALLY, AN INTERNAL REVENUE SERVICE FORM W-9 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE OR AN APPROPRIATE INTERNAL REVENUE SERVICE FORM W-8 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS NOT A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE) SHALL RESULT IN THE IMPOSITION OF U.S. FEDERAL BACK-UP WITHHOLDING FROM PAYMENTS TO THE HOLDER IN RESPECT OF THE PREFERENCE SHARES REPRESENTED HEREBY.

In addition, each Certificated Preference Share will contain the following additional legend:

EACH TRANSFEREE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE IN A FORM PRESCRIBED IN THE PREFERENCE SHARE DOCUMENTS.

In addition, each Regulation S Global Preference Share representing any Preference Share will contain the following additional legend:

EACH PURCHASER OF THE PREFERENCE SHARES REPRESENTED HEREBY WILL BE DEEMED TO REPRESENT, WARRANT AND COVENANT THAT UPON THE ACQUISITION OF, AND THROUGHOUT ITS HOLDING AND DISPOSITION OF THIS PREFERENCE SHARE OR ANY INTEREST HEREIN, IT IS NOT, IS NOT USING THE ASSETS OF, AND WILL NOT BECOME OR TRANSFER ITS INTEREST TO AN EMPLOYEE BENEFIT PLAN WITHIN THE MEANING OF SECTION 3(3) OF THE UNITED STATES EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("**ERISA**"), WHETHER OR NOT SUBJECT TO ERISA, A "PLAN" DESCRIBED IN SECTION 4975 OF THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**CODE**"), AN ENTITY DEEMED TO HOLD ASSETS OF EITHER OF THE FOREGOING, THE ISSUER, THE CO-ISSUER, THE PORTFOLIO MANAGER OR OTHER "CONTROLLING PERSON" OR "AFFILIATE" THEREOF (WITHIN THE MEANINGS OF THE PLAN ASSET REGULATION). EACH PURCHASER WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE IN A FORM PRESCRIBED IN THE PREFERENCE SHARE DOCUMENTS OR WILL BE DEEMED TO HAVE MADE THE REPRESENTATIONS AND AGREEMENT SET FORTH IN THE PREFERENCE SHARE DOCUMENTS.

Each Regulation S Global Preference Share will also bear the additional legend set forth below:

UNLESS THIS PREFERENCE SHARE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY ("**DTC**") TO THE SHARE REGISTRAR FOR REGISTRATION OF TRANSFER OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

11.     The funds that the purchaser is using or will use to purchase the Preference Shares are assets of a person who is or at any time while the Preference Shares are held by the purchaser will be (A) an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), whether or not such plan is subject to Title I of ERISA, including, without limitation, foreign, church and governmental plans, (B) a "plan" described in Section 4975(e)(1) of the Internal Revenue Code of 1986 (the "**Code**") or (C) an entity whose underlying assets would be deemed to include "plan assets" of either of the foregoing by reason of the investment by an employee benefit plan or other plan in the entity within the meaning of 29 C.F.R. Section 2510.3-101 or otherwise (the plans and persons described in clauses (A), (B) and (C) being referred to as "**Benefit Plan Investors**"). For purposes of making this determination, foreign benefit plans, government or church plans,

Keoghs and individual retirement accounts ("**IRAs**") are typically considered Benefit Plan Investors. **Yes _____ No _____ (Please check either yes or no).**

If yes, such funds are assets of an employee benefit plan subject to the fiduciary responsibility provisions of ERISA or a plan described in Section 4975(e)(1) of the Code and subject to Section 4975 of the Code, or a foreign plan, "governmental plan," or "church plan" subject to foreign, federal, state or local laws, rules or regulations that are substantially similar to the fiduciary responsibility provisions of ERISA or Section 4975 of the Code.

**Yes _____ No _____ (Please check either yes or no).**

The purchaser is not the Issuer, the Co-Issuer, the Portfolio Manager or any other person (other than a Benefit Plan Investor) that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer, or any "affiliate" (as defined in 29 C.F.R. Section 2510.3 101(f)(3)) of any such person (any such person, a "**Controlling Person**"). **Please place a check in the following space if the foregoing statement is NOT accurate:**

_____.

If the purchaser is an insurance company investing through its general account as defined in PTCE 95-60, for so long as it holds the Preference Shares, no more than    % of the assets of such insurance company general account could be treated, for so long as it holds the Preference Shares, as plan assets for purposes of calculating the 25% threshold under the significant participation test (29 C.F.R. Section 2510.3-101(f)). **(Please provide percentage, if applicable)**.

