# EXHIBIT XX

*EXECUTION COPY*



ROCKWALL CDO LTD.,
as Issuer

and

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
as Paying Agent and as Transfer Agent

PAYING AND TRANSFER AGENCY AGREEMENT

(Relating to the Issuer's Preferred Shares)

Dated as of May 10, 2006

US_EAST:6216135.7

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| SECTION 1. | DEFINITIONS. | 1 |
| SECTION 2. | APPOINTMENT OF PAYING AGENT AND TRANSFER AGENT; TRANSFER AND DEPOSIT OF FUNDS. | 4 |
| SECTION 3. | AUTHORIZED REPRESENTATIVES | 5 |
| SECTION 4. | PAYMENT OF DIVIDENDS | 5 |
| SECTION 5. | PROCEDURES FOR PAYMENT OF DIVIDENDS AND REDEMPTION PRICE; PERSONS DEEMED OWNERS; WITHHOLDING | 5 |
| SECTION 6. | REDEMPTION. | 6 |
| SECTION 7. | ACCOUNTINGS; REPORTS BY PAYING AGENT; INFORMATION TO HOLDERS | 6 |
| SECTION 8. | SHARE REGISTER; REGISTRATION, TRANSFER, EXCHANGE; PERSONS DEEMED OWNERS | 7 |
| SECTION 9. | LIABILITY | 12 |
| SECTION 10. | INDEMNIFICATION | 13 |
| SECTION 11. | COMPENSATION OF THE PAYING AGENT AND TRANSFER AGENT | 13 |
| SECTION 12. | NOTICES | 14 |
| SECTION 13. | RESIGNATION OR REMOVAL OF PAYING AGENT AND APPOINTMENT OF SUCCESSOR PAYING AGENT; MERGER, CONVERSION AND CONSOLIDATION. | 15 |
| SECTION 14. | BENEFIT OF AGREEMENT | 17 |
| SECTION 15. | PREFERRED SHARES HELD BY THE PAYING AGENT; OTHER BUSINESS RELATIONS | 17 |
| SECTION 16. | AMENDMENT | 17 |
| SECTION 17. | GOVERNING LAW | 18 |
| SECTION 18. | COUNTERPARTS | 18 |
| SECTION 19. | EXHIBITS | 19 |
| SECTION 20. | NO PETITION | 19 |
| SECTION 21. | PRESCRIPTION | 19 |
| SECTION 22. | IDENTIFICATION OF PREFERRED SHAREHOLDERS | 19 |
| SECTION 23. | QEF ELECTION/SUBPART F INCOME /WITHHOLDING | 19 |
| SECTION 24. | ACCEPTANCE OF SECTION 13.12 OF THE INDENTURE | 19 |
| SECTION 25. | TERMINATION OF THE TRUST ESTATE BY THE TRUSTEE | 20 |
| SECTION 26. | COVENANTS OF THE ISSUER | 22 |
| SECTION 27. | SURVIVAL OF PROVISIONS | 24 |

SECTION 28.      LIMITED RECOURSE................................................................................ 25

SECTION 29.      PROCESS AGENT .................................................................................... 25

SECTION 30.      SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.................. 25

EXHIBITS

FORMS OF PREFERRED SHARES CERTIFICATE ..............................................................EXHIBIT A

FORM OF INVESTOR LETTER FOR PURCHASERS..........................................................EXHIBIT B

FORM OF RULE 144A TRANSFER CERTIFICATE ...........................................................EXHIBIT C

FORM OF REGULATION S TRANSFER CERTIFICATE....................................................EXHIBIT D

FORM OF PAYING AGENT NOTIFICATION TO PREFERRED SHAREHOLDERS.........EXHIBIT E

FORM OF SALE NOTICE....................................................................................................EXHIBIT F

FORM OF ACQUISITION NOTICE.....................................................................................EXHIBIT G

## PAYING AND TRANSFER AGENCY AGREEMENT

(Relating to the Issuer's Preferred Shares)

PAYING AND TRANSFER AGENCY AGREEMENT, dated as of May 10, 2006 (this **"Agreement"**), between ROCKWALL CDO LTD., an exempted company with limited liability incorporated under the laws of the Cayman Islands (together with its permitted successors and assigns, the **"Issuer"**), and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as the Paying Agent hereunder (in such capacity, together with its permitted successors and assigns, the **"Paying Agent"**) and as the Transfer Agent hereunder (in such capacity, together with its permitted successors and assigns, the **"Transfer Agent"**).

### PRELIMINARY STATEMENT

The Issuer may, pursuant to an Indenture dated as of the date hereof as amended from time to time (the **"Indenture"**), among the Issuer, ROCKWALL CDO (DELAWARE) CORP., a Delaware corporation (the **"Co-Issuer"** and, together with the Issuer, the **"Co-Issuers"**) and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as the Trustee thereunder (the **"Trustee"**) and as Securities Intermediary thereunder, issue multiple classes of secured notes (the **"Notes"**).

As authorized by the Issuer and permitted under the terms of the Issuer's Memorandum of Association and Articles of Association, the Issuer may issue up to 300,000,000 Class I Preferred Shares having a par value of U.S. $0.001 per share (the **"Class I Preferred Shares"**) and 300,000,000 Class II Preferred Shares having a par value of U.S. $0.001 per share (the **"Class II Preferred Shares"** and, together with the Class I Preferred Shares, the **"Preferred Shares"**) and the dividends and other distributions on which are payable in accordance with the Memorandum and Articles of Association of the Issuer, the Resolutions (as defined herein), the Indenture and this Agreement. On the Closing Date, the Issuer expects to issue 33,200,000 Class I Preferred Shares and 45,000,000 Class II Preferred Shares. The Issuer has entered into this Agreement to provide for the payment of such dividends and other distributions.

Section 1.    Definitions.

Except as otherwise specified herein or as the context may otherwise require, the following terms shall have the respective meanings set forth below for all purposes of this Agreement, and the definitions of such terms are equally applicable both to the singular and plural forms of such terms, and to the masculine, feminine and neuter genders of such terms. All other defined terms used herein and not defined herein shall have the meanings specified in the Indenture.

**"Articles"**: The Articles of Association of the Issuer, as they may from time to time be further amended and restated.

**"Authorized Representative"**: Any officer, director, employee, or agent of the Issuer authorized to give instructions and notices on behalf of the Issuer pursuant to Section 3 hereof.

**"Bear Preferred Shares"**: Preferred Shares, if any, initially issued to Bear Stearns or an Affiliate of Bear Stearns on the Closing Date.

**"Business Day"**: Any day that is a "Business Day" as defined in the Indenture, and that is not a day on which commercial banking institutions in the city in which the Paying Agent or the Transfer Agent is located are authorized or obligated by law or executive order to be closed.

**"Class"**: Any of the Class I Preferred Shares or the Class II Preferred Shares.

**"Class II Preferred Share Dividend"**: As such term is defined in the Indenture.

**"Definitive Preferred Share"**: Any registered Preferred Share represented by a certificate in or substantially in the form set out in Exhibit A-3 hereto which may be issued by the Issuer on the Closing Date or exchanged pursuant to Section 8 or which may be issued in exchange for a beneficial interest in the Global Preferred Share pursuant to Section 8.

**"Disqualified Transferee"**: The meaning set forth in Section 8(h).

**"Distribution Compliance Period"**: The meaning set forth in Section 8(b)(i).

**"ERISA"**: The Employee Retirement Income Security Act of 1974, as amended.

**"Excess Cash Flow"**: With respect to any Payment Date other than the Redemption Date, the funds or any Payment Date Equity Securities disbursed on such Payment Date by the Trustee to the Paying Agent (for the benefit of the Preferred Shareholders) pursuant to clause FOURTH of Section 11.1(b) of the Indenture; pursuant to clauses ELEVENTH, THIRTEENTH and FOURTEENTH of Section 11.1(c)(i) of the Indenture; and, with respect to the Redemption Date, the funds disbursed on the Redemption Date by the Trustee to the Paying Agent (for the benefit of the Preferred Shareholders) pursuant to clauses TWELFTH, FOURTEENTH and FIFTEENTH of Section 11.1(d) of the Indenture.

**"Holder"** or **"Preferred Shareholder"**: With regard to the Class II Preferred Shares, the registered holder of any Class II Preferred Share as set forth in the Share Register maintained by the Share Registrar. With respect to the Class I Preferred Shares, the Registered holder will be Rockwell Investors Corp. Notwithstanding any notice to the contrary, the Paying Agent shall have no obligation to recognize or deal with any Person claiming an interest in the Preferred Shares other than such registered holders. With regard to the Notes, the meaning specified in the Indenture.

**"Indenture"**: The meaning set forth in the Preliminary Statement hereof.

**"Investment Company Act"**: The United States Investment Company Act of 1940, as amended.

**"Investor Certificate"**: A letter substantially in the form of Exhibit B attached hereto, duly completed as appropriate.

**"Majority Preferred Shareholders"**: The Holders of more than 50% of the aggregate outstanding Preferred Shares (voting together as a single class).

**"Opinion of Counsel"**: A written opinion, addressed to the Paying Agent or the Transfer Agent, as the case may be (or on which the Paying Agent or the Transfer Agent may rely) and in form and substance reasonably satisfactory to the Paying Agent or the Transfer Agent, as the case may be, of an attorney at law admitted to practice before the highest court of any state of the United States or the District of Columbia or, with respect to matters relating to the laws of the Cayman Islands, the Cayman Islands, which attorney or attorneys may, except as otherwise expressly provided in this Agreement, be

counsel for the Issuer, the Co-Issuer, the Servicer, or any Preferred Shareholder, and who shall be reasonably satisfactory to the Paying Agent, the Transfer Agent and the Servicer, as applicable.

"**Paying Agent**": JPMorgan Chase Bank, National Association, as the Paying Agent hereunder or such other paying agent as may be appointed pursuant to Section 2(a) hereof.

"**Preferred Share Certificate**": With respect to any of the Preferred Shares, the physical certificate evidencing such Preferred Shares, which shall be substantially in the form of Exhibit A attached hereto.

"**Preferred Shares Collection Account**": The account established pursuant to Section 2(c).

"**Redemption Date**": The "Final Maturity Date," as such term is defined in the Indenture (or such other date on which the Preferred Shares may be redeemed in accordance with the terms of this Agreement).

"**Redemption Price**": The amount of Excess Cash Flow on the Redemption Date that is attributable to Adjusted Collateral Collections and any amounts remaining in the Expense Reimbursement Account and the Loan Funding Account.

"**Regulation S Global Preferred Shares**": The meaning set forth in Section 8(a).

"**Regulation S Transferor Certificate**": A certificate substantially in the form of Exhibit D attached hereto, duly completed as appropriate.

"**Relevant Date**": The meaning specified in Section 21 hereof.

"**Resolutions**": The resolutions passed by the Board of Directors of the Issuer on or before the date hereof approving the issue of the Preferred Shares as memorialized in the board minutes relating thereto.

"**Responsible Officer**": With respect to the Paying Agent or the Transfer Agent, as applicable, any officer within the corporate trust department of the Paying Agent or the Transfer Agent (or any successor group of the Paying Agent or the Transfer Agent, as applicable) including any vice president, assistant vice president, assistant secretary, or any other officer or assistant officer of the Paying Agent or the Transfer Agent, as applicable, customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred within the corporate trust department of the Paying Agent or the Transfer Agent because of his or her knowledge of and familiarity with the particular subject.

"**Restricted Preferred Share**": The meaning set forth in Section 8(b)(ii).

"**Rule 144A Information**": The meaning set forth in Section 8(f) hereof.

"**Rule 144A Transferor Certificate**": A certificate substantially in the form of Exhibit C attached hereto, duly completed as appropriate.

"**Rule 144A Preferred Share**": Any registered Preferred Share represented by a certificate in or substantially in the form set out in Exhibit A hereto which may be issued by the Issuer on the Closing Date or exchanged pursuant to Section 8.

**"Specialized Depositary"**: J.P. Morgan Bank Luxembourg S.A. or its nominee, and any successor thereto, as specialized depositary for Euroclear and Clearstream.

**"Securities Act"**: The United States Securities Act of 1933, as amended.

**"Share Registrar" and "Share Register"**: The respective meanings set forth in Section 8(a) hereof.

**"Transfer Agent"**: JPMorgan Chase Bank, National Association as the Transfer Agent hereunder or such other transfer agent as may be appointed pursuant to Section 2(b) herein.

Section 2.    Appointment of Paying Agent and Transfer Agent; Transfer and Deposit of Funds.

(a) The Issuer hereby appoints the Paying Agent to act as the Paying Agent for the Preferred Shares upon the terms, and subject to the conditions, set forth herein and in the Articles. The Issuer shall appoint an off-shore paying agent (in addition to and not in lieu of JPMorgan Chase Bank, National Association as Paying Agent) if requested by at least 33-2/3% of the Holders of the Preferred Shares, the cost of such agent to be borne by the Issuer. The Issuer may at any time and from time to time vary or terminate the appointment of the Paying Agent or appoint one or more additional Paying Agents. The Issuer will give prompt written notice to the Trustee of the appointment or termination of the Paying Agent and of the location and any change in the location of the Paying Agent's office or agency. The Paying Agent shall provide notice to the Holders of any such change or variation of which it receives notice.

(b) The Issuer hereby further appoints the Paying Agent to act as the Transfer Agent for the Preferred Shares upon the terms, and subject to the conditions, set forth herein. The Issuer shall appoint an off-shore transfer agent (in addition to and not in lieu of JPMorgan Chase Bank, National Association as Transfer Agent) if requested by at least 33-2/3% of the Holders of the Preferred Shares, the cost of such agent to be borne by the Issuer. The Issuer may at any time and from time to time vary or terminate the appointment of the Transfer Agent or appoint one or more additional Transfer Agents. The Issuer will give prompt written notice to the Trustee of the appointment or termination of the Transfer Agent and of the location and any change in the location of the Transfer Agent's office or agency. The Transfer Agent shall provide notice to the Holders of any such change or variation of which it receives notice.

