# EXHIBIT O

EXECUTION COPY

## PREFERENCE SHARES PAYING AGENCY AGREEMENT

As of March 13, 2007

Investors Bank & Trust Company,
 as Preference Shares Paying Agent
Corporate Trust Office – Eastland CLO, Ltd.
200 Clarendon Street
Mailcode: EUC 108
Boston, MA 02116

Ladies and Gentlemen:

Eastland CLO, Ltd., a company existing under the laws of the Cayman Islands (the "**Issuer**") and Eastland CLO Corp., a Delaware corporation (the "**Co-Issuer**" and, together with the Issuer, the "**Co-Issuers**"), have resolved to appoint Investors Bank & Trust Company ("**Investors Bank**"), as preference shares paying agent (the "**Preference Shares Paying Agent**") for the Class I Preference Shares and the Class II Preference Shares issued by the Issuer (collectively, the "**Preference Shares**"). The Issuer hereby appoints Investors Bank as such under the terms set forth below and confirms Investor Bank's agreement to distribute any funds to be paid to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture (as defined herein). Reference is also made to the indenture, dated as of March 13, 2007, among the Issuer, the Co-Issuer and Investors Bank, as trustee (the "**Indenture**"). Capitalized terms used and not otherwise defined herein shall have the meanings assigned thereto in the Indenture or, if not defined therein, certain resolutions passed at a meeting of the Issuer's Board of Directors that was held on March 12, 2007, as reflected in the minutes thereof, including Annex A ("**Annex A**") therein (the "**Resolutions**" and, together with this Agreement and the Issuer's Memorandum and Articles of Association, the "**Preference Share Documents**"). The Preference Shares will be issued, and may be transferred, subject to the procedures set forth in Annex A to the Resolutions.

On the Closing Date, (i) all of the Class I Preference Shares will be offered and sold directly by the Issuer to Eastland Investors Corp., an exempted limited liability company incorporated under the laws of the Cayman Islands ("**Investors Corp.**") and (ii) all of the Class II Preference Shares will be offered and sold by the Issuer through Citigroup Global Markets Inc., as placement agent, to Highland Financial Partners, L.P. ("**HFP**") (an Affiliate of the Servicer) and/or one or more of its subsidiaries. Investors Corp. will finance its purchase of the Class I Preference Shares by issuing Holding Preference Shares in a number equal to the aggregate number of, at a price equal to the price of, such Class I Preference Shares purchased by it.

Section 1.    Notice of Distribution to Directors.    The Preference Shares Paying Agent, promptly after receipt of the Valuation Report, shall forward or make available to the directors of the Issuer (as identified to it by the Issuer) the Valuation Report which identifies the Interest Proceeds and Principal Proceeds, payable to the Holders of the Preference Shares on the applicable Payment Date.

Section 2.    Payments of Dividends and Other Distributions, Amounts Not Distributable. (a) The Preference Shares Paying Agent shall, subject to paragraphs (b), (c), (d) and (e) below, pay or cause to be paid, on behalf of the Issuer on each applicable Payment Date, the Interest Proceeds and Principal Proceeds received from the Trustee to the Holders of the Preference Shares as a distribution of dividend on such Payment Date. Such distributions of Interest Proceeds and Principal Proceeds by way of dividend to the Holders of Preference Shares shall be paid *pro rata* in the proportion

that the number of Preference Shares held by each such Holder bears to the total number of Preference Shares. The Issuer, or the Share Registrar on its behalf, shall provide the Preference Shares Paying Agent with a copy of the Preference Share register on the Closing Date and thereafter, the Share Registrar will promptly notify the Preference Shares Paying Agent of any changes to the Preference Share register. The Preference Shares Paying Agent shall notify the Issuer and the Share Registrar of any transfers of Preference Shares known to it.

(b)     Notwithstanding anything in this Agreement to the contrary, distributions of Interest Proceeds and Principal Proceeds by way of dividend to the Holders of Preference Shares on any Payment Date shall (i) be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such payment as determined by the Issuer and (ii) be made only to the extent that the Issuer has sufficient distributable profits and/or share premium out of which to make such payment as determined by the Issuer. If the Issuer determines that the conditions set forth in either clause (i) or (ii) above are not satisfied with respect to any portion of Interest Proceeds or Principal Proceeds payable on such Payment Date, the Issuer shall instruct the Preference Shares Paying Agent in writing not later than one Business Day prior to such Payment Date that such portion of Interest Proceeds or Principal Proceeds, as applicable, should not be paid, and the Preference Shares Paying Agent shall not pay the same, to the Holders of the Preference Shares until the first succeeding Payment Date, or (in the case of any payments which would otherwise be payable on the Redemption Date or any Scheduled Preference Shares Redemption Date) until the first succeeding Business Day, upon which the Issuer notifies the Preference Shares Paying Agent in writing that each such condition is satisfied, at which time the Preference Shares Paying Agent shall distribute such amounts. To the extent available, distributions shall be made first out of distributable profits for the current Due Period, then out of distributable profits in excess of dividends for prior Due Periods and then out of share premium.

(c)     Notwithstanding anything in this Agreement to the contrary, distributions of the Redemption Price by way of redemption of the Preference Shares shall be subject to the Issuer being solvent under Cayman Islands law (defined as the Issuer being able to pay its debts as they become due in the ordinary course of business) immediately prior to, and after giving effect to, such distribution as determined by the Issuer. For purposes of this subsection (c), a determination as to whether the Issuer is solvent on the Redemption Date shall be made by the Issuer (A) after giving effect to any payments to be made on such Redemption Date and (B) in light of the fact that the obligations of the Issuer to the Holders of the Notes, the other Secured Parties and the other Persons subject to the Priority of Payments are limited in recourse to the Collateral, and not to amounts (i) in the Preference Shares Distribution Account, (ii) any other amounts released from the Collateral in accordance with the Indenture and held by or on behalf of the Issuer for the benefit of the Holders of the Preference Shares or (iii) amounts on deposit in the Issuer's bank account in the Cayman Islands, and that after the assets in the Collateral are exhausted, such parties will have no further claim against the Issuer. If the Issuer determines that such condition is not satisfied on a Redemption Date with respect to any portion of the Redemption Price, the Issuer shall instruct the Preference Shares Paying Agent in writing not later than one Business Day prior to such Redemption Date that such portion should not be distributed, and the Preference Shares Paying Agent shall not distribute the same, to the Holders of the Preference Shares until the first succeeding Business Day upon which the Issuer notifies the Preference Shares Paying Agent in writing that such condition is satisfied, and the amounts so retained in the Preference Shares Distribution Account will be held therein until such amounts are paid.

(d)     On each Payment Date, the Preference Shares Paying Agent shall distribute, on behalf of the Issuer, amounts, if any, received by it from the Trustee, which are then on deposit in the Class II Preference Share Special Payment Account pursuant to Section 10.3(j) of the Indenture for

2

payment *pro rata* to the Holders of the Class II Preference Shares as the Class II Preference Share Special Payment.

(e)     Dividends to the Holders of the Preference Shares (other than Class II Preference Share Special Payments) may be paid, in whole or in part on any Payment Date, with any Eligible Equity Securities held by, or on behalf of, the Issuer at such time in lieu of a distribution of Interest Proceeds. The Servicer, on behalf the Issuer, shall have the right to direct the Trustee to distribute any Eligible Equity Securities *pro rata* to the Consenting Holders of the Preference Shares (as identified to the Trustee by the Preference Shares Paying Agent) with respect to such Payment Date to the extent that the Market Value of such Eligible Equity Securities (determined by the Servicer as of the relevant Market Value Determination Date) is equal to or lower than the aggregate amount of Interest Proceeds that would otherwise be due and payable on such Payment Date to such Consenting Holders of the Preference Shares. Interest Proceeds in an amount equal to the Market Value of such Eligible Equity Securities (determined by the Servicer as of the relevant Market Value Determination Date) distributed to the Consenting Holders of the Preference Shares with respect to any such Payment Date shall be treated for all purposes by the Issuer and the Servicer as Principal Proceeds available for distribution on the relevant Payment Date. The amount of Interest Proceeds available on the relevant Payment Date shall be reduced and the amount of Principal Proceeds available on the relevant Payment Date shall be increased accordingly.

(f)     Anything in this Agreement to the contrary notwithstanding, the Holders of the Preference Shares acknowledge and agree for the benefit of the Holders of the Notes that the rights of the Holders of the Preference Shares to distributions by the Issuer and in and to the assets of the Issuer in respect of such Preference Shares, shall be subordinate and junior to the Notes, to the extent and in the manner set forth in the Indenture including as set forth in Section 11.1 thereof and as required by law. If any Event of Default has occurred and has not been cured or waived and acceleration occurs in accordance with Article V of the Indenture, the Notes shall be paid in full in Cash before any further payment or distribution is made on account of the Preference Shares. The Holders of the Preference Shares agree, for the benefit of the Holders of the Notes, not to cause the filing of a petition in bankruptcy against the Issuer for failure to pay to them amounts due under the Articles or hereunder in respect of the Preference Shares or payable under the Indenture prior to the date which is one year and one day (or, if longer, the applicable preference period) after the payment in full of principal of and interest on the Notes.

(g)     In the event that notwithstanding the provisions of this Agreement or the Indenture, any Holder of any Preference Shares shall have received any payment or distribution in respect of such Preference Shares contrary to the provisions of this Agreement, the Articles or the Indenture, then, unless and until (i) the Class A-1 Notes, (ii) the Class A-2a Notes, (iii) the Class A-2b Notes, (iv) the Class A-3 Notes, (v) the Class B Notes, (vi) the Class C Notes and (vii) the Class D Notes shall have been paid in full in Cash in accordance with the Indenture, such payment or distribution shall be received and held in trust for the benefit of, and shall forthwith be paid over and delivered to, the Trustee, for payment and delivery of the same to the Holders of the Class A-1 Notes, the Class A-2a Notes, the Class A-2b Notes, the Class A-3 Notes, the Class B Notes, the Class C Notes or the Class D Notes, as the case may be, in accordance with the Indenture; provided, however, that if any such payment or distribution is made other than in Cash, it shall be paid over and delivered to the Trustee such that it may be held by the Trustee as part of the Collateral pursuant to, and subject in all respects to, the provisions of the Indenture, including Section 13.1 thereof.

Section 3.     Payments and Redemption. (a) The Preference Shares Paying Agent shall make payments or distributions (other than distributions of Eligible Equity Securities) to each registered Holder on the relevant Record Date (as set out in Annex A to the Resolutions) by wire transfer

3

in immediately available funds to a U.S. Dollar account maintained by such Holder as notified to the Preference Shares Paying Agent or, in the absence of such notification, by U.S. Dollar check mailed to such Holder at its address of record. The Issuer shall, or shall procure that the Share Registrar will, provide the Preference Shares Paying Agent with all relevant information regarding the registered Holders of the Preference Shares as the Preference Shares Paying Agent may reasonably require to the extent such information is in possession or control of the Issuer or Share Registrar.

(b)     If the Servicer, on behalf of the Issuer, desires to make distributions of Eligible Equity Securities on any Payment Date in lieu of Interest Proceeds that are otherwise available for distribution to the Holders of Preference Shares on such Payment Date pursuant to the Priority of Payments as described in Section 2(e) above, the Servicer will notify the Trustee, the Preference Shares Paying Agent and the Holding Preference Shares Paying Agent pursuant to the Servicing Agreement not later than 20 calendar days prior to such Payment Date and provide the Trustee, the Issuer, the Preference Shares Paying Agent (for forwarding on the Record Date or promptly thereafter, but in no event later than two Business Days after the Record Date, to each Holder of the Preference Shares registered as such on the Record Date for such Payment Date) and the Holding Preference Shares Paying Agent (for forwarding on the Record Date or promptly thereafter, but in no event later than two Business Days after the Record Date, to each Holder of the Holding Securities registered as such on the Record Date for such Payment Date) with (i) details of the Eligible Equity Securities to be distributed, (ii) the Market Value of such Eligible Equity Securities determined as of the relevant Market Value Determination Date, (iii) any other information considered necessary by the Servicer in connection with such proposed distribution and (iv) any information as otherwise required by the Trustee, the Preference Shares Paying Agent and/or the Holding Preference Shares Paying Agent with respect to such proposed distribution. The Preference Shares Paying Agent shall then mail such materials, within two Business Days of its receipt thereof from the Servicer, to each registered Holder of Preference Shares on the Record Date for such Payment Date along with a form of notice and consent (in a form attached hereto in Schedule I) seeking the written consent of each such Holder of Preference Shares to distribute such Eligible Equity Securities to such Holder in lieu of all or a portion of the Interest Proceeds available for distribution to such Holder on such Payment Date. Each Holder of the Preference Shares wishing to receive such Eligible Equity Securities in lieu of a distribution of all or a portion of the Interest Proceeds available for distribution to such Holder on such applicable Payment Date (each such Holder with respect to such Payment Date, a "**Consenting Holder of the Preference Shares**") is required to deliver to the Preference Shares Paying Agent a written consent (which consent will be irrevocable) no later than five Business Days prior to such Payment Date. If any Holder of Preference Shares does not timely deliver its written consent to the Preference Shares Paying Agent in the manner set forth in such notice indicating its consent to the receipt of such Eligible Equity Securities in lieu of a distribution of all or a portion of the Interest Proceeds available for distribution to such Holder on such Payment Date, such Holder shall be deemed to have not given its consent and shall not be a Consenting Holder of Preference Shares with respect to such Payment Date. On each applicable Payment Date (or as soon thereafter as reasonably practicable), Eligible Equity Securities shall be distributed *pro rata* to each Consenting Holder of the Preference Shares with respect to such Payment Date. Each Holder of Preference Shares that is not a Consenting Holder of the Preference Shares (and, for the avoidance of doubt, each Consenting Holder of the Preference Shares to the extent the Market Value as of the relevant Market Value Determination Date of the *pro rata* portion of Eligible Equity Securities distributed to it on such Payment Date is less than the *pro rata* portion of the Interest Proceeds that it would have received on such Payment Date had the Eligible Equity Securities not been distributed on such Payment Date) on any applicable Payment Date shall receive a distribution of Interest Proceeds to the extent available in accordance with the Priority of Payments on such Payment Date in accordance with Section 2(e) herein and the Indenture.

(c)     The Issuer or the Preference Shares Paying Agent shall not be obligated to pay any additional amounts to Holders or beneficial owners of the Preference Shares as a result of any

withholding or deduction for, or on account of, any present or future taxes, duties, assessments or governmental charges. As a condition to payment of any amount, the Preference Shares Paying Agent, on behalf of the Issuer, may require certification acceptable to it to enable the Issuer and the Preference Shares Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments or distributions in respect of Preference Shares under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under such law or regulation. Amounts properly withheld under the Code by any Person from a payment or distribution to a Holder of Preference Shares shall be considered as having been paid by the Issuer or the Preference Shares Paying Agent to such Holder for all purposes herein. The Issuer and the Preference Shares Paying Agent hereby provide notice to each Holder or beneficial owner of the Preference Shares that the failure to provide the Preference Shares Paying Agent with appropriate tax certifications will result in amounts being withheld from payments to such Holders or beneficial owners of the Preference Shares under this Agreement (provided that amounts withheld pursuant to applicable tax laws shall be considered as having been paid by the Issuer as provided herein).

(d)     The Issuer, the Share Registrar and the Preference Shares Paying Agent may deem and treat the Holder of any Preference Shares as the absolute owner of such Preference Shares, notwithstanding any notation of ownership or other writing on any certificate representing such Preference Shares, for the purpose of paying dividends and other distributions thereon, and for all other purposes, and none of the Issuer, the Share Registrar or the Preference Shares Paying Agent shall be affected by any notice to the contrary. All such payments (including distributions of Eligible Equity Securities) so made to such Holder or upon such Holder's order shall be valid and, to the extent of the sum or sums so paid, effectual to satisfy and discharge the liability for the monies payable upon any such Preference Share.

(e)     All payments by the Preference Shares Paying Agent hereunder shall be made without charging any commission or fee to the Holders of the Preference Shares.

