# CLO EXHIBIT 6



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE

780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

TELEPHONE: 212/561 7700

FACSIMILE: 212/561 7777

LOS ANGELES

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

TELEPHONE: 310/277 6910

FACSIMILE: 310/201 0760

SAN FRANCISCO

150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

TELEPHONE: 415/263 7000

FACSIMILE: 415/263 7010

DELAWARE

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

TELEPHONE: 302/652 4100

FACSIMILE: 302/652 4400

WEB: www.pszjlaw.com

Gregory Demo

December 24, 2020

212-561-7700
gdemo@pszjlaw.com

**Via E-mail**

James A. Wright III
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111

A. Lee Hogewood III
K&L Gates LLP
4350 Lassiter at North Hills Ave.
Suite 300
Raleigh, North Carolina 27609

**Re:** ***In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex)**

Dear Counsel:

As you know, we represent Highland Capital Management, L.P. (the "Debtor"), the debtor-in-possession in the above-captioned bankruptcy case.

On December 8, 2020, your firm filed that certain *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* [D.I. 1528] (the "Motion")[1] on behalf of Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. (collectively, the "Movants"). After hearing the sworn testimony of the Movants' witness and the arguments made on the Movants' behalf, Judge Jernigan was convinced that the Movants were in fact Mr. James Dondero seeking to disrupt

---

[1] All capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

DOCS_NY:41835.4 36027/002

**EXHIBIT 6**



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

James A. Wright III
A. Lee Hogewood III
December 24, 2020
Page 2

HCMP's estate by using different controlled entities to accomplish his ends.

On December 23, we received the letter attached as Exhibit A (the "<u>Letter</u>") from your firm on behalf of the Movants and CLO Holdco, Ltd. (an entity affiliated with James Dondero) informing us that they were seeking to terminate certain CLO management agreements for "cause." For the reasons set forth herein, among others, such action is sanctionable under the circumstances and is otherwise prohibited by the CLOs' governing documents.

First, the Movants are owned and/or controlled by Mr. Dondero. These facts were disclosed in the Movants' public filings with the Securities and Exchange Commission and confirmed by Mr. Dustin Norris's testimony at the hearing held on December 16, 2020. Consequently, the Movants' attempt to terminate the CLO management agreements violates the order entered on January 9, 2020 [D.I. 339] (the "<u>January Order</u>"), which prohibits Mr. Dondero from "caus[ing] any Related Entity to terminate any agreements with the Debtor." A copy of the January Order is attached as Exhibit B.

Second, "cause" does not exist to terminate the CLO management agreements. The Debtor has a duty under the Investment Advisers Act of 1940 to the CLOs, not to any specific investor in the CLOs. *See, e.g., Goldstein v. SEC,* 451 F.3d 873, 881-82 (D.C. Cir. 2006) ("[t]he adviser owes fiduciary duties only to the fund, not to the fund's investors. . ."). The Debtor has, at all times, fulfilled its statutory and contractual duties to the CLOs and will continue to do so. As counsel, you have a duty to investigate the spurious allegations in your pleadings, but you failed to do so. Your clients' desire to re-assert control over the CLOs is not evidence to the contrary.

Third, the Movants, by their own admission, consider themselves affiliates of the Debtor. Under the management agreements, affiliates of a manager cannot replace a manager, and therefore, are prohibited from removing a manager.

Please confirm to us, in writing, no later than 5:00 p.m. CT on Monday, December 28, 2020, that you are withdrawing the Letter and that the Movants and CLO Holdco, Ltd., commit not to take any

**EXHIBIT 6**



PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES

James A. Wright III
A. Lee Hogewood III
December 24, 2020
Page 3

actions, either directly or indirectly, to terminate the CLO management agreements. If we do not receive such confirmation, the Debtor will seek immediate relief from the bankruptcy court, including an action for contempt for violating the January Order and sanctions under Federal Rule of Bankruptcy Procedure 9011 or otherwise.

The Debtor reserves all rights it may have, whether in law equity, or contract, including the right to seek reimbursement of any and all fees and expenses incurred in seeking sanctions.

Please feel free to contact me with any questions.

Sincerely,

Gregory Demo

Enclosure
cc:     Jeffrey Pomerantz, Esq.
        Ira Kharasch, Esq.
        John Morris, Esq.
        John J. Kane, Esq.

