# CLO EXHIBIT 11

Page 107

```
 1                    J. SEERY
 2   of function.
 3        Q.    I believe you said the
 4   reorganized Debtor will be terminating,
 5   did you say, most of its advisor
 6   employees?
 7        A.    Yes.
 8        Q.    Does it intend to hire new
 9   advisors?
10        A.    New employees or consultants.
11   We are working that through.
12        Q.    New employees to serve --
13              (Reporter interruption.)
14        A.    They may be hired as employees
15   or consultants.  But to do basically the
16   same functions.
17        Q.    Do you know who those people are
18   going to be at this point?
19        A.    I don't have it all ironed out,
20   no.
21        Q.    Setting aside the Highland
22   background and Dondero, just in a general
23   sense, do you think it is unreasonable for
24   a party to not want millions of dollars of
25   its money to be managed by a manager that
```

1     J. SEERY

2 is going through bankruptcy and intends to

3 terminate most of its advisor employees

4 and then hire undisclosed replacements for

5 those advisors?

6    MR. MORRIS:  Objection to form

7  of the question.  Brian, there is

8  going to be a deposition on Monday for

9  confirmation discovery.  I am not sure

10  how this relates at all to the

11  Complaint.  But you are free to ask.

12  I am just pointing it out that these

13  last few questions, I just don't see

14  the relevance for this particular

15  proceeding.  I promise you you will

16  have the chance on Monday to ask these

17  questions.

18  Q. You can answer.

19  A. Do I think it is unreasonable?

20 No.  I think the Bankruptcy Code and

21 provisions of the code are quite

22 reasonable.  So, to the extent that the

23 Bankruptcy Code permits a counterparty to

24 challenge the assumption of agreements or

25 somehow challenge what the agreements --

Page 109

1         J. SEERY
2   the entity's capability, then that would
3   be permitted under the code.  To the
4   extent that the counterparty doesn't like
5   the Bankruptcy Code, then I disagree with
6   the counterparty.  I think it's a pretty
7   reasonable set of laws.
8      Q.   But your contention that the
9   attempt by the Defendants or, I guess, the
10  potential attempt by the Defendants to
11  replace the Debtor as the portfolio
12  manager, you contend that is done in bad
13  faith based on your belief that Jim
14  Dondero is somehow pulling the strings
15  from behind the scenes?
16          MR. MORRIS:  Objection to form.
17     A.   That's correct.
18          MR. CLARK:  I pass the witness.
19          MR. MORRIS:  That should be it.
20          MR. RUKAVINA:  I have very few,
21      but before it is my turn, does anyone
22      else have questions?
23          MR. MORRIS:  Nobody else should
24      have questions since you are the two
25      lawyers representing all the

1　　　　　　　　J. SEERY

2　　Defendants.  This isn't open season.

3　　But I am delighted to let you proceed.

4　EXAMINATION BY

5　MR. RUKAVINA:

6　　Q.　Mr. Seery, my next question is

7　not intended to insult you or suggest

8　anything.  But is it your position that

9　after assumption, my clients should be

10　prohibited from trying to terminate these

11　contracts if you commit fraud or are

12　indicted for SEC crimes that are felonies?

13　　A.　No.

14　　Q.　Was the answer no?

15　　A.　The answer is no.

16　　Q.　What about other causes in the

17　agreements?  If there are objective causes

18　to terminate that are provable, should my

19　clients be prohibited from terminating the

20　agreements post-assumption?

21　　A.　I'd have to look at each cause.

22　　　　MR. RUKAVINA:  Pass the witness.

23　Thank you.

24　　　　MR. MORRIS:  I have no

25　　questions.