John J. Kane (State Bar No. 24066794)
Brian W. Clark (State Bar No. 24032075)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street
Suite 5200
Dallas, Texas 75202-3705
Telephone: (214) 777-4200
Telecopy: (214) 777-4299
**COUNSEL TO DEFENDANT CLO HOLDCO, LTD.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § | Chapter 11 |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § | |
| Plaintiff, | § § | |
| vs. | § § | Adversary No. 21-03000-sgj |
| **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., HIGHLAND INCOME FUND, NEXPOINT STRATEGIC OPPORTUNITIES FUND, NEXPOINT CAPITAL, INC., AND CLO HOLDCO, LTD.,** | § § § § § § § § § § | |
| Defendants. | § § | |

**DEFENDANT CLO HOLDCO LTD.'S OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO***

CLO Holdco, Ltd. ("CLO Holdco"), a Defendant in the above-styled Adversary Proceeding brought by Highland Capital Management, L.P. (the "Debtor"), files this Objection and Memorandum of Law (the "Objection") in opposition to *Debtor's Motion for a Temporary Restraining Order and Preliminary Injunction against Certain Entities Owned and/or Controlled by Mr. James Dondero* (the "Motion"), and respectfully requests that the Court deny the Debtor's Motion, decline to award injunctive relief to the Debtor, and decline to enjoin CLO Holdco from any conduct. In support of its Objection, CLO Holdco states as follows:

## I.
## Summary of CLO Holdco's Response in Opposition

1. The Debtor lacks any factual or legal support for its claims and causes of action against CLO Holdco. When distilled, the Debtor's allegations against CLO Holdco are as follows: CLO Holdco joined in three letters to Debtor's counsel, CLO Holdco has some ties to James Dondero, and so CLO Holdco violated the automatic stay, tortiously interfered with the Debtor's operations, and should be enjoined from exercising its contractual rights under contracts that the Debtor presumably intends to assume[1] in their entirety or, as the Supreme Court puts it, *cum onere*.[2]

2. Unfortunately for the Debtor, it cannot satisfy its burdens of proof. First, CLO Holdco did nothing to violate the automatic stay. CLO Holdco joined in three letters to the Debtor. Those letters included *requests*, not demands. Those letters informed the Debtor that CLO Holdco intended to take action in the future if necessary, but only in compliance with the express terms of applicable contracts and applicable law, including section 362 of the Bankruptcy Code. CLO

---

[1] *See* Debtor's *Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor pursuant to the Fifth Amended Plan, (II) Cure Amounts, if any, and (III) Related Procedures in Connection Therewith* (the "Plan Assumption Notice") [Dkt. No. 1648].

[2] *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984) (citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir. 1951)).

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION
TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES
OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 1**

Holdco took *no other actions* related to the CLO Management Contracts[3] in question. CLO Holdco's actions do not violate any provisions of section 362 of the Bankruptcy Code.

3. Similarly, the Debtor cannot satisfy its burden of proving that CLO Holdco tortiously interfered with the Debtor. A claim for tortious interference requires interference with a contract and a resulting breach that causes damages. The Debtor cannot identify any contract that CLO Holdco interfered with. The Debtor cannot show that it was damaged in any way by receiving three letters joined by CLO Holdco. The Debtor admits that CLO Holdco's behavior did not cause any breach of any contract at all.

4. Finally, the Debtor cannot satisfy its burden of proving that it should be entitled to enjoin CLO Holdco from exercising its valid contractual rights under current contracts that the Debtor plans to assume. CLO Holdco's actions pose no threat to the Debtor that it has not already faced for, in most cases, more than a decade. CLO Holdco simply wishes to retain the benefit of its bargain as a third-party beneficiary under the CLO Management Contracts. Under those contracts, CLO Holdco may, in certain circumstances, vote for the removal of the Debtor as manager of CLO funds in which CLO Holdco owns an interest. In most cases, CLO Holdco and a majority of certain interest holders would have to prove "cause" for the removal of the Debtor as manager. CLO Holdco is not seeking to expand its contractual rights under those agreements. CLO Holdco owns approximately $45 million of interests in CLOs managed by the Debtor. Should cause exist to remove the Debtor as manager, CLO Holdco would like to retain its rights to vote for removal. If, however, no causes exists under those contracts, the Debtor is amply protected from removal. CLO Holdco simply wishes to preserve its rights under the applicable CLO Management Contracts. By contrast, the Debtor seeks injunctive relief against CLO Holdco in an effort to deprive it of the

