PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | § § § § § § § | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., HIGHLAND INCOME FUND, NEXPOINT | § § § § § § § § § § § § | Adversary Proceeding No.<br><br>21-03000-sgj |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

STRATEGIC OPPORTUNITIES FUND,
NEXPOINT CAPITAL, INC., AND CLO
HOLDCO, LTD.,

                                              Defendants.

**DEBTOR'S REPLY TO THE
OBJECTION AND BRIEF OPPOSED TO DEBTOR'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST CERTAIN
ENTITIES OWNED AND/OR CONTROLLED BY MR. JAMES DONDERO**

The above-captioned debtor and debtor-in-possession (the "Debtor") files this reply (this "Reply")[2] to the *Objection and Brief Opposed to Debtor's Motion for Temporary Restraining Order and Preliminary Injunction Against Certain Entities Owned and/or Controlled by Mr. James Dondero* [Docket No. 31] (the "Objection") [Docket No. 31]. In support of its Reply, the Debtor respectfully states as follows:

**INTRODUCTION**

1. In the Objection, the Advisors and the Funds (collectively, the "Objectors") spend considerable time and effort attempting to persuade this Court that the imposition of a preliminary injunction is unfair and contrary to their rights. In making this argument, the Objectors would have this Court believe that they are innocent third parties simply seeking to exercise their rights in good faith. That, however, is not the case. Mr. Dondero dominates and controls the Objectors and has used that control to cause the Objectors to interfere with the management of the Debtor's estate:[3]

---

[2] Unless otherwise noted, capitalized terms used in this Reply have the meanings ascribed in the *Debtor's Memorandum of Law in Support of Its Motion for a Temporary Restraining Order and Preliminary Injunction and Certain Entities Owned and/or Controlled by Mr. James Dondero* [Docket No. 3] (the "Memorandum").

[3] The closest the Objectors come to addressing Mr. Dondero's control is their assertion that the Objectors "***may*** . . . make a decision to terminate a [CLO] Management Agreement without any involvement of Mr. Dondero." (Objection, ¶ 55 (emphasis added))  Notably, the Objectors do not state that Mr. Dondero did not direct the Objectors to terminate the CLO Management Agreements or that he was not involved in the Objectors' decision-making process. The reason for that is simple. The evidence has shown that the decision to interfere with the operation of the Debtor's business was Mr. Dondero's and the Objectors were one of the vehicles through which he

- The Objectors disclosed in their filings with the Securities and Exchange Commission that Mr. Dondero controlled the Advisors through his ownership of each of the Advisors' general partners and was the portfolio manager of each of the Funds;

- Mr. Dustin Norris – a senior vice president of NPA – testified under oath that Mr. Dondero controlled each of the Objectors on December 16, 2020;

- Mr. Dondero himself admitted under oath that he controlled each of the Objectors on January 8, 2021, and that he was directly involved in the Objector's campaign to interfere with the Debtor's operations and to threaten termination of the CLO Management Agreements as part of that campaign; and

- The evidence will show that Mr. Dondero is directly controlling and coordinating the litigation against the Debtor filed by the Objectors and Mr. Dondero's other "Related Entities" in a transparent effort to exert control over the Debtor's estate and that the Objectors, their interference with the estate, and their threats with respect to the CLOs are an integral part of this plot.

The foregoing is sufficient cause to enter a preliminary injunction against the Objectors. The Objectors' intentional interference with the Debtor's estate (at the direction of Mr. Dondero) is also a flagrant violation of this Court's prior orders, and a preliminary injunction is necessary to enforce those orders. Indeed, the undisputed evidence will show that in the absence of a court order, no one employed by the Defendants will even attempt to stop Mr. Dondero from interfering with the Debtor's rights and obligations under the applicable CLO management agreements.

2. Just over a year ago, Mr. Dondero submitted to the jurisdiction of this Court and voluntarily entered into a settlement that was designed and intended to, among other things, end his control of the Debtor. As part of that agreement, Mr. Dondero agreed that he would "not cause any Related Entity[4] to terminate any agreements with the Debtor". [Docket No. 354-1] At

---

effectuated his scheme.

[4] The term "Related Entity" is defined, in pertinent part, as "(i) any non-publicly traded third party in which Mr. Dondero. . . has any direct or indirect economic or ownership interest, including as a beneficiary of a trust; (ii) any entity controlled directly or indirectly by Mr. Dondero. . . . ." *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, Docket No. 466 (Bankr. N.D. Tex. Feb. 21, 2020). Because of Mr. Dondero's economic interest in and control over the Objectors, each of the Objectors is a Related Entity.

3

the January 9 hearing, this Court specifically required that the foregoing language preventing Mr. Dondero from terminating agreements be included in the Settlement Order:

> Now, there is one specific thing I want to say about the role of Mr. Dondero. When Ms. Patel got up and talked about the newest language that has been added to the term sheet, she highlighted in particular the very last sentence on Page 2 of the term sheet, the sentence reading, "Mr. Dondero shall not cause any related entity to terminate any agreements with the Debtor." Her statement that that was important, it really resonated with me, because, you know, as I said earlier, I can't extract what I learned during the Acis case, it's in my brain, and we did have many moments during the Acis case where the Chapter 11 trustee came in and credibly testified that, whether it was Mr. Dondero personally or others at Highland, they were surreptitiously liquidating funds, they were changing agreements, assigning agreements to others. They were doing things behind the scenes that were impacting the value of the Debtor in a bad way.
>
> So not only do I think that language is very important, but I am going to require that language to be put in the order. Okay? So we're not just going to have an order approving the term sheet that has that language. I want language specifically in the order. You know, you can figure out where the appropriate place to stick it in the order is, but I want specific language in here regarding Mr. Dondero's role. . . .
>
> And I'm sure most of you can read my mind why, but I want it crystal clear that if he violates these terms, he's violated a federal court order, and contempt will be one of the tools available to the Court. He needs to understand that. Mr. Ellington needs to understand that. You know, if there are any games behind the scene, not only do I expect the Committee is going to come in and highlight that to the Court and file a motion for a trustee or whatever, but we're going to have a contempt of court issue.

