PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: §<br>§<br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] §<br>§<br>Debtor. §<br>§ | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., §<br>§<br>Plaintiff, §<br>§<br>vs. §<br>§<br>HIGHLAND CAPITAL MANAGEMENT FUND §<br>ADVISORS, L.P., NEXPOINT ADVISORS, L.P., §<br>HIGHLAND INCOME FUND, NEXPOINT §<br>STRATEGIC OPPORTUNITIES FUND, NEXPOINT §<br>CAPITAL, INC., AND CLO HOLDCO, LTD., §<br>§<br>Defendants. §<br>§ | Adversary Proceeding No.<br><br>21-03000-sgj-11 |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 4

    A.    Mr. James Dondero Owns and/or Controls Each of the Defendants ..................... 4

           The Advisors and the Funds ..................................................... 4

    B.    This Court Has Entered Two Orders that Are Implicated by the Defendants' Actions and Threatened Actions ....................................... 5

    C.    Defendants Interfere with and Impede the Debtor's Business and Threaten to Terminate the Debtor's Management Contracts ............................... 6

III. ARGUMENT ................................................................................................... 10

    A.    The Complaint States Claims upon which Relief Can Be Granted ..................... 10

           1.    Legal Standard ................................................................. 10

           2.    The Complaint States a Claim for Violation of the Automatic Stay .......................................................... 12

           3.    The Complaint States a Claim for Tortious Interference with Contract ............................................... 14

           4.    The Complaint States a Claim for Injunctive Relief........ 18

           5.    The Complaint States a Claim for Declaratory Relief ............................................................................ 19

    B.    The Court Has Subject Matter Jurisdiction ......................................... 21

           1.    Legal Standard ................................................................. 21

           2.    The Court Has Subject Matter Jurisdiction over Claim for Injunctive Relief ............................................. 22

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. LA. Dept. of Corr.*,
  1:14-CV-03476, 2015 WL 10557837 (W.D.La. Dec. 9, 2015) .................................................. 3

*Anadji v. Keisler*,
  CV B-07-184, 2008 WL 11388565 (S.D. Tex. June 26, 2008) ................................................ 21

*Andrade v. Teichroeb*,
  341 F. Supp. 3d 681 (N.D. Tex. 2018) ............................................................................ 21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 11

*Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 11, 12

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) ................................................................................................ 10

*Beta Tech., Inc. v. Meyers*,
  2013 WL 5602930 (S.D.Tex. Oct. 10, 2013) ...................................................................... 24

*Betancourt v. Federated Dept. Stores*,
  732 F. Supp. 2d 693 (W.D. Tex. 2010) ............................................................................... 22

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) .............................................................................................. 10

*Covenant Servs., Inc. v. Jones-Blair Co.*,
  No. 3:15-CV-0025-N, 2015 WL 13118197 (N.D.Tex. Mar. 3, 2015) .................................... 14

*Doe 1 v. Baylor Univ.*,
  6:16-CV-173-RP, 2020 WL 1557742 (W.D. Tex. Apr. 1, 2020) ........................................... 22

*Farouk Sys. Inc. v. Costco Wholesale Corp.*,
  700 F.Supp.2d 780 (S.D.Tex. 2010) ................................................................................... 16

*Fisher v. Blue Cross Blue Shield of Tex., Inc.*,
  2011 WL 11703781 (N.D. Tex. 2011) ................................................................................. 16

*GoForIt Entm't, LLC v. DigiMedia.com L.P.*,
  750 F. Supp. 2d 712 (N.D. Tex. 2010) ................................................................................ 17

*Grizzle v. Tex. Commerce Bank*,
  38 S.W.3d 265 (Tex. App. 2001) ......................................................................................... 17

*Harris v. Coastal Offshore, Inc.*,
  No. C-11-58, 2011 WL 2457922 (S.D. Tex. June 16, 2011) .................................................... 11

*Henderson v. Saf-Tech, Inc.*,
  No. H–13–1766, 2013 WL 6858503 (S.D. Tex. Dec. 30, 2013) ............................................ 24

*Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*,
  1:18-CV-466-RP, 2019 WL 1922051 (W.D. Tex. Jan. 23, 2019) .................................... 19, 20

*Hurd v. BAC Home Loans Servicing, LP*,
  880 F. Supp. 2d 747 (N.D. Tex. 2012) .............................................................................. 19, 20

*Iacono v. Pilavas*,
  125 A.D.3d 811 (N.Y. App. Div. 2015) ................................................................................. 17

*In re Burzynski*,
  989 F.2d 733 (5th Cir. 1993) .......................................................................................... 14, 16

*In re Craig's Stores of Tex., Inc.*,
  266 F.3d 388 (5th Cir. 2001) ................................................................................................. 23

*In re Lewis*,
  18-31573, 2019 WL 2158832 (Bankr. W.D. La. May 16, 2019) ............................................ 12

*In re Superior Air Parts, Inc.*,
  516 B.R. 85 (Bankr. N.D. Tex. 2014) ................................................................................... 23

*In re Trevino*,
  535 B.R. 110 (Bankr. S.D. Tex. 2015) .................................................................................. 14

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
  677 F.2d 1045 (5th Cir. 1982) .............................................................................................. 10

*Khan v. GBAK Props, Inc.*,
  371 S.W.3d 347, 359–60 (Tex. App.—Houston [1st Dist.] 2012) ......................................... 17

*McCall v. Dallas Independent Sch. Dist.*,
  169 F. Supp. 2d 627 (N.D. Tex. 2001) ................................................................................. 16

*Med-Cert Home Care, LLC v. Azar*,
  444 F. Supp. 3d 756 (N.D. Tex. 2020) ................................................................................. 19

*Menchaca v. Chrysler Credit Corp.*,
  613 F.2d 507 (5th Cir.1980) ................................................................................................. 24

*Motiva Patents, LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019) .................................................................................. 11

iii

*Naranjo v. Universal Sur. of Am.*,
  679 F. Supp. 2d 787 (S.D. Tex. 2010) ...................................................................................... 24

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ...................................................................................... 22

*PrevMED, Inc. v. MNM–1997, Inc.*,
  NO. H–15–2856, 2017 WL 785656 (S.D. Tex Feb. 28, 2017)................................................. 17

*Roberts v. Am. Bank & Trust Co., Inc.*,
  835 F.Supp.2d 183 (E.D. La. 2011)................................................................................... 11, 13

*Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*,
  778 F.3d 502 (5th Cir. 2015) ...................................................................................... 21

*Trustees of the Tex. Carpenters & Millwrights Health & Welfare Fund v. Delancey*,
  A-10-CA-537 LY, 2010 WL 4918737 (W.D. Tex. Nov. 23, 2010) ................................... 18, 19

*U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*,
  966 F. Supp. 2d 690 (W.D. Tex. 2013) ...................................................................................... 18

*United of Omaha Life Ins. Co. v. Womack-Rodriguez*,
  461 F. Supp. 3d 455 (W.D. Tex. 2020) ............................................................................. 21, 23

*United States v. Bollinger Shipyards, Inc.*,
  775 F.3d 255 (5th Cir. 2014) ...................................................................................... 11

*Watson v. Citimortgage, Inc.*,
  814 F.Supp.2d 726 (E.D. Tex.2011)...................................................................................... 20

*Weatherford Int'l, LLC v. Binstock*,
  452 F.Supp.3d 561 (S.D. Tex. 2020) ............................................................................. 15, 16

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir.1981) ...................................................................................... 22

*Wooten v. McDonald Transit Assocs., Inc.*,
  788 F.3d 490 (5th Cir. 2015) ...................................................................................... 11

## STATUTES

11 U.S.C. § 1142(b) ...................................................................................... 23

## OTHER AUTHORITIES

U.S. CONST. ART III, § 2 ...................................................................................... 21

## RULES

Fed. R. Civ. P. 12(b) ...................................................................................... *passim*

Fed. R. Civ. P. 8(a) .............................................................................................................. 8, 11

v

## DEBTOR'S BRIEF IN SUPPORT
## OF ITS OPPOSITION TO MOTION TO DISMISS COMPLAINT

Highland Capital Management, L.P., the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding") and the debtor and debtor-in-possession (the "Debtor" or "Highland") in the above-captioned chapter 11 case (the "Bankruptcy Case"), hereby submits this brief (the "Brief") in support of its opposition (the "Opposition") to the *Motion to Dismiss Plaintiff's Complaint* [Docket No. 43][2] (the "Motion") filed by Highland Capital Management Fund Advisors, L.P. ("HCMFA"), NexPoint Advisors, L.P. ("NPA," and together with HCMFA, the "Advisors"), Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. (collectively, the "Funds," and together with the Advisors, the "Defendants").[3]  In support of its Opposition, the Debtor states as follows:

## I.
## INTRODUCTION

1.      This Court has already determined that Mr. James Dondero ("Mr. Dondero") directly or indirectly owns and/or controls each of the Defendants.  On October 9, 2020, Mr. Dondero was forced to resign as portfolio manager of the Debtor.  Within a week, at Mr. Dondero's behest, the Defendants began interfering with and impeding the Debtor's business and contractual rights and obligations by, *inter alia*, (i) refusing to execute certain trades that the Debtor had authorized; (ii) making specious threats against the Debtor, including threatening to remove the Debtor as portfolio manager of certain collateralized loan obligation vehicles ("CLOs"); and (iii) hindering the Debtor's disposition of CLO assets.

---

[2] Refers to the docket number maintained in the Adversary Proceeding.

[3] CLO Holdco, Ltd. ("CLO Holdco") was voluntarily dismissed from this Adversary Proceeding with prejudice after the Debtor and CLO Holdco reached a settlement.  *See* Docket No. 50.

2. The Defendants continued to engage in this conduct even *after* (i) this Court dismissed as "frivolous" Defendants' prior motion to stop the Debtor from exercising its contractual rights and obligations to buy and sell assets owned by the CLOs, and (ii) the Debtor repeatedly demanded that Defendants refrain from interfering with its CLO management agreements and ability to operate its business.

3. In order to protect its rights, the Debtor commenced this Adversary Proceeding on January 6, 2021 by filing its *Verified Original Complaint for Declaratory and Injunctive Relief* [Docket No. 1] (the "Complaint") against Defendants, bringing claims for: (i) tortious interference with contract; (ii) violation of the automatic stay pursuant to section 362(a) of the Bankruptcy Code; and seeking (iii) declaratory relief and (iv) injunctive relief to prevent the immediate and irreparable harm that will result if Defendants are not enjoined from interfering with the Debtor's operations and CLO management agreements.

4. Defendants move to dismiss the Complaint pursuant to (i) Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP") for failure to state a claim, and (ii) FRCP 12(b)(1) on the purported basis that the Debtor's claims are not "ripe." The Motion should be denied for at least three reasons.

5. ***First***, despite black-letter law that a plaintiff's well-pleaded allegations must be accepted as true on a motion to dismiss, Defendants improperly dispute several of the Debtor's well-pleaded allegations or contend there is "insufficient evidence" to support them. Of course, (i) a plaintiff is not required to put all of its evidence into a complaint, but need only make sufficient allegations that, when accepted as true, plausibly state a cause of action, and (ii) the Defendants completely ignore the substantial evidence and sworn testimony related to the Debtor's claims that was provided by the Defendants' own authorized representatives—Mr.

Dondero, Dustin Norris, and Jason Post—in this Adversary Proceeding or in related matters. The Motion should be denied because Defendants improperly dispute the Debtor's well-pleaded allegations.

6. **Second**, and ironically, Defendants offer no admissible evidence to support the relief requested. Though they filed an "appendix" with some correspondence, Defendants offer no affidavit or declaration of any kind to rebut the Debtor's factual assertions. Indeed, despite claiming that fourteen (14) different CLOs are at issue (Motion at 1), the Defendants failed to put the applicable Portfolio Management Agreements into evidence; yet they go to great lengths to characterize their alleged rights under them. (*See* Motion at 3-4). There is no evidence—and there will never be any evidence—that the terms of the Agreements are identical.[4] If Defendants are relying "on the record," they had an obligation to parse through it—both for the "evidence" that allegedly supports them, and for the evidence that does not—although that exercise would most likely defeat the very purpose of a motion to dismiss. The Motion should be denied because Defendants fail to provide any evidentiary basis for disputing the allegations against them.