The purchaser understands and acknowledges that the Share Registrar will not register any purchase or transfer of Preference Shares  to (i) a proposed purchaser or transferee that has represented that it is a Benefit Plan Investor or a Controlling Person if, after giving effect to such proposed transfer, persons that have represented that they are Benefit Plan Investors would own 25% or more of the Outstanding Preference Shares; or (ii) a purchaser or transferee that wishes to take delivery in the form of a Regulation S Global Preference Share that has represented that it is a Benefit Plan Investor or a Controlling Person, assuming for this purpose that all deemed representations are true.  For purposes of the determination described in clause (i) of the preceding sentence, Preference Shares held by the Trustee, the Portfolio Manager, the Preference Shares Paying Agent, any of their respective affiliates (as defined in 29 C.F.R. Section 2510.3 101(f)(3)) and any other persons that have represented that they are Controlling Persons will be disregarded and will not be treated as Outstanding.

The purchaser's acquisition, holding and disposition of the Preference Shares will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental, foreign or church plan, any substantially similar federal, state, foreign or local law), unless an exemption is available, all conditions of which have been satisfied.

The purchaser further acknowledges and agrees that the Preference Share Paying Agency Agreement will entitle the Issuer to require the purchaser to dispose of the Preference

Shares as soon as practicable following notification by the Issuer of any change in the information supplied in this clause (11).

The purchaser understands that the representations made in this clause (11) will be deemed made on each day from the date hereof through and including the date on which the purchaser disposes of its interests in the Preference Shares.

The purchaser agrees to indemnify and hold harmless the Co-Issuers, the Preference Shares Paying Agent, the Placement Agent and the Portfolio Manager and their respective affiliates from any cost, damage, or loss incurred by them as a result of a breach of the representation in this Clause (11).

The purchaser agrees that it will not sell, pledge or otherwise transfer any Preference Shares in violation of the foregoing.

12.     The purchaser will provide notice to each Person to whom it proposes to transfer any interest in the Preference Shares of the transfer restrictions and representations set forth in the Preference Share Documents, including the exhibits referenced in the Preference Share Documents.

13.     The purchaser understands that the Preference Share Documents permit the Issuer to compel any Holder of the Preference Shares who is a U.S. Person and who is determined not to have been both (x) either a Qualified Institutional Buyer or Accredited Investor and (y) either (i) a Qualified Purchaser, (ii) a Knowledgeable Employee or (iii) an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees at the time of acquisition of the Preference Shares to sell such Preference Shares, or to sell such Preference Shares on behalf of such purchaser, to a person that is both (x) either a Qualified Institutional Buyer or Accredited Investor and (y) either (i) a Qualified Purchaser, (ii) a Knowledgeable Employee or (iii) an entity owned exclusively by Qualified Purchasers and/or Knowledgeable Employees in a transaction exempt from the registration requirements under the Securities Act or to a person that is a non-U.S. Person in an Offshore Transaction meeting the requirements of Regulation S.     The purchaser also understands that any transfer to an Accredited Investor  may require delivery of an opinion of counsel evidencing that such transfer may be made pursuant to an exemption from registration under the Securities Act, as described in the Preference Share Documents.

14.     The purchaser, if not a U.S. Person, either (i) is not a bank (within the meaning of Section 881(c)(3)(A) of the Code) or an affiliate of a bank or (ii) is a person (or a wholly owned affiliate of a person) that is eligible for benefits under an income tax treaty with the United States that eliminates United States federal income taxation of Unites States source interest not attributable to a permanent establishment in the United States.