(c) On or prior to the Closing Date, the Paying Agent shall establish a segregated non-interest bearing account designated as the **"Preferred Shares Collection Account,"** the deposits into which shall be held for the exclusive benefit of the Holders of the Preferred Shares. Any amounts deposited to the Preferred Shares Collection Account that constitute Class II Preferred Share Dividends shall for the benefit of and distributable only to the Holders of the Class II Preferred Shares.

(d) The Paying Agent shall deposit any funds received from the Trustee pursuant to the Indenture representing payments on the Preferred Shares (including, without limitation, all distributions made to the Paying Agent by the Trustee pursuant to Article XI of the Indenture) into the Preferred Shares Collection Account, all of which shall be distributed to the Preferred Shareholders in accordance with Sections 4, 5, 6 and 25 of this Agreement.

Section 3.    Authorized Representatives.

From time to time the Issuer will furnish the Paying Agent and the Transfer Agent (with a copy to the Trustee) with a signature list certifying the incumbency and specimen signatures of the Authorized

Representatives. Each of the Paying Agent, the Transfer Agent and the Trustee shall be entitled to rely on the last such certificate delivered to it for the purposes of determining the identity of Authorized Representatives.

Section 4.    Payment of Dividends.

(a) Subject to clause (c) below, on each Payment Date and the Redemption Date, the Holders of each Class of the Preferred Shares shall be entitled to receive dividends on each respective Class of the Preferred Shares in an amount equal to the amount of Excess Cash Flow allocable to such Class for such Payment Date less, with respect to the Redemption Date, such part of the Excess Cash Flow paid to redeem each respective Class of the Preferred Shares pursuant to Section 6 (in each case, subject to the Issuer having sufficient distributable profits and/or share premium of the Preferred Shares out of which to pay such amounts and, in the case of a payment from share premium, the Issuer being able to pay its debts as they fall due in the ordinary course of its business following such payment).

Any Excess Cash Flow that constitutes part of the Class II Preferred Share Dividend will not be allocable to the Class I Preferred Shares, rather, such amounts will only be available for distributions on the Class II Preferred Shares.

The Paying Agent, on behalf of the Issuer, shall promptly give notice of the amount of all Excess Cash Flow distributed hereunder (specifically identifying any Class II Preferred Shares Dividend Amount) for the relevant Payment Date to the Holders of the each Class of Preferred Shares in accordance with Section 12 hereof and to the Issuer, the Servicer and to Bear, Stearns & Co. Inc. The Paying Agent shall also make such information available to each Class of Preferred Shareholders at the offices of the Paying Agent.

(b) Dividends, if any, will be paid on each Payment Date to the Holders of the Preferred Shares who are registered at the close of business on the Record Date for such Payment Date. Dividends payable to the Preferred Shares from Excess Cash Flow (other than those amounts constituting the Class II Preferred Share Dividend) shall be paid by the Paying Agent *pro rata* in the proportion that the number of Preferred Shares held by a Holder bears to the total number of Preferred Shares outstanding. Excess Cash Flow constituting Class II Preferred Share Dividends shall be paid by the Paying Agent *pro rata* in the proportion that the number of Class II Preferred Shares held by the related Holder bears to the total number of Class II Preferred Shares outstanding.

(c)    On each Payment Date, Excess Cash Flow shall be paid to the Issuer, free and clear of the lien of the Indenture, to be applied to fund distributions to the holders of each respective Class of the Preferred Shares.

(d)    To the extent the requirements under Cayman Islands law described in this Section 4 are not met, amounts otherwise payable to the Holders of the Preferred Shares will be retained in the Preferred Shares Collection Account until, in the case of any payment by way of dividend, the next succeeding Payment Date on which the Issuer notifies the Paying Agent that such requirements are met. Amounts on deposit in the Preferred Shares Collection Account will not be available to pay amounts due to the Holders of the Notes, the Trustee or any other creditor of the Issuer whose claim is limited in recourse to the Portfolio Collateral. However, amounts on deposit in the Preferred Shares Collection Account may be subject to the claims of creditors of the Issuer that have not contractually limited their recourse to the Portfolio Collateral.

Section 5.     Procedures for Payment of Dividends and Redemption Price; Persons Deemed Owners; Withholding.

(a) All payments of dividends on the Preferred Shares and the payment of the Redemption Price for the Preferred Shares will be made in U.S. dollars and/or Payment Date Equity Securities. All of such payments in U.S. dollars shall be made by wire transfer from an account maintained by the Paying Agent (subject to usual and necessary banking procedures regarding U.S. Dollar denominated accounts), and payments of dividends shall be subject in all cases to any tax, fiscal or other laws or regulations applicable in the place of payment. Holders shall deliver a request to the Paying Agent setting forth the numbers of the Preferred Shares held by it and the Class designation of such Preferred Shares for which it shall receive payment by wire transfer and specifying the banking institution and account number (with any other appropriate information necessary to enable the Paying Agent to transmit such payment and to assure proper credit to such Holder's account) to which such payments are to be transferred. A record of each payment made will be maintained by or on behalf of the Paying Agent in accordance with its customary procedures, and such record shall be *prima facie* evidence that the payment in question has been made. The Issuer and the Paying Agent shall be fully protected in relying upon any such request in making payments on the Preferred Shares, and any payment transmitted in accordance with such request shall be deemed to have been made upon transmission thereof to the banking institution identified in such request.

(b) Unless the Holders request an off-shore Paying Agent pursuant to Section 2(a), all payments with respect to the Preferred Shares shall be made pursuant to presentation of a certificate representing the Preferred Shares, or the making of any other demand for payment, in the United States of America.

(c) In the case where the Trust Termination Date or Redemption Date shall not be a Business Day, then payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the nominal date of any such Trust Termination Date or Redemption Date, as the case may be.

The Issuer shall not be obligated to pay any additional amounts to the Holders of the Preferred Shares in the event that amounts are withheld from (i) payments to the Issuer on any of the Portfolio Collateral included in the Trust Estate or (ii) payments on the Notes or the Preferred Shares. As a condition to the payment of capital and dividends on any Preferred Share without the imposition of United States withholding tax, the Issuer shall require that certification acceptable to it be furnished to the Issuer and the Paying Agent in order to enable the Issuer and the Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments in respect of such Preferred Share under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any such law or regulation.

(d) The Issuer, the Paying Agent, the Transfer Agent and the Share Registrar shall deem and treat the registered Holder of any Preferred Share as the absolute owner of such Preferred Share, notwithstanding any notation of ownership or other writing on any certificate representing such Preferred Share, for the purpose of receiving dividends and the Redemption Price thereof and for all other purposes, and none of the Issuer, the Paying Agent, the Transfer Agent nor the Share Registrar shall be affected by any notice to the contrary. All such payments so made to such Holder or upon such Holder's order shall be valid and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for the monies payable upon any such Preferred Share.

Section 6.    Redemption.

(a) On the Redemption Date, subject to the Issuer having sufficient distributable profits and/or share premium of the Preferred Shares out of which to pay such amounts and, in the case of a payment from share premium, the Issuer being able to pay its debts as they fall due in the ordinary course of business following such payment, the Preferred Shares shall be redeemed in whole at the Redemption Price.

(b) All redemption payments (other than those amounts constituting the Class II Preferred Share Dividend) to a Holder shall be made *pro rata* in the proportion that the number of Preferred Shares held by such Holder bears to the total number of Preferred Shares. Any redemption payments constituting Class II Preferred Share Dividends paid to a Holder of a Class II Preferred Share shall be made *pro rata* in the proportion that the number of Class II Preferred Shares held by such Holder bears to the total number of Class II Preferred Shares.

(c)    To the extent the requirements under Cayman Islands law described in this Section 6 are not met, amounts otherwise payable to the Holders of the Preferred Shares will be retained in the Preferred Shares Collection Account until, in the case of any payment which would otherwise be payable on a redemption date of the Preferred Shares, the next succeeding Business Day on which the Issuer notifies the Paying Agent that such requirements are met. Amounts on deposit in the Preferred Shares Collection Account will not be available to pay amounts due to the Holders of the Notes, the Trustee or any other creditor of the Issuer whose claim is limited in recourse to the Portfolio Collateral. However, amounts on deposit in the Preferred Shares Collection Account may be subject to the claims of creditors of the Issuer that have not contractually limited their recourse to the Portfolio Collateral.

Section 7.    Accountings; Reports by Paying Agent; Information to Holders.

(a) With respect to each Calculation Date, the Paying Agent shall render an accounting, determined as of such Calculation Date, and delivered to the Holders, the Issuer, the Servicer and the Initial Purchaser not later than the Business Day prior to the Payment Date related to such Calculation Date. The Paying Agent shall render such accounting by reference to the accounting delivered by the Issuer pursuant to Section 10.5(b) of the Indenture. Such accounting shall contain the following information (stated in aggregate):

(i)    the amount of Excess Cash Flow to be received by the Paying Agent from the Trustee on the related Payment Date;

(ii)    the amounts payable as dividends on each Class of Preferred Shares on such Payment Date, specifically identifying any Class II Preferred Share Dividend payments; and

(iii)    if such accounting relates to the Redemption Date, the Redemption Price payable with respect to the Preferred Shares on such Redemption Date and the amount, if any, payable as a dividend on such Redemption Date specifically identifying any Class II Preferred Share Dividend payments.

(b) On or prior to each Payment Date, the Paying Agent shall provide the Holders of each Class of Preferred Shares with a copy of the Note Valuation Report and Noteholder Report prepared for delivery pursuant to Section 10.5 of the Indenture (including the most recent Monthly Report delivered therewith), with the report prepared by the Paying Agent pursuant to Section 7(a) hereof.

(c) The Paying Agent shall provide the Holders of each Class of Preferred Shares with all notices and any ballots required pursuant to the terms of the Indenture and the Servicing Agreement.

Section 8.          Share Register; Registration, Transfer, Exchange; Persons Deemed Owners.

(a) The Issuer shall cause to be kept a register (the **"Share Register"**) in which, subject to such reasonable regulations as it may prescribe and to the Companies Law (2004 Revision) of the Cayman Islands (as amended from time to time), the Issuer shall provide for the registration of the Preferred Shares (and any other share capital of the Issuer) and the registration of transfers of the Preferred Shares (and any other share capital of the Issuer). The Administrator is hereby irrevocably appointed by the Issuer to act as the **"Share Registrar"** for the purpose of registering the Preferred Shares (and any other share capital of the Issuer) and all transfers of the Preferred Shares (and any other share capital of the Issuer) as herein provided (it being hereby acknowledged that nothing contained herein shall limit, bar or restrict the ability or the right of the Transfer Agent to appoint agents or to delegate duties from time to time); provided, however, that a duplicate Share Register shall be maintained at the offices of the Transfer Agent, who shall promptly provide a copy to the Administrator and the Trustee following the Closing Date and thereafter promptly upon any transfer or exchange information the Transfer Agent receives and shall notify the Administrator and the Trustee of any transfer or exchange of a Preferred Share. The Administrator will maintain the original Share Register. The Share Registrar and the Issuer may rely conclusively on any information or documentation provided by the Transfer Agent without any liability on their part. For purposes of distributions, notices or otherwise, the Paying Agent, the Transfer Agent and the Trustee may conclusively rely on the duplicate copy of the Share Register maintained by the Transfer Agent.

Preferred Shares sold outside the United States to non-U.S. Persons in reliance on Regulation S shall be represented by one or more permanent physical share certificates, in fully registered definitive form and substantially in the form of Exhibit A-2 attached hereto (the **"Regulation S Global Preferred Shares"** and, each, a **"Regulation S Global Preferred Share"**), which will be deposited with the Specialized Depositary on behalf of Euroclear Bank S.A./N.V., as operator of Euroclear and/or Clearstream. Euroclear and/or Clearstream, as applicable, will credit the Regulation S Global Preferred Shares to the respective accounts designated by the subscribers of such Preferred Shares at Euroclear or Clearstream, as applicable. The registered owner of the relevant Regulation S Global Preferred Share (as indicated in the Share Register) shall be the only person entitled to receive payments in respect of the Preferred Shares represented by a Regulation S Global Preferred Share, and the Issuer will be discharged by payment to, or to the order of, the registered owner of such Regulation S Global Preferred Share in respect of each amount so paid. No person other than the registered owner of the relevant Regulation S Global Preferred Share shall have any claim against the Issuer in respect of any payment due on that Regulation S Global Preferred Share.

Preferred Shares sold in the United States to "qualified institutional buyers" within the meaning of Rule 144A under the Securities Act (**"Qualified Institutional Buyers"** and, each, a **"Qualified Institutional Buyer"**) who are U.S. Persons will be represented, on issue, by share certificates in definitive, fully registered form and substantially in the form of Exhibit A-3 attached hereto (**"Definitive Preferred Shares"** and, each, a **"Definitive Preferred Share"**).

Every certificate representing a Preferred Share presented or surrendered for registration of transfer or exchange shall (if so required by the Issuer or the Transfer Agent) be accompanied by a written instrument of transfer in form satisfactory to the Issuer and the Transfer Agent duly executed by the Holder thereof or its attorney-in-fact duly authorized in writing.

No service charge shall be made to a Holder for any registration of transfer or exchange of Preferred Shares, but the Issuer and/or the Transfer Agent may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Preferred Shares.

During the period of 15 days preceding any Payment Date, the Issuer shall not register the transfer of or to exchange any Preferred Shares.

Subject to the receipt by the Transfer Agent of a written certification substantially in the form of Exhibit D attached hereto (a **"Regulation S Transferor Certificate"**), a beneficial interest in a Global Preferred Share may be exchanged at any time for a Definitive Preferred Share if such beneficial interest will be transferred to a Qualified Institutional Buyer who is a U.S. Person. Such Definitive Preferred Share will be registered in the name of the transferee.