(f)     On the Scheduled Preference Shares Redemption Date, the Issuer shall redeem the Preference Shares for a redemption price equal to all amounts distributable to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares pursuant to the Priority of Payments set forth in the Indenture, unless the Preference Shares have been redeemed earlier through an optional redemption or otherwise. Upon final payment due on the Preference Shares (whether on the Scheduled Preference Shares Redemption Date or any earlier Redemption Date), the Holder thereof shall present and surrender the certificates, if any, representing the Preference Shares at the office of the Preference Shares Paying Agent on or prior to such final payment date. On the Scheduled Preference Shares Redemption Date, all payments on redemption of Preference Shares to the Holders of the Preference Shares shall be made *pro rata* in accordance with their respective holdings.

Notice of final payment of the Preference Shares pursuant to an optional redemption in conjunction with an optional redemption of the Notes shall be given as set forth in Section 9.3 of the Indenture. Notice of any other final payment shall be given by the Preference Shares Paying Agent by first-class mail, postage prepaid, mailed not later than 10 Business Days nor earlier than 30 days before the applicable Redemption Date to each Holder of Preference Shares at such Holder's address as set forth in the Preference Share register.

All notices of redemption shall state:

(i)     the Redemption Date on which the Preference Shares are to be redeemed;

5

(ii)     the applicable Redemption Price for the Preference Shares being redeemed;

(iii)    the place or places where such Preference Shares to be redeemed are to be surrendered for payment of the applicable Redemption Price, which shall be the office of the Preference Shares Paying Agent; and

(iv)    in the case of an optional redemption, the latest possible date upon which such notice of redemption may be withdrawn.

The Issuer shall have the option to withdraw any such notice of redemption up to the fourth Business Day before the scheduled Redemption Date by written notice to the Trustee, the Servicer, the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) and the Holding Preference Shares Paying Agent (for forwarding to the Holders of the Holding Securities) in each case only if either (i) in the case of a redemption pursuant to Section 9.2(a) of the Indenture, the Servicer does not deliver the sale agreement or certifications required under the Indenture (as described in Section 9.3(c) and 12.1(f) of the Indenture), as the case may be, in form satisfactory to the Trustee, (ii) in the case of a redemption pursuant to Section 9.2(a) or Section 9.2(b)(i) of the Indenture, the Issuer receives the written direction of a Majority of the Preference Shares to withdraw the notice of redemption and (iii) in the case of a redemption pursuant to Section 9.2(b)(ii) of the Indenture, the Issuer receives the unanimous written direction of the Holders of the Preference Shares to withdraw the notice of redemption (and the Issuer thereby agrees for the benefit of the directing person to withdraw the applicable notice of redemption if it receives the written direction referred to in the preceding clause (ii) or this clause (iii)). Notice of any such withdrawal shall be delivered pursuant to Section 9.3 of the Indenture.

Failure to give notice of redemption, or any defect therein, to the Preference Shares Paying Agent (for forwarding to the Holders of the Preference Shares) or the Holding Preference Shares Paying Agent (for forwarding to the Holders of the Holding Securities) shall not impair or affect the validity of the redemption of any other Preference Shares.

(g)     On any Payment Date on or after payment in full of the Notes, so long as all administrative fees and expenses and other fees (without regard to any payment limitations) payable under the Priority of Payments (including the Senior Servicing Fee and the Subordinated Servicing Fee), all amounts owing under the Indenture and all amounts owing under the Indenture and any Hedge Agreement to any Hedge Counterparty have been discharged:

(i)     at the direction of a Majority of the Preference Shares, the Issuer shall cause the Trustee to make payments in redemption of all of the Preference Shares, in an aggregate amount equal to all of the proceeds from the sale or other disposition of all of the remaining Collateral less any fees and expenses owed by the Issuer (including the Redemption Price of any Notes being simultaneously redeemed), the aggregate amount to be distributed to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares *pro rata* in accordance with their respective holdings; or

(ii)    at the unanimous direction of the Holders of the Preference Shares, voting as a single Class or group, the Issuer shall cause the Trustee to make payments in redemption of all or a directed portion (representing less than all) of the Preference Shares to the Preference Shares Paying Agent for distribution to the Holders of the Preference Shares based upon such direction.

6

(h)     If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Notes in accordance with Section 9.2(a) of the Indenture, such Holder shall notify the Preference Shares Paying Agent, the Trustee, the Issuer, and the Servicer not later than 45 days before the Payment Date on which the redemption is to be made. If the Preference Shares Paying Agent, the Trustee and the Issuer receive notice from one or more Holders of Preference Shares holding less than a Majority of the Preference Shares, the Preference Shares Paying Agent shall, within five Business Days of receipt of such notice, notify the Holders of the Preference Shares and the Holding Preference Shares Paying Agent (for forwarding to the Holders of the Holding Securities) (i) of the receipt of such notice and (ii) that any Holder of Preference Shares may join in directing an optional redemption by notifying the Issuer, the Trustee and the Preference Shares Paying Agent in writing within five Business Days after such Holder's receipt of the Preference Shares Paying Agent's Notice. If the Holders of at least a Majority of the Preference Shares direct the Issuer to optionally redeem the Notes, the Issuer shall effect an Optional Redemption of the Notes pursuant to the procedures described in the Indenture.

(i)     If any Holder of Preference Shares desires to direct the Issuer to optionally redeem the Preference Shares after the redemption or repayment of the Notes and in accordance with paragraphs (g)(i) and (ii) above, such Holder shall notify the Preference Shares Paying Agent not later than 30 Business Days (or with the Servicer's consent, not later than 20 Business Days) prior to the proposed Redemption Date (which must be a Payment Date). Upon receiving such notice, the Preference Shares Paying Agent shall promptly (and in no event later than two Business Days thereafter) notify the Issuer and each Holder of the Preference Shares thereof. Each Holder of Preference Shares that also wishes to direct the Issuer to optionally redeem the Preference Shares must so notify the Preference Shares Paying Agent (who shall promptly notify the Issuer and the Servicer of such direction) within 20 Business Days after receipt of such notice. If the aggregate number of Preference Shares that have directed the Issuer to optionally redeem the Preference Shares equals or exceeds the minimum threshold set forth in paragraphs (g)(i) and (ii) above, the Issuer shall effect an optional redemption of the Preference Shares pursuant to the procedures described in the Preference Share Documents. Notwithstanding the foregoing, the Preference Shares must be redeemed on or prior to the Scheduled Preference Shares Redemption Date. The Preference Shares shall be redeemed from the proceeds of any Collateral remaining after giving effect to the redemption or repayment of the Notes and payment in full of all expenses of the Co-Issuers.

(j)     If the Servicer, on behalf of the Issuer, proposes a Refinancing in accordance with Section 9.7(a) of the Indenture by notice to the Preference Shares Paying Agent, the Preference Shares Paying Agent shall promptly upon receipt of such notice (and in no event later than two Business Days thereafter) notify each Holder of Preference Shares thereof. Each Holder of Preference Shares that wishes to consent to such Refinancing will deliver such consent to the Preference Shares Paying Agent in writing no later than 15 days prior to the Refinancing Date. Upon receipt of such consents, the Preference Shares Paying Agent shall immediately notify the Servicer whether or not the Holders of a Majority of the Preference Shares have consented to such Refinancing.

Section 4.     Preference Shares Distribution Account. (a) On or prior to the Closing Date, the Preference Shares Paying Agent shall establish a single, segregated non-interest bearing trust account that shall be designated as the "Preference Shares Distribution Account" (the "**Preference Shares Distribution Account**") that shall be held in trust in the name of the Preference Shares Paying Agent for the benefit of the Issuer, over which the Preference Shares Paying Agent shall have exclusive control and the sole right of withdrawal. The Preference Shares Paying Agent shall cause the Trustee to make any payment pursuant to the Priority of Payments by wire transfer (or by internal transfer if the Trustee and the Preference Shares Paying Agent are the same Person) to the Preference Shares Distribution Account in immediately available funds. All sums received by the Preference Shares Paying Agent from the Trustee or the Issuer for payment of dividends or other distributions (other than the Class

7

II Preference Share Special Payments) or the Redemption Price in respect of the Preference Shares shall be deposited promptly in the Preference Shares Distribution Account until the first Payment Date or, in the case of the payment of the Redemption Price in respect of the Preference Shares, the first Business Day, on which, in either case, the Issuer notifies the Preference Shares Paying Agent that such distribution can be made to the Holders of the Preference Shares in accordance with Section 2. The Preference Shares Paying Agent shall then apply such funds as provided for in Section 3. All sums payable by the Preference Shares Paying Agent hereunder shall be paid out of the Preference Shares Distribution Account.

(b)     Notwithstanding anything herein, the Preference Shares Paying Agent shall not incur any personal liability to pay amounts due to Holders of the Preference Shares and shall only be required to make payments or other distributions (including the Redemption Price thereof) if there are sufficient monies in the Preference Shares Distribution Account to make such payments or other distributions.

(c)     The Preference Shares Paying Agent shall have no right of set off with respect to amounts on deposit in the Preference Shares Distribution Account.

(d)     Amounts on deposit in the Preference Shares Distribution Account that are not paid out may be deposited in an interest-bearing account as directed in writing by the Issuer.

Section 5.     Unclaimed Payments.  Except as otherwise required by applicable law, any money deposited with the Preference Shares Paying Agent and held in the Preference Shares Distribution Account or otherwise held for payment on any Preference Share and remaining unclaimed for two years after such payment has become due and payable shall be paid to the Issuer upon Issuer Request; and the Holder of such Preference Share shall thereafter look only to the Issuer for payment of such amounts and all liability of the Preference Shares Paying Agent with respect to such money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease. The Preference Shares Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer any reasonable means of notification of such release of payment, including, but not limited to, arranging with the Share Registrar for the Share Registrar to mail notice of such release to Holders of Preference Shares whose right to or interest in monies due and payable but not claimed is determinable from the records of the Issuer or Preference Shares Paying Agent, as applicable, at the last address of record of each such Holder.

Section 6.     Additional Issuance of Preference Shares.  (a) At any time during the Replacement Period, the Issuer may issue and sell additional Preference Shares and use the proceeds from such issuance and sale to purchase additional Collateral Obligations or as otherwise permitted under the Preference Share Documents and the Indenture; provided that the following conditions are met: (i) the terms of the Preference Shares issued shall be identical to the terms of previously issued Preference Shares and (ii) the net proceeds of any additional Preference Shares shall be used to purchase additional Collateral Obligations. Such additional Preference Shares may be offered and sold at prices that differ from the initial offering prices of the outstanding Preference Shares; provided that the initial offering prices of additional Preference Shares shall not be below 100% of the face amount thereof. The Issuer shall cause purchases of additional Preference Shares made pursuant to an additional issuance of Preference Shares to comply individually and in the aggregate with the applicable purchase and transfer restrictions for the Preference Shares set forth herein in Section 9 and all applicable laws, rules and regulations (including, without limitation, any rules, regulations and procedures of any securities exchange, self-regulatory organization or clearing agency).

8

(b)     Any additional Preference Shares issued shall, to the extent reasonably practicable, be offered by the Issuer first to the existing Holders of the Preference Shares, in such amounts as are necessary to preserve their *pro rata* holdings of the Preference Shares.

Section 7.     Purchase and Redesignation of Preference Shares.     (a) Each Holder or beneficial owner of a Preference Share, by its ownership of such Preference Share, acknowledges and agrees that each Non-Consenting Holder of Preference Shares with respect to an amendment of the Indenture (which includes Holders that fail to respond to a consent solicitation within the applicable period) will be forced to sell its applicable Preference Shares pursuant to Section 9.6 of the Indenture, whereby the Amendment Buy-Out Purchaser is permitted to purchase the Preference Shares held by any such Non-Consenting Holder thereof at the applicable Amendment Buy-Out Purchase Price; provided that if any Non-Consenting Holder holds Class II Preference Shares, (i) such Non-Consenting Holder will sell such Class II Preference Shares to Investors Corp. and such Preference Shares will be redesignated as Class I Preference Shares, (ii) Investors Corp. will issue additional Holding Preference Shares in a number equal to the aggregate number of, and at a price equal to the price of, such redesignated Preference Shares purchased by it and (iii) the Amendment Buy-Out Purchaser will purchase such additional Holding Preference Shares in lieu of such redesignated Preference Shares.

(b)     Each Holder or beneficial owner of a Preference Share will have the right to sell such Preference Share to an Extension Qualifying Purchaser upon a Maturity Extension pursuant to Section 2.4 of the Indenture at the applicable Extension Purchase Price and absent such sale shall be subject to an extension of the Scheduled Preference Shares Redemption Date as set forth in the Indenture and the other aspects of a Maturity Extension under the Indenture; provided that if any Holder of Class II Preference Shares delivers an Extension Sale Notice notifying the Issuer and the Trustee of its intention to sell all or a portion of its Class II Preference Shares, (i) such Holder will sell such Class II Preference Shares to Investors Corp. and such Preference Shares will be redesignated as Class I Preference Shares, (ii) Investors Corp. will issue additional Holding Preference Shares in a number equal to the aggregate number of, and at a price equal to the price of, such redesignated Preference Shares purchased by it and (iii) the Extension Qualifying Purchaser will purchase such additional Holding Preference Shares in lieu of such redesignated Preference Shares.

(c)     The Share Registrar will record in the register maintained by it those Preference Shares which it has been notified in writing are held by HFP or any of its subsidiaries. Such Preference Shares shall be designated by the Share Registrar as Class II Preference Shares. HFP and its subsidiaries will agree not to transfer any of the Class II Preference Shares to any Person (including pursuant to the Amendment Buy-Out Option and a Maturity Extension as set out in paragraphs (a) and (b) above) other than Investors Corp. The Share Registrar will redesignate (i) Class II Preference Shares as Class I Preference Shares upon any transfer of such Class II Preference Shares by HFP or any of its subsidiaries to Investors Corp. and (ii) Class I Preference Shares as Class II Preference Shares upon any transfer of Class I Preference Shares by Investors Corp. to HFP or any of its subsidiaries.

Section 8.     Execution, Delivery and Dating.     The certificates (if required by the Resolutions) relating to the Preference Shares shall be executed on behalf of the Issuer as provided for in the Memorandum and Articles of Association.

At any time and from time to time after the execution and delivery of this Agreement, the Issuer may deliver Preference Share certificates (the "**Preference Share Certificates**") executed by the Issuer to the Preference Shares Paying Agent, and the Preference Shares Paying Agent, upon Issuer Order, shall deliver such Preference Share Certificates as provided in this Agreement and not otherwise.

Each Preference Share Certificate delivered by the Preference Shares Paying Agent to or upon Issuer Order on the Closing Date shall be dated the Closing Date. All other Preference Share Certificates that are delivered after the Closing Date for any other purpose under this Agreement shall be dated the date of their delivery.

Section 9. <u>Registration and Registration of Transfer</u>. (a) When the Preference Shares Paying Agent receives a request for transfer of Preference Shares, the Preference Shares Paying Agent shall comply with its obligations as set forth in Section 5 of Annex A to the Resolutions.