**EXHIBIT 6**

# Exhibit A

**EXHIBIT 6**



December 23, 2020

A. Lee Hogewood, III
Lee.hogewood@klgates.com

T: 1-919-743-7306

Jeffrey N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
Hayley R. Winograd
Pachulski Stang Ziehl & Jones, LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067

Dear Counsel:

  I am writing to you on behalf of our clients Highland Capital Management Fund Advisors, L.P. ("HMCFA") and NexPoint Advisors, L.P. ("NexPoint", and together with HMCFA, the "Advisors"), and Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. (together, the "Funds"). CLO Holdco, Ltd. ("CLO Holdco") whose counsel is copied below, joins in this notice and request.

  As you are aware, certain registered investment companies and a business development company managed by either NexPoint or HCMFA own preference shares in many of the CLOs. In the following cases those companies own a majority of such shares[1]:

- Stratford CLO, Ltd. 69.05%
- Grayson CLO, Ltd. 60.47%
- Greenbriar CLO, Ltd. 53.44%

---

[1] These ownership percentages are derived from information provided by the Debtor. If the Debtor contends that the ownership percentages are inaccurate, please inform us of the Debtor's differing calculations.

**EXHIBIT 6**

In other cases, such companies in combination with CLO Holdco hold, a super-majority, or a majority of the preference shares in the following CLOs:

- Liberty CLO, Ltd. 70.43%
- Stratford CLO, Ltd. 69.05%*[2]
- Aberdeen Loan Funding, Ltd. 64.58%
- Grayson CLO, Ltd. 61.65%*
- Westchester CLO, Ltd. 58.13%
- Rockwall CDO, Ltd. 55.75%
- Brentwood CLO, Ltd. 55.74%
- Greenbriar CLO, Ltd. 53.44%*

Additionally, such companies own significant minority stakes in the following CLO's:

- Eastland CLO, Ltd. 41.69%
- Red River CLO, Ltd. 33.33%

The ownerships described above represent in many cases the total remaining outstanding interests in such CLOs, because the noteholders have been paid in full. In others, the remaining noteholders represent only a small percentage of remaining interests. Thus, the economic ownership of the registered investment companies, business development company, and CLO Holdco largely represent the investors in the CLOs identified above.

In pleadings filed with the Bankruptcy Court, you asserted that one or more of the entities identified above lacked the authority to seek a replacement of the Debtor as fund manager because of the alleged affiliate status of the beneficial owners of such entities. We disagree.

Consequently, in addition to our request of yesterday, where appropriate and consistent with the underlying contractual provisions, one or more of the entities above intend to notify the relevant trustees and/or issuers that the process of removing the Debtor as fund manager should be initiated, subject to and with due deference for the applicable provisions of the United States Bankruptcy Code, including the automatic stay of Section 362. The basis for initiating the process for such removal includes, but is not limited to, the fact that HCMLP's duties, as set forth in the portfolio management agreements of the CLOs, are subject to the requirements of the Investment Advisers Act of 1940 ("Advisers Act"). HCMLP appears to be acting contrary to those duties under the agreements and where HCMLP is not fulfilling its duties under the portfolio management agreement it is therefore violating the Advisers Act. Thus, because HCMLP is (i) terminating employees on January 31, 2021, which will result in a loss of the employees that have traditionally serviced, including key investment professionals identified in the transactional documents for those CLOs (generally Mark Okada and Jim Dondero); (ii) ignoring the requests of the Advisors, Funds, and CLO Holdco, which together account for all or a majority of interests in certain CLOs, and selling assets of those CLOs prior to plan confirmation; (iii)

---

[2] CLO's marked with an asterisk (*) appear in the foregoing list as well.

**EXHIBIT 6**

adding a replacement manager as subadviser prior to January 31, 2021; and (iv) for other cause, the Advisors, Funds, and CLO Holdco have concluded that they have no choice but to initiate HCMLP's removal as fund manager where such entities are contractually and legally permitted or obligated to do so.

Because the process of removal is being initiated, subject to the applicable provisions of the Bankruptcy Code, we respectfully request that no further CLO transactions occur at least until the issues raised by and addressed in the Debtor's plan are resolved at the confirmation hearing. To the extent there are CLO transactions prior to the confirmation, we intend to fully explore the business justification for doing so, as we do not believe there is any rational business reason to liquidate securities prior to that time.