---

[3] As defined below.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 2**

8184738 v1 (72268.00002.000)

benefit of its bargain, not to maintain the status quo. The Debtor would have CLO Holdco suffer the ongoing management of its tens of millions of dollars of assets even if cause exists for the removal of the Debtor as manager. At the same time, the Debtor has the audacity to say that it would be harmed more than CLO Holdco in such an instance. That is fundamentally illogical, and it is important to note that the Debtor owes duties to CLO Holdco as an investor in the applicable CLO funds.

## II.
## Relevant Factual Background

### A. CLO Holdco's interests in CLOs managed by the Debtor.

5. CLO Holdco owns interests in certain funds managed by the Debtor pursuant to portfolio management and servicing agreements, including the following funds ("Managed CLOs"): Aberdeen Loan Funding, Ltd.; Acis CLO 2017-7; Brentwood CLO, Ltd.; Grayson CLO, Ltd.; Liberty CLO, Ltd.; Red River CLO, Ltd.; Rockwall CDO, Ltd.; Loan Funding II, LLC (Valhalla); and Westchester CLO, Ltd. As evidenced by the Debtor's Plan Assumption Notice the Debtor intends to assume management contracts for substantially all of the aforementioned Managed CLOs (the "CLO Management Contracts"). In many of the funds, CLO Holdco and the other Defendants collectively own or manage a majority or even super-majority of the remaining beneficial interests in the Managed CLOs.[4] In total, CLO Holdco owns approximately $45 million of interests in CLOs managed by the Debtor.

---

[4] CLO Holdco, in combination with HCMFA and NexPoint, hold all, a supermajority, or a majority of preference shares in Liberty CLO, Ltd. (70.43%); Stratford CLO, Ltd. (69.05%); Aberdeen Loan Funding, Ltd. (64.58%); Grayson CLO, Ltd. (61.65%); Westchester CLO, Ltd. (58.13%); Rockwall CDO, Ltd. (55.75%); Brentwood CLO, Ltd. (55.74%); and Greenbriar CLO, Ltd. (53.44%).

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 3**

8184738 v1 (72268.00002.000)

6. Though the Debtor intends to assume the CLO Management Contracts, the Debtor discloses in its Plan[5] and Disclosure Statement[6] that it may terminate its investment management employees by the end of January 2021 and that the Reorganized Debtor may employ a Sub-Servicer to perform the Debtor's current portfolio management duties and obligations. In his deposition, Mr. Seery indicated that the Debtor actually intends to terminate *most* of its advisor employees, and was determining whether to hire replacements or third-party consultants to assist with management and advisory services.[7]

7. Looking forward, CLO Holdco will therefore have approximately $45 million of interests in funds managed by a bankrupt debtor that is terminating most of its advisor employees, hasn't "ironed out" who will be replacing them, and is liquidating its assets over the next two years for the benefit of parties other than CLO Holdco. Needless to say, it is inconceivable that anyone would volunteer to have an entity in that position manage their assets. But that is where the Debtor currently stands.

**B.  An Uncertain Future – Concerns Over Debtor's Post-Confirmation CLO Management**

8. In December, 2020, CLO Holdco was warned that the Debtor had executed a series of sales on behalf of certain CLO funds that may have been improper. While CLO Holdco admittedly lacked specifics about the alleged trades, it did review certain pleadings filed by the other Defendants in the Debtor's bankruptcy case and have its counsel attend the Court's December 16, 2020 hearing on that certain *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* (the "Sale Injunction Motion") [Dkt. No.

---

[5] *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Plan") [Dkt. No. 1472].