Transcript, Jan. 9, 2020, 78:23-25; 79:1-25; 80:1-11. This Court's statements on January 9, 2020, were prescient.

3. Mr. Dondero agreed to the Settlement Order to avoid a chapter 11 trustee. Mr. Dondero and his Related Entities should be held to his agreement, and Mr. Dondero should be required to respect this Court and its orders. However, through his actions and those of his proxies, he is clearly showing his contempt for this Court's authority. The Settlement Order prohibits Mr. Dondero from causing the Objectors to terminate the Management Agreements. That is unambiguous and crystal clear. However, even if that language were not clear, this

4

Court's statements on the record are not subject to interpretation. Paragraph 9 of the Settlement Order prohibits Mr. Dondero from using his legion of Related Entities to wreak havoc with the Debtor, the Debtor's business, the administration of the Debtor's estate, and the Debtor's efforts at reorganizing and/or liquidating. As the evidence has clearly shown, that is clearly the type of conduct the Objectors are engaging in at the direction of Mr. Dondero.

4. To avoid the result mandated by the Settlement Order, the Objectors argue that it "applies to Mr. Dondero. It does not prevent a 'Related Entity' from terminating any agreement, and it does not purport to bind any Related Entity." (Objection, ¶ 54.) As set forth above, Paragraph 9 of the Settlement Order was entered to prevent Mr. Dondero from doing indirectly what he could not do directly. Mr. Dondero has a long history of using his Related Entities to perpetuate coordinated actions against his opponents all while disclaiming responsibility for those Related Entities. These are the "games behind the scenes" this Court referred to on January 9, 2020. But this Court does need not rely on Mr. Dondero's past conduct when deciding whether to enter a preliminary injunction expressly preventing the Objectors from circumventing the Settlement Order or otherwise interfering with the estate. The evidence is clear that Mr. Dondero directed the Objectors to interfere with the Debtor's business and to use the threat of termination of the CLO Management Agreements as a part of Mr. Dondero's coordinated litigation strategy against the Debtor. The evidence will also show that unless this Court enters a preliminary injunction that the Objectors will immediately resume their harassing conduct.

5. The Objectors also argue that the Settlement Order is only meant to address "various rights during the pendency of the Bankruptcy Case, but it does not purport to address post-confirmation or post-assumption rights. . . [it was meant] to be a temporary resolution and

5

not a permanent one." (*Id.*, ¶ 53.)  The Objectors' reading, however, is not supported by the language of the Settlement Order, which contains no expiration date.  As the Objectors point out, the Settlement Order is necessary to allow the Debtor to "maximize value for all constituents" and value maximization can only be achieved if the Objectors are prevented from interfering with the Debtor's estate, terminating agreements, or engaging in frivolous litigation.  The Settlement Order is clear.

6. Ultimately, this conduct must be stopped, and the Objectors (and Mr. Dondero) must be held to account.  The Settlement Order expressly provided that it resolved a "core proceeding" and that this Court retained "jurisdiction over all matters arising from or related to the interpretation and implementation" of the Settlement Order (Settlement Order, ¶ 13).  The Settlement Order has never been appealed, is final, and is binding on all parties.  As such, the Adversary Proceeding is a "core proceeding," and the Court can enter whatever orders are necessary to interpret and enforce the Settlement Order.  *See, e.g., Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 684 (Bankr. S.D. Tex. 2016) ("Other courts – including the Supreme Court – have also held that a bankruptcy court maintains jurisdiction to interpret and enforce its own prior orders, and that a court's enforcement of its prior order is a 'core' matter. . . Indeed, federal courts need no independent basis of jurisdiction to enter an injunction in support or construction of their own prior orders.") (citing cases).  This Court, therefore, has the clear authority to, among other things, issue injunctions as necessary to enjoin collateral attacks on its orders.  *See Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 322-23 (5th Cir. 2016) (finding that a bankruptcy court retained jurisdiction post-confirmation to interpret its orders and to enjoin any actions that that violated or collaterally attacked those orders); *Chiron*, 552 B.R. at 683-85, 695-96 (finding that a bankruptcy court has the authority under 11 U.S.C. § 105 to enjoin actions

seeking to undermine a final and non-appealable bankruptcy court order or which otherwise represent a collateral attack on such order); *see also Cent. W. Va. Energy Co. v. Wheeling-Pittsburgh Steel Corp.*, 245 Fed. Appx. 415, 426 (6th Cir. 2007) (holding that a bankruptcy court had authority to issue an injunction to prevent collateral attacks on its orders under both the case law and the All Writs Act). The Debtor respectfully requests that this Court use its authority to enter a preliminary injunction expressly preventing the Objectors from engaging in the type of conduct prohibited by the Settlement Order and to prevent their tortious interference with the Debtor's operation of its estate.

## CONCLUSION

7. For the reasons set forth herein and in the Memorandum, the Debtor respectfully requests that the Bankruptcy Court overrule the Objection and enter a preliminary injunction.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

|  |  |
|---|---|
| Dated: January 25, 2021. | **PACHULSKI STANG ZIEHL & JONES LLP** |

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
       ikharasch@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com
       hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

DOCS_NY:42067.5 36027/002