7. **Third**, applying the law properly, taking the Debtor's well-pleaded allegations in the Complaint as true, and viewing them in the light most favorable to the Debtor, the Debtor states plausible claims for relief on all counts. For these same reasons, the Court has subject

---

[4] As just one example of the Defendants' attempt to avoid scrutiny of the actual contractual language of the fourteen (14) Portfolio Management Agreements, the Defendants contend that the "Portfolio Management Agreements also *generally* allow the holders of preferred shares to instruct CLOs to remove the portfolio manager for cause . . . ." (Motion at 4) (emphasis added). In addition to failing to offer any Portfolio Management Agreement into evidence, the Defendants also fail to cite to any provision of any such Agreement. While courts are required to accept as true on a motion to dismiss a *plaintiff's* well-pleaded allegations, the same is not true of a Rule 12(b)(6) *movant's* characterization of contractual provisions and alleged rights. *See Aguilar v. LA. Dept. of Corr.*, 1:14-CV-03476, 2015 WL 10557837, at *1 (W.D. La. Dec. 9, 2015) (denying Rule 12(b)(6) motion to dismiss where defendants failed to submit any evidence in support of its affirmative defenses to plaintiff's claims, noting that "the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader.")

matter jurisdiction over the Debtor's claim for injunctive relief because the Debtor has sufficiently alleged an actual and immediate threat of repeated injury by Defendants' conduct.

8.      For the reasons that follow, Defendants' Motion should be denied in its entirety.

## II.
## FACTUAL BACKGROUND

9.      The following summarizes the Debtor's allegations in the Complaint:

**A.      Mr. James Dondero Owns and/or Controls Each of the Defendants**

10.     Mr. Dondero directly or indirectly owns and/or controls each of the Defendants. (Complaint ¶ 19).[5]

***The Advisors and the Funds***

11.     On December 16, 2020, Mr. Dustin Norris ("Mr. Norris"), the Executive Vice President of each of Defendants, testified under oath in support of the *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* [Bankr. Docket No. 1528] (the "Restriction Motion") that was brought by the Defendants. (Complaint ¶¶ 20-21).

12.     During the hearing on the Restriction Motion (the "Hearing"), Mr. Norris testified that Mr. Dondero (i) directly or indirectly owns and controls each of the Advisors, and (ii) is the portfolio manager of each of the Funds, each of which is advised by one of the Advisors. (Complaint ¶ 22). This testimony is corroborated by the Funds' public filings with the Securities and Exchange Commission in which each of the Funds disclosed that the Advisors were owned and controlled by Mr. Dondero and that Mr. Dondero was the portfolio manager for each of the Funds. (*Id.* ¶ 23).

---

[5] On February 24, 2021, after the Defendants filed the Motion, the Court specifically found in a separate adversary proceeding [Adv. Proc. No. 21-03010-sgj11] (the "2d Adv. Proc.") that "[e]ach of the Advisors is controlled by Mr. Dondero." [2d Adv. Proc. Docket No. 25 at 3] (the "February 24, 2021 Order").

**B.**     <u>This Court Has Entered Two Orders that Are Implicated by the Defendants' Actions and Threatened Actions</u>

13.     This Court has entered two Orders that are relevant to the injunctive relief sought by the Debtor. (Complaint ¶ 27).

14.     On December 27, 2019, the Debtor filed that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Bankr. Docket No. 281] (the "<u>Settlement Motion</u>"). On January 9, 2019, this Court entered an Order granting the Settlement Motion [Bankr. Docket No. 339] (the "<u>Settlement Order</u>"). (Complaint ¶ 28).

15.     As part of the Settlement Order, this Court also approved a term sheet (the "<u>Term Sheet</u>") [Bankr. Docket No. 354-1] between the Debtor and the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), pursuant to which Mr. John S. Dubel, Mr. Russell Nelms, and Mr. Seery were appointed to the Board. (Complaint ¶ 29).

16.     Pursuant to the Term Sheet, on January 9, 2020, Mr. Dondero resigned from his roles as an officer and director of Strand and as the Debtor's President and Chief Executive Officer. (Complaint ¶ 30). The Settlement Order directed Mr. Dondero, in relevant part, not to "cause any Related Entity to terminate any agreements with the Debtor." (*Id.* ¶ 31).

17.     Each of the Defendants is a "Related Entity" as defined in the Term Sheet because each of the Defendants is directly or indirectly owned and/or controlled by Mr. Dondero and/or Mr. Scott. (Complaint ¶ 32).[6]

18.     Defendants' actions and threatened actions also implicate the *Order Granting Debtor's Motion for a Temporary Restraining Order against James Dondero* [Adv. Pro. No. 20-

---

[6] As discussed *supra* in footnote 5, the Court's recent finding that each of the Advisors is, in fact, controlled by Mr. Dondero further supports the fact that Defendants' conduct violates the Settlement Order and Term Sheet.

5

03190-sgj, Docket No. 10], entered on December 10, 2020 (the "TRO" and together with the Settlement Order, the "Orders"). (Complaint ¶ 33).[7]

19.     Pursuant to the TRO, the Court temporarily enjoined and restrained Mr. Dondero from, *inter alia*, "interfering with or otherwise impeding, directly or indirectly, the Debtor's business" and from "causing, encouraging, or conspiring with (a) any entity owned or controlled by [Mr. Dondero], and/or (b) any person or entity acting on his behalf, from, directly or indirectly, engaging in any Prohibited Conduct [as defined in the TRO]," including interfering with or impeding the Debtor's business. (Complaint ¶ 34) (citing TRO).

## C.     Defendants Interfere with and Impede the Debtor's Business and Threaten to Terminate the Debtor's Management Contracts

20.     In addition to filing the Restriction Motion, Defendants have, on at least three separate occasions, interfered with and impeded the Debtor's business, or they have threatened to do so by initiating the process for removing the Debtor as the portfolio manager of the CLOs. (Complaint ¶ 35).

21.     ***First***, on December 22, 2020, employees of NPA and HCMFA interfered with and impeded the Debtor's business by refusing to execute the CLOs' sale of AVYA and SKY securities that Mr. Seery had personally authorized. (Complaint ¶ 36). The Advisors engaged in this conduct notwithstanding (i) the denial of the Restriction Motion and the Court's pointed comments during the Hearing on the Restriction Motion, and (ii) Mr. Norris's sworn acknowledgments on behalf of the Advisors and Funds during the Hearing that (a) the Debtor's management of the CLOs is governed by written contracts as to which none of the Advisors or

---

[7] On January 12, 2021, the Court entered an order granting the Debtor's motion for a preliminary injunction against Mr. Dondero [Adv. Proc. 20-03190-sgj11, Docket No. 59] (the "Preliminary Injunction Order"). The Preliminary Injunction Order enjoined Mr. Dondero from engaging in this same conduct, with additional provisions prohibiting Mr. Dondero from entering the Debtor's offices without prior permission, among other directives. *See generally*, Preliminary Injunction Order.