15.     The purchaser acknowledges that no action was taken or is being contemplated by the Issuer that would permit a public offering of the Preference Shares or possession or distribution of the Offering Memorandum with respect thereto or any amendment thereof or supplement thereto or any other offering material relating to the Preference Shares in any jurisdiction (other than Ireland) where, or in any circumstances in which, action for those purposes is required.  Nothing contained in the Offering Memorandum relating to the Preference

Shares shall constitute an offer to sell or a solicitation of an offer to purchase any Preference Shares in any jurisdiction where it is unlawful to do so absent the taking of such action or the availability of an exemption therefrom.

16.     The purchaser understands that in the case of any supplemental indenture to the Indenture that requires consent of one or more Holders of the Preference Shares, the Indenture permits the Amendment Buy-Out Purchaser to purchase the beneficial interest in the Preference Shares from any Non-Consenting Holder thereof at the applicable Amendment Buy-Out Purchase Price; and such Non-Consenting Holder will be required to sell its beneficial interest in the Preference Shares to the Amendment Buy-Out Purchaser at such price.

17.     The purchaser understands that the scheduled redemption date of the Preference Shares is subject to multiple extensions of four years each without consent of any Holders of the Preference Shares at the option of the Issuer, if directed by the Portfolio Manager, upon satisfaction of certain conditions.

18.     The purchaser understands that in the case of any vote to remove the Portfolio Manager, the Management Agreement permits the Portfolio Manager to purchase the beneficial interest in the Preference Shares from any Holder of Preference Shares that voted to remove the Portfolio Manager at the applicable Buy-Out Amount; and such Holder of Preference Shares will be required to sell its beneficial interest in the Preference Shares to the Portfolio Manager at such price.

19.     The purchaser will not, at any time, offer to buy or offer to sell the Preference Shares by any form of general solicitation or advertising, including, but not limited to, any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium or broadcast over television or radio or seminar or meeting whose attendees have been invited by general solicitations or advertising.

20.     The purchaser agrees to treat the Preference Shares as equity of the Issuer for U.S. federal, state and local income tax purposes, if applicable.

21.     To the extent required by the Issuer, as determined by the Issuer or the Portfolio Manager on behalf of the Issuer, the Issuer may, upon notice to the Preference Shares Paying Agent and the Share Registrar, impose additional transfer restrictions on the Preference Shares to comply with the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the U.S. Patriot Act) and other similar laws or regulations, including, without limitation, requiring each transferee of a Preference Share to make representations to the Issuer in connection with such compliance.

22.     The purchaser agrees to not cause the filing of a petition in bankruptcy or winding up against the Issuer before one year and one day have elapsed since the payment in full of the Notes or, if longer, the applicable preference period in effect.

23.     The purchaser is not a member of the public in the Cayman Islands.

24.     The purchaser acknowledges that the Issuer, the Portfolio Manager, the Initial Purchaser and others will rely upon the truth and accuracy of the foregoing acknowledgments,

B-10

representations and agreements and agrees that if any of the acknowledgments, representations or agreements deemed to have been made by it by its purchase of the Preference Shares or any beneficial interest therein are no longer accurate, it shall promptly notify the Issuer, the Portfolio Manager and the Initial Purchaser. If the purchaser is acquiring any Preference Shares or any beneficial interest therein as a fiduciary or agent for one or more institutional accounts, it represents that it has sole investment discretion with respect to each such account and it has frill power to make the foregoing acknowledgments, representations and agreements on behalf of such account.

THIS LETTER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[The remainder of this page has been intentionally left blank.]

**IN WITNESS WHEREOF,** the undersigned has executed this Preference Share Transferee Certificate on the date set forth below.

Date: _____, 200_

**Number of Preference Shares subscribed for (at a purchase price of U.S.$1,000 per share):**

_____

**Aggregate purchase price of the Preference Shares subscribed for:**
U.S.$_____

_____
Print Name of Purchaser

By:_____
Signature of Authorized Signatory

_____
Print Name of Authorized Signatory

_____
Print Title of Authorized Signatory

**Please remember to give the Preference Shares Paying Agent the proper U.S. federal income tax certifications or else the Preference Shares Paying Agent may have to withhold part of any payment due and payable to you.**

(1)     the name and address of the registered Holder of the Preference Shares is:

_____

_____

_____

_____

_____

_____

B-12

(2)    the wire/payment instructions for the registered Holder of the Preference Shares are:

_____

_____

_____

_____

_____

_____

B-13