Definitive Preferred Shares will be issued and exchanged for each Regulation S Global Preferred Share within thirty days of the occurrence of any of the following: (i) either Euroclear or Clearstream is closed for business for a continuous period of 14 days (other than by reason of holiday, statutory or otherwise) or announces an intention permanently to cease business and no alternative clearance system satisfactory to the Paying Agent is available, (ii) as a result of any amendment to, or change in, the laws or regulations of Cayman Islands or of any authority therein or thereof having power to tax or in the interpretation or administration of such laws or regulations which becomes effective on or after the Closing Date, the Issuer or the Paying Agent are or will be required to make any deduction or withholding from any payment in respect of the Preferred Shares which would not be required were the Preferred Shares held as Definitive Preferred Shares, or (iii) the Issuer so elects by notice to the Holders of the Preferred Shares in accordance with this Agreement and Euroclear and/or Clearstream, as applicable, does not object. Notwithstanding the foregoing, a beneficial interest in a Regulation S Global Preferred Share may be exchanged for a Definitive Preferred Share only upon the receipt by the Transfer Agent from the owner of such beneficial interest of a Regulation S Transferor Certificate.

(b) No Preferred Shares may be sold or transferred (including, without limitation by pledge or hypothecation) unless such sale or transfer is exempt from the registration requirements of the Securities Act and is exempt from registration under applicable state securities laws. No purported transfer of any interest in any Preferred Share or any portion thereof that is not made in accordance with this Section 8 shall be given effect by or be binding upon the Transfer Agent or the Issuer, and any such purported transfer shall be null and void *ab initio* and vest in the transferee no rights against the Paying Agent, the Transfer Agent or the Issuer.

A Holder of a Preferred Share may transfer a Preferred Share or its beneficial interest in a Preferred Share only in accordance with the following provisions:

(i) The Holder of a Preferred Share who is a Non-U.S. Person pursuant to Regulation S under the Securities Act may transfer such Preferred Share prior to the expiration of a one-year period beginning on the later of the Closing Date or on the day on which the offer of the Preferred Shares is completed (as notified in writing to the Paying Agent) (the **"Distribution Compliance Period"**), only (1) to a Non-U.S. Person who certifies that it is not a U.S. Person and is not acquiring the Preferred Share for the account or benefit of any U.S. Person and is a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act or (2) to a U.S. Person who agrees to receive a Restricted Preferred Share (as such term is defined in paragraph (ii) below) and who certifies that it is a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act and, in each case, agrees to resell such Preferred Share only in accordance with the provisions of Regulation S and Rule 144A, pursuant to

registration under the Securities Act, or pursuant to an available exemption from registration under the Securities Act and agrees not to engage in hedging transactions with regard to such securities unless in compliance with the Securities Act. Each Holder of a Preferred Share (other than Non-U.S. Persons purchasing Preferred Shares in reliance on Regulation S and Rule 144A) is required to be a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act or a "knowledgeable employee" within the meaning of Rule 3c-5 of the Investment Company Act and may only transfer such Preferred Share to a U.S. Person if that U.S. Person is also a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act or a "knowledgeable employee" within the meaning of Rule 3c-5 of the Investment Company Act.

(ii)     A Holder of a Preferred Share (a **"Restricted Preferred Share"**) who is a U.S. Person may at any time transfer its interest in such Preferred Share only (a) to a Non-U.S. Person pursuant to Regulation S who is a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act and (b) to a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act not requiring registration under the Securities Act, and, in the case of clause (b), only to a transferee who is also a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act or a "knowledgeable employee" within the meaning of Rule 3c-5 of the Investment Company Act.

(iii)     The Transfer Agent shall require, prior to any such transfer of a Preferred Share, receipt by the Transfer Agent and the Issuer of (A) an Investor Certificate from such Preferred Shareholder's transferee and (B) a Regulation S Transferor Certificate and a Rule 144A Transferor Certificate from such Holder, in each case certifying to the foregoing and the other matters covered by the forms of such certificates prescribed by this Agreement. Upon receipt of the Investor Certificate and the relevant Transferor Certificate, and the surrender to the Transfer Agent of the Preferred Share Certificate to be so transferred, the Transfer Agent shall cancel such Preferred Share Certificate, and the Issuer shall execute and provide to the Transfer Agent, and the Transfer Agent shall deliver, a Preferred Share Certificate representing the Preferred Shares intended to be transferred to such transferee (and, in the event of a partial transfer, the Issuer shall execute and provide to the Transfer Agent, and the Transfer Agent shall deliver, a Preferred Share Certificate representing the remaining balance to the transferring Holder). The Issuer shall cause the Share Register to be updated accordingly.

(iv)     Transfers of beneficial interests in the Regulation S Global Preferred Shares may only be made by book-entry transfer of beneficial interests in the Regulation S Global Shares within Euroclear and/or Clearstream (and subject to the Specialized Depositary's applicable procedures) to non-U.S. Persons in accordance with Regulation S who are also "qualified institutional buyers" within the meaning of Rule 144A under the Securities Act. Each subsequent transferee shall be deemed to have made the applicable representation set forth in this Section 8(b)

(v)     Notwithstanding anything to the contrary herein, in the event any Holder of Class II Preferred Shares wishes to transfer all or a portion of its Class II Preferred Shares (the **"Class II Seller"**) to any qualified third party purchaser (the **"Class II Buyer"**), including any holders of preferred shares (the **"Holding Preferred Shares"**) of Rockwall Investors Corp. (**"Investors Corp."**), such transfer shall only be effected by the Issuer redeeming such Class II Preferred Shares and correspondingly issuing new Class I Preferred Shares and Investors Corp. issuing new Holding Preferred Shares in accordance with this Section 8(b)(v) and the applicable provisions of the Articles of Association of each of the Issuer and Investors Corp. At least 10 days prior to any transfer by a Class II Seller to a Class II Buyer, such Class II Seller and Class II Buyer shall

jointly notify the Issuer, the Transfer Agent, the Servicer and Investors Corp. of their intention to effect such transfer of Class II Preferred Shares, in the form of Exhibit F (attached hereto) indicating the number of Class II Preferred Shares to be sold and the corresponding number of Class I Preferred Shares to be issued and transferred to Investors Corp. and the number of Holding Preferred Shares to be issued and acquired by the Class II Buyer, the price for such purchase and sale and the date on which such purchase and sale is expected to occur (such notice, the **"Sale Notice"**). The Issuer shall, on the date indicated in the Sale Notice subject to such redemption being approved in writing by the Board of Directors of the Issuer and subject to such redemption being in respect of 200,000 Class II Preferred Shares or more, redeem the indicated number of Class II Preferred Shares to be sold by the Class II Seller and issue an equal number of Class I Preferred Shares registered in the name of Investors Corp. Simultaneously with such redemption and new issuance by the Issuer, Investors Corp., pursuant to the Investors Corp. Paying and Transfer Agency Agreement and its Articles of Association, shall issue new Holding Preferred Shares to the Class II Buyer equal in number to the number of Class II Preferred Shares being sold by the Class II Seller as indicated in the Sale Notice. The Class II Buyer shall pay Investors Corp. for its subscription to such newly issued Holding Preferred Shares in an amount indicated in the Sale Notice, Investors Corp. shall immediately apply such amount to pay the subscription price to the Issuer for the newly issued Class I Preferred Shares, and the Issuer shall immediately apply such amount to pay the redemption price to the Class II Seller for the redemption of such Class II Seller's Class II Preferred Shares.

(vi)  Notwithstanding anything to the contrary herein, in the event the Holder of any Class II Preferred Shares (the **"Holding Buyer"**) wishes to acquire any Holding Preferred Shares from any holder of Holding Preferred Shares (the **"Holding Seller"**), such transfer shall only be effected by the Investors Corp. redeeming Holding Preferred Shares and the Issuer redeeming a corresponding number of Class I Preferred Shares and issuing new Class II Preferred Shares in accordance with this Section 8(b)(vi) and the applicable provisions of the Articles of Association of each of the Issuer and Investors Corp. At least 10 days prior to any transfer by a Holding Seller to a Holding Buyer, such Holding Seller and Holding Buyer shall jointly notify the Issuer, the Transfer Agent, the Servicer and Investors Corp. of their intention to effect such acquisition of Holding Preferred Shares, indicating the number of Holding Preferred Shares to be sold by the Holding Seller, the corresponding number of Class I Preferred Shares to be redeemed by the Issuer and the number of Class II Preferred Shares to be issued and acquired by the Holding Buyer, respectively, the price for such purchase and sale and the date on which such purchase and sale is expected to occur (such notice, the **"Acquisition Notice"**). On the date indicated in the Sale Notice, Investors Corp. shall, subject to such redemption being approved in writing by the Board of Directors of Investors Corp. and subject to such redemption being in respect of 200,000 Holding Preferred Shares or more, redeem the indicated number of Holding Preferred Shares to be sold by Holding Seller and the Issuer shall, subject to such redemption being approved in writing by the Board of Directors of the Issuer, redeem Class I Preferred Shares in an amount equal to the number of Holding Preferred Shares being sold as indicated in the Acquisition Notice. Simultaneously with such redemption of Class I Preferred Shares, the Issuer shall issue Class II Preferred Shares to the Holding Buyer in an amount equal to the amount of Class I Preferred Shares being redeemed as indicated in the Acquisition Notice. The Holding Buyer shall pay the Issuer for its subscription to such newly issued Class II Preferred Shares in an amount indicated in the Acquisition Notice, the Issuer shall immediately apply such amount to pay the redemption price to Investors Corp. for the redemption of the Class I Preferred Shares, and Investors Corp. shall immediately apply such amount to pay the redemption price to Holding Seller for the redemption of the Holding Preferred Shares.

The Investor Certificate and any Rule 144A Transferor Certificate or Regulation S Transferor Certificate furnished pursuant to this Section 8(b) may be relied on conclusively by the Transfer Agent in determining whether the provisions of this Section 8(b) have been complied with. None of the Issuer, the Transfer Agent, or any other Person shall be required to register the Preferred Shares under the Securities Act or any state securities laws.

Notwithstanding anything in this Section 8 to the contrary, in connection with any sale of Bear Preferred Shares by Bear Stearns, no delivery of an Investor Certificate, a 144A/Transferor Certificate or a Regulation S Transferor Certificate (as applicable) shall be required so long as each purchaser of Notes executes and delivers a transferee certificate acceptable to Bear Stearns (which certificate shall contain a representation that the transferee is a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act and shall, in the case of any transfer pursuant to Section 8(b)(iii), identify each transferee of a beneficial interest in the Regulation S Global Preferred Share, including name, address, payment instructions and such other information as the Transfer Agent or Common Depositary reasonably may require), which transferee certificate shall be delivered to the Transfer Agent.

(c) The applicable procedures utilized or imposed from time to time by any Clearance System (collectively, "**Applicable Procedures**") shall be applicable to the Regulation S Global Preferred Shares insofar as and to the extent beneficial interests in such Regulation S Global Preferred Shares are held by the agent members of or participants in Euroclear or Clearstream. Account holders or agent members of or participants in Euroclear or Clearstream shall have no rights under this Agreement with respect to such Regulation S Global Preferred Shares, and the Specialized Depositary as registered Holder of the Regulation S Global Preferred Shares may be treated by the Issuer and the Paying Agent as the owner of such Regulation S Global Preferred Shares for all purposes whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Issuer or the Paying Agent from giving effect to any written certification, proxy or other authorization furnished by any Clearance System or impair, as between the Clearance System and its agent members or participants, the operation of customary practices governing the exercise of the rights of a Holder of any Regulation S Global Preferred Shares. Requests or directions from, or votes of the Specialized Depositary or any Clearance System with respect to any matter shall not be deemed inconsistent if made with respect to (or in separate proportions corresponding to) different beneficial owners. The Paying Agent shall have no duty to monitor, maintain records concerning (or determine compliance with any of the restrictions on transfer set forth herein with respect to) owners of beneficial interest in the Regulation S Global Preferred Shares. The Paying Agent shall have no liability for the accuracy of the records of the Specialized Depositary or any Clearance System, or any actions or omissions of the Specialized Depositary or any Clearance System (or of the agent members of or participants in any Clearance System).

(d) Except with respect to Preferred Shares sold to the Initial Purchaser, the minimum number of Preferred Shares (including the Preferred Share Components of the Combination Notes) that may be sold by the Issuer on the Closing Date or transferred by any Holder of Preferred Shares shall be 200,000 and integral multiples of $1 share in excess thereof.

(e) Global Preferred Shares will trade nominally in an amount equal to $1 for each Preferred Share.

(f) The Preferred Shares may not be acquired or held by any employee benefit plan (as defined in Section 3(3) of ERISA) subject to Title I of ERISA (**"ERISA Plan"** and, together with individual retirement accounts and Keogh plans subject to Section 406 of ERISA or Section 4975 of the Code, **"Plans"**) or Plan or other "benefit plan investor" (as defined in 29 C.F.R. Section 2510.3-101) (**"Benefit Plan Investor"**), including a life insurance company general account or a governmental or foreign plan that is generally not subject to Title I of ERISA or Section 4975 of the Code. However, Preferred Shares

may be acquired and held by or on behalf of, or with "plan assets" of, a Plan or other Benefit Plan Investor if (a)(1)(A) the investor is purchasing the Preferred Shares with assets of an "insurance company general account" (within the meaning of PTCE 95-60) (a "**General Account**"); (B) the investor's purchase and holding of the Preferred Shares are eligible for the exemptive relief afforded under Section I of PTCE 95-60; (C) less than 25% of the assets of such General Account constitute "plan assets" of Benefit Plan Investors; and (D) if, after the initial acquisition of the Preferred Shares, during any calendar quarter, 25% or more of the assets of such General Account (as determined by such insurance company) constitute "plan assets" of any Plan or other Benefit Plan Investor and full exemptive relief from the prohibited transaction prohibitions of Section 406 of ERISA and Section 4975 of the Code is not available under Section 401(c) of ERISA and the regulations thereunder then such investor will dispose of all of the Preferred Shares then held in such General Account by the end of the next following calendar quarter; (2) the investor's purchase and holding of the Preferred Shares are eligible for the exemptive relief afforded under PTCE 96-23, 91-38, 90-1 or 84-14; or (3) it is purchasing the Preferred Shares solely with "plan assets" not subject to Title I of ERISA, Section 4975 of the Code or similar law; and (b) after giving effect to such purchase and all other purchases occurring simultaneously therewith, less than 25% of each Class of the Preferred Shares (excluding the Preferred Shares held by the Servicer and its affiliates or clients) will constitute "plan assets" of Benefit Plan Investors. Additionally, no transfer may be made unless the Issuer shall have determined that the transfer is not being effected through an "established securities market" within the meaning of Treasury Regulation Section 1.7704-1(b) and will not result in the Issuer having more than 75 shareholders (determined in conformity with Treasury Regulation Section 1.7704-1(h)(3)).