(b)    No transfer of the Preference Shares shall be registered if such transfer will result in persons that have represented that they are Benefit Plan Investors (as defined below) owning 25% or more of the aggregate outstanding amount of either the Class I Preference Shares or the Class II Preference Shares immediately after such transfer (excluding for purposes of such determination any Preference Shares held by any Controlling Person (as defined below) and its affiliates (such as the Preference Shares held by the Servicer or its affiliates) that is not also a Benefit Plan Investor) determined in accordance with Section 3(42) of ERISA and the Plan Asset Regulation issued by the United States Department of Labor and found at 29 C.F.R. Section 2510.3-101 (the "**Plan Asset Regulation**"). Each purchaser or transferee of a Preference Share will be required to represent and agree whether or not such purchaser is, or is using the assets of, or will at any time throughout its holding and disposition of such Preference Share be or become, (i) an "employee benefit plan" as defined in Section 3(3) of the United States Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), that is subject to Title I of ERISA, (ii) a "plan" described in Section 4975(c)(1) of the Internal Revenue Code of 1986 (the "**Code**"), that is subject to Section 4975 of the Code or (iii) any entity whose underlying assets include "plan assets" of any of the foregoing by reason of an investment in the entity by such a plan or arrangement (each, a "**Benefit Plan Investor**"). In addition, each purchaser or transferee of a Preference Share (other than the Servicer or its affiliates) will be required to represent and agree whether or not it is, or is using the assets of, or will at any time throughout its holding and disposition of such Preference Share be or become the Servicer or any other person that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer or any "affiliate" (as defined in the Plan Asset Regulation) or any such person (any such person, a "**Controlling Person**"). If, after a purchaser's or transferee's initial acquisition of Preference Shares, the purchaser or transferee determines or the Issuer, the Share Registrar or the Preference Shares Paying Agent obtain actual knowledge that such purchaser or transferee has breached any of the foregoing representations, such purchaser or transferee will dispose of its interest in the Preference Shares in a manner consistent with the requirements set forth in Annex A to the Resolutions. Each purchaser or transferee of a Preference Share will be required to represent that either (i) it is not, and is not acquiring such Preference Share with the assets of, an "employee benefit plan" as defined under Section 3(3) of ERISA and that is subject to Title I of ERISA, any "plan" described in Section 4975(e) of the Code or a foreign, governmental or church plan subject to any federal, state, local or foreign law that is substantially similar to Section 406 of ERISA or Section 4975 of the Code (each such plan, a "**Covered Plan**") and throughout the holding of such Preference Share, it will not become or transfer its interest to any Covered Plan or to an entity using the assets thereof, or (ii) the acquisition and holding of such Preference Share by the purchaser or transferee, throughout its holding and disposition of such Preference Share, will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a foreign, governmental or church plan, a violation of any substantially similar law), because such purchase, holding and disposition either (x) is not, and will not become, subject to such laws or (y) is covered by an exemption from all applicable prohibited transactions, all of the conditions of which are and will be satisfied upon its acquisition of, and throughout its holding and disposition of, such Preference Share. Each purchaser or transferee of a Preference Share will be required to represent and agree that it will not transfer such Preference Share in violation of any of the foregoing representations and agreements, that any purported transfer that does not comply with such

10

representations and agreements will be null and void *ab initio* and will vest in the transferee no rights against the Preference Shares Paying Agent or the Issuer, and that such purchaser or transferee, as applicable, and any fiduciary or other Person causing it to acquire such Preference Share shall, to the fullest extent permissible under applicable law, indemnify and hold harmless the Issuer, the Co-Issuer, the Trustee, the Preference Share Paying Agent, the Servicer, the Share Registrar, the Initial Purchaser, the Placement Agent and their respective affiliates from any cost, damage or loss incurred by them as a result of any transfer in violation of any of the foregoing.

(c)     The Preference Shares Paying Agent agrees that, after the initial distribution of the Class D Notes and the Preference Shares, neither it nor any of its affiliates will acquire any Class D Notes or Preference Shares (including pursuant to a Maturity Extension or the Amendment Buy-Out Option) unless such acquisition would not, as determined by the Trustee, result in persons that have represented that they are Benefit Plan Investors owning 25% or more of the aggregate outstanding amount of any of the Class D Notes, the Class I Preference Shares or the Class II Preference Shares immediately after such acquisition (determined in accordance with Section 3(42) of ERISA, the Plan Asset Regulation, the Indenture and the Preference Share Documents). The Class D Notes and the Preference Shares held by the Preference Shares Paying Agent or any of its affiliates (as defined in the Plan Asset Regulation) that have represented that they are Controlling Persons will be disregarded and will not be treated as outstanding for purposes of determining compliance with such 25% limitation to the extent that such person has represented that it is not a Benefit Plan Investor.

(d)     Notwithstanding anything else contained herein to the contrary, neither the Preference Shares Paying Agent nor the Share Registrar shall be responsible for ascertaining whether any purchase or transfer complies with the registration provisions of or exemptions from the Securities Act, applicable state laws, the Code, ERISA, the Plan Asset Regulation or the Investment Company Act; provided that if a certificate or other written representation is specifically required by the express terms of this Agreement or Section 5 of Annex A to the Resolutions to be delivered to the Preference Shares Paying Agent by the purchaser or transferee of a Preference Share, the Preference Shares Paying Agent shall be under a duty to receive and examine the same to determine whether the same substantially conforms on its face with the terms of this Agreement or Section 5 of Annex A to the Resolutions, as applicable, and shall promptly notify the party delivering the same if such certificate does not comply with such terms.

(e)     The Issuer shall (and shall cause the Share Registrar to) consult the Preference Shares Paying Agent in connection with all transfers of Preference Shares and shall (and shall cause the Share Registrar to) direct all transferors and transferees to correspond through the Preference Shares Paying Agent. The Share Registrar will not be required to determine whether any proposed transfer, redemption or other transaction in relation to the Preference Shares complies with any restrictions imposed by law or under the terms of the Indenture or the Preference Share Documents but shall be entitled to rely completely in that respect on the Issuer or the Preference Shares Paying Agent.

(f)     In the event that the Preference Shares Paying Agent is notified by the Issuer (or the Servicer on behalf of the Issuer) that any Holder of Preference Shares has failed to provide the Issuer with the applicable United States federal income tax certifications, the Preference Shares Paying Agent shall notify the Share Registrar and request that it not record such transfer. Except as expressly provided herein or as required by this Agreement in connection with the Preference Shares Paying Agent's obligations to the Holders of Preference Shares, the Preference Shares Paying Agent shall have no obligation to oversee or participate in any such transfer of Preference Shares.

Section 10.     Fees and Indemnification.  The fee to be paid in connection with the Preference Shares Paying Agent's appointment and duties as Preference Shares Paying Agent shall be

paid pursuant to a letter agreement dated March 13, 2007 between the Preference Shares Paying Agent, the Holding Preference Shares Paying Agent, the Servicer on behalf of Investors Corp. and the Issuer. The fees payable hereunder shall be paid by the Issuer to the Preference Shares Paying Agent's account as directed by the Preference Shares Paying Agent. The Issuer will indemnify the Preference Shares Paying Agent and its officers, directors, employees and agents, against any loss, liability or expense (including reasonable legal fees and out-of-pocket expenses of counsel) incurred in connection with their appointment and duties hereunder, except such as result from their own gross negligence, bad faith or willful misconduct. Notwithstanding the foregoing, the Preference Shares Paying Agent agrees that such fees and indemnification shall be treated as an Administrative Expense of the Issuer as defined in the Indenture and paid pursuant to the Priority of Payments. Anything in this Agreement notwithstanding, in no event shall the Preference Shares Paying Agent be liable for special, indirect or consequential losses or damages of any kind whatsoever (including but not limited to loss of profits), even if the Preference Shares Paying Agent has been advised of such loss or damage and regardless of the form of action. The obligation of the Issuer to indemnify the Preference Shares Paying Agent under this Section 10 shall survive retirement of the Preference Shares and any resignation or removal of the Preference Shares Paying Agent but shall remain subject to the provisions of Section 23.

Section 11. <u>Liabilities</u>. (a) The Preference Shares Paying Agent shall not be responsible or accountable to anyone for any reason whatsoever with respect to the validity of this Agreement or of the Preference Shares, or for any act done or omitted by it in good faith, or for anything whatsoever in connection with this Agreement, except for its own gross negligence, bad faith or willful misconduct in the performance of any duty to be performed by the Preference Shares Paying Agent hereunder.

(b) The Preference Shares Paying Agent may consult as to legal matters with lawyers selected with due care by it, who may be employees of or regular independent counsel to the Issuer, and the Preference Shares Paying Agent shall be protected from and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion or advice of such lawyers.

(c) The Preference Shares Paying Agent shall be protected from and shall incur no liability for or in respect of any action taken or thing suffered by it in reliance upon any Preference Shares, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been delivered or signed by the proper parties, except as may result from its own gross negligence, bad faith or willful misconduct or that of its directors, officers, employees or agents.

(d) The Preference Shares Paying Agent shall not be under any liability for interest on any money at any time received by it pursuant to any of the provisions of this Agreement, except as otherwise agreed in writing with the Issuer.

(e) The Preference Shares Paying Agent shall not incur any liability with respect to the validity or value of any of the Preference Shares unless otherwise specified herein.

Section 12. <u>Conflicts</u>. (a) The Preference Shares Paying Agent and its officers, directors and employees may, subject to the restrictions set forth in Section 9(c), become the Holder of, or acquire any interest in, any Preference Shares, with the same rights that it or they would have if it were not the Preference Shares Paying Agent hereunder, or they were not such officers, directors, or employees, and may engage or be interested in any fiscal or other transaction with the Issuer and may act on, or as depository, trustee or agent for, any committee or body of Holders of Preference Shares or other

indebtedness of the Issuer as freely as if it were not the Preference Shares Paying Agent hereunder or they were not such officers, directors, or employees.

(b) The Preference Shares Paying Agent shall be obliged to perform such duties and only such duties as are specifically set forth herein, and no implied duties or obligations shall be read into this Agreement or the Indenture against the Preference Shares Paying Agent. Except for Section 5 of Annex A to the Resolutions (to the extent they do not contradict this Agreement), the Preference Shares Paying Agent shall have no duties under Annex A to the Resolutions. The Preference Shares Paying Agent shall not be under any obligation to take any action hereunder that may tend to involve it in any expenses or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it. The Preference Shares Paying Agent shall not be accountable or under any duty or responsibility in case of any default of which the Preference Shares Paying Agent has knowledge by the Issuer in the performance of its obligations contained in the Memorandum and Articles of Association and Annex A to the Resolutions (including, without limitation, any duty or responsibility to initiate or attempt to initiate any proceedings at law or otherwise or to make any demand for payment upon the Issuer).

(c) In acting under this Agreement, the Preference Shares Paying Agent is acting solely as agent of the Issuer and does not assume any obligations to, or relationship of agency or trust for or with any of the owners or Holders of the Preference Shares. All funds held by the Preference Shares Paying Agent for payment on the Preference Shares shall be held in trust for the Issuer, until paid.

(d) The Preference Shares Paying Agent shall, as between itself and the Holders of the Preference Shares, with respect to all the obligations, powers, authorities and discretions, vested in it hereunder and under the Memorandum and Articles of Association and the Resolutions, have absolute and uncontrolled discretion as to the exercise thereof whether in relation to the manner or as to the mode of and time for the exercise thereof and, in the absence of gross negligence, bad faith or willful misconduct on its part or that of its officers, directors or employees shall be in no way responsible for any loss, costs, damages or inconvenience that may result from the exercise or non-exercise thereof.

Section 13.    Amendment. (a) This Agreement may be amended by the parties hereto, without the consent of the Holders of any Preference Shares, for the purpose of curing any ambiguity, or of curing, correcting or supplementing any defective provision contained herein, or in regard to matters or questions arising under this Agreement as the Issuer and the Preference Shares Paying Agent may deem necessary or desirable and which shall not materially adversely affect the interests of Holders of the Preference Shares; provided that, Sections 2(f) and (g) of this Agreement may not be amended without the consent of the Majority of the Controlling Class. In addition, this Agreement may be amended without the consent of any Holders of the Preference Shares and without regard to whether or not such amendment adversely affects the interest of the Holders of the Preference Shares in order to prevent the Issuer from becoming an "investment company" as defined in the Investment Company Act or to better assure compliance with the requirements of Rule 3a-7 and/or to remove transfer restrictions and other requirements relating to Section 3(c)(7); provided that, as a condition to the effectiveness of any such supplemental indenture, each of the Issuer, the Trustee, the Preference Shares Paying Agent and the Servicer shall have received a customary opinion of counsel (which may be supported as to factual matters by any relevant certificates or other documents necessary or advisable in the judgment of counsel delivering such opinion) from a nationally recognized law firm providing that, after giving effect to such amendment, the Issuer is exempt from registration as an "investment company" under the Investment Company Act in reliance on the exemption provided by Rule 3a-7.

(b)     Unless otherwise as set forth in subsection (a) above, this Agreement may be amended with the consent of Holders of a Majority of the Preference Shares materially and adversely affected thereby.

(c)     Any amendment to this Agreement must be in writing executed by each party hereto.

(d)     The Preference Shares Paying Agent shall be entitled to receive, and (subject to its duties and obligations herein) shall be fully protected in relying upon, an opinion of counsel, consent or certificate of the Issuer in determining whether or not any proposed amendment is permitted hereunder.

(e)     Any amendment to this Agreement that would necessitate a change to the Memorandum and Articles of Association may only be made after a Special Resolution (as therein defined) has been passed to permit the Memorandum and Articles of Association to be altered to conform with such proposed amendment.

Section 14.     Resignation or Removal of the Preference Shares Paying Agent. The Preference Shares Paying Agent may at any time resign as the Preference Shares Paying Agent, by giving written notice to the Issuer of its resignation, specifying the date on which its resignation shall become effective (which date shall not be less than 60 days after the date on which such notice is given unless the Issuer shall agree to a shorter period). The Issuer may remove the Preference Shares Paying Agent at any time by giving written notice of not less than 60 days to the Preference Shares Paying Agent specifying the date on which such removal shall become effective. Such resignation or removal shall only take effect upon the appointment by the Issuer of a successor Preference Shares Paying Agent and upon the acceptance of such appointment by such successor Preference Shares Paying Agent; provided, however, that if the successor Preference Shares Paying Agent has not been appointed within 60 days after such notice of resignation or removal, then the Preference Shares Paying Agent, or any Holder of Preference Shares, may, on behalf of himself and others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Preference Shares Paying Agent; provided, further, that after the retirement of the Notes, if the Issuer determines that no material distributions will be paid on the Preference Shares, the Issuer may remove the Preference Shares Paying Agent at any time, by giving written notice of not less than 10 days, and assume the duties of the Preference Shares Paying Agent itself.

Section 15.     Assignment. No party hereto may assign or novate any of its rights or obligations hereunder except with the prior written consent of all the parties hereto.

Section 16.     Merger, Conversion, Consolidation or Succession to Business of Preference Shares Paying Agent. Any entity into which the Preference Shares Paying Agent may be merged or converted or with which it may be consolidated, or any entity resulting from any merger, conversion or consolidation to which the Preference Shares Paying Agent is a party, or any entity succeeding to all or substantially all of the corporate trust business of the Preference Shares Paying Agent, shall be the successor of the Preference Shares Paying Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto.

Section 17.     Reports and Notices. The Issuer hereby authorizes the Preference Shares Paying Agent to deliver or request the Trustee to deliver all Monthly Reports and Valuation Reports (each a "**Report**" and, collectively, "**Reports**") prepared pursuant to the Indenture to the Holders of the Preference Shares and the Preference Shares Paying Agent shall deliver, or shall cause the Trustee to deliver a copy of any such Report to such Holders within two Business Days of receipt of any such Report. In addition, the Preference Shares Paying Agent shall deliver, or shall cause the Trustee to

14

deliver, a copy of any other notice or information that it has received from the Trustee under the Indenture to the Holders of the Preference Shares within two Business Days of receipt of such notice and information. Any notices or information to be delivered by the Preference Shares Paying Agent to the Holders of the Preference Shares pursuant to this Agreement shall be delivered, in each case, (i) by first-class mail, postage prepaid, to each Holder of a Preference Share at the address appearing in the Preference Share register or (ii) with respect to delivery of the Reports, by making such Reports available via its internet website, initially located at http://www.cdocalc.com/ibt/cdo/. All information made available on the Preference Shares Paying Agent's website shall be restricted and the Preference Shares Paying Agent shall only provide access to such reports to those parties entitled thereto pursuant to the Preference Shares Paying Agency Agreement. In connection with providing access to its website, the Preference Shares Paying Agent may require registration and the acceptance of a disclaimer. Questions regarding the Preference Shares Paying Agent's website may be directed to the Preference Shares Paying Agent's customer service desk at (617) 937-5585.

Section 18. Notices. (a) All communications by or on behalf of the Issuer relating to the transfer or payment of a Preference Share or any interest therein shall be directed to the Preference Shares Paying Agent at its address set forth in clause (b)(ii) below. The Preference Shares Paying Agent shall mail any notice it receives from the Trustee (for forwarding to the Holders of the Preference Shares) to the Holders of the Preference Shares on the Business Day it receives such notice.