Sincerely,

*A. Lee Hogewood, III*

A. Lee Hogewood, III

**EXHIBIT 6**

# Exhibit B

**EXHIBIT 6**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 9, 2020**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | Related to Docket Nos. 7 & 259 |

### ORDER APPROVING SETTLEMENT WITH OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING GOVERNANCE OF THE DEBTOR AND PROCEDURES FOR OPERATIONS IN THE ORDINARY COURSE

Upon the *Motion of the Debtor to Approve Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* (the "<u>Motion</u>"),[2] filed by the above-captioned debtor and debtor in possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.



1934054200109000000000008

EXHIBIT 5

(the "Debtor"); the Court having reviewed the Motion, and finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), and (c) notice of this Motion having been sufficient under the circumstances and no other or further notice is required; and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and having determined that the relief sought in the Motion is in the best interests of the Debtor and its estate; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED on the terms and conditions set forth herein, and the United States Trustee's objection to the Motion is OVERRULED.

2. The Term Sheet is approved and the Debtor is authorized to take such steps as may be necessary to effectuate the settlement contained in the Term Sheet, including, but not limited to: (i) implementing the Document Production Protocol; and (ii) implementing the Protocols.

3. The Debtor is authorized (A) to compensate the Independent Directors for their services by paying each Independent Director a monthly retainer of (i) $60,000 for each of the first three months, (ii) $50,000 for each of the next three months, and (iii) $30,000 for each of the following six months, provided that the parties will re-visit the director compensation after the sixth month and (B) to reimburse each Independent Director for all reasonable travel or other expenses, including expenses of counsel, incurred by such Independent Director in connection with its service as an Independent Director in accordance with the Debtor's expense reimbursement policy as in effect from time to time.

**EXHIBIT 6**

4.      The Debtor is authorized to guarantee Strand's obligations to indemnify each Independent Director pursuant to the terms of the Indemnification Agreements entered into by Strand with each Independent Director on the date hereof.

5.      The Debtor is authorized to purchase an insurance policy to cover the Independent Directors.

6.      All of the rights and obligations of the Debtor referred to in paragraphs 3 and 4 hereof shall be afforded administrative expense priority under 11 U.S.C. § 503(b).

7.      Subject to the Protocols and the Term Sheet, the Debtor is authorized to continue operations in the ordinary course of its business.

8.      Pursuant to the Term Sheet, Mr. James Dondero will remain as an employee of the Debtor, including maintaining his title as portfolio manager for all funds and investment vehicles for which he currently holds that title; provided, however, that Mr. Dondero's responsibilities in such capacities shall in all cases be as determined by the Independent Directors and Mr. Dondero shall receive no compensation for serving in such capacities.  Mr. Dondero's role as an employee of the Debtor will be subject at all times to the supervision, direction and authority of the Independent Directors.  In the event the Independent Directors determine for any reason that the Debtor shall no longer retain Mr. Dondero as an employee, Mr. Dondero shall resign immediately upon such determination.

9.      Mr. Dondero shall not cause any Related Entity to terminate any agreements with the Debtor.

10.      No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent

**EXHIBIT 6**

Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

11.     Nothing in the Protocols, the Term Sheet or this Order shall affect or impair Jefferies LLC's rights under its Prime Brokerage Customer Agreements with the Debtor and non-debtor Highland Select Equity Master Fund, L.P., or any of their affiliates, including, but not limited to, Jefferies LLC's rights of termination, liquidation and netting in accordance with the terms of the Prime Brokerage Customer Agreements or, to the extent applicable, under the Bankruptcy Code's "safe harbor" protections, including under sections 555 and 561 of the Bankruptcy Code. The Debtor shall not conduct any transactions or cause any transactions to be conducted in or relating to the Jefferies LLC accounts without the express consent and cooperation of Jefferies LLC or, in the event that Jefferies withholds consent, as otherwise ordered by the Court. For the avoidance of doubt, Jefferies LLC shall not be deemed to have waived any rights under the Prime Brokerage Customer Agreements or, to the extent applicable, the Bankruptcy Code's "safe harbor" protections, including under sections 555 and 561 of the Bankruptcy Code, and shall be entitled to take all actions authorized therein without further order of the Court

12.     Notwithstanding any stay under applicable Bankruptcy Rules, this Order shall be effective immediately upon entry.

**EXHIBIT 6**

13.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order, including matters related to the Committee's approval rights over the appointment and removal of the Independent Directors.

## END OF ORDER ##

**EXHIBIT 6**