[6] *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Disclosure Statement") [Dkt. No. 1473]

[7] Seery Deposition Transcript, Jan. 20, 2021, p. 107 ¶¶ 3-20.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 4**

8184738 v1 (72268.00002.000)

1528]. While the Court correctly denied the relief requested in the Sale Injunction Motion, CLO Holdco was disconcerted by allegations that the Debtor may have violated the Investment Adviser Act of 1940 when initiating certain sales.

9. On December 22, 2020, CLO Holdco joined the other Defendants in a letter to Debtor's counsel simply requesting that the Debtor maintain the status quo and not execute any additional sales in CLOs in which the Defendants' owned interests (the "December 22 Letter"). The December 22 Letter included only requests, not demands, as CLO Holdco and the other Defendants were mindful of the Court's prior ruling on the Sale Injunction Motion. The following day, Defendants delivered a letter to Debtor's counsel that informed the Debtor of Defendants' intent to remove the Debtor as manager of the Managed CLOs but in a manner compliant with applicable law and the automatic stay (the "December 23 Letter"). After being threatened with sanctions for making a request, Defendants delivered a letter to Debtor's counsel dated December 28, 2020 that explained the Defendants' request, noted that the Debtor could continue making the sales despite the Defendants' request, and explained that any action taken to remove the Debtor as manager of the Managed CLOs would comply with section 362 of the Bankruptcy Code (the "December 28 Letter" and with the December 22 Letter and December 23 Letter, the "December 2020 Letters").

10. Importantly, CLO Holdco has not taken *any* steps to remove the Debtor as manager of the Managed CLOs. Mr. Seery confirmed as much during his deposition in which he acknowledged that other than CLO Holdco's joinder of the December 2020 Letters, he could not recall any actions by or on behalf of CLO Holdco that could constitute tortious interference.[8]

---

[8] Seery Deposition, Jan. 20, 2021, p. 94 ¶¶ 5-14.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 5**

8184738 v1 (72268.00002.000)

11. To be clear, CLO Holdco's joinder of the December 2020 Letters did not tortiously interfere with the Debtor's operations. They had no effect on the Debtor's operations. As Mr. Seery admitted, the delivery of the December 2020 Letters did not cause the Debtor to breach any agreements, and certainly not the CLO Management Contracts.[9]

**C.    CLO Holdco's Rights – The CLO Management Contracts**

12. It is important to note that under those CLO Management Contracts the Debtor is responsible for, among other things, making decisions to buy or sell the CLOs' assets in accordance with their respective terms, which generally impose a duty on the Debtor when acting as portfolio manager to maximize the value of the CLOs' assets for the benefit of the CLOs' noteholders and preferred shareholders.[10] Each of the CLO Management Contracts contains express language that the portfolio manager's obligations thereunder are for the benefit of and "shall be enforceable at the instance of the Issuer, the Trustee, on behalf of the Noteholders, or the requisite percentage of Noteholders or Holders of Preference Shares, as applicable, as provided in the Indenture of the Preference Share Paying Agency Agreement, as applicable."

13. The CLO Management Contracts also generally allow the holders of preference shares to remove the portfolio manager for cause, while their affirmative consent is required to an

---

[9] *Id.* at p. 62 ¶¶ 3-24.

[10] In particular, the CLO Management Contracts contain language providing for the maximization or preservation of value for the benefit of the preference shares as shown in the following examples:

In performing its duties hereunder, the Portfolio Manager shall seek to maximize the value of the Collateral for the benefit of the Noteholders and the Holders of the Preference Shares taking into account the investment criteria and limitations set forth herein and in the Indenture and the Portfolio Manager shall use reasonable efforts to manage the Collateral in such a way that will (i) permit a timely performance of all payment obligations by the Issuer under the Indenture and (ii) subject to such objective, maximize the return to the Holders of the Preference Shares.