Funds are parties; (b) the Debtor has the exclusive duty and responsibility to buy and sell assets on behalf of the CLOs; and (c) as the Advisors knew when they invested in the CLOs on behalf of the Funds, holders of preference shares (such as the Funds) have no right to make investment decisions on behalf of the CLOs. (*Id.* ¶ 36).

22. The Advisors' interference with trades that Mr. Seery authorized on behalf of the CLOs is the same type of conduct that led the Court to impose the TRO against Mr. Dondero. (Complaint ¶ 37).

23. *Second*, also on December 22, 2020, the Defendants wrote to the Debtor and renewed their "request" that the Debtor refrain from selling any assets on behalf of the CLOs until the confirmation hearing (the "December 22 Letter"). (Complaint ¶ 38). In support of their "request," the Defendants re-asserted their arguments advanced in connection with the Restriction Motion—all of which were previously rejected by the Court. (*Id.*)

24. The Debtor responded on December 24, 2020 demanding that Defendants withdraw their December 22 Letter and confirm by the close of business on December 28, 2020 that neither the Defendants nor anyone acting on their behalf would take any further steps to interfere with the Debtor's directions as the CLOs' portfolio manager. The Defendants failed to comply with the Debtor's demands. (Complaint ¶ 39).

25. *Third*, the Defendants threatened to seek to remove the Debtor as the portfolio manager of the CLOs. (Complaint ¶ 40). Specifically, in a letter dated December 23, 2020 (the "December 23 Letter"), the Defendants informed the Debtor that one or more of them "intend to notify the relevant trustee and/or issuers that the process of removing the Debtor as fund manager should be initiated, subject to and with due deference for the applicable provisions of the United State Bankruptcy Code, including the automatic stay of Section 362." (*Id.*)

26.     The Debtor responded to the December 23 Letter the following day advising Defendants that (i) the Settlement Order prohibited the termination of the Debtor's management agreements with the CLOs, and (ii) in any event, that there was no factual, legal, or contractual basis to remove the Debtor as the CLOs' portfolio manager.  (Complaint ¶ 41).  The Debtor demanded that Defendants withdraw their December 23 Letter and, by the close of business on December 28, 2020, commit not to take any actions, directly or indirectly, to terminate the CLO management agreements.  (*Id.*)  Defendants failed to comply with the Debtor's demands.  (*Id.*)

27.     On December 30, 2020, the Debtor told Defendants to either move to terminate the CLO management agreements and seek related relief, or the Debtor would be forced to commence an action for declaratory and injunctive relief in order to clarify and protect the Debtor's contractual rights under the CLO management agreements. (Complaint ¶ 43). Defendants failed to bring such a motion.  (*Id.* ¶ 43).

28.     As a result of Mr. Dondero's continued interference with the Debtor's business, the Debtor notified Mr. Dondero on December 23, 2020 that the Debtor would evict him and terminate all services provided to him as of December 30, 2020.  (*Id.*)  On December 31, 2020, Defendants wrote to the Debtor (the "December 31 Letter" and together with the December 22 Letter and the December 23 Letter, the "Defendants' Letters") contending that the Debtor's eviction of Mr. Dondero from the Debtor's offices was damaging the Defendants and implied that the Debtor would be held liable for such damage.  (*Id.*)

29.     Mr. Dondero has taken no steps to prevent the Defendants—entities that he owns and/or controls and that are each a "Related Entity" under the Term Sheet—from continuing to interfere with the Debtor's operations and contractual rights.  (*See* Complaint ¶ 46).

D.      **The Debtor's Claims for Relief**

30.      In its First Claim for Relief, the Debtor seeks a declaration that, *inter alia*:

- Each of the Defendants is directly or indirectly controlled by Mr. Dondero;[8]

- Each of the Defendants is an "affiliate" of the Debtor for purposes of the CLO Management Agreements"; and

- The demands and requests set forth in Defendants' Letters constitute interference with the Debtor's business and management of the CLOs.

(Complaint ¶ 50).

31.      In its Second Claim for Relief, the Debtor brings a claim for violation of the automatic stay under section 362(a) of the Bankruptcy Code.  Specifically, the Debtor alleges that the Defendants' interference with the Debtor's contractual rights and operations violates the automatic stay and that, "to the extent Defendants engaged in such conduct after the Court's Order on the Restriction Motion, such conduct was willful." (*Id.* ¶¶ 51-54).

32.      In its Third Claim for Relief, the Debtor brings a claim for tortious interference with contract.  In support of this claim, the Debtor alleges that (i) its CLO Management Contracts are valid contracts, (*id.* ¶ 57), and that (ii) the Defendants "willfully and intentionally" interfered with these contracts by, *inter alia*, "hindering the Debtor's ability to sell certain CLO assets and threatening to initiate a process for removing the Debtor as the portfolio manager of the CLOs, and otherwise attempting to interfere with the Debtor's decisions concerning the purchase or sale of any assets on behalf of the CLOs." (*Id.*)  The Debtor further alleges that Defendants' interference has "proximately caused, and will continue to cause, damage and loss to the Debtor's estate." (*Id.* ¶ 59).

---

[8] As noted *supra* in footnote 5, the Court has already determined that each of the Advisors is controlled by Mr. Dondero. (*See* February 24, 2021 Order).

9

33.     In its Fourth Claim for Relief, the Debtor seeks injunctive relief pursuant to section 105(a) of the Bankruptcy Code enjoining Defendants from, in pertinent part: (i) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's (a) management of the CLOs, (b) decisions concerning the purchase or sale of any assets on behalf of the CLOs, or (c) contractual right to serve as the portfolio manager (or other similar title) of the CLOs; (ii) otherwise violating section 362(a) of the Bankruptcy Code; (iii) seeking to terminate the portfolio management agreements and/or servicing agreements between the Debtor and the CLOs ((i)-(iii) collectively, the "Prohibited Conduct"); (iv) conspiring, colluding, or collaborating with (x) Mr. Dondero, (y) any entity owned and/or controlled by Mr. Dondero, and/or (z) any person or entity acting on behalf of Mr. Dondero or any entity owned and/or controlled by him, to, directly or indirectly, engage in any Prohibited Conduct; and (v) engaging in any Prohibited Conduct with respect to any of the Successor Parties.  (Complaint ¶ 62).[9]

### III.
### ARGUMENT

**A.     The Complaint States Claims upon which Relief Can Be Granted**

**1.     Legal Standard**

34.     "A motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'"  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982)). In assessing a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Thus, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's

---

[9] "Successor Parties" refers to the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust.  (*See* Complaint ¶ 18).

complaint "need only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Harris v. Coastal Offshore, Inc.*, No. C-11-58, 2011 WL 2457922, at \*2 (S.D. Tex. June 16, 2011) (quoting FED. R. CIV. P. 8(a)(2)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting a complaint should not be dismissed under Rule 12(b)(6) if it complies with Rule 8(a)'s requirement that it provide "only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give defendants fair notice of what the claim is and the grounds upon which it rests") (internal quotations omitted).