By its purchase of the Preferred Shares, each purchaser and transferee will be required to represent, warrant and agree in writing that (i) its purchase and holding of such Preferred Shares will satisfy the ERISA requirements described in the preceding paragraph and (ii) it will not assign or transfer such Preferred Shares unless (1) the proposed assignee or transferee delivers a letter to the Issuer evidencing its agreement to the foregoing ERISA representations and covenants with respect to its purchase, holding and transfer of such Preferred Shares; and (2) if the investor (x) is not (and is not acting on behalf of) a Benefit Plan Investor, the assignee or transferee will also not be a Benefit Plan Investor; or (y) is (or is acting on behalf of) a General Account, the assignee or transferee will be accurately identified in such letter as either another General Account or a person who is not (and is not acting on behalf of) a Benefit Plan Investor; or (z) is (or is acting on behalf of or with "plan assets" of) a Benefit Plan Investor (other than a General Account), the assignee or transferee will be accurately identified in such letter as either a General Account, another Benefit Plan Investor or a person who is not (and is not acting on behalf of) any Benefit Plan Investor; provided that for purposes of clauses (x), (y) and (z), a transfer by a Holder (the "**Transferring Holder**") to Bear, Stearns & Co. Inc. in a secondary market transaction and subsequent transfers by Bear, Stearns & Co. Inc. to a Holder (the "**Transferee Holder**"), shall be deemed to be a transfer by the Transferring Holder to the Transferee Holder and Bear, Stearns & Co. Inc. may therefore transfer such Preferred Shares to any potential Holder to whom the Transferring Holder would be permitted to transfer.

(g) No Preferred Share shall be sold or transferred (including, without limitation, by pledge or hypothecation) to a U.S. Person unless such purchaser or transferee is a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act or a "knowledgeable employee" within the meaning of Rule 3c-5 of the Investment Company Act. The Transfer Agent may conclusively rely on the statement in any Investor Certificate, and shall be entitled to rely conclusively on the continuing accuracy thereof from time to time (unless and until a Responsible Officer is otherwise notified in writing by the signatory thereto or by the Issuer) in determining whether the provisions of this Section 8(f) have been complied with. Notwithstanding anything to the contrary in this Agreement, no transfer of a Preferred Share may be made if such transfer would require registration of the Issuer or the Co-Issuer under the Investment Company Act (subject, with respect to the Transfer Agent's duties, to Section 8(g) below).

(h) At any time when the Issuer is not subject to Section 13 or 15(d) of the United States Securities Exchange Act of 1934, as amended, upon the request of any Preferred Shareholder, the Issuer shall promptly furnish to such Preferred Shareholder or to a prospective purchaser of any Preferred Share designated by such Preferred Shareholder, as the case may be, the information which the Issuer determines to be required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act (**"Rule 144A Information"**) in order to permit compliance by such Preferred Shareholder with Rule 144A in connection with the resale of such Preferred Share by such Preferred Shareholder; *provided that* the Issuer shall not be required to provide audited financial statements more than once a year or to furnish Rule 144A Information in connection with any request made on or after the date that is three years from the later of (i) the date such Preferred Share (or any predecessor Preferred Share) was acquired from the Issuer or (ii) the date such Preferred Share (or any predecessor Preferred Share) was last acquired from an "affiliate" of the Issuer within the meaning of Rule 144A, in each case as determined by the Issuer. Upon request by the Issuer, the Transfer Agent shall cooperate with the Issuer in mailing or otherwise distributing (at the Issuer's expense) to such Preferred Shareholders or prospective purchasers, at and pursuant to the Issuer's written direction, the foregoing materials prepared and provided by the Issuer, *provided that* the Transfer Agent shall be entitled to affix thereto or enclose therewith such disclaimers as the Transfer Agent shall deem reasonably appropriate, at its discretion (such as, for example, a disclaimer that such Rule 144A Information was assembled by the Issuer, and not by the Transfer Agent, that the Transfer Agent has not reviewed or verified the accuracy thereof, and that it makes no representation as to the sufficiency of such information under Rule 144A or for any other purpose).

(i) Neither the Transfer Agent nor the Paying Agent shall be responsible for ascertaining whether any transfer of the Preferred Shares complies with, or otherwise for monitoring or determining compliance with, the requirements or terms of the Securities Act, applicable state securities laws, ERISA, the Code or the Investment Company Act; except that if a certificate is specifically required by the terms of this Section 8 to be provided to the Transfer Agent or the Paying Agent by a transferee of the Preferred Shares, a transferor of the Preferred Shares, or the Issuer, the Transfer Agent or the Paying Agent, as applicable, shall be under a duty to receive and examine the same to determine whether it conforms substantially on its face to the applicable requirements of this Section 8.

(j) If a Responsible Officer of the Transfer Agent becomes aware that (i) a transfer or attempted or purported transfer of any of the Preferred Shares or any interest therein was consummated in compliance with the provisions of this Section 8 on the basis of a materially incorrect certification from the transferor or purported transferee, (ii) a transferee failed to deliver to the Transfer Agent any certificate required to be delivered hereunder, or (iii) the Holder of any Preferred Share or interest therein is in material breach of any representation or agreement set forth in any certificate or any deemed representation or agreement of such Holder, then the Transfer Agent will not register such attempted or purported transfer, and, if a transfer has been registered, such transfer shall be absolutely null and void *ab initio* and shall vest no rights in the purported transferee (such purported transferee, a **"Disqualified Transferee"**), and the last preceding Holder of such Preferred Share that was not a Disqualified Transferee shall be restored to all rights as a Holder thereof retroactively to the date of transfer of such Preferred Share by such Holder.

Section 9.     Liability.

Neither the Paying Agent nor the Transfer Agent nor the directors, officers, employees or agents of either of them shall be liable for any act or omission hereunder except that the Paying Agent and the Transfer Agent shall be liable in the case of gross negligence, bad faith, or willful misconduct of the Paying Agent or the Transfer Agent or any of their respective directors, officers, employees, affiliates or agents, as the case may be, in violation of the duties of the Paying Agent or the Transfer Agent under this Agreement. The duties and obligations of the Paying Agent and the Transfer Agent and their respective

employees or agents shall be determined solely by the express provisions of this Agreement, and they shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants shall be read into this Agreement against them. The Paying Agent and the Transfer Agent may consult with counsel selected by them with reasonable care and shall be protected in any action reasonably taken in good faith in accordance with the advice of such counsel.

The Paying Agent and the Transfer Agent each may rely conclusively on any notice, certificate or other document furnished to it hereunder and reasonably believed by it in good faith to be genuine. Neither the Paying Agent nor the Transfer Agent shall be liable for any action taken by it in good faith and reasonably believed by it to be within the discretion or powers conferred upon it, or taken by it pursuant to any direction or instruction by which it is governed hereunder, or omitted to be taken by it by reason of the lack of direction or instruction required hereby for such action. The Paying Agent and the Transfer Agent shall in no event be liable for the application or misapplication of funds by any other Person, or for the acts or omissions of any other Person. The Paying Agent and the Transfer Agent shall not be bound to make any investigation into the facts or matters stated in any certificate, report or other document; *provided that,* if the form thereof is prescribed by this Agreement, the Paying Agent and the Transfer Agent, as the case may be, shall examine the same to determine whether it conforms on its face to the requirements hereof. The Paying Agent and the Transfer Agent each may exercise or carry out any of its duties under this Agreement either directly or indirectly through agents or attorneys, and shall not be responsible for any acts or omissions on the part of any such agent or attorney appointed with due care, provided that the Paying Agent or, as the case may be, the Transfer Agent ensure that such agent or attorney are directly liable to the Issuer. To the extent permitted by applicable law, neither the Paying Agent nor the Transfer Agent shall be required to give any bond or surety in the execution of its duties. Neither the Paying Agent nor the Transfer Agent shall be deemed to have knowledge or notice of any matter unless actually known by a Responsible Officer of the Paying Agent or Transfer Agent, as applicable, or unless the Paying Agent or the Transfer Agent, as applicable, has received written notice thereof from the Issuer, the Servicer, the Trustee, or the Holder of a Preferred Share. The Paying Agent shall not be obligated to make payments hereunder unless it has received (or is reasonably certain it will receive) the applicable amounts from the Trustee for which such payment is to be made.

Section 10.    Indemnification.

Subject to the terms of the Indenture, the Issuer agrees to indemnify and hold harmless the Paying Agent and the Transfer Agent, and their respective directors, officers, employees, affiliates and agents from and against any and all liabilities, costs and expenses (including reasonable legal fees and expenses) relating to or arising out of or in connection with its or their performance under this Agreement, except to the extent that they are caused by the gross negligence, bad faith, or willful misconduct of the Paying Agent or the Transfer Agent, as the case may be. The foregoing indemnity includes, but is not limited to, any action taken or omitted in good faith within the scope of this Agreement upon telephone, telecopier or other electronically transmitted instructions, if authorized herein, received from or reasonably believed by the Paying Agent or the Transfer Agent, as the case may be, acting in good faith, to have been given by, an Authorized Representative. This indemnity shall survive the resignation or removal of the Paying Agent or the Transfer Agent, as the case may be, and the satisfaction or termination of this Agreement.

Section 11.    Compensation of the Paying Agent and Transfer Agent.

Pursuant to, and at the times and to the extent contemplated by the Indenture, the Issuer shall pay to the Paying Agent and the Transfer Agent compensation at such amounts and/or rates as shall be agreed between the Issuer and, as applicable, the Paying Agent and the Transfer Agent and from time to time shall reimburse the Paying Agent and the Transfer Agent for their respective reasonable out-of-pocket expenses (including reasonable legal fees and expenses), disbursements, and advances incurred or made

in accordance with any provisions of this Agreement, except any such expense, disbursement, or advance that may be attributable to its gross negligence, bad faith or willful misconduct. The obligations of the Issuer to the Paying Agent and the Transfer Agent pursuant to the Indenture and this Section shall survive the resignation or removal of the Trustee and the satisfaction or termination of this Agreement. Notwithstanding any provision of this Agreement to the contrary (other than with respect to Section 28), to the extent any amounts owing to the Paying Agent and/or the Transfer Agent from time to time pursuant to this Section 11 shall remain unpaid, the Paying Agent and/or the Transfer Agent shall be entitled, after having provided reasonable notice in writing to the Issuer, the Trustee, to pay to itself, for application to such unpaid amounts, any funds held or received by it at any time or times under or pursuant to this Agreement prior to making payment of amounts otherwise required under this Agreement to be made to the Preferred Shareholders (or any other Persons).

Section 12.    Notices.

(a) All communications by or on behalf of the Issuer relating to the transfer, exchange, or payment in respect of a Preferred Share or any interest therein shall be directed to the Paying Agent and the Transfer Agent at its address set forth in subsection (c)(ii) hereof.

(b) The Paying Agent shall notify the Preferred Shareholders of the occurrence of any Event of Default under the Indenture of which it receives notice from the Trustee.

Where this Agreement provides for notice to Preferred Shareholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if such notice is in writing and mailed, first-class postage prepaid, to each Preferred Shareholder affected by such event, at such Preferred Shareholder's address as it appears on the Share Register, in the case of (a) or (b) not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

Neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Preferred Shareholder shall affect the sufficiency of such notice with respect to other Preferred Shareholders. Any notice that is given in the manner herein provided shall conclusively be presumed to have been duly given whether or not actually received by such Preferred Shareholder. Any notice to Preferred Shareholders provided for in this Agreement will be deemed to have been given on the date of mailing.

Where this Agreement provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Preferred Shareholders shall be filed with the Paying Agent but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In the event that, by reason of the suspension of the regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Preferred Shareholders when such notice is required to be given pursuant to any provision of this Agreement, then any manner of giving such notice as shall be satisfactory to the Paying Agent shall be deemed to be a sufficient giving of such notice.

(c) Notices and other communications hereunder shall (except to the extent otherwise expressly provided) be in writing and shall be addressed as follows, or to such other addresses as the parties hereto shall specify from time to time:

(i)    if to the Issuer:

ROCKWALL CDO LTD.
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town, Grand Cayman, Cayman Islands
Attention: The Directors
Telephone: (345) 945-7099
Telefax: (345) 945-7100


(ii)    if to the Trustee, the Paying Agent or to the Transfer Agent:

JPMorgan Chase Bank, National Association
600 Travis Street, 50th Floor
Houston, Texas 77002
Attention: Worldwide Securities Services – Rockwall CDO
Telephone: (713) 216-2024
Facsimile: (713) 216-3572

(iii)    if to the Servicer:

Highland Capital Management, LP
Two Galleria Tower
13455 Noel Road, Suite 1300
Dallas, Texas 75240
Attention: Jim Dondero
Telephone: (972) 628-4100
Facsimile: (972) 628-4147


(iv)    if to Investors Corp.:

ROCKWALL INVESTORS CORP.
c/o Maples Finance Limited
P.O. Box 1093GT
Queensgate House
South Church Street
George Town, Grand Cayman, Cayman Islands
Attention: The Directors
Telephone: (345) 945-70

(v)    if to the Bear, Stearns & Co. Inc.:

Bear, Stearns & Co. Inc.
383 Madison Avenue
New York, New York 10179
Telephone: (212) 272-4955
Attention: Strategic Financial Products, Senior Managing Director

Section 13.    Resignation or Removal of Paying Agent and Appointment of Successor Paying Agent; Merger, Conversion and Consolidation.