Where this Agreement provides for notice to Holders of the Preference Shares of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if such notice is in writing and mailed, first-class postage prepaid, to each Holder of the Preference Shares affected by such event, at such Holder's address as it appears on the Preference Share register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.

Neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of Preference Shares shall affect the sufficiency of such notice with respect to other Holders. Any notice that is given in the manner herein provided shall conclusively be presumed to have been duly given whether or not actually received by such Holder. Any notice to Holders of the Preference Shares provided for in this Agreement will be deemed to have been given on the date of mailing.

Any notice by any Holder of Holding Securities delivered to the Holding Preference Shares Paying Agent shall be treated by the Preference Shares Paying Agent, for the purposes of this Agreement, as a notice, by a Holder of Preference Shares with respect to a number of Preference Shares equal to the number of Holding Preference Shares with respect to which such notice relates, delivered to the Preference Shares Paying Agent on the same date such notice is delivered to the Holding Preference Shares Paying Agent.

Where this Agreement provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

In the event that, by reason of the suspension of the regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Holders of the Preference Shares when such notice is required to be given pursuant to any provision of this Agreement, then any manner of giving such notice as shall be satisfactory to the Preference Shares Paying Agent shall be deemed to be a sufficient giving of such notice.

15

(b)    Notices and other communications hereunder shall (except to the extent otherwise expressly provided) be in writing and shall be addressed as follows, or to such other addresses as the parties hereto shall specify from time to time:

(i)    if to the Issuer:

Eastland CLO, Ltd.
P.O. Box 1234
Queensgate House, South Church Street
George Town, Grand Cayman KY1-1108
Cayman Islands
Fax: (345) 945-6265
Attention: The Directors

(ii)    if to the Preference Shares Paying Agent:

Investors Bank & Trust Company
200 Clarendon Street, 3rd Floor
Mailcode: EUC 108
Boston, MA 02116
Fax: (617) 351-4358
Attention: CDO Services Group

Section 19.    Covenants of the Issuer.  The Issuer shall not take any action under this Agreement or the Indenture that requires the authorization, direction or consent from the Holders of the Preference Shares without obtaining such authorization, direction or consent from the Holders of the Preference Shares.  It shall be the responsibility of the Issuer to satisfy the Preference Shares Paying Agent as to the compliance with the foregoing condition (on which the Preference Shares Paying Agent may rely on in good faith).

Section 20.    Transfer of Issuer Ordinary Shares.  For so long as any of the Preference Shares are Outstanding, the Issuer shall not agree to the transfer of any Issuer Ordinary Shares to U.S. Persons (as defined in the Code), and shall not transfer any such Issuer Ordinary Shares to any Person other than a Person which is a resident of the Cayman Islands.

Section 21.    Certain Tax Matters.  (a)  On demand of the Issuer, a Holder or beneficial owner of a Preference Share will notify the Issuer whether or not the Holder or beneficial owner of such Preference Share is a United States person within the meaning of Section 7701(a)(30) of the Code and the name and status of such Holder or beneficial owner as an individual, partnership, corporation, or other entity and such other information as the Issuer shall reasonably request for purposes of tax reporting of the Issuer or other Holders of the Preference Shares.

(b)    The Issuer will cause the Independent accountants to make a determination as to whether a Holder's investment in the Preference Shares has become a "reportable transaction" as described in Treasury Regulation Section 1.6011-4 because, after the Closing Date, the Issuer entered into a transaction whereby the Issuer recognized a significant loss or otherwise.  If the Holder's investment in the Preference Shares has become such a "reportable transaction," then the Issuer shall provide to Holders of Preference Shares any information available to it which may be reasonably necessary for such Holders of Preference Shares to comply with any disclosure requirements under Section 6011 of the Code and the Treasury Regulations promulgated thereunder with respect to its investment in the Preference Shares.

16

(c) The Issuer will provide or cause to be provided to each Holder or beneficial owner of the Preference Shares (or its designee), upon written request therefor, any information that such Holder or beneficial owner reasonably requests to assist such Holder or beneficial owner with regard to its or its equity owners' U.S. federal income tax filing requirements.

(d) Each Holder and beneficial owner of the Preference Shares agrees to treat the Preference Shares as equity of the Issuer and the Notes as debt of the Issuer for U.S. federal, state and local income tax purposes, if applicable.

(e) The Issuer will make an election to be treated as a partnership, and will take all necessary actions to maintain its status as a partnership (or, if the Issuer is treated as owned by one person, as a disregarded entity of such person) for U.S. federal income tax purposes.

(f) The Issuer shall not participate in listing or including the Class D Notes or Preference Shares on or in any Established Securities Markets, and shall not participate in establishing any Established Securities Market for its Class D Notes or Preference Shares. In addition, the Issuer shall not recognize any transfers made on any Established Securities Markets with respect to its Class D Notes or Preference Shares (including any transfers of any financial instrument (other than the Senior Notes) or contract the value of which is determined in whole or in part by reference to the Issuer).

(g) Transfers of Preference Shares may only be made upon receipt by the Preference Shares Paying Agent of (1) appropriate documentation required under the Code and the applicable Treasury regulations establishing that the beneficial owner of the Preference Shares to be transferred is either not a U.S. person (e.g., an IRS Form W-8BEN or an IRS Form W-8IMY with appropriate attachments) or a U.S. person (e.g., an IRS Form W-9) and (2) if such beneficial owner of Preference Shares to be transferred is treated as a partnership, S-corporation or grantor trust for U.S. federal income tax purposes, a written representation from such beneficial owner that (i) there will not be any interests in such beneficial owner where substantially all of the value of such interest is attributable to the value of the Preference Shares proposed to be transferred to such beneficial owner, together with the value of any Class D Notes, Holding Securities and Preference Shares already held by such beneficial owner and (ii) such beneficial owner is not a part of any arrangement a principal purpose of which is to cause the Class D Notes and Preference Shares to be treated as owned by 100 persons or less within the meaning of Treasury Regulation section 1.7704-1(h). In addition, neither the Preference Shares Paying Agent nor the Issuer shall recognize any transfers of Preference Shares, and any such proposed transfer shall be null and void, if (a) the proposed transfer will cause the Issuer to have more than ninety-nine beneficial owners (as determined for purposes of the provisions of Treasury Regulation section 1.7704-1(h)) of its Class D Notes and Preference Shares unless it receives the consent of all of the Holders of the Preference Shares and an Opinion of Counsel to the effect that Holders of the Notes will not recognize gain or loss for U.S. federal income tax purposes as a result of such transfer, and will be subject to U.S. federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such transfer had not been made or (b) such transfer was made pursuant to a trade on an Established Securities Market. The Preference Shares Paying Agent shall be entitled to rely on the information set forth in the transfer certificates received pursuant to this Agreement in respect of the number of beneficial owners of Preference Shares and shall contact the Trustee to request, and may rely upon the information it receives from the Trustee with respect to, the number of beneficial owners of the Class D Notes. The Preference Shares Paying Agent shall provide, upon request by the Trustee, the number of beneficial owners of the Preference Shares, in reliance upon the transfer certificates received pursuant to the terms of this Agreement.

Section 22.    Minimum Lots. Preference Shares must be held in minimum lots of 100 Preference Shares per investor and integral multiples of one Preference Share in excess thereof.

17

Section 23.    Limited Recourse; No Petition.  The Preference Shares Paying Agent hereby acknowledges and agrees that the Issuer's obligations hereunder will be solely the corporate obligations of the Issuer, and that the Preference Shares Paying Agent will not have any recourse to any of the directors, officers, employees, shareholders or Affiliates of the Issuer with respect to any claims, losses, damages, liabilities, indemnities or other obligations in connection with any transactions contemplated hereby.  Notwithstanding any other provisions of this Agreement, recourse in respect of any obligations of the Issuer hereunder will be limited to the proceeds of the Collateral, paid pursuant to the Priority of Payments and on the exhaustion thereof all obligations of and all claims against the Issuer arising from this Agreement or any transactions contemplated hereby shall be extinguished and shall not thereafter revive.   The Preference Shares Paying Agent, by entering into this Agreement, hereby covenants and agrees that it will not, prior to the date which is one year and one day (or, if longer, the applicable preference period) after the payment in full of all amounts owing under the Indenture and this Agreement, institute against the Issuer, or voluntarily join in any institution against the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law of any jurisdiction within or without the United States in connection with any obligations relating to the Preference Shares or this Agreement. The provisions of this Section 23 shall survive termination of this Agreement for any reason whatsoever.

Section 24.    (a)    GOVERNING LAW.    THIS  AGREEMENT  SHALL  BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(b)    WAIVER OF JURY TRIAL.    EACH  OF  THE  ISSUER  AND  THE PREFERENCE SHARES PAYING AGENT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PREFERENCE SHARES OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(c)    Service of Process.  The Issuer irrevocably appoints Investors Bank & Trust Company (the "**Process Agent**") c/o Investors Bank & Trust Company, located at 33 Maiden Lane, 4th Floor, New York, NY 10038, to receive, for it and on its behalf, service of process in any suit, action or proceeding relating to this Agreement. If for any reason the Process Agent is unable to act as such, the Issuer shall promptly notify the Preference Shares Paying Agent and within 30 days appoint a substitute process agent acceptable to the Preference Shares Paying Agent.

Section 25.    Signatures. This Agreement may be signed in two or more counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.  A facsimile signature shall be considered due execution and shall be binding upon the signatory thereto with the same force and effect as if the signature were an original.

**[The Remainder Of This Page Has Been Intentionally Left Blank.]**

Please indicate your acceptance of this appointment and the terms of this Agreement by signing and returning the enclosed copy of this Agreement. The Issuer by signing this Agreement confirms its agreement to the terms stated herein.

Very truly yours,

EASTLAND CLO, LTD.,
as Issuer

By: _____

Name:
Title:        SCOTT DAKERS
              Director

Accepted and agreed to on this 13th day of March, 2007.

INVESTORS BANK AND TRUST COMPANY,
  as Preference Shares Paying Agent

By: _____

Name    Brian Peterson
Title:      Director

**SCHEDULE I**

**Notice of Distribution of Eligible Equity Securities**

Date:   [_____]

[Name of Holder]
[address]
Attention: [_____]

Copy:

Eastland CLO, Ltd.
P.O. Box 1234
Queensgate House
South Church Street
George Town
Grand Cayman, KY1-1108, Cayman Islands
Attention: the Directors

Re:   Eastland CLO, Ltd.
      <u>Distribution of Eligible Equity Securities in lieu of Interest
      Proceeds</u>

Ladies and Gentlemen:

      This letter is to inform you that Highland Capital Management, L.P., in its capacity as servicer (the "**Servicer**") with respect to that certain servicing agreement, dated as of March 13, 2007, by and between Eastland CLO, Ltd.. (the "**Issuer**") and the Servicer, on behalf of the Issuer, would like to distribute Eligible Equity Securities on the Payment Date of [_____], 20[__] to the Holders of the Preference Shares in lieu of the Interest Proceeds, in whole or in part, that are otherwise due and payable to such Holders on such Payment Date.  Such Eligible Equity Securities will be distributed in accordance with Sections 2(e) and 3(b) of that certain paying agency agreement, dated as of March 13, 2007 (the "**Preference Shares Paying Agency Agreement**"), by and between the Issuer and Investors Bank & Trust Company, in its capacity as preference shares paying agent (the "**Preference Shares Paying Agent**") and Section 11.1(a)(i) of that certain indenture, dated as of March 13, 2007, by and among the Issuer, Eastland CLO Corp. and Investors Bank & Trust Company, in its capacity as trustee (the "**Trustee**").  Any capitalized terms used without definition herein are used with the meanings assigned to such terms in the Indenture.

      Details with respect to the proposed distribution of such Eligible Equity Securities are attached hereto as Exhibit A.

      Each Holder of the Preference Shares wishing to receive such Eligible Equity Securities in lieu of all or a portion of the Interest Proceeds available for distribution to such Holder (each such Holder, a "**Consenting Holder**") must deliver the consent notice attached hereto as Exhibit B (the "**Consent Notice**") to the Preference Shares Paying Agent not later than five Business Days prior to such

1

Payment Date. Each Consenting Holder must indicate in the Consent Notice the portion of Preference Shares held by such Holder for which such Holder wishes to receive a distribution of Eligible Equity Securities in lieu of Interest Proceeds. Any Consent Notice that is not delivered to the Preference Shares Paying Agent in the manner set forth herein shall be deemed to have not been delivered.

Please contact [_____] (*[insert e-mail address]*) at [(___) ___-___] with any questions.

Sincerely,

Investors Bank & Trust Company
as Preference Shares Paying Agent

By:_____
Name:
Title:

**EXHIBIT A**

## CONSENT NOTICE

        The undersigned hereby consents to a distribution of Eligible Equity Securities in lieu of the Interest Proceeds due and payable as dividends with respect to [___] of the Preference Shares held by the undersigned on the Payment Date of [___], 20[__].

Date: _____, 20[__]


_____

Print Name of Holder

By:_____

Signature of Authorized Signatory


_____

Print Name of Authorized Signatory


_____

Print Title of Authorized Signatory

ANNEX A

To the Minutes of the Resolutions of the Board of Directors of

EASTLAND CLO, LTD.

The Issuer may perform any of the functions set forth in this Annex A through the Preference Shares Paying Agent under the Preference Shares Paying Agency Agreement or the Administrator in its capacity as Share Registrar under the Administration Agreement.

Section 1.    Definitions.

Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Annex A, and the definitions of such terms are equally applicable both to the singular and plural forms of such terms and to the masculine, feminine and neuter genders of such terms.  Capitalized terms used in this Annex A and not defined herein will have the meanings given to them in the Indenture, dated as of March 13, 2007, by and among Eastland CLO, Ltd. (the **"Issuer"**), Eastland CLO Corp., as co-issuer and Investors Bank & Trust Company, as trustee.

**"Authorized Amount"**: 100 Preference Shares and integral multiples of 1.

**"Controlling Person"**: Any person that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer or any "affiliate" (as defined in 29 C.F.R. Section 2510.3-101(f)(3)) of any such person.

**"Corporate Trust Office"**: The corporate trust office of the Preference Shares Paying Agent at which the Preference Shares Paying Agent performs its duties under the Preference Shares Paying Agency Agreement, currently having an address of 200 Clarendon Street, Mailcode EUC 108, Boston MA 02116, telecopy no. (617) 351-4358, Attention: CDO Services Group or any other address the Preference Shares Paying Agent designates from time to time by notice to the Noteholders, the Servicer, the Trustee, the Issuer and each Rating Agency or the principal corporate trust office of any successor Preference Shares Paying Agent.

**"ERISA Plan"**: Any "employee benefit plan" (as defined in Section 3(3) of ERISA) subject to the fiduciary responsibility provisions of Title I of ERISA, any "plan" described in Section 4975(e)(1) of the Code subject to Section 4975 of the Code and any entity whose underlying assets include the assets of any such employee benefit plan and/or plan.

**"Extended Scheduled Preference Shares Redemption Date"**: If a Maturity Extension has occurred, the sixteenth Payment Date after the then current Extended Scheduled Preference Shares Redemption Date (or, in the case of the first Extended Scheduled Preference Shares Redemption Date, the Payment Date in May 2026); provided that the "Extended Scheduled Preference Shares Redemption Date" will in no event be a date later than the Payment Date in May 2038.

**"Non-Permitted Benefit Plan Investor"**: The meaning specified in Section 10(b).

**"Non-Permitted Holder"**: The meaning specified in Section 10(a).

**"Plan Asset Regulation"**: The regulation issued by the United States Department of Labor and found at 29 C.F.R. Section 2510.3-101.

**"Preference Shares"**: Preference Shares sold or transferred to a Person who is (a) a Qualified Institutional Buyer and (b) a Qualified Purchaser and evidenced by a physical certificate in definitive, fully registered form in the form set forth in <u>Exhibit A</u> hereto.

**"Record Date"**: As to any Payment Date, the 15th day (whether or not a Business Day) before the Payment Date.

**"Resolutions"**: The meaning specified in the minutes to which this Annex A is attached.

**"Scheduled Preference Shares Redemption Date"**: May 1, 2022 or, upon a Maturity Extension (if any), the applicable Extended Scheduled Preference Shares Redemption Date.