In performing its duties hereunder, the Servicer shall seek to preserve the value of the Collateral for the benefit of the Holders of the Securities taking into account the Collateral criteria and limitations set forth herein and in the Indenture and the Servicer shall use reasonable efforts to select and service the Collateral in such a way that will permit a timely performance of all payment obligations by the Issuer under the Indenture.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 6**

8184738 v1 (72268.00002.000)

assignment of the agreements. Some CLO Management Contracts require an issuer to remove the manager "for cause" upon a majority vote of preference shareholders. Other CLO Management Contracts require an issue to remove the manager without cause upon a supermajority vote of the preference shareholders. Under certain of those CLO Management Contracts, votes of affiliates of the manager may not be considered when determining whether to remove the manager. That, however, would have no effect on CLO Holdco. At his deposition, Mr. Seery readily admitted that CLO Holdco is not an affiliate of the Debtor.[11] Accordingly, CLO Holdco would be entitled to vote its preference shares if it sought the removal of the Debtor as manager for cause or otherwise under the CLO Management Contracts.

14. CLO Holdco readily acknowledges that under certain CLO Management Contracts, a majority of preference shareholders would still have to prove that cause exists for the removal of the Debtor as manager of the Managed CLOs. CLO Holdco has not yet completed its analysis of whether cause exists, but recognizes that where cause is a condition precedent to removal, the voting preference shareholders would have to satisfy their burdens of proof. While the Debtor would have this court enjoin CLO Holdco from removing the Debtor as manager even upon a showing of "cause," Mr. Seery recognized that perhaps some "cause," like fraud, would warrant the Debtor's removal.[12]

15. CLO Holdco has legitimate big-picture concerns regarding the Debtor's continued management of CLO's in which CLO Holdco owns $45 million of interests. The Debtor has already experienced turnover among its advisor employees, many of whom have long worked with or on behalf of CLO Holdco under certain advisory and service contracts. Mr. Seery admits that the Debtor will terminate most of its advisor employees, and that he has not yet "ironed out" how they

---

[11] Seery Deposition, Jan. 20, 2021, p. 91 ¶¶ 4-8.

[12] *Id.* at p. 110, ¶¶ 6-13.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 7**

8184738 v1 (72268.00002.000)

will be replaced. The Debtor's Plan proposes a two year wind down of all "Managed Funds" which include the Managed CLOs. The Debtor's Disclosure Statement reveals a 42% decrease in the value of the Debtor's assets from the petition date to September 1, 2020. The Debtor failed to have its 99.95% owned subsidiary remit payments due to CLO Holdco under certain note obligations for 11 months before CLO Holdco recognized the non-payment and made demand on the Debtor. Needless to say, CLO Holdco has a meritorious desire to simply preserve its contractual rights under the CLO Management Contracts. If it meets all necessary conditions precedent to remove the Debtor as manager of the Managed CLOs under the CLO Management Contracts, it should be entitled to pursue that relief within the confines of applicable law, the terms of the contracts, and in accordance with section 362 of the Bankruptcy Code pre-confirmation. The Debtor's proposed injunction would not preserve the status quo. It would deprive CLO Holdco of the benefit of its third party beneficiary rights under the very CLO Management Contracts that the Debtor intends to assume.

16. While the Debtor alleges that CLO Holdco's participation in a total of three letters is evidence of some grand conspiracy against the Debtor it simply is not. From CLO Holdco's perspective, preserving its rights under the CLO Management Contracts is not conspiracy, but common sense.

### III.
### Arguments & Authorities

**A.    The Debtor is not entitled to a mandatory injunction against CLO Holdco because it cannot show all four factors supporting injunctive relief.**

17. "Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation marks omitted). The decision to grant a preliminary

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION
TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES
OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 8**

8184738 v1 (72268.00002.000)

injunction "is to be treated as the exception rather than the rule." *See, e.g., Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *Blake Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990) (affirming denial of preliminary injunction).

18. By its Motion, the Debtor must demonstrate all of the following elements in order to obtain injunctive relief:

(i) A substantial likelihood of success on the merits, on the Debtor's alleged claim for tortious interference;

(ii) A substantial threat that the Debtor will suffer irreparable injury if the injunctive relief is not granted;

(iii) That the threatened injury to the Debtor outweighs any damages that the preliminary injunctive relief might cause to CLO Holdco or any of the other named Defendants in this adversary proceeding; and

(iv) That the relief sought will not disserve the public interest.