35.     "A claim is plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir.2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) ("The factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)'" (quoting *Twombly*, 550 U.S. at 555); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019) ("[P]articularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief.")

36.     Viewing the allegations in the light most favorable to the Debtor, the Complaint states claims for (i) violation of the automatic stay; (ii) tortious interference with contract; (iii) injunctive relief; and (iv) declaratory relief that are plausible on their face.

11

**2.**     **The Complaint States a Claim for Violation of the Automatic Stay**

37.     The Complaint sufficiently alleges a claim for violation of the automatic stay under section 362(a) of the Bankruptcy Code.

38.      "In order for the Court to grant Defendants' motion to dismiss, it must find [the Debtor's] claim that the automatic stay was violated 'implausible.'" *Roberts v. Am. Bank & Trust Co., Inc.*, 835 F. Supp. 2d 183, 206 (E.D. La. 2011).

39.     Defendants argue that the Debtor fails to plausibly allege a claim for violation of the automatic stay under 362(a) on the grounds that the Debtor: (i) does not adequately state "that the "Defendants interfered with the Debtor's contractual rights and course of dealing," and (ii) fails to allege "*how* the Advisors' employees allegedly interfered with and impeded a sale of CLO assets." (*See* Motion at 10-11).   Defendants' arguments are not credible.

40.     The Debtor specifically alleges that the Defendants "willfully and intentionally" interfered with the Debtor's CLO management agreements by, *inter alia*, (i) interfering with trades, and (ii) threatening to terminate the Debtor's CLO management agreement.   (*See* Complaint ¶¶ 37-41, 58).   These allegations adequately provide a short statement of the Debtor's claim that gives fair notice to Defendants of the grounds upon which the claim rests.   *See Twombly*, 550 U.S. at 546.   The Complaint, therefore, states a claim for violation of the automatic stay that is plausible on its face.   *See In re Lewis*, 2019 WL 2158832, at *6 (Bankr. W.D. La. May 16, 2019) (finding that the complaint provided "factual allegations which, if true, state a claim for relief" for violation of the automatic stay).[10]

41.     Defendants' remaining contentions regarding this claim are without merit.

---

[10]  Moreover, Defendants conveniently ignore the substantial evidence in the record showing that around Thanksgiving, and again on December 22, 2020, Mr. Dondero (i) personally interfered with trades authorized by the Debtor, (ii) instructed the Advisors' employees not to execute trades authorized by the Debtor, and (iii) on at least on occasion, threatened the Debtor's Chief Compliance Officer.

42. For example, Defendants assert that missing from the Complaint are allegations that the "employees had any duty – contractual or otherwise – or even ability - to facilitate a sale of the CLO's assets," and therefore, the Complaint "contradicts itself to the extent it alleges that the Advisors' employees somehow violated the automatic stay by refusing to settle a sale of the CLOs' assets." (Motion at 16). However, Defendants (i) ignore the undisputed evidence in the record regarding the parties' course of dealing, and (ii) fail to cite any authority to support their contention that a party must owe a "duty" in order to be liable for violating the automatic stay.

43. Defendants' assertion that their communications with the Debtor do not, "on their face[,]" raise a claim for violation of the automatic stay because such communications are "between counsel," (Motion at 16), is equally frivolous.[11]

44. Defendants further assert that their communications to the Debtor do not violate the automatic stay because, among other things, the Defendants' Letters "merely communicated *requests* to the Debtor" to halt CLO transactions. (*See* Motion at 17-18). But a lawyer's careful drafting is simply insufficient to defeat the Debtor's claim at this stage. *See Roberts*, 835 F. Supp. 2d at 206 (denying motion to dismiss where "there is more than a 'sheer possibility' that the conduct may have violated the stay, and that discovery is warranted in order to determine if this is the case" and further noting that "[i]f after sufficient discovery is conducted, the

---

[11] Defendants' citation to *In re Hazzard*, 1995 WL 110588 (Bankr. N.D. Ill. Feb. 10, 1995) in support of this proposition is misguided. There, the court found that a creditor did not violate the automatic stay under section 362(a)(6) when it sent a letter to the debtors' counsel asking that the debtors "reaffirm their debt to it," and then sent a copy of the letter to the debtors with the inscription "for information purposes only." 1995 WL 110588 at *1. Based on these facts alone, the court concluded that there was "simply nothing in the text" of the communications that could be "construed as an attempt to coerce or harass the Debtors"). Here, by contrast, the Debtor alleges that Defendants' Letters were the culmination of a two-month campaign commenced immediately after Mr. Dondero was forced to resign that was intended to interfere with the Debtor's rights under the CLO management agreements.

Defendants can establish that there is no issue of material fact … they may file a motion for summary judgment on the issue.")[12]

45.     Finally, and for these same reasons, Defendants' argument that "[m]ere communication, without more is not an 'act'" to remove or exercise control over property of the estate under section 362(a)(3) fails.  (Motion at 18).   The Debtor alleges more than just "communications"—it alleges that Defendants' Letters came just days after the Court's admonishments in connection with the Restriction Motion and were intended to interfere with and threaten the Debtor's operations.  (*See* Complaint ¶¶ 27-44).   Such allegations, when taken as true, give rise to an inference that Defendants violated the automatic stay by attempting to exercise control over the Debtor's property.  *See In re Trevino*, 535 B.R. 110, 145 (Bankr. S.D. Tex. 2015) (denying 12(b)(6) motion to dismiss claim of violation of the automatic stay, noting that section 362(a)(3) forbids "any act to 'exercise control' over the estate" and by sending certain letters to the debtor, defendants "arguably used threats in an attempt to take property away from the estate.")   Indeed, Defendants' attempts to direct, threaten, or influence the Debtor's operations and its ability to sell CLO assets is "precisely the type of activity that that § 362(a)(3) is designed to curtail." *Id.*

46.     For the foregoing reasons, the Debtor states a claim for violation of the automatic stay is that is plausible on its face, and Defendants' Motion to dismiss this claim should, therefore, be denied.