(a) The Issuer agrees, for the benefit of the Holders from time to time of the Preferred Shares, that there shall at all times be a Paying Agent and a Transfer Agent hereunder, each of which shall be a company authorized to engage in the activities set forth in this Agreement, subject to supervision or examination by governmental authorities, until all the Preferred Shares shall have been redeemed.

(b) The Paying Agent or the Transfer Agent may at any time resign as such agent by giving written notice to the Issuer and S&P of such intention on its part, specifying the date on which its desired resignation shall become effective; *provided* that such date shall be not less than 90 days after the giving of such notice by the Paying Agent or the Transfer Agent to the Issuer. The Paying Agent or the Transfer Agent may be removed at any time by the filing with it of an instrument in writing signed by an Authorized Representative of the Issuer and specifying such removal and the date, which shall be at least thirty days after the date of such written notice, upon which it is intended to become effective. The Issuer shall give written notice of any removal of the Paying Agent or Transfer Agent to S&P. Any such resignation or removal shall take effect on the date of the appointment by the Issuer of a successor Paying Agent or Transfer Agent and the acceptance of such appointment by such successor Paying Agent or Transfer Agent that qualifies as such under Section 13(a) hereof. The Issuer shall give written notice of the appointment of any successor Paying Agent or Transfer Agent to S&P. In the event of resignation by the Paying Agent or Transfer Agent, if a successor agent has not been appointed by the Issuer within 90 days after the giving of notice by the Paying Agent or Transfer Agent of its intention to resign, the Paying Agent or Transfer Agent, as applicable, may, at the expense of the Issuer, petition any court of competent jurisdiction for appointment of a successor Paying Agent or Transfer Agent provided that it shall be qualified under Section13(a) hereof. Upon any such resignation or removal, the Paying Agent shall transfer to the successor Paying Agent or Transfer Agent (or, if none shall have been appointed, to the Issuer) all monies held by the Paying Agent or Transfer Agent on behalf of the Issuer in respect of any Preferred Shares and all books and records related to Preferred Shares maintained by the Paying Agent or Transfer Agent, including a copy of the Share Register.

(c) Any corporation or bank into which the Paying Agent or the Transfer Agent hereunder may be merged or converted, or any corporation or bank with which the Paying Agent or the Transfer Agent may be consolidated, or any corporation or bank resulting from any merger, conversion or consolidation to which the Paying Agent or the Transfer Agent shall be a party, or any corporation or bank to which the Paying Agent or the Transfer Agent shall sell or otherwise transfer all or substantially all of the assets and business of the Paying Agent or the Transfer Agent, provided that it shall be qualified under Section13(a) hereof, shall be the successor Paying Agent or successor Transfer Agent, as applicable, under this Agreement, without the execution or filing of any paper or any further act on the part of any of the parties hereto.

(d) The successor Paying Agent or the successor Transfer Agent, as applicable, shall give prompt notice of the resignation and removal of the Paying Agent or the Transfer Agent, as applicable, and the appointment of a successor Paying Agent or successor Transfer Agent, as applicable, by notifying the Holders of the Preferred Shares in accordance with Section 12 hereof. Each notice shall include the name of the successor Paying Agent or successor Transfer Agent, as applicable, and the address of the office from which this Agreement shall be administered.

Section 14.    Benefit of Agreement.

This Agreement is solely for the benefit of the parties hereto, the Holders of the Preferred Shares from time to time, and their respective successors and assigns, and nothing herein, express or implied,

shall give to any other persons any benefits or any legal or equitable right, remedy or claim under or by virtue of this Agreement. No party hereto may assign any of its rights or obligations hereunder except with the prior written consent of all the parties hereto.

Section 15.     Preferred Shares Held by the Paying Agent; Other Business Relations.

Each of the Paying Agent or the Transfer Agent, in its individual or other capacity, may become the owner or pledgee of Preferred Shares with the same rights it would have if it were not acting as Paying Agent or Transfer Agent hereunder. The Paying Agent and the Transfer Agent may each conduct other business with the Issuer from time to time (including but not limited to its appointment and service as a paying agent under the Indenture).

Section 16.     Amendment.

(a)     Without the consent of any Holders of Preferred Shares, the Issuer, the Paying Agent and the Transfer Agent, at any time, may enter into one or more agreements supplemental hereto for any of the following purposes:

(1)     to evidence the succession of a successor entity to the Issuer and the assumption by any such successor of the covenants of the Issuer herein and in the Preferred Shares;

(2)     to take any action deemed reasonably necessary by the Issuer to prevent the reduction of dividends payable on the Preferred Shares as a result of the imposition of any taxes;

(3)     to evidence and provide for the acceptance of appointment hereunder by a successor Paying Agent or Transfer Agent with respect to the Preferred Shares;

(4)     to correct any manifest error with respect to any provision herein;

(5)     to cure any ambiguity, correct or supplement any provision herein which may be inconsistent with any other provision hereunder, or to make any other provisions with respect to matters or questions arising herein;

(6)     to take any action necessary or helpful to prevent the Issuer from being subject to any withholding or other taxes, fees or assessments or to reduce the risk that the Issuer or the Paying Agent, as applicable, will be engaged in a United States trade or business or otherwise subject to United States income tax on a net income basis; or

(7)     to prevent the Issuer from becoming an "investment company" as defined in the Investment Company Act or better assure compliance with the requirements of Rule 3a-7 thereunder; *provided* that, as a condition to the effectiveness of any such supplemental agreement, each of the Issuer, the Trustee and the Initial Purchaser shall have (A) satisfied the Rating Condition with respect to such supplemental agreement and (B) received a customary, unqualified opinion of counsel from a nationally recognized law firm providing that, after giving effect to such supplemental agreement, the Issuer is exempt from registration as an "investment company" under the Investment Company Act;

*provided* that in each case that such action for any matters described in clauses (1) through (6) will not adversely affect the interests of the Holders of Preferred Shares in any material respect.

(b)     With the consent of the Majority Preferred Shareholders affected by a supplemental agreement or agreement referred to below, the Issuer and the Paying Agent and/or Transfer Agent, as

applicable, may enter into an agreement or agreements supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Agreement or of modifying in any manner the rights of the Holders of Preferred Shares under this Agreement; *provided* that no such supplemental agreement will, without the consent of the Holder of each outstanding Preferred Share affected thereby:

(1)     change the method or methods by which dividends will be determined for any Preferred Share or reduce the par value thereof or change the coin or currency in which such amounts are payable, or impair the right to institute suit for the enforcement of any such payment on or after the stated maturity thereof;

(2)     reduce the percentage amount of the outstanding Preferred Shares, the consent of whose Holders is required for any such supplemental agreement, or the consent of whose Holders is required for any waiver of compliance with certain provisions of this Agreement or certain defaults hereunder and their consequences provided for in this Agreement; or

(3)     modify any of the provisions of this Agreement relating to the modification thereof, except to increase any such percentage or to provide that certain other provisions of this Agreement cannot be modified or waived without the consent of the Holder of each outstanding Preferred Share affected thereby.

The Issuer shall provide to each Initial Rating Agency then rating any Notes, written notice of any such supplemental agreement or agreement supplemental to this Agreement at least 5 days prior to the execution thereof.

Prior to executing any amendment, the Issuer shall provide to the Paying Agent and the Transfer Agent an Opinion of Counsel stating that such amendment is authorized and permitted hereunder.

In the event that any amendment is consented to by the Issuer and 100% of the aggregate outstanding Preferred Shares and the Rating Condition is satisfied or is specifically waived by all consenting parties, all conditions precedent to the execution of such amendment shall be deemed satisfied, the execution of such amendment shall be authorized or permitted by this Agreement, and the Paying and Transfer Agent shall execute and accept the such amendment pursuant to this Section 16 without obtaining an Opinion of Counsel.

In the case of any supplemental Indenture that requires the consent of one or more Holders of the Notes or Preferred Shares, the Amendment Buy-Out Purchaser shall have the right, but not the obligation, to purchase from Non-Consenting Holders all Notes and Preferred Shares held by such Holder whose consent was solicited with respect to such supplemental Indenture (the "**Amendment Buy-Out Option**") for the applicable Amendment Buy-Out Purchase Price. If such option is exercised, the Amendment Buy-Out Purchaser must purchase all Notes and Preferred Shares of Non-Consenting Holders, regardless of the applicable percentage of the Aggregate Principal Amount of the Notes or Preferred Shares the consent of whose Holders is required for such supplemental indenture (an "**Amendment Buy-Out**"). By its acceptance of a Note or Preferred Share, each Holder of a Note and Preferred Share agrees that if the Amendment Buy-Out Option is exercised, any Non-Consenting Holder shall be required to sell its applicable Note or Preferred Share to the Amendment Buy-Out Purchaser.

All purchases made pursuant to the Amendment Buy-Out Option individually and in the aggregate must comply with the applicable transfer restrictions for the relevant Preferred Shares set forth herein and all applicable laws, rules and regulations (including, without limitation, any rules, regulations and procedures of any securities exchange, self-regulatory organization or clearing agency).

Section 17.       Governing Law.

This Agreement is to be delivered and performed in, and shall be construed and enforced in accordance with, and the rights of the parties shall be governed by, the laws of the State of New York.

Section 18.       Counterparts.

This Agreement may be executed by the parties hereto in any number of counterparts, and by each of the parties hereto in separate counterparts, and each such counterpart, when so executed and delivered, shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 19.       Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 20.       No Petition.

The Paying Agent and the Transfer Agent, by entering into this Paying and Transfer Agency Agreement, each hereby covenant and agree that they will not at any time institute against the Issuer or the Co-Issuer, or voluntarily join in any institution against the Issuer or the Co-Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any Cayman Islands, United States federal or state bankruptcy or similar law of any jurisdiction within or without the United States in connection with any obligations relating to the Preferred Shares or this Paying and Transfer Agency Agreement for a period of one-year and one-day (or, if longer, the applicable preference period then in effect) following the Trust Termination Date or, if later, the date upon which the Preferred Shares are redeemed.

Section 21.       Prescription.

Dividends and the Redemption Price payable with respect to the Preferred Shares will cease to be payable by the Issuer if the share certificates with respect to the Preferred Shares are not presented for payment within ten years from the related Relevant Date therefor. **"Relevant Date"** means the date on which the final payment in respect of the Preferred Shares first becomes due, except that if the full amount of the monies payable has not been duly received by the Paying Agent on or prior to such due date, it means the date on which such monies have been so received.

Section 22.       Identification of Preferred Shareholders.

On demand of the Issuer, a Holder of a Preferred Share will notify the Issuer whether or not the Preferred Share is held by a U.S. Person and the name and status of the Holder as an individual, partnership, limited liability company, corporation, trust or other entity and such other information the Issuer shall reasonably request for purposes of tax reporting of the Issuer or other Preferred Shareholders (including, in the case of a Holder that is a pass-through entity for federal income tax purposes, information relating to the beneficial owners of the Holder).

Section 23.       QEF Election/Subpart F Income /Withholding.

(a)  If required to prevent the withholding and imposition of United States income tax, the Issuer shall deliver or cause to be delivered a United States Internal Revenue Service Form W-8IMY to each

withholding agent related to an item of Portfolio Collateral and each issuer of an Eligible Investment included in the Trust Estate at the time such item of Portfolio Collateral or Eligible Investment is purchased by the Issuer and annually thereafter.

(b) It is the intention of the parties hereto and, by its acceptance of a Preferred Share, each holder of a Preferred Share shall be deemed to have agreed not to treat the Issuer as being engaged in the active conduct of a banking, financing, insurance, or other similar business for purposes of section 954(e)(2) of the Code.

(c) Notwithstanding that the Issuer anticipates being characterized as a partnership for federal income tax purposes, the Issuer will take all actions necessary in order to permit any holder of equity in the Issuer (including Holders of Preferred Shares) or any holder of a Note that is or may reasonably be characterized as an equity interest in the Issuer for United States federal income tax purposes, to make a protective "qualified electing fund" election with respect to the Issuer for United States income tax purposes.

Section 24.    Acceptance of Section 13.12 of the Indenture.

The Paying Agent and the Transfer Agent shall be bound by Section 13.12 of the Indenture entitled "No Issuer Office Within the United States."

Section 25.    Termination of the Trust Estate by the Trustee.

Within one Business Day of, the Trust Termination Date, the Trustee shall remit to the Paying Agent all Excess Cash Flow, and the Paying Agent shall distribute all of such Excess Cash Flow to the Preferred Shareholders in redemption of the Preferred Shares and, if applicable, in payment of dividends with respect to the Preferred Shares.

Section 26.    Covenants of the Issuer.

(a) The Issuer, for the benefit of the Holders of the Preferred Shares hereby incorporates *mutatis mutandis* the covenants of the Issuer set forth in the Indenture.

(b) The Issuer shall not take the following actions without consent of the Majority Preferred Shareholders:

(i)    the exercise of the Optional Redemption pursuant to Section 9.1 of the Indenture;

(ii)    the exercise of the Tax Event Redemption pursuant to Section 9.5 of the Indenture; or

(iii)    any amendment to the Indenture increasing the Applicable Periodic Rate for any Class X Notes, Class A Notes or Class B Notes, the Aggregate Principal Amount of any Class of Notes, the Optional Redemption Price or the Mandatory Redemption Price or modifying Article XI of the Indenture in a manner that affects or limits in any respect the amount of distributions that will be made with respect to the Preferred Shares.

It shall be the responsibility of the Issuer to satisfy the Paying Agent as to the compliance with the foregoing conditions (on which the Paying Agent may rely in good faith).