**"Shareholders"** or **"Holders"**: With respect to any Preference Shares, the Person in whose name such Preference Shares are registered in the Share Register.

**"Share Register"**: The meaning specified in Section 5(a).

**"Share Registrar"**: The meaning specified in Section 5(a).

**"Transferee Certificate"**: A certificate substantially in the form of <u>Exhibit B</u> attached hereto, duly completed as appropriate.

Section 2.        Form of Preference Shares.

Preference Shares shall be issued in the form of one or more certificated Preference Shares as set forth in <u>Exhibit A</u> hereto.

Preference Shares may be offered, sold or delivered or resold only to Persons who are both (x) Qualified Institutional Buyers who purchase such Preference Shares for their own account in reliance on Rule 144A under the Securities Act and (y) Qualified Purchasers.

Section 3.        Authorized Minimum Number of Preference Shares.

The Preference Shares shall be issuable only in an Authorized Amount.   The Share Registrar shall not register any transfer of Preference Shares if, after giving effect to such transfer, any transferee and any transferor that continues to hold Preference Shares would hold less than an Authorized Amount of Preference Shares.

NY\1237798.2

Section 4.    Execution.

The certificates representing the Preference Shares shall be executed on behalf of the Issuer by one of the Authorized Officers of the Issuer. The signature of such Authorized Officers on the Preference Share certificates may be manual or facsimile.

Preference Share certificates bearing the manual or facsimile signatures of individuals who were at any time the Authorized Officers of the Issuer shall be valid, notwithstanding the fact that such individuals or any of them have ceased to hold such offices prior to the execution and delivery of such Preference Share certificates or did not hold such offices at the date of issuance of such Preference Share certificates.

Preference Share certificates issued upon transfer of Preference Shares shall be issued in an Authorized Amount reflecting the numbers of Preference Shares so transferred and, if applicable, retained by the transferor.

No Person shall be entitled to any benefit under the Preference Share Documents until such time as such Person and the number of Preference Shares held by such Person have been recorded in the Share Register. Notwithstanding delivery of a Preference Share certificate, the Share Register shall be conclusive evidence, and the only evidence, of the issuance and registered Holders of Preference Shares.

Section 5.    Registration, Registration of Transfer and Exchange.

(a)    The Issuer shall cause to be kept a register (the **"Share Register"**) in the Cayman Islands in which, subject to such reasonable regulations as it may prescribe, the Issuer shall provide for the registration and registration of transfers thereof of Preference Shares. The Administrator is appointed the **"Share Registrar"** pursuant to the Administration Agreement for the purpose of registering Preference Shares and transfers of Preference Shares. Upon any resignation or removal of the Share Registrar, the Issuer shall promptly appoint a successor or, in the absence of such appointment, assume the duties of Share Registrar. The Share Registrar shall promptly provide the Preference Shares Paying Agent with copies of all notices, certificates and requests received with respect to the Preference Shares and promptly provide notice of all transfers of Preference Shares. The Share Registrar shall not be required to determine whether any proposed transfer, redemption or other transaction in relation to the Preference Shares complies with any restrictions imposed by law or under the terms of the Indenture or the Preference Share Documents but shall be entitled to rely completely in that respect on the Issuer or the Preference Shares Paying Agent.

The Issuer will give the Preference Shares Paying Agent prompt written notice of the appointment of any successor Share Registrar and of the location, and any change in the location, of the Share Registrar, and the Preference Shares Paying Agent shall have the right to inspect the Share Register at all reasonable times and to obtain copies thereof and the Preference Shares Paying Agent shall have the right to rely upon a certificate executed on behalf of such Share Registrar by an Officer thereof as to the names and addresses of the Shareholders and the numbers of Preference Shares held by each Shareholder. If the Preference Shares Paying Agent

3

resigns or is removed in accordance with the terms of the Preference Share Paying Agency Agreement, the Issuer shall promptly appoint a successor.

Subject to this Section 5, upon surrender of a Preference Share certificate for registration of transfer thereof at the offices of the Preference Shares Paying Agent in compliance with the provisions set forth in the Preference Shares Paying Agency Agreement, the Preference Shares Paying Agent shall notify the Issuer and the Share Registrar thereof and the Issuer shall execute and the Preference Shares Paying Agent shall deliver, in the name of the designated transferee or transferees, one or more new Preference Share certificates of like terms and of a like number, and the Share Register shall be amended accordingly. The Issuer shall (and shall cause the Share Registrar to) refuse to register any transfer of any Preference Share to the fullest extent allowed under Cayman Islands law if such transfer would violate any of the transfer restrictions provided in this Section 5 or the transferee fails to provide a required transfer certificate.

All Preference Share certificates presented or surrendered for registration of transfer shall be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Issuer, the Preference Shares Paying Agent and the Share Registrar, duly executed by the Holder of Preference Shares thereof or its attorney duly authorized in writing.

No service charge shall be made to a Holder for any registration of transfer of Preference Shares, but the Preference Shares Paying Agent may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

(b)     No Preference Share may be sold or transferred (including, without limitation, by pledge or hypothecation) unless such sale or transfer is exempt from the registration requirements of the Securities Act and is exempt under applicable state securities law.

No Preference Share may be offered, sold or delivered except in accordance with this Section 5. None of the Issuer, the Preference Shares Paying Agent or any other Person may register the Preference Shares under the Securities Act or any state securities law.

For so long as any of the Securities are Outstanding, neither the Issuer nor the Share Registrar shall register any transfer of any Issuer Ordinary Shares to U.S. Persons.

If a Holder of a Preference Shares wishes at any time to transfer its interest in such Preference Shares, such Holder may cause the transfer of such interest, subject to the restrictions set forth herein. Upon receipt by the Preference Shares Paying Agent of (A) such Holder's Preference Share certificates duly endorsed and (B) a certificate substantially in the form of Exhibit B attached hereto given by the transferee of such Preference Shares and stating, among other things, that either the Person acquiring such interest in the Preference Shares is a (1) Qualified Institutional Buyer and (2) a Qualified Purchaser then the Preference Shares Paying Agent shall instruct the Share Registrar to, and the Share Registrar shall (i) cancel the Preference Shares certificate representing such Preference Shares and the Share Registrar will issue to such transferee a Preference Shares certificate representing the Preference Shares transferred and (ii) update the Share Register to reflect such transfer.

4

Any transfer will be subject to the requirement that any transferee (and transferor, in the case of a partial transfer) acquire (and retain, if applicable) Preference Shares in an Authorized Amount.

Each Transferee Certificate furnished pursuant to this Section 5(b) may be relied on conclusively by the Preference Shares Paying Agent and the Share Registrar. None of the Issuer, the Preference Shares Paying Agent, the Share Registrar or any other Person shall be required to register the Preference Shares under the Securities Act or any state securities laws.

(c)     By delivery of a Subscription Agreement on the Closing Date in connection with the initial issuance of the Preference Shares, or upon delivery of a certificate substantially in the form of Exhibit B upon the transfer of Preference Shares, each Holder of a Preference Share will represent, warrant and agree with the Issuer to what is in Exhibit B and set forth in Exhibit B.

If Preference Share certificates are issued upon the transfer, exchange or replacement of Preference Share certificates and a request is made to remove the applicable legend on such Preference Share certificates, the Preference Share certificates so issued shall bear such applicable legend, or such applicable legend shall not be removed, as the case may be, unless there is addressed to the Issuer and delivered to the Issuer or the Preference Shares Paying Agent on the Issuer's behalf such satisfactory evidence, which may include an opinion of counsel as may be reasonably required by the Issuer to the effect that neither such applicable legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A under the Securities Act or the Investment Company Act. Upon provision of such satisfactory evidence, the Issuer shall execute and the Preference Shares Paying Agent shall deliver Preference Share certificates that do not bear such applicable legend.

(d)     At any time when the Issuer is not subject to Section 13 or 15(d) of the Exchange Act and is not exempt from reporting pursuant to Rule 12g3-2(b) under the Exchange Act, upon the request of any Holder of Preference Shares, the Issuer shall promptly furnish Rule 144A Information to such Holder, to a prospective purchaser of any Preference Share designated by such Holder or to the Preference Shares Paying Agent for delivery to such Holder or a prospective purchaser designated by such Holder, as the case may be, in order to permit compliance by such Holder with Rule 144A under the Securities Act in connection with the resale of such Preference Share by such Holder.

(e)     Transfers of Preference Shares may only be made upon receipt by the Preference Shares Paying Agent of (1) appropriate documentation required under the Code and the applicable Treasury regulations establishing that the beneficial owner of the Preference Shares to be transferred is either not a U.S. person (e.g., an IRS Form W-8BEN or an IRS Form W-8IMY with appropriate attachments) or a U.S. person (e.g., an IRS Form W-9) and (2) if such beneficial owner of Preference Shares to be transferred is treated as a partnership, S-corporation or grantor trust for U.S. federal income tax purposes, a written representation from such beneficial owner that (i) there will not be any interests in such beneficial owner where substantially all of the value of such interest is attributable to the value of the Preference Shares proposed to be transferred to such beneficial owner, together with the value of any Class D

5

Notes, Holding Securities and Preference Shares already held by such beneficial owner and (ii) such beneficial owner is not a part of any arrangement a principal purpose of which is to cause the Class D Notes and Preference Shares to be treated as owned by 100 persons or less within the meaning of Treasury Regulation section 1.7704-1(h). In addition, neither the Preference Shares Paying Agent nor the Issuer shall recognize any transfers of Preference Shares, and any such proposed transfer shall be null and void, if (a) the proposed transfer will cause the Issuer to have more than ninety-nine beneficial owners (as determined for purposes of the provisions of Treasury Regulation section 1.7704-1(h)) of its Class D Notes and Preference Shares unless it receives the consent of all of the Holders of the Preference Shares and an Opinion of Counsel to the effect that Holders of the Notes will not recognize gain or loss for U.S. federal income tax purposes as a result of such transfer, and will be subject to U.S. federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such transfer had not been made or (b) such transfer was made pursuant to a trade on an Established Securities Market. The Preference Shares Paying Agent shall contact the Trustee to determine the number of beneficial owners of the Class D Notes. The Preference Shares Paying Agent shall provide, upon request by the Trustee, the number of beneficial owners of the Preference Shares.

Section 6.    Mutilated, Defaced, Destroyed, Lost or Stolen Preference Share certificates.

If any mutilated or defaced Preference Share certificate is surrendered to the Preference Shares Paying Agent, or if there shall be delivered to the Issuer and the Preference Shares Paying Agent (i) evidence to their reasonable satisfaction of the destruction, loss or theft of any Preference Share certificate and (ii) such security or indemnity as may be required by them to save each of them and any agent of any of them harmless that such Preference Share has been acquired by a protected purchaser, then, the Issuer shall execute and, upon Issuer Request, the Preference Shares Paying Agent shall deliver, in lieu of any such mutilated, defaced, destroyed, lost or stolen Preference Share, a new Preference Share certificate identical in all respects to the entry in the Share Register with respect to such Preference Shares represented thereby, including the same date of issuance, number of Preference Shares and name of the Holder thereof, dated the date of its execution and bearing a number not contemporaneously Outstanding. Upon the execution and delivery of any new Preference Share certificates under this Section 6, the Issuer or the Preference Shares Paying Agent may require the payment by the registered Holder thereof of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Preference Shares Paying Agent, if applicable) connected therewith.

Section 7.    Payment of Distributions on Preference Shares.

Pursuant to the Indenture, amounts may be paid by way of dividends to the Preference Shares Paying Agent on behalf of the Issuer on each Payment Date, on the Redemption Date or on the Scheduled Preference Shares Redemption Date. Unless the Preference Shares Paying Agent has received contrary instructions from the directors of the Issuer (the "**Directors**") prior to a Payment Date, the Redemption Date or the Scheduled Preference Shares Redemption Date in accordance with the Preference Shares Paying Agency Agreement, all amounts received as dividends by the Preference Shares Paying Agent pursuant to the Indenture shall be paid to the Holders of Preference Shares (i) in respect of a Payment

Date or the Scheduled Preference Shares Redemption Date, *pro rata* on the Preference Shares on such Payment Date or Scheduled Preference Shares Redemption Date by way of a dividend on the Preference Shares or, if applicable, as redemption price therefor or (ii) in respect of the Redemption Date, in accordance with Section 3(g) of the Preference Shares Paying Agency Agreement. If, prior to the date of distribution in accordance with the Preference Shares Paying Agency Agreement, the Directors instruct the Preference Shares Paying Agent not to distribute all or any portion of monies to be received as dividends by the Preference Shares Paying Agent with respect to a Payment Date, the Redemption Date or the Scheduled Preference Shares Redemption Date (which instruction shall be made if such distributions would be impermissible under Cayman Islands law, and then only to the extent such distributions would be impermissible), the Preference Shares Paying Agent shall retain such monies in the Preference Shares Distribution Account and shall pay such amounts as soon as practicable after being instructed to do so by the Directors.

In addition to the distributions of dividends, pursuant to Section 2(d) of the Preference Shares Paying Agency Agreement, on each Payment Date Holders of the Class II Preference Shares shall receive, on a *pro rata* basis, the Class II Preference Share Special Payment in an amount equal to the product of (x) the Class II Preference Share Portion for such Payment Date and (y) the Servicing Fees then due and payable to the Servicer.

The Preference Shares Paying Agent shall make payments or distributions (other than distributions of Equity Securities) to each registered Holder of the Preference Shares on the relevant Record Date by wire transfer in immediately available funds to a U.S. Dollar account maintained by each such Holder as notified to the Preference Shares Paying Agent or, in the absence of such notification, by U.S. Dollar check mailed to such Holder at its address of record as set forth in the Share Register. As a condition to payment of any amount hereunder without the imposition of U.S. withholding tax, the Preference Shares Paying Agent, on behalf of the Issuer, may require certification acceptable to it to enable the Issuer and the Preference Shares Paying Agent to determine their duties and liabilities with respect to any taxes or other charges that they may be required to deduct or withhold from payments or distributions in respect of Preference Shares under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under such law or regulation. All payments of distributions by the Preference Shares Paying Agent shall be made without charging any commission or fee to the Holders of the Preference Shares.

The rights of the Holders of the Preference Shares to distributions by the Issuer and in and to the assets of the Issuer in respect of such Preference Shares, shall be subordinate and junior to the Notes, to the extent and in the manner set forth in the Indenture including as set forth in Section 11.1 thereof and as required by law. If any Event of Default has occurred and has not been cured or waived and acceleration occurs in accordance with Article V of the Indenture, the Notes shall be paid in full in Cash (or to the extent that a Majority of each Class of Notes consents, other than Cash) before any further payment or distribution is made on account of the Preference Shares.

In the event that any Holder of any Preference Shares shall have received any payment or distribution in respect of such Preference Shares contrary to the provisions of this

NY\1237798.2

Annex A or the Indenture, then, unless and until (i) the Class A-1 Notes, (ii) the Class A-2a Notes, (ii) the Class A-2b Notes, (iii) the Class A-3 Notes, (iv) the Class B Notes, (v) the Class C Notes and (vi) the Class D Notes shall have been paid in full in Cash (or to the extent that a Majority of each Class of Notes consents, other than Cash) in accordance with the Indenture, such payment or distribution shall be received and held in trust for the benefit of, and shall forthwith be paid over and delivered to, the Trustee, for payment and delivery of the same to the Holders of the Class A-1 Notes, the Class A-2a Notes, the Class A-2b Notes, the Class A-3 Notes, the Class B Notes, the Class C Notes or the Class D Notes, as the case may be, in accordance with the Indenture; provided, however, that if any such payment or distribution is made other than in Cash, it shall be paid over and delivered to the Trustee such that it may be held by the Trustee as part of the Collateral pursuant to, and subject in all respects to, the provisions of the Indenture, including Section 13.1 thereof.

Section 8.    Persons Deemed Owners.

The person listed in the Share Register shall be treated as the owner of Preference Shares related thereto for all purposes, notwithstanding the possession of any certificates for the Preference Shares by another Person.

Section 9.    Cancellation.