*See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (affirming denial of motion for preliminary injunction). Absent the requisite showing of all four of these requirements, the Court should decline to issue injunctive relief to the Debtor. *See Avmed Inc. v. BrownGreer PLC*, 300 F. App'x 261, 264 (5th Cir. 2008) (affirming denial of preliminary injunction).

**B.     The Debtor cannot plausibly demonstrate a likelihood of success on its claims against CLO Holdco for tortious interference with contract or violation of the automatic stay.**

19. In support of its Motion, the Debtor posits in conclusory fashion that CLO Holdco's joinder to the December 2020 Letters to the Debtor constitute "tortious interference with the Debtor's CLO Management Contracts" that are indisputable violations of the automatic stay because "they are in writing". Adv. Dkt. 6, at ¶37. The Debtor's position is nonsensical because, as Seery testified, CLO Holdco has not taken any actions to affirmatively replace the Debtor as servicer

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 9**

8184738 v1 (72268.00002.000)

or any other actions constituting interference with the Debtor's ordinary course of business.[13] Other than CLO Holdco joining in sending the December 2020 letters, which Seery acknowledged did not cause the Debtor to breach any contracts, the Debtor has not identified any other actions by or on behalf of CLO Holdco that actually interfered with any of the Debtor's contracts or that resulted in a breach of contract giving rise to damages.[14]

20. The Debtor's claim that CLO Holdco violated the stay is equally meritless because it is founded on the same conclusory assertions supporting the Debtor's implausible tortious interference theory. There is no substantial likelihood that the Debtor will prevail in demonstrating that CLO Holdco's conduct violated the automatic stay because delivering the December 2020 Letters does not run afoul of *any* provision of section 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362. The December 2020 Letters contained requests, not demands, and recognized that despite the requests, the Debtor had authority to continue making CLO sales. Further, the December 2020 Letters noted that any action taken to remove the Debtor as manager of the Managed CLOs would *comply with* the automatic stay. Even more importantly, CLO Holdco did not take *any* efforts to actually remove the Debtor as manager of the Managed CLOs. CLO Holdco's actions cannot plausibly constitute a stay violation.

21. The Debtor is seeking injunctive relief that "goes well beyond simply maintaining the status quo [during litigation]" and "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Three Expo Events, LLC v. City of Dallas*, 182 F. Supp. 3d 614, 622 (N.D. Tex. 2016) (internal quotation marks omitted); *see also Justin Indus., Inc. v. Choctaw Sec., L.P.*, 902 F.2d 262, 268 n.7 (5th Cir. 1990) (party seeking mandatory injunction "bears the burden of showing a clear entitlement to the relief under the facts and the law"); *Tate v. Am. Tugs,*

---

[13] Seery Deposition, Jan. 20, 2021, p. 67 ¶ 24 – p. 68 ¶ 6.
[14] *Id.* at p. 62 ¶¶ 12-24; p. 94 ¶¶ 5-14.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 10**

8184738 v1 (72268.00002.000)

*Inc.*, 634 F.2d 869, 870 (5th Cir. 1981) ("Only in rare instances is the issuance of a mandatory preliminary injunction proper."). The irony is that by joining the December 2020 Letters to the Debtor, CLO Holdco's written *requests* that the Debtor not liquidate CLO assets has the practical effect of maintaining the status quo, to stop the forced liquidation of the CLO assets that CLO Holdco owns majority and/or supermajority interests in, prior to the upcoming confirmation hearing. Other than the Debtor's rejection of the requests made in the letters, the Debtor has not identified any additional actions or other bases that allegedly constitute tortious interference with contract, stay violations, nor any resulting breach of contract causing any harm whatsoever, let alone the "irreparable harm" required for an injunction.