### 3.     The Complaint States a Claim for Tortious Interference with Contract

47.     The Debtor alleges a plausible claim for tortious interference with contract.

---

[12] Defendants' cite to *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008) in support of the proposition that the automatic stay does not serve to protect the bankruptcy estate from "legal actions taken within the bankruptcy court," (Motion at 17), is of no moment.   That case dealt with a party's legal right to assert payment in a proof of claim.   Moreover, Defendants here took no legal action of any kind; indeed, they declined to seek judicial relief, apparently choosing instead to try to have the threats hang over the Debtor.

14

48. The elements of a cause of action for tortious interference with an existing contract under Texas law are: "1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage and (4) actual damage or loss occurred." *Covenant Servs., Inc. v. Jones-Blair Co.*, 2015 WL 13118197, at *2 (N.D. Tex. Mar. 3, 2015) (internal quotations omitted); *see also In re Burzynski*, 989 F.2d 733, 738 (5th Cir. 1993) (same).

49. The Debtor sufficiently alleges each element of the cause of action.

50. First, the Debtor alleges that the CLO management agreements are "between the Debtor and the CLOs," and that such agreements constitute "valid contracts." (Complaint ¶¶ 3, 57; *see also id.* ¶ 36 ("the Debtor's management of the CLOs is governed by written contracts")). These allegations are sufficient to satisfy the first element. *See Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 577 (S.D. Tex. 2020) (holding that the complaint "establishes the existence of a contract necessary to support a tortious interference claim" where it alleges plaintiff had "active contracts" with customers that were "affected by the Defendants' actions.")

51. The Debtor also plausibly alleges the second element—the existence of "an intentional act that interferes with the contract." The Debtor specifically alleges that: (i) Defendants have "willfully and intentionally impeded the Debtor's ability" to perform its function under the management agreements, by, among other things, (1) hindering the Debtor's ability to sell certain CLO assets, (2) threatening to take action to remove the Debtor as portfolio manager of the CLOs, and (3) otherwise interfering with the Debtor's ability to manage the purchase or sale of any assets on behalf of the CLOs. (Complaint ¶ 58; *see also id.* ¶¶ 37-41 (alleging that Defendants have: (i) interfered with certain trades authorized by Mr. Seery, (ii) continued to reassert baseless arguments that the Debtor should refrain from selling assets, and

15

(iii) failed to comply with the Debtor's requests that Defendants refrain from taking further steps to "interfere with the Debtor's direction as the CLOs' portfolio manager.")[13] These allegations plausibly support an inference that Defendants interfered with the Debtor's CLO contracts by, among other things, making them more difficult to perform. *See Weatherford*, 452 F. Supp. 3d at 577 ("The court concludes that these allegations plausibly support Defendants' interference with [plaintiff's] contracts by making the contracts more difficult to perform").

52.     Finally, the Complaint sufficiently alleges the third and fourth elements— proximate cause and actual damages. The allegations state that, by interfering with the Debtor's CLO management agreements, "Defendants' conduct has proximately caused, and will continue to cause, damage and loss, to the Debtor's estate." (Complaint ¶¶ 58-59); *see Burzynski*, 989 F.2d at 739 (the plaintiff pled proximate cause of actual damages where it alleged that by engaging in certain conduct, defendants "proximately caused financial injury" to plaintiffs).

53.     Defendants' contention that the Debtor's allegations are "insufficient," (*see* Motion at 15), are thus belied by the allegations contained in the Complaint. *See, e.g., Fisher v. Blue Cross Blue Shield of Tex., Inc.*, 2011 WL 11703781, at *9 (N.D. Tex. 2011), *report and recommendation adopted*, 2011 WL 3417097 (N.D. Tex. 2011) (holding that "Plaintiffs have properly pled a claim for tortious interference that gives the Defendant fair notice of what the claim is and the grounds upon which it rests"); *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 785 (S.D. Tex. 2010) (denying 12(b)(6) motion to dismiss tortious interference claim where it "has alleged factual allegations and enhancements that 'raise a right to relief

---

[13] Although Defendants assert that the Debtor makes "unsubstantiated assertions that the Advisors' employees refused to settle the CLOs' sale of certain securities[,]" (Motion at 6), this assertion is contradicted by the explicit allegations of the Complaint, as set forth *supra*. Defendants' assertion also ignores the record in this case. Since early December 2020, the Debtor has offered substantial evidence into the record of related proceedings that prove that Defendants—led by Mr. Dondero—interfered with the Debtor's execution of trades and sale of assets. *See, e.g., Declaration of Mr. James P. Seery, Jr. in Support of Debtor's Motion for a Temporary Restraining Order against Mr. James Dondero* [Adv. Pro. No. 20-03190-sgj, Docket No. 4 ¶¶ 21-23]).

above the speculative level' and thereby sufficiently stating its claim") (internal citations omitted).

54.     Defendants' remaining contentions are equally without merit.

55.     First, Defendants' citation to *McCall v. Dallas Independent School District*, 169 F. Supp. 2d 627, 639 (N.D. Tex. 2001), is misplaced.   There, the court held that the allegations were deficient where the "[defendant] was one of the parties to the contract in question and '[t]ortious interference with a contract requires a *third-party stranger* to the contact who wrongly induces another contract party to breach the contract.'" 169 F. Supp. 2d at 639 (quoting *Grizzle v. Tex. Commerce Bank*, 38 S.W.3d 265, 286 (Tex. App. 2001) (emphasis in original).  Here, unlike in *McCall*, defendants are not "parties to" the CLO management contracts in question. (*See* Complaint ¶ 36, alleging that the "none of the Advisors or Funds are parties" to the CLO contracts).[14]

56.     Defendants' contention that the Debtor "has not alleged that it breached any contract at all, much less as a result of any alleged interference," (Motion at 15), is also frivolous.   Tortious interference with contract does not require actual breach of a contract.  *See GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 742 (N.D. Tex. 2010) (noting that "a party can be liable for tortious interference, even without a breach, if it makes performance of a contract 'more burdensome, difficult or impossible, or of less or no value to the one entitled to performance'") (internal citations omitted); *PrevMED, Inc. v. MNM–1997, Inc.*, 2017 WL 785656, at *8 (S.D. Tex Feb. 28, 2017) (noting that a "defendant may be held liable for tortious interference with contract by actions that do not actually breach a contract, 'but

---

[14] The Defendants' citation to *Iacono v. Pilavas*, 125 A.D.3d 811, 812 (N.Y. App. Div. 2015) in support of this contention is also inapposite.  The court in *Iacono*, applying New York law, granted summary judgment to the defendants where they submitted evidence showing that a third-party did not breach a contract and where the plaintiff "failed to raise a triable issue of fact." 125 A.D.3d 812-13.

which injure a plaintiff by making plaintiff's performance of a contract 'more burdensome or difficult or of less or no value'" (quoting *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 359–60 (Tex. App.—Houston [1st Dist.] 2012, no pet.)).