(c) Without the consent of Preferred Shareholders representing at least 66-2/3% of the Preferred Shares materially and adversely affected thereby, the Issuer shall not enter into any amendment or supplement to the Indenture that shall:

(i) change the Final Maturity Date of any Note or the Payment Date of any Note or Preferred Share, reduce the principal amount, notional principal amount or stated amount of any Note, as the case may be, or the means of determining the Applicable Periodic Rate, the Optional Redemption Price, the Special Redemption Price or the Mandatory Redemption Price, as applicable, with respect thereto, change the provisions of the Indenture relating to the application of proceeds of the Trust Estate to the payment of the Notes or the Preferred Shares or change the jurisdiction where any Note or Preferred Share is payable, or the coin or currency in which, any Note, any Preferred Share or any amount thereunder is payable, or impair the right to institute suit for the enforcement of any such payment on or after the maturity thereof;

(ii) reduce the percentage in Aggregate Principal Amount of the Notes or amount of the Preferred Shares, the consent of the Holders of which is required for the execution of any amendment or supplement to the Indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of the Indenture or certain Events of Default thereunder and their consequences provided for in the Indenture;

(iii) impair or adversely affect the Trust Estate except as otherwise permitted in the Indenture;

(iv) permit the creation of any lien ranking prior to or on a parity with the lien of the Indenture with respect to any part of the Trust Estate or terminate the lien of the Indenture on any property at any time subject hereto (other than pursuant to the terms of the Indenture) or deprive the Holder of any Note or any other party expressly secured thereby of the security afforded by the lien of the Indenture;

(v) reduce the percentage of the Aggregate Principal Amount of the Notes or the number or amount of the Preferred Shares whose Holders must direct the Trustee to preserve the Trust Estate or must consent before any request is made to rescind the Trustee's election to preserve the Trust Estate pursuant to Section 5.5 of the Indenture, or to sell or liquidate the Trust Estate pursuant to Section 5.4, 5.5 or 9.7 thereof or modify the requirement for consent of any other party to which the right to consent is expressly granted thereby;

(vi) modify any of the provisions of Section 8.2 or Section 5.15 of the Indenture except to increase any such percentage or to provide that certain other provisions of the Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Note affected thereby;

(vii) modify the provisions of Article XI of the Indenture or the definition of the term "Holder," "Noteholder," "Majority Noteholders," "Majority Preferred Shareholders," "Requisite Noteholders" or of the term "Outstanding";

(viii) modify any of the provisions of the Indenture in such a manner as to affect the calculation of the amount or timing of any payment of interest or principal due on any Note or any payment to the Issuer for distribution to the Preferred Shareholders on any Payment Date (including the calculation of any of the individual components of such calculation) or to affect the rights of the Holders of Notes to the benefit of any provisions for the redemption of such Notes contained in the Indenture; or

(ix)     amend any provision of the Indenture or other such document that provides that the obligations of the Co-Issuer or the Issuer, as the case may be, are non-recourse obligations of the Co-Issuer or the Issuer, respectively, payable solely from the Collateral in accordance with the terms of the Indenture.

(d) (i)  On or before sixty (60) Business Days prior to the August 2010 Payment Date, the Paying Agent shall send to each Preferred Shareholder notification of the right of the Holders of at least 75% of the outstanding Preferred Shares eligible to vote in accordance with the Indenture to direct the Issuer to exercise the Total Optional Redemption pursuant to Section 9.1 of the Indenture with instructions to notify the Paying Agent of its exercise of such right on or before the thirtieth Business Day preceding the proposed Optional Redemption Date (which shall be a Payment Date on or after the August 2010 Payment Date and shall be set forth in the direction by electing Preferred Shareholders to the Paying Agent), and such notification to Preferred Shareholders will be deemed sufficient if substantially in the form of Exhibit E attached hereto.  Upon receipt of direction by such Preferred Shareholders to so exercise such right, the Paying Agent shall notify the Issuer and the Trustee of the Paying Agent's receipt of such direction of Preferred Shareholders and shall direct the Issuer to, and the Issuer shall, send the applicable notice in accordance with Section 9.6 of the Indenture.

(ii)     On or before sixty (60) Business Days prior to the August 2010 Payment Date, the Paying Agent shall send to each Preferred Shareholder notification of the right of the Holders of at least 10% of the outstanding Preferred Shares eligible to vote in accordance with the Indenture to direct the Issuer to exercise the Partial Optional Redemption pursuant to Section 9.1 of the Indenture with instructions to notify the Paying Agent of its exercise of such right on or before the thirtieth Business Day preceding the proposed Optional Redemption Date (which shall be a Payment Date on or after the August 2010 Payment Date and shall be set forth in the direction by electing Preferred Shareholders to the Paying Agent), and such notification to Preferred Shareholders will be deemed sufficient if substantially in the form of Exhibit E attached hereto.  Upon receipt of direction by such Preferred Shareholders to so exercise such right, the Paying Agent shall notify the Issuer and the Trustee of the Paying Agent's receipt of such direction of Preferred Shareholders and shall direct the Issuer to, and the Issuer shall, send the applicable notice in accordance with Section 9.6 of the Indenture.

(iii)    If a one of the events described in Section 9.5 of the Indenture which may give rise to a Tax Event Redemption, the Paying Agent shall send to each Preferred Shareholder notification of the right of the Holders of at least 66-2/3% of the Preferred Shares eligible to vote in accordance with the Indenture to direct the Issuer to exercise the Tax Event Redemption pursuant to Section 9.5 of the Indenture with instructions to notify the Paying Agent of its exercise of such right and such notification to Preferred Shareholders will be deemed sufficient if substantially in the form of Exhibit E attached hereto. Upon receipt of direction by such Preferred Shareholders to so exercise such right, the Paying Agent shall notify the Issuer and the Trustee of the Paying Agent's receipt of such direction of Preferred Shareholders and shall direct the Issuer to, and the Issuer shall, send the applicable notice in accordance with Section 9.6 of the Indenture

(iv)     Upon receipt of notice from the Issuer or the Trustee, of the final payment of principal on the Notes, the Paying Agent shall send to each Preferred Shareholder notification of the right of the Majority Preferred Shareholders to direct the Issuer to liquidate the remaining Trust Estate, in whole or in part, with instruction to notify the Paying Agent on or before the thirtieth Business Day preceding any proposed liquidation date (which date of proposed liquidation shall be set forth in such notice of election from the electing Preferred Shareholders to the Paying Agent, being a date not sooner than thirty Business Days after the date of receipt of such notice by the Paying Agent, and which notice of election from electing Preferred Shareholders shall specify the portion of the remaining Trust Estate to be liquidated), and such notification to Preferred Shareholders by the Paying Agent shall be deemed

sufficient if substantially in the form attached hereto as <u>Exhibit E</u>. Upon receipt of direction by such Preferred Shareholders to so exercise its right to require liquidation, the Paying Agent shall direct the Issuer to, and the Issuer shall, liquidate the Trust Estate; in such event, the Issuer shall deliver to the Paying Agent at least 20 days prior to such proposed liquidation date the following items:

(A)     a resolution of the Issuer's Board of Directors authorizing the liquidation of the Trust Estate;

(B)     forward purchase contracts between the Issuer and institutions whose unsecured short-term debt obligations are acceptable to the Issuer, which forward purchase contracts shall provide for the sale of the Collateral, or a portion thereof, at a fixed price to be delivered no later than one Business Day prior to the proposed liquidation date; and

(C)     an Accountants' Certificate certifying that the monies to be received by the Issuer from the sale of the Portfolio Collateral, or a portion thereof (determined based on the fixed price set forth in the forward purchase contracts delivered to the Trustee pursuant to clause (B) above or otherwise pursuant to the Indenture), together with any Eligible Investments on deposit in the Collection Account and the Expense Reimbursement Account and any Scheduled Distributions of interest or principal to be received on the Pledged Securities prior to the proposed liquidation date, are sufficient to pay the sum of all amounts due and owing under the Indenture and this Paying and Transfer Agency Agreement to the Noteholders, the Trustee, the Paying Agent, the Transfer Agent and the Servicer and of all amounts due and owing (or to be due and owing after making the payments described above in this clause (C)) under the Indenture or this Paying and Transfer Agency Agreement, plus any outstanding Issuer Base Administrative Expenses and Issuer Excess Administrative Expenses.

On the Business Day preceding the proposed liquidation date, the Collateral shall be released to the institutions specified in the forward purchase contracts against receipt of payment therefor, and the Trustee shall transfer such liquidation proceeds to the Paying Agent for deposit in the Preferred Shares Collection Account for distribution in accordance with the terms of this Agreement.

Section 27.     <u>Survival of Provisions</u>.

Notwithstanding the satisfaction and discharge of this Agreement, the rights and obligations of the Issuer, the Paying Agent, the Transfer Agent and the Preferred Shareholders under Section 13, 20, 22, 23 and 28 shall otherwise survive termination of the rights of the parties hereunder.

Section 28.     <u>Limited Recourse</u>.

Notwithstanding any other provision of this Agreement, the Paying Agent and the Transfer Agent acknowledge that the obligations of the Issuer under this Agreement will be limited recourse obligations of the Issuer payable solely from the Trust Estate. Neither the Issuer nor its Affiliates, nor any of its respective agents, partners, beneficiaries, officers, directors, employees or successors or assigns shall be personally liable for any amounts payable, or performance due, under this Agreement. Following realization of the Trust Estate and its application in accordance with the Indenture or Section 25 of this Agreement, any outstanding obligations of the Issuer hereunder shall be extinguished and shall not thereafter revive.

Section 29.    Process Agent.

The Issuer irrevocably designates and appoints CT Corporation System, 111 Eighth Avenue, New York, New York 10011, as its agent (the "Process Agent") for service of all process, such service being hereby acknowledged to be effective and binding service in every respect.

Section 30.    Submission to Jurisdiction; Waiver of Jury Trial.

(a) The Issuer hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to the Notes or this Agreement, or for recognition or enforcement of any judgment, and the Issuer hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court. The Issuer hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. The Issuer agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

IN WITNESS WHEREOF, the parties hereto have executed this Paying and Transfer Agency Agreement as of the day and year first above written.

ROCKWALL CDO LTD.

By: _____
      Name:   Wendy Ebanks
      Title:    Director

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as Paying and Transfer Agent

By: _____
      Name:
      Title:

IN WITNESS WHEREOF, the parties hereto have executed this Paying and Transfer Agency Agreement as of the day and year first above written.

ROCKWALL CDO LTD.

By: _____
    Name:
    Title:

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as Paying and Transfer Agent

By: _____
    Name:    **BRUCE C. BOYD**
    Title:    **VICE PRESIDENT**

*Exhibit A-1*

Number
-[___]-

ISIN / CUSIP
-[___]-

*Rockwall CDO Ltd.*

Shares
-[___]-

Incorporated under the laws of the Cayman Islands
**U.S. $600,250** divided into **250** Ordinary Shares of **U.S. $1.00**
and **300,000,000** Class I Preferred Shares of **U.S. $0.001**

THIS IS TO CERTIFY THAT

-[___]-

is the registered holder of

*-[___] Preferred Shares-*

in the above-named Company subject to the Memorandum and Articles of Association thereof.

ISSUED BY the said Company on this 10th of May, 2006.

EXECUTED AS A DEED on behalf of the said Company by:

_____

DIRECTOR

A-1-1

THE PREFERRED SHARES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), ANY STATE SECURITIES LAWS IN THE UNITED STATES OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION AND MAY NOT BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS, EXCEPT AS PERMITTED BY THIS LEGEND. THE HOLDER OF ANY PREFERRED SHARES REPRESENTED HEREBY, BY ITS ACCEPTANCE OF THIS PREFERRED SHARE CERTIFICATE, REPRESENTS, ACKNOWLEDGES AND AGREES THAT IT WILL NOT REOFFER, RESELL, PLEDGE OR OTHERWISE TRANSFER THE PREFERRED SHARES REPRESENTED BY THIS CERTIFICATE EXCEPT IN COMPLIANCE WITH THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND EXCEPT (A) IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER AS DEFINED IN RULE 144A PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER, WHOM THE SELLER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, PROVIDED THAT SUCH PURCHASER DELIVERS ALL DOCUMENTS AND CERTIFICATIONS AS THE ISSUER OR THE PAYING AGENT MAY REASONABLY REQUIRE; (B) OUTSIDE THE UNITED STATES IN COMPLIANCE WITH RULE 904 OF REGULATION S UNDER THE SECURITIES ACT TO A PERSON WHO IS ALSO A QUALIFIED INSTITUTIONAL BUYER AS DEFINED IN RULE 144A; (C) TO THE ISSUER OR ITS AFFILIATES; OR (D) TO ANY OTHER PERSON OR ENTITY PURSUANT TO A VALID EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT PROVIDED THAT SUCH PURCHASER DELIVERS ALL DOCUMENTS AND CERTIFICATIONS AS THE ISSUER OR THE PAYING AGENT MAY REQUEST, IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAW OF THE UNITED STATES AND ANY STATE OF THE UNITED STATES AND ANY OTHER JURISDICTION IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE PAYING AGENCY AGREEMENT. IN ADDITION, EACH PURCHASER OF PREFERRED SHARES, BY ITS ACCEPTANCE THEREOF, REPRESENTS, ACKNOWLEDGES AND AGREES THAT IT WILL NOT RESELL, PLEDGE OR OTHERWISE TRANSFER SUCH PREFERRED SHARES EXCEPT TO A NON-U.S. PERSON THAT IS A QUALIFIED INSTITUTIONAL BUYER OR TO A "QUALIFIED PURCHASER" OR "KNOWLEDGEABLE EMPLOYEE" WITHIN THE MEANING OF SECTION 3(c)(7) OF THE INVESTMENT COMPANY ACT THAT IS A QUALIFIED INSTITUTIONAL BUYER IN A TRANSACTION THAT DOES NOT CAUSE THE ISSUER TO BE REQUIRED TO REGISTER UNDER THE INVESTMENT COMPANY ACT OF 1940. FURTHER, THE PREFERRED SHARES MAY NOT BE SOLD OR TRANSFERRED TO ANY PLAN SUBJECT TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE, TO ANY PERSON ACTING ON BEHALF OF OR WITH "PLAN ASSETS" OF ANY SUCH PLAN, OR TO ANY OTHER BENEFIT PLAN INVESTOR (AS DEFINED IN UNITED STATES DEPARTMENT OF LABOR REGULATION SECTION 2510.3-101(f)(2)), INCLUDING AN INSURANCE COMPANY GENERAL ACCOUNT, EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE CONFIDENTIAL OFFERING CIRCULAR RELATING TO THE PREFERRED SHARES. ADDITIONALLY, NO TRANSFER MAY BE MADE UNLESS THE ISSUER SHALL HAVE DETERMINED THAT THE TRANSFER IS NOT BEING EFFECTED THROUGH AN "ESTABLISHED SECURITIES MARKET" WITHIN THE MEANING OF TREASURY REGULATION SECTION 1.7704-1(b) AND WILL NOT RESULT IN THE ISSUER HAVING MORE THAN 75 SHAREHOLDERS (DETERMINED IN CONFORMITY WITH TREASURY REGULATION SECTION 1.7704-1(b)(3)).