All Preference Share certificates representing Preference Shares surrendered for payment, registration of transfer, exchange or redemption, or deemed lost or stolen, shall promptly be canceled by the Share Registrar in accordance with its policy and may not be reissued or resold.  No Preference Share certificates shall be issued in lieu of or in exchange for any Preference Share certificate cancelled as provided in this Section 9, except as expressly permitted by this Annex A.  All cancelled Preference Share certificates held by the Share Registrar shall be placed in the minute books in the corporate records of the Issuer.  Any certificates issued in respect of Preference Shares repurchased by the Issuer shall be immediately delivered to the Share Registrar for cancellation.

Section 10.    Preference Shares Owned by Non-Permitted Holders; Non-Permitted Benefit Plan Investors.

(a)    Notwithstanding anything to the contrary herein, any transfer of a Preference Share to a Person that is not both (x) a Qualified Institutional Buyer and (y) a Qualified Purchaser (any such Person a **"Non-Permitted Holder"**) shall be null and void *ab initio* and any such purported transfer of which the Issuer or the Preference Shares Paying Agent shall have notice may be disregarded by the Issuer and the Preference Shares Paying Agent for all purposes.

If any Non-Permitted Holder shall become the owner of any Preference Shares, the Issuer shall, promptly after discovery that such Person is a Non-Permitted Holder by the Issuer or the Preference Shares Paying Agent (and notice by the Preference Shares Paying Agent to the Issuer, if the Preference Shares Paying Agent makes the discovery), send notice to such Non-Permitted Holder demanding that such Non-Permitted Holder transfer its Preference Shares to a Person that is eligible to purchase such Preference Shares hereunder within 30 days of the

8

date of such notice. If such Non-Permitted Holder fails to so transfer its Preference Shares, the Issuer shall have the right, without further notice to the Non-Permitted Holder, to sell such Preference Shares to a purchaser selected by the Issuer that is eligible to purchase such Preference Shares hereunder on such terms as the Issuer may choose. The Issuer, or the Preference Shares Paying Agent acting on behalf of the Issuer, may select the purchaser by soliciting one or more bids from one or more brokers or other market professionals that regularly deal in securities similar to the Preference Shares, and selling such Preference Shares to the highest such bidder. However, the Issuer or the Preference Shares Paying Agent acting on behalf of the Issuer may select a purchaser by any other means determined by it in its sole discretion. The Holder of each Preference Share, the Non-Permitted Holder and each other Person in the chain of title from the Holder to the Non-Permitted Holder, by its acceptance of the Preference Shares, agrees to cooperate with the Issuer and the Preference Shares Paying Agent to effect such transfers. The proceeds of such sale, net of any commissions, expenses and taxes due in connection with such sale, shall be remitted to the Non-Permitted Holder. The terms and conditions of any sale under this Section shall be determined in the sole discretion of the Issuer, and neither the Issuer nor the Preference Shares Paying Agent shall be liable to any Person having an interest in the Preference Shares sold as a result of any such sale or the exercise of such discretion.

(b)     Notwithstanding anything to the contrary herein, no person shall be permitted to acquire Preference Shares if such acquisition would result in persons who have represented that they are Benefit Plan Investors owing 25% or more of the aggregate amount of either the Class I Preference Shares or the Class II Preference Shares outstanding immediately after such acquisition (excluding for purposes of this determination the Preference Shares held by any Controlling Person and its affiliates), determined in accordance with Section 3(42) of ERISA, the Plan Asset Regulation, the Indenture and the Preference Share Documents. Furthermore, no person shall be permitted to acquire Preference Shares if such person is either (1) an ERISA Plan or (2) a Benefit Plan Investor that is not an ERISA Plan, but whose purchase, holding or disposition of a Preference Share or any beneficial interest therein will result in a non-exempt violation of any federal, state, foreign or local law substantially similar to Section 406 of ERISA or Section 4975 of the Code. Any person described in the first sentence of this subsection (b) and any person described in clause (1) or (2) of the preceding sentence is referred to herein as a "**Non-Permitted Benefit Plan Investor**." Any transfer of Preference Shares to a Non-Permitted Benefit Plan Investor shall be null and void *ab initio* and any such purported transfer of which the Issuer or the Preference Shares Paying Agent shall have notice may be disregarded by the Issuer and the Preference Shares Paying Agent for all purposes.

If any Non-Permitted Benefit Plan Investor shall become the owner of Preference Shares, the Issuer shall, promptly after discovery that such person is a Non-Permitted Benefit Plan Investor by the Issuer or the Preference Shares Paying Agent (and notice by the Preference Shares Paying Agent to the Issuer, if the Preference Shares Paying Agent makes the discovery), send notice to such Non-Permitted Benefit Plan Investor demanding that such Non-Permitted Benefit Plan Investor transfer its Preference Shares to a Person that is eligible to purchase such Preference Shares hereunder within 30 days of the date of such notice. If such Non-Permitted Benefit Plan Investor fails to so transfer such Preference Shares, the Issuer shall have the right, without further notice to the Non-Permitted Benefit Plan Investor, to sell such Preference Shares to a purchaser selected by the Issuer that is eligible to purchase such Preference Shares hereunder

9

on such terms as the Issuer may choose. The Issuer, or the Preference Shares Paying Agent acting on behalf of the Issuer, may select the purchaser by soliciting one or more bids from one or more brokers or other market professionals that regularly deal in securities similar to the Preference Shares and selling such Preference Shares to the highest such bidder. However, the Issuer or the Preference Shares Paying Agent acting on behalf of the Issuer may select a purchaser by any other means determined by it in its sole discretion. The Holder of each Preference Share, the Non-Permitted Benefit Plan Investor and each other Person in the chain of title from the Holder to the Non-Permitted Benefit Plan Investor, by its acceptance of Preference Shares agrees to cooperate with the Issuer and the Preference Shares Paying Agent to effect such transfers. The proceeds of such sale, net of any commissions, expenses and taxes due in connection with such sale shall be remitted to the Non-Permitted Benefit Plan Investor. The terms and conditions of any sale under this subsection shall be determined in the sole discretion of the Issuer, and the Issuer shall not be liable to any Person having an interest in the Preference Shares sold as a result of any such sale or the exercise of such discretion.

Any Holder that becomes a Non-Permitted Holder or a Non-Permitted Benefit Plan Investor or any Holder who has made an ERISA-related representation required by this Annex A that was at the time made, or has subsequently become, false or misleading, must immediately give written notice to the Issuer of such event. Any Holder of Preference Shares that proposes or attempts a transfer that would result in the holding of Preference Shares by a Non-Permitted Holder or that the Holder knows or has reason to know would result in the holding of Preference Shares by a Non-Permitted Benefit Plan Investor, must give at least 15 days prior written notice to the Issuer of such proposed transfer. In any case, the notifying party must provide the Issuer such information as it may request in order to determine the effect, if any, of such event on the Issuer with respect to its compliance with the Securities Act, the Investment Company Act, ERISA and the Code.

Section 11.    Return of Undistributed Payments.

Except as otherwise required by applicable law, any monies deposited with the Preference Shares Paying Agent and held in the Preference Shares Distribution Account or otherwise held for any payment with respect to the Preference Shares and remaining unclaimed for two years after such amounts have become payable shall be paid to the Issuer on Issuer Request; and the Holder of such Preference Shares shall thereafter look only to the Issuer for payment of such amounts and all liability of the Preference Shares Paying Agent with respect to such Money (but only to the extent of the amounts so paid to the Issuer) shall thereupon cease. The Preference Shares Paying Agent, before being required to make any such release of payment, may, but shall not be required to, adopt and employ, at the expense of the Issuer, any reasonable means of notification of such release of payment, including, but not limited to, mailing notice to Holders whose right to or interest in such unclaimed monies is determinable from the records of the Preference Shares Paying Agent or Share Registrar at the last address of record of each such Holder.

Section 12.    Disclosure of Tax Treatment.

In order to ensure the Holders' and beneficial owners' acquisition of the Preference Shares pursuant to the Preference Share Documents are not treated as offered under

10

conditions of confidentiality, the Holders and beneficial owners of the Preference Shares (and each of their respective employees, representatives or other agents) are hereby permitted to disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by the Preference Share Documents (including the ownership and disposition of the Preference Shares). For this purpose, the tax treatment of a transaction is the purported or claimed U.S. federal income or state and local tax treatment of the transaction, and the tax structure of a transaction is any fact that may be relevant to understanding the purported or claimed U.S. federal income or state and local tax treatment of the transaction.

Section 13.    Certain Tax Matters.

The Issuer and each Holder and each beneficial owner of a Preference Share, by acceptance of its Preference Share, or its interest in a Preference Share, shall be deemed to have agreed to treat, and shall treat, such Preference Share as equity of the Issuer and the Notes as debt of the Issuer for United States federal income tax purposes.

The Issuer will make an election to be treated as a partnership, and will take all necessary actions to maintain its status as a partnership (or, if the Issuer is treated as owned by one person, as a disregarded entity of such person) for U.S. federal income tax purposes.

The Issuer shall file, or cause to be filed, any tax return, including information tax returns, required by any governmental authority; provided, however, that the Issuer shall not file, or cause to be filed, any income or franchise tax return in any state of the United States unless it shall have obtained an Opinion of Counsel from a tax counsel of nationally recognized standing experienced in such matters prior to such filing that, under the laws of such jurisdiction, the Issuer is required to file such income or franchise tax return.

Each Holder and beneficial owner of a Preference Share, by acceptance of its Preference Share or its interest in a Preference Share, shall be deemed to understand and acknowledge that failure to provide the Issuer, the Trustee or the Preference Shares Paying Agent with the applicable U.S. federal income tax certifications (generally, a United States Internal Revenue Service Form W-9 (or successor applicable form) in the case of a person that is a "United States person" within the meaning of Section 7701(a)(30) of the Code or an appropriate United States Internal Revenue Service Form W-8 (or successor applicable form) in the case of a person that is not a "United States person" within the meaning of Section 7701(a)(30) of the Code) may result in U.S. federal withholding from payments in respect of such Preference Share and the Issuer will have the unconditional right to cause such Holder to sell any and all Preference Shares to the Issuer or to a person chosen by the Issuer or the Issuer's agent on such terms as the Issuer may choose.

The Issuer will provide or cause to be provided to each Holder or beneficial owner of the Preference Shares (or its designee), upon written request therefor, any information that such Holder or beneficial owner reasonably requests to assist such Holder or beneficial owner with regard to its or its equity owners' U.S. federal income tax filing requirements.

The Issuer will cause the Independent accountants to make a determination as to whether a Holder's investment in the Preference Shares has become a "reportable transaction" as

11

described in Treasury Regulation Section 1.6011-4 because, after the Closing Date, the Issuer entered into a transaction whereby the Issuer recognized a significant loss or otherwise. If the Holder's investment in the Preference Shares has become such a "reportable transaction," then the Issuer shall provide to Holders of Preference Shares any information available to it which may be reasonably necessary for such Holders of Preference Shares to comply with any disclosure requirements under Section 6011 of the Code and the Treasury Regulations promulgated thereunder with respect to its investment in the Preference Shares.

The Issuer shall not become the owner of any asset if the ownership or disposition of such asset (without regard to the other activities of the Issuer) would cause the Issuer to be engaged, or deemed to be engaged, in a trade or business within the United States for U.S. federal income tax purposes, it being understood that the purchase of Collateral Obligations pursuant to the acquisition standards set forth in the Collateral Acquisition Agreement will not be deemed to cause the Issuer to be engaged in a trade or business with the United States for U.S. federal income tax purposes.

**[The remainder of this page has been intentionally left blank.]**

12

## FORM OF PREFERENCE SHARE CERTIFICATE

### EASTLAND CLO, LTD.

PREFERENCE SHARES, PAR VALUE $0.01 PER SHARE

THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "**INVESTMENT COMPANY ACT**"). THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, EXCEPT (A) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER ("**QUALIFIED INSTITUTIONAL BUYER**") WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT (IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A SO LONG AS THE PREFERENCE SHARES ARE ELIGIBLE FOR RESALE IN ACCORDANCE WITH RULE 144A) WHO IS ALSO A QUALIFIED PURCHASER ("**QUALIFIED PURCHASER**") WITHIN THE MEANING OF SECTION 3(c)(7) OF THE INVESTMENT COMPANY ACT THAT WAS NOT FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER (EXCEPT WHEN EACH BENEFICIAL OWNER OF THE PURCHASER IS A QUALIFIED PURCHASER) AND THAT (1) HAS RECEIVED THE NECESSARY CONSENT FROM ITS BENEFICIAL OWNERS WHEN THE PURCHASER IS A PRIVATE INVESTMENT COMPANY FORMED ON OR BEFORE APRIL 30, 1996, (2) IS NOT A BROKER-DEALER THAT OWNS AND INVESTS ON A DISCRETIONARY BASIS LESS THAN $25,000,000 IN SECURITIES OF UNAFFILIATED ISSUERS AND (3) IS NOT A PENSION, PROFIT-SHARING OR OTHER RETIREMENT TRUST FUND OR PLAN IN WHICH THE PARTNERS, BENEFICIARIES OR PARTICIPANTS OR AFFILIATES MAY DESIGNATE THE PARTICULAR INVESTMENT TO BE MADE, (B) IN EACH CASE, IN A NUMBER OF NOT LESS THAN 100 PREFERENCE SHARES FOR THE PURCHASER AND (C) IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION. EACH TRANSFEROR OF THE PREFERENCE SHARES REPRESENTED HEREBY OR ANY BENEFICIAL INTEREST THEREIN WILL PROVIDE NOTICE OF THE TRANSFER RESTRICTIONS AS SET FORTH HEREIN TO ITS PURCHASER. EACH PURCHASER OF THE PREFERENCE SHARES REPRESENTED HEREBY WILL BE REQUIRED TO MAKE THE APPLICABLE REPRESENTATIONS AND AGREEMENTS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. THE PREFERENCE SHARES REPRESENTED HEREBY MAY BE PURCHASED BY OR TRANSFERRED TO A BENEFIT PLAN INVESTOR OR CONTROLLING PERSON (EACH AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) ONLY UPON THE SATISFACTION OF CERTAIN CONDITIONS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE

TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE PREFERENCE SHARES PAYING AGENT OR ANY INTERMEDIARY. IN ADDITION TO THE FOREGOING, THE ISSUER MAINTAINS THE RIGHT TO RESELL ANY PREFERENCE SHARES PREVIOUSLY TRANSFERRED TO NON-PERMITTED HOLDERS OR NON-PERMITTED BENEFIT PLAN INVESTORS (AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE PREFERENCE SHARE DOCUMENTS.

THE FAILURE TO PROVIDE THE ISSUER AND ANY PAYING AGENT, WHENEVER REQUESTED BY THE ISSUER OR THE SERVICER ON BEHALF OF THE ISSUER, WITH THE APPLICABLE U.S. FEDERAL INCOME TAX CERTIFICATIONS (GENERALLY, AN INTERNAL REVENUE SERVICE FORM W-9 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE OR AN APPROPRIATE INTERNAL REVENUE SERVICE FORM W-8 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS NOT A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE) MAY RESULT IN THE IMPOSITION OF U.S. FEDERAL WITHHOLDING FROM PAYMENTS TO THE HOLDER IN RESPECT OF THE PREFERENCE SHARES REPRESENTED HEREBY.

THE PREFERENCE SHARES REPRESENTED HEREBY MAY NOT BE ACQUIRED OR HELD BY (I) ANY "EMPLOYEE BENEFIT PLAN" WITHIN THE MEANING OF SECTION 3(3) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("**ERISA**"), THAT IS SUBJECT TO TITLE I OF ERISA, (II) ANY "PLAN" DESCRIBED BY SECTION 4975(e)(1) OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**CODE**"), THAT IS SUBJECT TO SECTION 4975 OF THE CODE, OR (III) ANY ENTITY WHOSE UNDERLYING ASSETS INCLUDE "PLAN ASSETS" OF ANY PLAN DESCRIBED IN (I) OR (II) BY REASON OF A PLAN'S INVESTMENT IN SUCH ENTITY (EACH OF (I), (II) AND (III), A "BENEFIT PLAN INVESTOR"), EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS.