**C.     There is no evidence of irreparable harm to the Debtor.**

22.     The Debtor must satisfy the irreparable harm element with independent proof, or no injunction may issue. *White v. Carlucci*, 862 F.2d 1209, 121 (5th Cir. 1989); *Am. Telnet, Inc. v. GTE Corp.*, No. CIV. A.3:99-cv-028D, 1999 WL 242686, at *2 (N.D. Tex. Apr. 16, 1999) ("Clearly demonstrating irreparable harm is a heavy burden to overcome."). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough," because "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975)).

23.     "The general rule [is] that contract claims do not create a right to injunctive relief." *King v. Hawgwild Air, LLC*, Civil Action No. 3:08-cv-0153-L, 2008 WL 11347424, at *2 (N.D. Tex. Feb. 22, 2008). The Debtor's naked assertions of tortious interference and a stay violation, even if true and supported by competent evidence, are both actionable at law for compensatory damages,

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION
TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES
OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 11**

8184738 v1 (72268.00002.000)

which necessarily negates the propriety of an injunction even assuming *arguendo* that CLO Holdco's conduct gives rise to any cause of action.

D. **The purported injury to the Debtor does not outweigh the likely damage suffered by CLO Holdco.**

24. The injury CLO Holdco would allegedly suffer if the Court were to grant the extraordinary relief sought by the Debtor continues to greatly outweigh any potential damage that the Debtor would incur. Should this Court grant the Debtor's Motion, an injunction would deprive CLO Holdco of its contractual right to *potentially* replace the Debtor as the manager of its investments in the CLOs to the tune of millions of dollars. As detailed above, even Mr. Seery acknowledges that CLO Holdco should not have to suffer such an injunction should certain "cause" arise for the removal of the Debtor as manager.

25. CLO Holdco has consistently expressed its intent to act in accordance with the terms of the Debtor's CLO Management Contracts. Those terms necessarily include CLO Holdco's rights to receive the benefits of its bargain from its investments which include CLO Holdco's right to vote whether to terminate the Debtor's management of the Managed CLOs *where it meets the criteria to do so under the CLO Management Contracts*, such as a showing of "cause" as set forth in the CLO Management Contracts.

26. While CLO Holdco has $45 million of interests at stake, Mr. Seery testified that the Debtor earns about $4.8 million in revenue—not profit—from the CLO Management Contracts.[15] It is readily apparent that the Debtor's actions in this adversary proceeding are purely about preserving a revenue stream, even at the expense of the rights of a party for whose benefit the Debtor is managing the Managed CLOs. Moreover, while readily acknowledging future advisor turnover, the Debtor would preclude CLO Holdco from seeking to preserve the value of its

---

[15] Seery Deposition, Jan. 20, 2021, p. 19 ¶¶ 7-10.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 12**

8184738 v1 (72268.00002.000)

investments by stripping it of a right intended to protect it from abusive behavior by a manager. This Court should decline to issue any injunction, and decline the Debtor's suggestion to effectively rewrite the terms of the CLO Management Contracts in a manner that would deprive CLO Holdco of its express contractual rights.

**E. The relief the Debtor seeks will not serve the public interest.**

27. Under the circumstances, the public interest in this proceeding lies with CLO Holdco. CLO Holdco is an investor with millions of dollars of interests in CLOs managed by the Debtor. The Debtor owes duties to CLO Holdco as an investor in the Managed CLOs. The Debtor is party to an agreement that entitles investors like CLO Holdco to vote to remove a manager for cause, in most instances, and without cause, in other instances. Here, the Debtor is attempting to deprive one of the investors of its rights under CLO Management Contracts in the hopes of preserving its own revenue stream. This is akin to the manager of your 401(k) seeking to enjoin you from having a different manager manage your account because he doesn't want to lose the fees he's currently earning from your portfolio. The public interest cannot be served by undermining CLO Holdco's contractual rights under the guise of protecting one of the Debtor's revenue streams.

## V.
## RESERVATION OF RIGHT TO ASSERT ADDITIONAL ARGUMENTS

28. CLO Holdco expressly reserves the right to assert any additional arguments in response to Debtor's request for injunctive relief, including but not limited to any arguments asserted by any other defendant in this case.