57.     Finally, Defendants restate their same flawed argument discussed *supra*; namely, that the allegations fail to state a claim for tortious interference because the communications "consist solely of correspondence between lawyers" between the Debtor and Defendants[.]" (Motion ¶ 20).  Here, too, Defendants offer no authority in support of such a notion.  Moreover, any such arguments are insufficient to defeat the claim at this stage.  *See U.S. Enercorp, Ltd. v. SDC Mont. Bakken Expl., LLC*, 966 F. Supp. 2d 690, 705 (W.D. Tex. 2013) (denying defendant's 12(b)(6) motion to dismiss tortious interference claim, noting that "once a plaintiff makes out a prima facie case of tortious interference, a defendant can avoid liability by establishing some type of privilege or justification for its actions, such as the exercise of its own rights or its good-faith assertion of rights it believes it has, even if that belief is mistaken.")

58.     Taking the facts as true and viewing them in the light most favorable to the Debtor, the Complaint states a claim for tortious interference with contract.

**4.     The Complaint States a Claim for Injunctive Relief**

59.     The Complaint states a claim for injunctive relief.

60.     The elements of a claim for preliminary injunctive relief are: (1) substantial likelihood that the moving party will prevail on the merits of the underlying suit; (2) a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmovant; and (4) granting the preliminary injunction will not disserve the public interest.  *See Trustees of the Tex. Carpenters & Millwrights Health & Welfare Fund v. Delancey*, 2010 WL 4918737, at *4 (W.D. Tex. Nov. 23, 2010).  The elements of a permanent injunction are the same

18

as for a preliminary injunction, with the exception that the plaintiff must show success on the merits rather than a mere likelihood of success. *See Med-Cert Home Care, LLC v. Azar*, 444 F. Supp. 3d 756, 761 (N.D. Tex. 2020).

61.     The allegations in the Complaint contain factual support for each element. Specifically, the Debtor alleges that, *inter alia*, (i) Defendants' "interference and threats" with the Debtor's management agreements constitute "willful and intentional interference with the Debtor's management contracts[,]" (Complaint ¶ 65), (ii) the Debtor will be "irreparably harmed" if Defendants' wrongful conduct is not enjoined, (*id.* ¶ 66), and (iii) the Debtor is, therefore, "likely to prevail on its underlying claim for tortious interference with contract" (*id.*) The Debtor further alleges that "injunctive relief would serve the public interest by re-enforcing the implicit mandate in the Bankruptcy Code that debtors and their successors are to be managed and controlled only by court-authorized representatives, free from threats and coercion." (*Id.* ¶ 68).

62.     Accordingly, the Debtor has properly pled a claim for injunctive relief that is plausible on its face, and Defendants' motion to dismiss this claim should be denied. *See Trustees of the Tex. Carpenters*, 2010 WL 4918737, at *4 (denying defendants' motion to dismiss claim for injunctive relief where defendants "fail to demonstrate that as a matter of law Plaintiffs are not entitled to injunctive relief, and Plaintiffs have sufficiently pled the elements of a claim for injunctive relief.")

### **5.     The Complaint States a Claim for Declaratory Relief**

63.     The Complaint sufficiently states a claim for declaratory relief.

64.     In order to state a claim that is justiciable for declaratory relief, the request for declaratory relief must serve a "useful purpose in clarifying and settling legal relations at issue" in anticipation of some future conduct. *Hosp. Internists of Austin, P.A. v. Quantum Plus, LLC*,

19

2019 WL 1922051, at *4-5 (W.D. Tex. Jan. 23, 2019); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 769 (N.D. Tex. 2012) ("The federal [Declaratory Judgment] Act allows a federal court to declare the rights and legal relations of any interested party.") "Like any other cause of action, there must be an 'actual controversy' supporting a declaratory judgment action." *Hosp. Internists*, 2019 WL 1922051, at *4. As such, declaratory actions are often brought concurrently with other underlying causes of action. *See id.* at *6, n. 7 (noting that plaintiff sought declaratory relief based on underlying breach of contract action); *Hurd*, 880 F. Supp. 2d at 769 ("The availability of a declaratory judgment depends upon the existence of a judicially remediable right").

65.     Defendants argue that the Debtor's claim is "deficient," principally taking issue with the Debtor's request for a declaration that each of the Defendants are "affiliates" of the Debtor. (*See* Motion at 13-15). However, for the reasons which follow, the Debtor adequately states a claim for declaratory relief that is sufficient to defeat a 12(b)(6) motion.

66.     The Debtor's requests for declaratory relief are premised on its viable, underlying claims for (i) tortious interference with contract, (ii) injunctive relief, and (iii) violation of the automatic stay. (*See generally*, Complaint). The purpose of such relief is for the Court to (i) ultimately declare the Debtor's legal rights with respect to the underlying CLO contracts at issue and (ii) prevent Defendants from interfering with those contracts in violation of the automatic stay currently and in the future. This is precisely the type of declaratory relief courts deem as sufficient on Rule 12(b)(6) motions. *See Hurd*, 880 F. Supp. 2d at 769 (plaintiff stated claim for declaratory relief where it was based on underlying, viable claims); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737–38 (E.D. Tex.2011) (refusing to dismiss plaintiff's declaratory judgment action because they had plausibly stated underlying claims upon which declarations

20

were premised). Defendants' contention that the Debtor's claim for declaratory relief is "deficient" is without merit.