TRANSFERS OF THE PREFERRED SHARES MAY ONLY BE MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE PAYING AGENCY AGREEMENT.

TRANSFERS OF THE PREFERRED SHARES MUST GENERALLY BE ACCOMPANIED BY APPROPRIATE TAX TRANSFER DOCUMENTATION.

A-1-2

*Exhibit A-2*

Number
-[___]-

*Rockwall CDO Ltd.*

Shares
-[___]-

ISIN / CUSIP
-[___]-

Incorporated under the laws of the Cayman Islands
U.S. $600,250 divided into **250** Ordinary Shares of U.S. **$1.00**
and **300,000,000** Class II Preferred Shares of U.S. **$0.001**

THIS IS TO CERTIFY THAT

-[___]-

is the registered holder of

*-[___] Preferred Shares-*

in the above-named Company subject to the Memorandum and Articles of Association thereof.

ISSUED BY the said Company on this 10th of May, 2006.

EXECUTED AS A DEED on behalf of the said Company by:

_____

DIRECTOR

A-2-1

THE PREFERRED SHARES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), ANY STATE SECURITIES LAWS IN THE UNITED STATES OR THE SECURITIES LAWS OF ANY OTHER JURISDICTION AND MAY NOT BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS, EXCEPT AS PERMITTED BY THIS LEGEND. THE HOLDER OF ANY PREFERRED SHARES REPRESENTED HEREBY, BY ITS ACCEPTANCE OF THIS PREFERRED SHARE CERTIFICATE, REPRESENTS, ACKNOWLEDGES AND AGREES THAT IT WILL NOT REOFFER, RESELL, PLEDGE OR OTHERWISE TRANSFER THE PREFERRED SHARES REPRESENTED BY THIS CERTIFICATE EXCEPT IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT AND OTHER APPLICABLE LAWS AND EXCEPT (A) IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER AS DEFINED IN RULE 144A PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER, WHOM THE SELLER HAS INFORMED, IN EACH CASE, THAT THE REOFFER, RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, PROVIDED THAT SUCH PURCHASER DELIVERS ALL DOCUMENTS AND CERTIFICATIONS AS THE ISSUER OR THE PAYING AGENT MAY REASONABLY REQUIRE; (B) OUTSIDE THE UNITED STATES IN COMPLIANCE WITH RULE 904 OF REGULATION S UNDER THE SECURITIES ACT TO A PERSON WHO IS ALSO A QUALIFIED INSTITUTIONAL BUYER AS DEFINED IN RULE 144A; (C) TO THE ISSUER OR ITS AFFILIATES; OR (D) TO ANY OTHER PERSON OR ENTITY PURSUANT TO A VALID EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT PROVIDED THAT SUCH PURCHASER DELIVERS ALL DOCUMENTS AND CERTIFICATIONS AS THE ISSUER OR THE PAYING AGENT MAY REQUEST, IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAW OF THE UNITED STATES AND ANY STATE OF THE UNITED STATES AND ANY OTHER JURISDICTION IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE PAYING AGENCY AGREEMENT. IN ADDITION, EACH PURCHASER OF PREFERRED SHARES, BY ITS ACCEPTANCE THEREOF, REPRESENTS, ACKNOWLEDGES AND AGREES THAT IT WILL NOT RESELL, PLEDGE OR OTHERWISE TRANSFER SUCH PREFERRED SHARES EXCEPT TO A NON-U.S. PERSON THAT IS A QUALIFIED INSTITUTIONAL BUYER OR TO A "QUALIFIED PURCHASER" OR "KNOWLEDGEABLE EMPLOYEE" WITHIN THE MEANING OF SECTION 3(c)(7) OF THE INVESTMENT COMPANY ACT THAT IS A QUALIFIED INSTITUTIONAL BUYER IN A TRANSACTION THAT DOES NOT CAUSE THE ISSUER TO BE REQUIRED TO REGISTER UNDER THE INVESTMENT COMPANY ACT OF 1940. FURTHER, THE PREFERRED SHARES MAY NOT BE SOLD OR TRANSFERRED TO ANY PLAN SUBJECT TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE, TO ANY PERSON ACTING ON BEHALF OF OR WITH "PLAN ASSETS" OF ANY SUCH PLAN, OR TO ANY OTHER BENEFIT PLAN INVESTOR (AS DEFINED IN UNITED STATES DEPARTMENT OF LABOR REGULATION SECTION 2510.3-101(f)(2)), INCLUDING AN INSURANCE COMPANY GENERAL ACCOUNT, EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE CONFIDENTIAL OFFERING CIRCULAR RELATING TO THE PREFERRED SHARES. ADDITIONALLY, NO TRANSFER MAY BE MADE UNLESS THE ISSUER SHALL HAVE DETERMINED THAT THE TRANSFER IS NOT BEING EFFECTED THROUGH AN "ESTABLISHED SECURITIES MARKET" WITHIN THE MEANING OF TREASURY REGULATION SECTION 1.7704-1(b) AND WILL NOT RESULT IN THE ISSUER HAVING MORE THAN 75 SHAREHOLDERS (DETERMINED IN CONFORMITY WITH TREASURY REGULATION SECTION 1.7704-1(b)(3)).

TRANSFERS OF THE PREFERRED SHARES MAY ONLY BE MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE PAYING AGENCY AGREEMENT.

TRANSFERS OF THE PREFERRED SHARES MUST GENERALLY BE ACCOMPANIED BY APPROPRIATE TAX TRANSFER DOCUMENTATION.

A-2-3

**Exhibit B**

FORM OF INVESTOR LETTER FOR PURCHASERS
([CLASS I][CLASS II] PREFERRED SHARES)

(Date)

JPMorgan Chase Bank, National Association
600 Travis Street, 50th Floor
Houston, Texas 77002

Re:     Rockwall CDO Ltd./[Class I][Class II] Preferred Shares

Ladies and Gentlemen:

The undersigned proposes to purchase the [Class I][Class II] Preferred Shares identified below issued by Rockwall CDO Ltd. (the "Issuer") pursuant to the Paying and Transfer Agency Agreement, to be dated as of May 10, 2006 (the "Paying and Transfer Agency Agreement"), between the Issuer and JPMorgan Chase Bank, National Association, as Paying and Transfer Agent (the "Paying and Transfer Agent"). In connection with our proposed purchase of such [Class I][Class II] Preferred Shares we acknowledge, represent, agree and confirm that:

1. The [Class I][Class II] Preferred Shares have not been and will not be registered under the U.S. Securities Act of 1933, as amended (the "Securities Act"), or registered or qualified under the securities or "Blue Sky" laws of any jurisdiction, and may not be resold or otherwise transferred except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and applicable state securities laws and that the [Class I][Class II] Preferred Shares are subject to restriction on transfer as set forth in Section 8 of the Paying and Transfer Agency Agreement.

2. We are (i)(A)(1) a "qualified institutional buyer" (within the meaning of Rule 144A under the Securities Act) or (2) an "accredited investor" (within the meaning of Rule 501(a) under the Securities Act) and (B) a financial institution or other permitted offeree or purchaser for purposes of any applicable state securities or "Blue Sky" laws and have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the [Class I][Class II] Preferred Shares for an indefinite period of time or (ii) not a "U.S. person" within the meaning of Regulation S under the Securities Act (a "Non-U.S. Person"). In the normal course of our business, we invest in or purchase securities similar to the [Class I][Class II] Preferred Shares.

3. We understand that the Issuer is not registered as an investment company under the Investment Company Act but that the Issuer is exempt from registration as such by virtue of Section 3(c)(7) and Section 7(d) of the Investment Company Act. We are a (i) "Qualified Purchaser" as defined in Section 3(c)(7) of the Investment Company Act, (ii) "Knowledgeable Employee" within the meaning of Rule 3c-5 of the Investment Company Act or

(iii) a Non-U.S. Person and we agree that we will transfer the [Class I][Class II] Preferred Shares owned by us only to a "Qualified Purchaser", a "Knowledgeable Employee" or to a Non-U.S. Person in accordance with Regulation S under the Securities Act. Any purported transfer or other disposition in violation of the foregoing restrictions will be void and of no effect.

4.  Our Taxpayer Identification Number is _____.

5.  For purposes of determining whether our acquisition and holding of the [Class I][Class II] Preferred Shares to be purchased by us pursuant hereto will constitute or result in a non-exempt "prohibited transaction" (within the meaning of Section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and/or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code")), (i) the Issuer or the Paying and Transfer Agent may take such actions as may be necessary or appropriate in order to assure that, after giving effect to such purchase and all other purchases occurring simultaneously therewith, less than 25% of the [Class I][Class II] Preferred Shares will constitute "plan assets" of employee benefit plans subject to ERISA, plans subject to Section 4975 of the Code or other "benefit plan investors" (as defined in U.S. Department of Labor ("DOL") Regulation Section 2510.3-101(f)(2)) (each, a "Benefit Plan Investor"), including refusing to permit and register the transfer of any [Class I][Class II] Preferred Shares to us or any assignee of us; (ii) we will not assign or transfer such [Class I][Class II] Preferred Shares unless the proposed assignee or transferee delivers a letter to the Issuer and the Paying and Transfer Agent substantially in the form hereof; and (iii) either [check and initial *one* box as appropriate]:

_____ ☐ No part of the funds being used to pay the purchase price for such [Class I][Class II] Preferred Shares constitutes "plan assets" of any Benefit Plan Investor and we will not assign or transfer such [Class I][Class II] Preferred Shares to any person who is (or is acting on behalf of or with "plan assets" of) a Benefit Plan Investor; *or*

_____ ☐ The funds being used to pay the purchase price for such [Class I][Class II] Preferred Shares constitute assets of an "insurance company general account" (within the meaning of DOL Prohibited Transaction Class Exemption ("PTCE") 95-60) (a "General Account"); our purchase and holding of such [Class I][Class II] Preferred Shares are eligible for the exemptive relief afforded under PTCE 95-60; less than 25% of the assets of such General Account constitute "plan assets" of Benefit Plan Investors; we will not assign or transfer such [Class I][Class II] Preferred Shares to any person who is (or is acting on behalf of or with "plan assets" of) a Benefit Plan Investor (other than another General Account); *or*

_____ ☐ The funds being used to pay the purchase price for such [Class I][Class II] Preferred Shares constitute assets of one or more Benefit Plan Investors (other than a General Account); our purchase and holding of such [Class I][Class II] Preferred Shares are eligible for the exemptive relief afforded under PTCE 96-23, 91-38, 90-1 or 84-14; and any person to whom we assign or transfer such [Class I][Class II] Preferred Shares will be accurately identified in such letter as either a General Account, another Benefit Plan Investor who is eligible for such

exemptive relief or a person who is not (and is not acting on behalf of) any Benefit Plan Investor; *or*

_____   ☐   The funds being used to pay the purchase price for such [Class I][Class II] Preferred Shares constitute assets of one or more Benefit Plan Investors none of which is subject to Title I of ERISA, Section 4975 of the Code or similar law; and any person to whom we assign or transfer such [Class I][Class II] Preferred Shares will be accurately identified in such letter as either another Benefit Plan Investor who is not subject to Title I of ERISA, Section 4975 of the Code or similar law or a person who is not (and is not acting on behalf of) any Benefit Plan Investor.

6.   The undersigned confirms that (i) it has received and reviewed a copy of the Confidential Offering Circular, dated May 10, 2006 relating to the [Class I][Class II] Preferred Shares and on which it has based its investment decision, (ii) it has had the opportunity to ask questions of, and receive answers from the Issuer concerning the [Class I][Class II] Preferred Shares and all matters relating thereto, and obtain any additional information (including documents) relevant to its decision to purchase the [Class I][Class II] Preferred Shares that the Issuer possesses or can possess without unreasonable effort or expense, (iii) it has undertaken its own independent analysis of the investment in the [Class I][Class II] Preferred Shares and (iv) it agrees to be bound by the representations and restrictions on transfer set forth therein. The undersigned will not use or disclose any information it receives in connection with its purchase of the [Class I][Class II] Preferred Shares other than in connection with a subsequent sale of the [Class I][Class II] Preferred Shares, except to the extent otherwise required under applicable law or regulation.

7.   After giving effect to this purchase, we will not own more than 49% (directly or indirectly) of the aggregate par value of the [Class I][Class II] Preferred Shares, unless we are the Collateral Manager (including our respective Affiliates and clients).

8.   We hereby certify that we [check one] ____are ____are not an Affiliate (as defined in the Indenture) or nominee of JPMorgan Chase Bank, National Association, the Issuer or the Collateral Manager or a nominee of an Affiliate of any of them.

9.   We agree to provide the Paying and Transfer Agent in writing with any additional registration, payment and delivery information as the Trustee may reasonably request.