EACH TRANSFEREE WILL BE REQUIRED TO DELIVER A TRANSFEREE CERTIFICATE IN A FORM PRESCRIBED IN THE PREFERENCE SHARE DOCUMENTS.

A-2

## EASTLAND CLO, LTD.

Number [P] [S] -

CUSIP NO.:                                              xxxxx Preference Shares

Existing under the laws of the Cayman Islands
**US $1,000** divided into 1,000 Ordinary Shares
of a nominal par value of **US $1.00** each
and 123,500 Preference Shares of a nominal or par value of **US $0.01** each

THIS IS TO CERTIFY THAT
**XXX**
is the registered Holder of

*- XXX Preference Shares -*

in the above-named Company subject to the Amended and Restated Memorandum and Articles
of Association thereof

A-3

THIS CERTIFICATE IS ISSUED BY the said Company on this 13th day of March 2007.
EXECUTED on behalf of the said Company by:

DIRECTOR_____

**Exhibit B**

## FORM OF TRANSFEREE CERTIFICATE FOR PREFERENCE SHARES

Eastland CLO, Ltd.
P.O. Box 1234
Queensgate House
South Church Street
George Town
Grand Cayman, Cayman Islands

Investors Bank & Trust Company
  as Preference Shares Paying Agent
[_____]
Attention: [_____]

        Re:    Eastland CLO, Ltd.
                Preference Shares, Par Value $0.01 Per Share

Dear Sirs:

        Reference is hereby made to the Issuer's Memorandum and Articles of Association (the **"Articles"**) and certain resolutions adopted at a meeting of the Issuer's Board of Directors on or about [_____], 2007 (the **"Resolutions"**), as reflected in the minutes thereof. Reference is also made to the Preference Shares Paying Agency Agreement, dated as of March 13, 2007 (the **"Agreement"**) by and between Eastland CLO, Ltd., as Issuer and Investors Bank & Trust Company, as Preference Shares Paying Agent. Capitalized terms used but not defined herein shall have the meanings set forth in the Resolutions, including Annex A thereto (**"Annex A"**), and if not defined in the Resolutions, in the Offering Memorandum.

        This certificate relates to _____ Preference Shares which are to be transferred to the undersigned transferee (the **"purchaser"**) pursuant to Section 5(b) of Annex A.

        1.    The purchaser hereby represents, warrants and covenants for the benefit of the Issuer that the transfer has been effected in accordance with the transfer restrictions set forth in Section 5(b) of Annex A and the Offering Memorandum, dated March [__], 2007 (the **"Offering Memorandum"**) relating to the Preference Shares and that:

                (1)    The purchaser hereby certifies that it is a Qualified Institutional Buyer as defined in Rule 144A under the Securities Act and a Qualified Purchaser for purposes of the Investment Company Act; and

                (2)    The Purchaser is aware that the sale of the Preference Shares to it is being made in reliance on an exemption from the registration requirements under the Securities Act and it is acquiring the Preference Shares for its own account in a number not less than the minimum lot.

2.      The purchaser has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of its investment in the Preference Shares, and the purchaser is able to bear the economic risk of its investment.

3.      The purchaser understands that the Preference Shares are being offered only in a transaction not involving any public offering in the United States within the meaning of the Securities Act, the Preference Shares have not been and will not be registered under the Securities Act, and, if in the future the purchaser decides to offer, resell, pledge or otherwise transfer the Preference Shares, such Preference Shares may be offered, resold, pledged or otherwise transferred only in accordance with the legend in respect of such Preference Shares set forth in clause (11) below and the restrictions set forth in the Preference Share Documents. The purchaser acknowledges that no representation is made by the Issuer, the Servicer or the Placement Agent or any of their respective Affiliates as to the availability of any exemption under the Securities Act or other applicable laws of any jurisdiction for resale of the Preference Shares.

4.      The purchaser agrees that it will not offer or sell, transfer, assign, or otherwise dispose of the Preference Shares or any interest therein except (i) pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act and any applicable state securities laws or the applicable laws of any other jurisdiction and (ii) in accordance with the Preference Share Documents, to which provisions the purchaser hereby agrees it is subject.

5.      The purchaser is not purchasing the Preference Shares with a view to the resale, distribution or other disposition thereof in violation of the Securities Act. It has read and understood the Offering Memorandum, including, without limitation, the "Risk Factors" section therein. The purchaser understands that the Preference Shares will be highly illiquid and are not suitable for short-term trading. The Preference Shares are a leveraged investment in the Collateral Obligations that may expose the Preference Shares to disproportionately large changes in value. Payments in respect of the Preference Shares are not guaranteed as they are dependent on the performance of the Issuer's portfolio of Collateral Obligations. The purchaser understands that it is possible that, due to the structure of the transaction and the performance of the Issuer's portfolio of Collateral Obligations, dividends or other distributions in respect of the Preference Shares may be reduced or eliminated entirely. Furthermore, the Preference Shares constitute equity in the Issuer, are not secured by the Collateral and will rank behind all creditors (secured and unsecured and whether known or unknown) of the Issuer, including, without limitation, the Holders of the Notes, and any Hedge Counterparties. The Issuer has assets limited to the Collateral for payment of all Classes of the Notes and dividends and other distributions on the Preference Shares, and the Preference Shares bear, *pro rata*, the first risk of loss. The purchaser understands that an investment in the Preference Shares involves certain risks, including the risk of loss of all or a substantial part of its investment. The purchaser has had access to such financial and other information concerning the Issuer, the Preference Shares and the Collateral as it deemed necessary or appropriate in order to make an informed investment decision with respect to its purchase of the Preference Shares, including an opportunity to ask questions of and request information from the Issuer and the Placement Agent.

6.      (i) None of the Issuer, the Co-Issuer, the Trustee, the Initial Purchaser, the Placement Agent, any Hedge Counterparty, the Preference Shares Paying Agent, the Collateral Administrator or the Servicer is acting as a fiduciary or financial or investment advisor for the purchaser, (ii) the purchaser is not relying (for purposes of making any investment decision or otherwise) upon any advice, counsel or representations (whether written or oral) of the Issuer, the Co-Issuer, the Trustee, the Initial Purchaser, the Placement Agent, any Hedge Counterparty, the Preference Shares Paying Agent, the Collateral Administrator or the Servicer or any of their respective Affiliates other than in the Offering Memorandum and any representations expressly set forth in a written agreement with such party; (iii) none of the Issuer, the Co-Issuer, the Trustee, the Initial Purchaser, the Placement Agent, any Hedge Counterparty, the Preference Shares Paying Agent, the Collateral Administrator or the Servicer or any of their respective Affiliates has given to the purchaser (directly or indirectly through any other Person or documentation for the Preference Shares) any assurance, guarantee or representation whatsoever as to the expected or projected success, profitability, return, performance, result, effect, consequence or benefit (including legal, regulatory, tax, financial, accounting or otherwise) of the Preference Shares or an investment therein; (iv) the purchaser has consulted with its own legal, regulatory, tax, business, investment, financial and accounting advisors to the extent it has deemed necessary, and it has made its own investment decisions (including decisions regarding the suitability of any transaction pursuant to the documentation for the Preference Shares) based upon its own judgment and upon any advice from such advisors as it has deemed necessary and not upon any view expressed by the Issuer, the Co-Issuer, the Trustee, the Initial Purchaser, the Placement Agent, any Hedge Counterparty, the Preference Shares Paying Agent, the Collateral Administrator or the Servicer or any of their respective Affiliates; (v) the purchaser has determined that the rates, prices or amounts and other terms of the purchase and sale of the Preference Shares reflect those in the relevant market for similar transactions; (vi) the purchaser is purchasing the Preference Shares with a full understanding of all of the terms, conditions and risks thereof (economic and otherwise), and it is capable of assuming and willing to assume (financially and otherwise) those risks; and (vii) the purchaser is a sophisticated investor.

7.      (A) The purchaser is (i) a Qualified Purchaser or (ii) an entity owned exclusively by Qualified Purchasers, (B) the purchaser is acquiring the Preference Shares as principal for its own account (and not for the account of any family or other trust, any family member or any other person) for investment and not for sale in connection with any distribution thereof, (C) the purchaser was not formed solely for the purpose of investing in the Preference Shares (except when each beneficial owner of the purchaser is a Qualified Purchaser), (D) to the extent the purchaser is a private investment company formed before April 30, 1996, the purchaser has received the necessary consent from its beneficial owners, (E) the purchaser is not a broker-dealer that owns and invests on a discretionary basis less than $25,000,000 in securities of unaffiliated issuers, (F) the purchaser is not a pension, profit-sharing or other retirement trust fund or plan in which the partners beneficiaries or participants or affiliates may designate the particular investment to be made, (G) the purchaser agrees that it shall not hold such Preference Shares for the benefit of any other Person and shall be the sole beneficial owner thereof for all purposes and that it shall not sell participation interests in the Preference Shares or enter into any other arrangement pursuant to which any other Person shall be entitled to a beneficial interest in the dividends or other distributions on the Preference Shares (except when each such other Person is (i) a Qualified Institutional Buyer and (ii) a Qualified Purchaser) and (H) the purchaser

understands and agrees that any purported transfer of the Preference Shares to a purchaser that does not comply with the requirements of this paragraph shall be null and void *ab initio*.

8.      The purchaser understands that, prior to any sale or other transfer of any interest in a Preference Share, it (or the transferee, as applicable) will be required to provide to the Issuer and Preference Shares Paying Agent a duly executed transfer certificate substantially in the form of Exhibit B attached to Annex A and such other certificates and other information as they may reasonably require to confirm that the proposed transfer complies with the restrictions in the legend placed on each certificate representing the Preference Shares and in the Preference Share Documents.

9.      The purchaser understands and agrees that (i) no purchase or transfer may be made that would result in any person or entity holding beneficial ownership in any Preference Shares in less than an authorized number as set forth in Annex A and (ii) no purchase or transfer of Preference Shares that would have the effect of requiring either of the Co-Issuers or the pool of Collateral to register as an investment company under the Investment Company Act will be permitted.

10.     The purchaser understands and agrees that no purchase or transfer of Preference Shares (i) to a purchaser or transferee that has represented that it is a Benefit Plan Investor (as defined in Section 3(42) of the Employee Retirement Income Security Act of 1974, as amended "**ERISA**") or a Controlling Person (as defined below) will be effective, and the Issuer or the Share Registrar will not recognize or register such purchase or transfer, if such purchase or transfer would result in Benefit Plan Investors owning 25% or more of the aggregate outstanding amount of the Class I Preference Shares or the Class II Preference Shares (determined pursuant to Section 3(42) of ERISA, 29 C.F.R. Section 2510.3-101, the Indenture and the Preference Share Documents) or (ii) will be permitted if such purchase or transfer will result in a prohibited transaction under Section 406 of ERISA or Section 4975 of Code (as defined below) (or, in the case of a governmental, foreign or church plan, a violation of any substantially similar federal, state, foreign or local law). The purchaser further understands and agrees that any transfer in violation of the applicable provisions of the Preference Share Documents will be null and void *ab initio*. For purposes of the 25% determination described in the first sentence of this clause (10), the Preference Shares held by the Trustee, the Servicer, any of their respective affiliates (as defined in 29 C.F.R. Section 2510.3-101(f)(3)) and any other persons that have represented that they are Controlling Persons will be disregarded and will not be treated as outstanding. The purchaser's acquisition, holding and disposition of the Preference Shares will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Internal Revenue Code of 1986 (the "**Code**") (or, in the case of a governmental, foreign or church plan, any substantially similar federal, state, foreign or local law), because such purchase, holding or acquisition either (a) is not, and will not become, subject to such laws or (b) is covered by an exemption from all applicable prohibited transactions, all conditions of which are and will be satisfied throughout its holding of such Preference Shares. The purchaser and any fiduciary or Person causing it to acquire the Preference Shares agree, to the fullest extent permissible under applicable law, to indemnify and hold harmless the Issuer, the Co-Issuer, the Initial Purchaser, the Placement Agent, the Preference Shares Paying Agent, the Trustee, the Servicer and their respective affiliates from any cost, damage or loss incurred by them as a result of a breach of the representations set forth in this clause (10) and clause (12) below. If the purchaser is an

NY\1237798.2

insurance company investing through its general account as defined in United States Department of Labor ("**DOL**") Prohibited Transaction Class Exemption ("**PTCE**") 95-60, for so long as it holds the Preference Shares, such purchaser represents that the percentage of assets of such insurance company general account that may be treated as "plan assets" under ERISA and the Code will always remain below 25% (as determined pursuant to ERISA and the Code).

11.     The purchaser understands that the Preference Shares (a) will be represented by one or more Preference Share certificates which will bear the legend substantially in the form set forth below unless the Issuer determines otherwise in accordance with applicable law, and (b) may only be resold, pledged or transferred to Qualified Institutional Buyers who are also (x) Qualified Purchasers or (y) entities owned exclusively by Qualified Purchasers. The purchaser understands that before the Preference Shares may be offered, resold, pledged or otherwise transferred, the transferee will be required to provide the Preference Shares Paying Agent and the Issuer with a written certification as to compliance with the transfer restrictions.

THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), AND THE ISSUER HAS NOT BEEN REGISTERED UNDER THE UNITED STATES INVESTMENT COMPANY ACT OF 1940, AS AMENDED (THE "**INVESTMENT COMPANY ACT**"). THE PREFERENCE SHARES REPRESENTED HEREBY HAVE NOT BEEN OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, EXCEPT (A) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER ("**QUALIFIED INSTITUTIONAL BUYER**") WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT (IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A SO LONG AS THE PREFERENCE SHARES ARE ELIGIBLE FOR RESALE IN ACCORDANCE WITH RULE 144A) WHO IS ALSO A QUALIFIED PURCHASER ("**QUALIFIED PURCHASER**") WITHIN THE MEANING OF SECTION 3(c)(7) OF THE INVESTMENT COMPANY ACT THAT WAS NOT FORMED FOR THE PURPOSE OF INVESTING IN THE ISSUER (EXCEPT WHEN EACH BENEFICIAL OWNER OF THE PURCHASER IS A QUALIFIED PURCHASER) AND THAT (1) HAS RECEIVED THE NECESSARY CONSENT FROM ITS BENEFICIAL OWNERS WHEN THE PURCHASER IS A PRIVATE INVESTMENT COMPANY FORMED ON OR BEFORE APRIL 30, 1996, (2) IS NOT A BROKER-DEALER THAT OWNS AND INVESTS ON A DISCRETIONARY BASIS LESS THAN $25,000,000 IN SECURITIES OF UNAFFILIATED ISSUERS AND (3) IS NOT A PENSION, PROFIT-SHARING OR OTHER RETIREMENT TRUST FUND OR PLAN IN WHICH THE PARTNERS, BENEFICIARIES OR PARTICIPANTS OR AFFILIATES MAY DESIGNATE THE PARTICULAR INVESTMENT TO BE MADE, (B) IN EACH CASE, IN A NUMBER OF NOT LESS THAN 100 PREFERENCE SHARES FOR THE PURCHASER AND (C) IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES AND ANY OTHER APPLICABLE JURISDICTION.     EACH TRANSFEROR OF THE PREFERENCE SHARES REPRESENTED HEREBY OR ANY BENEFICIAL INTEREST THEREIN WILL PROVIDE NOTICE OF THE TRANSFER RESTRICTIONS AS SET FORTH HEREIN TO ITS PURCHASER. EACH PURCHASER OF THE PREFERENCE SHARES REPRESENTED HEREBY WILL BE REQUIRED TO MAKE THE APPLICABLE REPRESENTATIONS AND AGREEMENTS SET FORTH IN THE PREFERENCE SHARE

DOCUMENTS. THE PREFERENCE SHARES REPRESENTED HEREBY MAY BE PURCHASED BY OR TRANSFERRED TO A BENEFIT PLAN INVESTOR OR CONTROLLING PERSON (EACH AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) ONLY UPON THE SATISFACTION OF CERTAIN CONDITIONS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS. ANY TRANSFER IN VIOLATION OF THE FOREGOING WILL BE OF NO FORCE AND EFFECT, WILL BE VOID AB INITIO, AND WILL NOT OPERATE TO TRANSFER ANY RIGHTS TO THE TRANSFEREE, NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY TO THE ISSUER, THE PREFERENCE SHARES PAYING AGENT OR ANY INTERMEDIARY. IN ADDITION TO THE FOREGOING, THE ISSUER MAINTAINS THE RIGHT TO RESELL ANY PREFERENCE SHARES PREVIOUSLY TRANSFERRED TO NON-PERMITTED HOLDERS OR NON-PERMITTED BENEFIT PLAN INVESTORS (AS DEFINED IN THE PREFERENCE SHARE DOCUMENTS) IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE PREFERENCE SHARE DOCUMENTS.