## VI.
## OBJECTIONS TO SEERY DECLARATION

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 13**

8184738 v1 (72268.00002.000)

29. CLO Holdco objects to any consideration of the declaration submitted by Seery ("Seery Declaration") in support of the Debtor's request for injunctive relief. CLO Holdco further asserts the following specific objections to the Seery Declaration.

30. As a threshold matter, CLO Holdco objects to the numerous statements in the Seery Declaration that are asserted "on information and belief." Such assertions clearly lack foundation, are not based on personal knowledge and/or are speculative. Statements "on information and belief" have no place in a declaration submitted under penalty of perjury and should be given no evidentiary weight.

31. The statements in Paragraphs 3, 4, 19, 21, 26 and 31 describing any actions by CLO Holdco as a "threat" or "threatening" are argumentative, constitute improper opinions and do no accurately describe the letters at issue, all of which speak for themselves.

32. The statement in Paragraph 3 of the Seery Declaration that Dondero "directly or indirectly … owns and/or effectively controls CLO Holdco" is not based on personal knowledge, lacks foundation, is speculative and is conclusory.

33. The statement in Paragraph 3 that "the Defendants have interfered with and impeded the Debtor's business" is vague, ambiguous, lacking in foundation, constitutes an improper legal conclusion and/or opinion, and is conclusory.

34. The statements in the sentence in Paragraph 4 beginning with the phrase "I am advised" are hearsay, lacking foundation, constitute improper legal conclusions and/or opinions, and/or are conclusory.

35. Paragraph 5 lacks foundation, is speculative and/or conclusory.

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO** *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* **– Page 14**

8184738 v1 (72268.00002.000)

36. The statement in Paragraph 12 that "ultimate decisions are in the control of Mr. Scott who acts substantially at Mr. Dondero's direction" lacks foundation and is both speculative and conclusory.

37. The statement in Paragraph 19 that "I also understand that the Defendants' actions and threatened actions implicate the *Order Granting Debtor's Motion for a Temporary Restraining Order against James Dondero*" is hearsay, lacking foundation, constitutes an improper legal conclusion and/or opinion, and/or is conclusory.

38. The statement in Paragraph 21 that "Defendants have either interfered with or impeded the Debtor's business" lacks foundation and is conclusory.

39. The statements in Paragraph 21 beginning with the phrase "I am advised" are hearsay, lack foundation, constitute improper legal conclusions and/or opinions, and/or are conclusory.

40. The statement in Paragraph 28 that "Mr. Dondero owns and/or effectively controls the Defendants" lacks foundation and is speculative and/or conclusory.

41. All statements in Paragraph 29 that are prefaced with the phrase "I understand" are hearsay, lack personal knowledge, and lack foundation.

42. The statement in Paragraph 32 that Mr. Dondero "indisputably owns and/or effectively controls" CLO Holdco lacks foundation and is speculative and/or conclusory.

43. The statement in Paragraph 33 suggesting that CLO Holdco has interfered with and/or impeded the Debtor's business lacks foundation and is speculative and/or conclusory.

## VII.
## PRAYER

**DEFENDANT CLO HOLDCO LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO *DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AGAINST CERTAIN ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO* – Page 15**

8184738 v1 (72268.00002.000)

CLO Holdco respectfully prays that the Court deny the Debtor's Motion in its entirety, decline to grant injunctive relief to Debtor and decline to enjoin CLO Holdco from any conduct, and grant such other relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: _/s/ John J. Kane_
    John J. Kane
    State Bar No. 24066794
    Brian W. Clark
    State Bar No. 24032075

901 Main Street
Suite 5200
Dallas, Texas 75202
Telephone - (214) 777-4200
Telecopier - (214) 777-4299
Email: jkane@krcl.com
Email: bclark@krcl.com

**ATTORNEYS FOR DEFENDANT CLO HOLDCO, LTD.**

## CERTIFICATE OF SERVICE

This is to certify that on the January 23, 2021, a true and correct copy of the foregoing has been served by ECF on all counsel of record.

          _/s/ John J. Kane_
          John J. Kane