67. For the foregoing reasons, the Complaint sufficiently states a claim for declaratory relief.

**B.** **The Court Has Subject Matter Jurisdiction**

**1.** **Legal Standard**

68. "Federal courts have subject-matter jurisdiction over all cases or controversies arising under the Constitution and laws of the United States." *Anadji v. Keisler*, 2008 WL 11388565, at \*2 (S.D. Tex. June 26, 2008), *report and recommendation adopted*, 2008 WL 11388548 (S.D. Tex. July 15, 2008) (citing U.S. CONST. ART. III, § 2). Thus, a case should be dismissed for lack of subject matter jurisdiction if a court finds a plaintiff does not have standing, or if the case or controversy is not ripe for review. *See id.* "The doctrine of ripeness applies primarily to cases or controversies brought before the court that raise abstract, hypothetical or conjectural questions." *Id.* at \*3

69. Lack of subject matter jurisdiction may be found three places: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Andrade v. Teichroeb*, 341 F. Supp. 3d 681, 684–85 (N.D. Tex. 2018). "The Fifth Circuit has long distinguished between 'facial' and 'factual' jurisdictional attacks." *United of Omaha Life Ins. Co. v. Womack-Rodriguez*, 461 F. Supp. 3d 455, 466 (W.D. Tex. 2020) (citing *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). An attack is "factual" if the defendant "submits affidavits, testimony or other evidentiary materials." *Id.* (internal quotations omitted). By contrast, it is "facial" where, as here, the defendant does not submit evidentiary matters with its motion to dismiss; such an attack requires the courts to

21

"consider the allegations of the complaint as true." *Id.* (internal quotations omitted); *see also Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981 (same). In other words, "when a motion to dismiss is based on the lack of jurisdiction on the face of the complaint, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court will consider the allegations in the plaintiff's complaint as true." *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 699 (W.D. Tex. 2010) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981)).

70. "To overcome a facial attack under Fed. R. Civ. P. 12(b)(1) based upon ripeness or "standing," a plaintiff must allege that it suffered "(1) injury in fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision." *United*, 461 F. Supp. 3d at 468. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Betancourt*, 732 F. Supp. 2d at 699. "A party seeking injunctive relief must also show that 'there is a real and immediate threat of repeated injury.'" *Doe 1 v. Baylor Univ.*, 2020 WL 1557742, at *3 (W.D. Tex. Apr. 1, 2020) (internal citations omitted).

71. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief. *See Andrade*, 341 F. Supp. 3d at 684–85.

## 2. The Court Has Subject Matter Jurisdiction over Claim for Injunctive Relief

72. The Court has subject matter jurisdiction over the Debtor's claim for injunctive relief.

73. In support of their Motion to dismiss this claim for lack of subject matter jurisdiction, Defendants argue that the Debtor's claim for injunctive relief is "not ripe" because it "seeks prematurely to prevent the Funds and Advisors from giving instructions to the CLOs

regarding actions the CLOs are legally permitted to take under the Portfolio Management Agreements – which are to be assumed by the Debtor – at some undetermined and speculative point in the future." (Motion at 21). Defendants further contend that because the agreements will be assumed by the Debtor and then reinstated as obligations of the Debtor, it "essentially boils down to a preemptive breach of contract claim." (*Id.*) Defendants misconstrue the Debtor's allegations.

74.     Contrary to Defendants' representations, the Debtor does *not* seek to simply prevent Defendants from "giving instructions" to the CLOs at some "contemplative" or "speculative" point in the future; rather, the Debtor seeks injunctive relief to protect itself from Defendants' *current* and *continuing* conduct, which includes Defendants' threats and interference with the Debtor's operations and CLO management contracts—conduct which has already caused the Debtor injury, and which, if not enjoined, will continue to cause the Debtor "immediate and irreparable" harm. (*See, e.g.*, Complaint ¶¶ 36-5l, 58-59). Accordingly, the Debtor's claim for injunctive relief is "immediate and redressable by the relief requested," and therefore, ripe. *Anadji*, 2008 WL 11388565, at *3; *see also United v. Omaha,* 461 F. Supp. 3d at 468 (denying motion to dismiss on jurisdictional grounds where "there is no basis to question the ripeness of the claims.")[15]

75.     Finally, Defendants' conclusory assertion that they are "legally permitted" to take certain actions pursuant to the CLO management agreements is an attack on the merits of the Debtor's claim and is thus nothing more than a masked extension of their Rule 12(b)(6) Motion.

---

[15] Defendants' citations to *In re Superior Air Parts, Inc.*, 516 B.R. 85, 92 (Bankr. N.D. Tex. 2014) and *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001) dealt with post-confirmation breach of contract claims that had no relation to the Debtor's plan and confirmation order. Here, by contrast, the "outcome of this action could bear on the interpretation, implementation, and execution of a confirmed plan[,]" and the relief sought is "supplemental to the confirmation order and in furtherance of a confirmation plan." (*See* February 24, 2021 Order finding the Court had subject matter jurisdiction over the action (citing 11 U.S.C. § 1142(b)).

23

*See Henderson v. Saf-Tech, Inc.*, 2013 WL 6858503, at *2 (S.D. Tex. Dec. 30, 2013) (construing the defendant's 12(b)(1) for lack of subject matter jurisdiction as a 12(b)(6) motion to dismiss for failure to state a claim where it "was actually an attack on the merits of the claim"); *Beta Tech., Inc. v. Meyers*, 2013 WL 5602930, *2 (S.D. Tex. Oct. 10, 2013) ("Given that Defendants' arguments go principally to the merits of Plaintiffs' [] claim, which does not appear to be immaterial or frivolous, the proper disposition of Defendants' motion to dismiss is under Rule 12(b)(6) rather than Rule 12(b)(1)"). For reasons discussed *supra*, Defendants' Motion to dismiss this claim on Rule 12(b)(6) grounds is without merit.

76.     For the foregoing reasons, the Complaint contains allegations that, when taken as true, are sufficient to demonstrate subject matter jurisdiction. *See Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 792 (S.D. Tex. 2010) (noting that where defendants do not submit affidavits or evidentiary materials with their Rule 12(b)(1) motion, "and this motion is made at an early stage of the proceedings," the Court "must 'merely ... see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion'") (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)).

77.     Accordingly, Defendants' Motion to dismiss the Debtor's claim for injunctive relief should be denied.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court (i) deny the Motion in its entirety and (ii) grant any further relief as the Court deems just and proper.

24

Dated: March 1, 2021.                    **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

25