10. We are not a member of the public in the Cayman Islands.

Very truly yours,

_____

(Name of Investor)

By:_____
Name:
Title:

SHARES TO BE PURCHASED

_____ [Class I][Class II] Preferred Shares

**Exhibit C**

FORM OF RULE 144A/REGULATION D TRANSFER CERTIFICATE

[Date]

JPMorgan Chase Bank, National Association
600 Travis Street, 50th Floor
Houston, Texas 77002

      Re:    Rockwall CDO Ltd./ [Class I][Class II] Preferred Shares

Ladies and Gentlemen:

Reference is hereby made to the Paying and Transfer Agency Agreement, dated as of May 10, 2006, as amended and supplemented from time to time (the "Paying and Transfer Agency Agreement") between Rockwall CDO Ltd. (the "Issuer") and JPMorgan Chase Bank, National Association, as paying agent and transfer agent (the "Paying and Transfer Agent"). Capitalized terms used but not defined herein shall have the meanings given to them in the Paying and Transfer Agency Agreement.

This letter relates to _____ [Class I][Class II] Preferred Shares (the "[Class I][Class II] Preferred Shares") of the Issuer which are registered in the name of [insert name of transferor] (the "Transferor"). The Transferor has requested a transfer of such [Class I][Class II] Preferred Shares for [Class I][Class II] Preferred Shares registered in the name of [insert name of transferee].

In connection with such request, and in respect of such [Class I][Class II] Preferred Shares, the Transferor does hereby certify that such [Class I][Class II] Preferred Shares are being transferred in accordance with (i) the transfer restrictions set forth in Section 8 of the Paying and Transfer Agency Agreement and the [Class I][Class II] Preferred Shares and (ii) Rule 144A under the Securities Act to a transferee that the Transferor reasonably believes is purchasing the [Class I][Class II] Preferred Shares for its own account or an account with respect to which the transferee exercises sole investment discretion and the transferee and any such account is a "qualified institutional buyer" within the meaning of Rule 144A or an "accredited investor" within the meaning of Regulation D under the Securities Act, and such transferee is aware that the sale to it is being made in reliance upon Rule 144A, and (iii) any applicable securities laws of any state of the United States or any other jurisdiction.

[Insert Name of Transferor]

By_____
    Name:
    Title:

Dated: _____

**Exhibit D**

FORM OF REGULATION S TRANSFER CERTIFICATE

[Date]

JPMorgan Chase Bank, National Association
600 Travis Street, 50th Floor
Houston, Texas 77002

Re: <u>Rockwall CDO Ltd. [Class I][Class II] Preferred Shares</u>

Ladies and Gentlemen:

Reference is hereby made to the Paying and Transfer Agency Agreement, dated as of May 10, 2006 (the "Paying and Transfer Agency Agreement"), between Rockwall CDO Ltd. (the "Issuer") and JPMorgan Chase Bank, National Association, as paying agent and transfer agent (the "Paying and Transfer Agent"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Paying and Transfer Agency Agreement. Other terms shall have the meanings assigned to them in Regulation S under the U.S. Securities Act of 1933, as amended (the "Securities Act").

This letter relates to _____ [Class I][Class II] Preferred Shares (the "[Class I][Class II] Preferred Shares") of the Issuer which are held in the registered name of [insert name of transferor] (the "Transferor"). The Transferor has requested a transfer of such [Class I][Class II] Preferred Shares for [Class I][Class II] Preferred Shares registered in the name of [insert name of transferee].

In connection with such request and in respect of such [Class I][Class II] Preferred Shares, the Transferor does hereby certify that such transfer has been effected in accordance with the transfer restrictions set forth in Section 8 of the Paying and Transfer Agency Agreement and the [Class I][Class II] Preferred Shares and pursuant to and in accordance with Regulation S under the Securities Act, and accordingly the Transferor does hereby certify that:

(1)     the offer of the [Class I][Class II] Preferred Shares was not made to a person in the United States;

[(2)    at the time the buy order was originated, the transferee was outside the United States or the Transferor and any person acting on its behalf reasonably believed that the transferee was outside the United States;]*

[(2)    the transaction was executed in, on or through the facilities of a designated offshore securities market and neither the Transferor nor any person acting on its behalf knows that the transaction was prearranged with a buyer in the United States;]*

*Insert one of these provisions.

(3)    no directed selling efforts have been made in contravention of the requirements of Rule 903(b) or 904(b) of Regulation S, as applicable; and

(4)    the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act.

[Insert Name of Transferor]

By_____
    Name:
    Title:

Dated: _____

**Exhibit E**

To:                Holders of [Class I][Class II] Preferred Shares

From:            JPMorgan Chase Bank, National Association as Paying and Transfer Agent under
                     the Paying and Transfer Agency Agreement

Re:               [Class I][Class II] Preferred Shares; Notice of Holders of [Class I][Class II]
                     Preferred Shares' Right To Require [Optional Redemption] [Liquidation of the
                     Trust Estate]

Date:            _____

            Pursuant to Section 26(d)[(i)][(iii)] of the Paying and Transfer Agency Agreement
dated as of May 10, 2006 (the "Paying Agency Agreement") by and between Rockwall CDO
Ltd. (the "Issuer") and JPMorgan Chase Bank, National Association, as paying agent and
transfer agent (the "Paying and Transfer Agent"), this is to notify the Preferred Shareholders of
the right of the Preferred Shareholders representing at least 50% of the [Class I][Class II]
Preferred Shares (referred to herein as the "Required Percentage") to direct the Issuer [to
exercise the Optional Redemption pursuant to Section 9.1 of the Indenture] [to liquidate the
remaining Trust Estate].

            To exercise such right, such Required Percentage of the Preferred Shareholders
must notify the Paying and Transfer Agent in writing on or before the 30th Business Day
preceding the proposed [Optional Redemption Date] [liquidation date] of their exercise of such
right, therein directing the Paying and Transfer Agent to notify the Issuer of such election. Such
proposed [Optional Redemption Date] [liquidation date] shall be set forth in such notice from the
Required Percentage of the Preferred Shareholders to the Paying and Transfer Agent, and must
be a [Payment Date on or after the Payment Date in [     ] 2018] [date which is not sooner than
the date which is 30 Business Days after the Paying and Transfer Agent's receipt of such notice].
Such notice of liquidation from the Required Percentage of the Preferred Shareholders to the
Paying and Transfer Agent must also specify whether the direction is to liquidate the Trust Estate
in whole or in part (and if in part, must specify the portion to be liquidated).

            [Include further instructions setting forth the address to which the Preferred
            Shareholders' election notice should be sent, and any instructions or requirements
            as to the form, content or execution thereof, or proof of ownership, as the Paying
            and Transfer Agent reasonably may deem necessary, if any.]

Capitalized terms appearing but not otherwise expressly defined herein shall have the meanings assigned to such terms in the Paying and Transfer Agency Agreement.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION,
    as Paying and Transfer Agent

_____

## EXHIBIT F
## FORM OF SALE NOTICE

**FROM:**

| [Party requesting redemption of Class II Preferred Shares – Name and Address Fax number – [          ]] (the **"Redeeming Party"**) | [Subscriber for Investor Corp. Preferred Shares – Name and Address Fax number – [          ]] (the **"Subscriber"**) |
|---|---|

**TO:**

| Rockwall CDO Ltd. PO Box 1093GT Queensgate House South Church Street George Town Grand Cayman Cayman Islands Attention: The Directors Fax: 1 345 945 7100 | Rockwall Investors Corp. PO Box 1093GT Queensgate House South Church Street George Town Grand Cayman Cayman Islands Attention: The Directors Fax: 1 345 945 7100 |
|---|---|
| JPMorgan Chase Bank, National Association 600 Travis Street, 50 Floor Houston, Texas 77002 Attention: Worldwide Securities Services – Rockwall CDO and Rockwall Investors Corp. Fax: 1 713 216 3572 | Highland Capital Management LP Two Galleria Tower 13455 Noel Road, Suite 1300 Dallas, Texas 75240 Attention: [          ] Fax: 1 972 628 4147 |

**[INSERT DATE OF NOTICE]**

Dear Sirs

SALE NOTICE RELATING TO THE REDEMPTION OF ROCKWALL CDO LTD. CLASS II PREFERRED SHARES AND SUBSCRIPTION FOR ROCKWALL INVESTORS CORP. PREFERRED SHARES

As required by the Articles of Association of each of Rockwall CDO Ltd. and Rockwall Investors Corp. and the applicable Paying and Transfer Agency Agreements relating to the Preferred Shares of each of Rockwall CDO Ltd. and Rockwall Investors Corp., we

hereby give you notice of the following:

## 1.  REQUEST FOR REDEMPTION OF ROCKWALL CDO LTD. CLASS II PREFERRED SHARES

(a)    Redemption Date: [Insert date – to be 10 or more days from the date of this notice]

(b)    Number of Class II Preferred Shares to be redeemed (if approved): [Insert number - must be 200,000 or more]

(c)    Redemption Price: [Insert total redemption price requested]

The Redeeming party hereby requests that Rockwall CDO Ltd. approves the proposed redemption as set forth in 1 above.

## 2.  REQUEST FOR SUBSCRIPTION FOR ROCKWALL INVESTORS CORP. PREFERRED SHARES

(a)    Subscription Date: [Insert date – must be same as in 1(a) above]

(b)    Number of Preferred Shares to be subscribed for (if approved): [Insert number - must be same as in 1(b) above ]

(c)    Subscription Price: [Insert subscription price requested – must be same as in 1(c) above]

The Subscriber hereby requests that Rockwall Investors Corp. approves the proposed redemption as set forth in 1 above.

_____

[Approved][Not approved]
**For and on behalf of**
**Rockwall CDO Ltd.**

_____

[Approved][Not approved]
**For and on behalf of**
**Rockwall Investors Corp.**

**FORM TO BE FAXED BACK BY ROCKWALL CDO LTD. AND ROCKWALL INVESTORS CORP. TO ALL PARTIES ON THE NOTICE AS SOON AS POSSIBLE**

**IF APPROVED BY ROCKWALL CDO LTD. AND ROCKWALL INVESTORS CORP., THIS SIGNED NOTICE WILL CONSTITUTE DEEMED NOTICE TO ROCKWALL CDO LTD. FROM ROCKWALL INVESTORS CORP. (WITHIN THE REQUIRED TIME LIMIT) OF A REQUEST FOR REDEMPTION OF AN EQUIVALENT NUMBER OF CLASS I PREFERRED SHARES OF ROCKWALL CDO LTD. ON THE SAME TERMS AND CONDITIONS AS THE REDEMPTION OF THE ROCKWALL INVESTORS CORP. PREFERRED SHARES**

## EXHIBIT G
## FORM OF ACQUISITION NOTICE

**FROM:**

| | |
|---|---|
| [Party requesting redemption of Class II Preferred Shares – Name and Address Fax number – [    ]] (the **"Redeeming Party"**) | [Subscriber for Investor Corp. Preferred Shares – Name and Address Fax number – [    ]] (the **"Subscriber"**) |

**TO:**

| | |
|---|---|
| Rockwall CDO Ltd. PO Box 1093GT Queensgate House South Church Street George Town Grand Cayman Cayman Islands Attention: The Directors Fax: 1 345 945 7100 | Rockwall Investors Corp. PO Box 1093GT Queensgate House South Church Street George Town Grand Cayman Cayman Islands Attention: The Directors Fax: 1 345 945 7100 |
| JPMorgan Chase Bank, National Association 600 Travis Street, 50 Floor Houston, Texas 77002 Attention: Worldwide Securities Services – Rockwall CDO and Rockwall Investors Corp. Fax: 1 713 216 3572 | Highland Capital Management LP Two Galleria Tower 13455 Noel Road, Suite 1300 Dallas, Texas 75240 Attention: [    ] Fax: 1 972 628 4147 |

**[INSERT DATE OF NOTICE]**

Dear Sirs

      ACQUISITION NOTICE RELATING TO THE SUBSCRIPTION FOR ROCKWALL CDO LTD. CLASS II PREFERRED SHARES AND REDEMPTON OF ROCKWALL INVESTORS CORP. PREFERRED SHARES

As required by the Articles of Association of each of Rockwall CDO Ltd. and Rockwall

Investors Corp. and the applicable Paying and Transfer Agency Agreements relating to

the Preferred Shares of each of Rockwall CDO Ltd. and Rockwall Investors Corp., we

hereby give you notice of the following:

**1.    REQUEST FOR SUBSCRIPTION OF ROCKWALL CDO LTD. CLASS II PREFERRED SHARES**

(a)    Subscription Date: [Insert date – to be 10 or more days from the date of this notice]

(b)    Number of Class II Preferred Shares to be subscribed for (if approved): [Insert number - must be 200,000 or more]

(c)    Subscription Price: [Insert total subscription price requested]

The Subscriber hereby requests that Rockwall CDO Ltd. approves the proposed subscription as set forth in 1 above.

**2.    REQUEST FOR REDEMPTION OF ROCKWALL INVESTORS CORP. PREFERRED SHARES**

(a)    Redemption Date: [Insert date – must be same as in 1(a) above]

(b)    Number of Preferred Shares to be redeemed (if approved): [Insert number - must be same as in 1(b) above ]

(c)    Redemption Price: [Insert redemption price requested – must be same as in 1(c) above]

The Redeeming Party hereby requests that Rockwall Investors Corp. approves the proposed redemption as set forth in 1 above.

_____

[Approved][Not approved]
**For and on behalf of
Rockwall CDO Ltd.**

_____

[Approved][Not approved]

**For and on behalf of**
**Rockwall Investors Corp.**

## FORM TO BE FAXED BACK BY ROCKWALL CDO LTD. AND ROCKWALL INVESTORS CORP. TO ALL PARTIES ON THE NOTICE AS SOON AS POSSIBLE

IF APPROVED BY ROCKWALL CDO LTD. AND ROCKWALL INVESTORS CORP., THIS SIGNED NOTICE WILL CONSTITUTE DEEMED NOTICE TO ROCKWALL CDO LTD. FROM ROCKWALL INVESTORS CORP. (WITHIN THE REQUIRED TIME LIMIT) OF A REQUEST FOR SUBSCRIPTON OF AN EQUIVALENT NUMBER OF CLASS I PREFERRED SHARES OF ROCKWALL CDO LTD. ON THE SAME TERMS AND CONDITIONS AS THE SUBSCRIPTON FOR THE ROCKWALL INVESTORS CORP. PREFERRED SHARES