THE FAILURE TO PROVIDE THE ISSUER AND ANY PAYING AGENT, WHENEVER REQUESTED BY THE ISSUER OR THE SERVICER ON BEHALF OF THE ISSUER, WITH THE APPLICABLE U.S. FEDERAL INCOME TAX CERTIFICATIONS (GENERALLY, AN INTERNAL REVENUE SERVICE FORM W-9 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE OR AN APPROPRIATE INTERNAL REVENUE SERVICE FORM W-8 (OR APPLICABLE SUCCESSOR FORM) IN THE CASE OF A PERSON THAT IS NOT A "UNITED STATES PERSON" WITHIN THE MEANING OF SECTION 7701(A)(30) OF THE CODE) MAY RESULT IN THE IMPOSITION OF U.S. FEDERAL WITHHOLDING FROM PAYMENTS TO THE HOLDER IN RESPECT OF THE PREFERENCE SHARES REPRESENTED HEREBY.

THE PREFERENCE SHARES REPRESENTED HEREBY MAY NOT BE ACQUIRED OR HELD BY (I) ANY "EMPLOYEE BENEFIT PLAN" WITHIN THE MEANING OF SECTION 3(3) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("**ERISA**") THAT IS SUBJECT TO TITLE I OF ERISA, (II) ANY "PLAN" DESCRIBED BY SECTION 4975(e)(1) OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "**CODE**") THAT IS SUBJECT TO SECTION 4975 OF THE CODE, OR (III) ANY ENTITY WHOSE UNDERLYING ASSETS INCLUDE "PLAN ASSETS" OF ANY PLAN DESCRIBED IN (I) OR (II) BY REASON OF A PLAN'S INVESTMENT IN SUCH ENTITY (EACH OF (I), (II) AND (III), A "BENEFIT PLAN INVESTOR"), EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN THE PREFERENCE SHARE DOCUMENTS.

EACH TRANSFEREE WILL BE REQUIRED TO DELIVER A TRANSFEREE CERTIFICATE IN A FORM PRESCRIBED IN THE PREFERENCE SHARE DOCUMENTS.

12. The funds that the purchaser is using or will use to purchase the Preference Shares are assets of a person who is or at any time while the Preference Shares are held by the purchaser will be (A) an "employee benefit plan" as defined in Section 3(3) of ERISA that is subject to Title I of ERISA, (B) a "plan" described in Section 4975(e)(1) of the Code that is subject to

B-6

Section 4975 of the Code or (C) an entity whose underlying assets would be deemed to include "plan assets" of either of the foregoing by reason of the investment by an employee benefit plan or other plan in the entity within the meaning of 29 C.F.R. Section 2510.3-101, as modified by Section 3(42) of ERISA (the plans and persons described in clauses (A), (B) and (C) being referred to as "**Benefit Plan Investors**").

Yes _____ No _____ (Please check either yes or no).

If yes, such funds are assets of an employee benefit plan subject to the fiduciary responsibility provisions of ERISA or a plan described in Section 4975(e)(1) of the Code and subject to Section 4975 of the Code.

Yes _____ No _____ (Please check either yes or no).

The purchaser is not the Issuer, the Co-Issuer, the Servicer or any other person (other than a Benefit Plan Investor) that has discretionary authority or control with respect to the assets of the Issuer or a person who provides investment advice for a fee (direct or indirect) with respect to the assets of the Issuer, or any "affiliate" (as defined in 29 C.F.R. Section 2510.3 101(f)(3)) of any such person (any such person, a "**Controlling Person**"). **Please place a check in the following space if the foregoing statement is NOT accurate: _____.**

If the purchaser is an insurance company investing through its general account as defined in PTCE 95-60, for so long as it holds the Preference Shares, no more than ___% of the assets of such insurance company general account could be treated as plan assets for purposes of Section 3(42) of ERISA. The purchaser will promptly notify the Issuer if this percentage changes. (**Please provide percentage, if applicable**).

If the purchaser is a Benefit Plan Investor that is an entity (other than an insurance company general account) whose underlying assets include "plan assets" by reason of an employee benefit plan's or other plan's investment in the entity, for so long as it holds the Preference Shares, no more than ___% of the purchaser's assets shall be treated as "plan assets" under Section 3(42) of ERISA. The purchaser will promptly notify the Issuer if this percentage changes. (**Please provide percentage, if applicable**).

The purchaser's acquisition, holding and disposition of the Preference Shares will not result in a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code (or, in the case of a governmental, foreign or church plan, a violation of any substantially similar federal, state, foreign or local law), unless an exemption is available, all conditions of which have been and will be satisfied throughout the purchaser's holding of the Preference Shares.

The purchaser further acknowledges and agrees that the Preference Shares Paying Agency Agreement will entitle the Issuer to require the purchaser to dispose of the Preference Shares as soon as practicable following notification by the Issuer of any change in the information supplied in this clause (12).

The purchaser understands that the representations made in this clause (12) will be deemed made on each day from the date hereof through and including the date on which the purchaser disposes of its interests in the Preference Shares.

The purchaser agrees to indemnify and hold harmless the Co-Issuers, the Trustee, the Preference Shares Paying Agent, the Initial Purchaser, the Placement Agent and the Servicer and their respective affiliates from any cost, damage, or loss incurred by them as a result of a breach of the representation in this clause (12).

The purchaser agrees that it will not sell, pledge or otherwise transfer any Preference Shares in violation of the foregoing.

13.     The purchaser will provide notice to each Person to whom it proposes to transfer any interest in the Preference Shares of the transfer restrictions and representations set forth in the Preference Share Documents, including the exhibits referenced in the Preference Share Documents.

14.     The purchaser understands that the Preference Share Documents permit the Issuer to compel any Holder of the Preference Shares who is a U.S. Person and who is determined not to have been both (x) a Qualified Institutional Buyer and (y) a Qualified Purchaser at the time of acquisition of the Preference Shares to sell such Preference Shares, or to sell such Preference Shares on behalf of such purchaser, to a Person that is both (x) a Qualified Institutional Buyer and (y) a Qualified Purchaser in a transaction exempt from the registration requirements under the Securities Act.

15.     The beneficial owner, if not a U.S. Person, either (i) is not a bank (within the meaning of Section 881(c)(3)(A) of the Code) or (ii) is a person that is eligible for benefits under an income tax treaty with the United States that eliminates United States federal income taxation of Unites States source interest not attributable to a permanent establishment in the United States.  The beneficial owner is not purchasing the Preference Shares in order to reduce its United States federal income tax liability or pursuant to a tax avoidance plan.

16.     The purchaser acknowledges that no action was taken or is being contemplated by the Issuer that would permit a public offering of the Preference Shares.  The purchaser further acknowledges that no action was taken or is being contemplated by the Issuer that would permit possession or distribution of the Offering Memorandum or any amendment thereof or supplement thereto or any other offering material relating to the Securities in any jurisdiction (other than Ireland) where, or in any circumstances in which, action for those purposes is required.  Nothing contained in the Offering Memorandum relating to the Preference Shares shall constitute an offer to sell or a solicitation of an offer to purchase any Preference Shares in any jurisdiction where it is unlawful to do so absent the taking of such action or the availability of an exemption therefrom.

17.     The purchaser understands that in the case of any supplemental indenture to the Indenture that requires consent of one or more Holders of the Preference Shares, the Indenture permits the Amendment Buy-Out Purchaser to purchase Preference Shares from any Non-Consenting Holder thereof (or, with respect to any Preference Shares held by Investors Corp., to purchase the Holding Preference Shares from any Non-Consenting Holding Preference Share Holder thereof), in each case, at the applicable Amendment Buy-Out Purchase Price; and such Non-Consenting Holder or Non-Consenting Holding Preference Share Holder will be required to

sell such Preference Shares or Holding Preference Shares, as the case may be, to the Amendment Buy-Out Purchaser at such price.

18.    The purchaser understands that the scheduled redemption date of the Preference Shares is subject to multiple extensions of four years each without consent of any Holders of the Preference Shares at the option of the Issuer, if directed by the Servicer, upon satisfaction of certain conditions.

19.    The purchaser will not, at any time, offer to buy or offer to sell the Preference Shares by any form of general solicitation or advertising, including, but not limited to, any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium or broadcast over television or radio or seminar or meeting whose attendees have been invited by general solicitations or advertising.

20.    The beneficial owner will agree to treat, for U.S. federal income tax purposes, (a) the Preference Shares as equity of the Issuer, (b) the Notes as indebtedness of the Issuer and (c) the Issuer as a partnership (except to the extent the Issuer can no longer be treated as a partnership as a result of any election by the Issuer, changes in ownership of the Issuer or changes in the manner in which the equity of the Issuer is traded). The beneficial owner will be deemed to have acknowledged that the Issuer is not authorized to engage in activities that could cause it to constitute a finance or lending business for U.S. federal income tax purposes and agrees that it will report its investment in Preference Shares consistent with such limitation.

21.    To the extent required, as determined by the Issuer or the Servicer on behalf of the Issuer, the Issuer may, upon notice to the Preference Shares Paying Agent and the Share Registrar, impose additional transfer restrictions on the Preference Shares to comply with the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the U.S. Patriot Act) and other similar laws or regulations, including, without limitation, requiring each transferee of a Preference Share to make representations to the Issuer in connection with such compliance.

22.    The purchaser agrees not to cause the filing of a petition in bankruptcy or winding up against the Issuer before one year and one day have elapsed since the payment in full of the Notes or, if longer, the applicable preference period in effect.

23.    The purchaser is not a member of the public in the Cayman Islands.

24.    The purchaser acknowledges that the Issuer has the right pursuant to Section 6 of the Preference Shares Paying Agency Agreement to issue additional Preference Shares.

25.    The purchaser understands that, to the extent required, as determined by the Co-Issuers, the Co-Issuers may amend the Indenture and, with respect to the Issuer only, the Preference Share Documents, without the consent of any Holders of the Securities and without regard to whether or not such amendment adversely affects the interest of the Holders of the Securities to (i) remove any restrictions and limitations imposed on the Co-Issuers or the Holders of the Securities that solely relate to compliance with Section 3(c)(7) and (ii) add any requirements that are necessary for compliance with Rule 3a-7 if, at any time following the

B-9

Closing Date, the Co-Issuers elect to rely on exclusion from the definition of "investment company" under Rule 3a-7 in lieu of the exclusion under Section 3(c)(7).

26. The purchaser understands that the Issuer may enter into amendments or modifications to the Servicing Agreement without the consent of any Holders of the Securities and without regard to whether or not such amendment adversely affects the interest of the Holders of the Securities.

27. The purchaser agrees to provide (and agrees it will cause any subsequent transferee of its Preference Shares to provide) the Share Registrar (1) appropriate documentation required under the Code and the applicable Treasury regulations establishing that the beneficial owner of the Preference Shares to be transferred is either a non-U.S. person (e.g., an IRS Form W-8BEN or an IRS Form W-8IMY with appropriate attachments) or a U.S. person (e.g., an IRS Form W-9) and (2) if such beneficial owner is treated as a partnership, S-corporation or grantor trust for U.S. federal income tax purposes, a written representation from such beneficial owner that (i) there will not be any interests in such beneficial owner where substantially all of the value of such interest is attributable to the value of the Preference Shares proposed to be transferred to such beneficial owner, together with the value of any Class D Notes, Holding Securities and Preference Shares already held by such beneficial owner and (ii) such beneficial owner is not a part of any arrangement a principal purpose of which is to cause the Class D Notes and the Preference Shares to be treated as owned by 100 persons or less within the meaning of Treasury Regulation section 1.7704-1(h). The purchaser agrees to provide a properly completed, newly executed U.S. tax form and other certificate in each of the following circumstances: (i) no later than 120 days prior to the expiration (if applicable) of the last previously provided U.S. tax form or certificate, (ii) upon any change of circumstance that would cause that the last previously provided U.S. tax form or certificate to be incorrect and (iii) upon a request by the Issuer or the Share Registrar. The purchaser agrees that if it fails to provide a properly completed, newly executed U.S. tax form or other certificate no later than 120 days prior to the expiration of the last previously provided U.S. tax form or, if earlier, within the time specified in any request by the Issuer or the Share Registrar (which shall not be less than 30 days), the Issuer will have the unconditional right to cause such purchaser to sell any and all Preference Shares to the Issuer or to a person chosen by the Issuer or the Issuer's agent on such terms as the Issuer may choose. For this purpose, an IRS Form W-8IMY (or any successor form thereto) will be deemed to expire upon the expiration of any withholding statement or U.S. tax forms associated with such IRS Form W-8IMY.

28. The purchaser understands and agrees that the Issuer will not recognize any transfers of Preference Shares if the proposed transfer will cause the Issuer to have either (a) exactly one beneficial owner or (b) more than ninety-nine beneficial owners (as determined for purposes of the provisions of Treasury Regulation section 1.7704-1(h)) of its Class D Notes and its Preference Shares unless, in the case of clause (b), it receives the consent of all of the Holders of the Preference Shares and an opinion of counsel to the effect that Holders of the Notes will not recognize gain or loss for U.S. federal income tax purposes as a result of such transfer, and will be subject to U.S. federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such transfer had not been made.

B-10

29.     The purchaser represents that it has not acquired the Preference Shares pursuant to a trade on an "established securities market" and agrees that it will not trade any Preference Shares on an "established securities market." For this purpose, the term "established securities market" includes any national securities exchange registered under Section 6 of the Securities Exchange Act of 1934, as amended, or exempted from registration because of the limited volume of transaction; any foreign securities exchange that, under the laws of the jurisdiction where it is organized, satisfies regulatory requirements that are analogous to the regulatory requirements imposed under the Securities Exchange Act of 1934; any regional or local exchange; and any interdealer quotation system that regularly disseminates firm buy or sell quotations by identified brokers or dealers, by electronic means or otherwise. The purchaser understands and agrees that in the event that the purchaser acquires or trades the Preference Shares on an established securities market, as described above, the Issuer will not recognize any transfers of Preference Shares made pursuant to such acquisition or trade.

30.     The purchaser is___ / is not___ (check one) Highland Financial Partners, L.P. or any of its subsidiaries.

31.     The purchaser acknowledges that the Issuer, the Servicer, the Trustee, the Placement Agent and others will rely upon the truth and accuracy of the foregoing acknowledgments, representations and agreements and agrees that if any of the acknowledgments, representations or agreements deemed to have been made by it by its purchase of the Preference Shares or any beneficial interest therein are no longer accurate, it shall promptly notify the Issuer, the Servicer, the Trustee and the Placement Agent.

THIS LETTER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

[The remainder of this page has been intentionally left blank.]

B-11

**IN WITNESS WHEREOF,** the undersigned has executed this Preference Share Transferee Certificate on the date set forth below.

Date: _____, 200_

**Number of Preference Shares subscribed for (at a purchase price of U.S.$1,000 per share):**

_____

**Aggregate purchase price of the Preference Shares subscribed for:**
U.S.$_____

_____
Print Name of Purchaser

By:_____
Signature of Authorized Signatory

_____
Print Name of Authorized Signatory

_____
Print Title of Authorized Signatory

**Please remember to give the Preference Shares Paying Agent the proper U.S. federal income tax certifications or else the Preference Shares Paying Agent may have to withhold part of any payment due and payable to you.**

(1)     the name and address of the registered Holder of the Preference Shares is:

_____

_____

_____

_____

_____

_____

B-12

(2)    the wire/payment instructions for the registered Holder of the Preference Shares are:

_____

_____

_____

_____

_____

_____