K&L GATES LLP
Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5659
E-mail: artoush.varshosaz@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
E-mail: lee.hogewood@klgates.com

*Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc.*

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile:  (214) 978-4375

*Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., HIGHLAND INCOME FUND, NEXPOINT STRATEGIC OPPORTUNITIES FUND, NEXPOINT CAPITAL, INC., AND CLO HOLDCO, LTD,<br><br>Defendants. | Adversary Proceeding No.<br><br>21-03000-sgj |

## DEFENDANTS' REPLY TO DEBTOR'S OPPOSITION
## TO MOTION TO DISMISS COMPLAINT

Defendants Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NexPoint," and together with HCMFA, the "Advisors"), and Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. (together, the "Funds," and together with the Advisors, the "Fund and Advisors"), by and through their undersigned counsel, submit this reply (the "Reply") to the *Debtor's Opposition to Motion to Dismiss Complaint* [Dkt. No. 79] and *Debtor's Brief in Support of its Opposition to Motion to Dismiss Complaint* [Dkt. No. 80] (together, the "Opposition") filed by Plaintiff Highland Capital Management, L.P. (the "Debtor"). In support of the Reply, the Funds and Advisors respectfully show the Court as follows:

## BACKGROUND

1. On January 24, 2021, the Funds and Advisors filed their *Motion to Dismiss Plaintiff's Complaint* and *Brief in Support* [Dkt. No. 43] (the "Motion"),[1] seeking dismissal of the Plaintiff's *Verified Complaint for Declaratory and Injunctive Relief* [Dkt. No. 1] (the "Complaint") for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction pursuant to Rule 12 of the Federal Rules of Civil Procedure (the "Rules"), made applicable to the above-captioned adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. The Complaint contains four claims for relief: (i) for declaratory relief regarding the rights and obligations of the parties relating to the CLOs; (ii) for violation of the automatic stay; (iii) for tortious interference with contract; and (iv) for injunctive relief. As discussed in detail in the Motion, the Complaint is devoid of factual allegations that support the causes of

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

action and must be dismissed. The Funds and Advisors file this Reply, however, to address certain specific points in the Debtor's Opposition.

3.  The Debtor maintains that the Motion should be denied for three primary reasons. First, the Debtor asserts that the Funds and Advisors improperly disputed the Debtor's well-pleaded allegations. Second, the Debtor asserts that the Funds and Advisors failed to provide any evidentiary basis for disputing the Debtor's allegations. Third, the Debtor asserts that subject matter jurisdiction exists because it sufficiently alleged actual and imminent threat of repeated injury. Each of these arguments are addressed in turn below.

## RESPONSE

**I. The Complaint Contains Insufficient Well-Pleaded Allegations to Survive Dismissal**

4.  The Debtor first argues that the Motion should be denied because the Funds and Advisors improperly disputed the Debtor's well-pleaded allegations and "ignore[d] the substantial evidence and sworn testimony related to the Debtor's claims." This argument is incorrect.

5.  The "substantial evidence and sworn testimony" referred to by the Debtor, to the extent it exists, is not before the Court. It is fundamental that a complaint, when tested under Rule 12, must survive or fail based on the well-pleaded facts in the complaint itself; not on evidence adduced at some other hearing (especially one not involving the same parties or the same transactions). In order to bring such evidence before the Court, the Debtor must initially plead sufficient factual matter that, if taken as true, would state a claim for relief. The Debtor has not done this. Instead, its Complaint submits conclusory statements lacking in detail. Conclusory statements, however, are not taken as true on a motion to dismiss.

6.      The Debtor's Opposition reiterates the same conclusory allegations that are in the Complaint.  The Complaint rests upon certain limited allegations of events in 2020, from which it wants the Court to infer sweeping wrongful conduct.  The Complaint refers generally to the Funds and Advisors' alleged interference with certain sales of CLO assets, and to certain letters that counsel for the Funds and Advisors sent to the Debtor in December 2020.  However, instead of making factual allegations, the Complaint simply makes conclusory statements, such as "employees of [the Advisors] interfered with and impeded the Debtor's business by refusing to settle the CLOs' sale of AVYA and SKY securities that Mr. Seery had personally authorized." Dkt. 1 at 9.  Simply referring to the Advisors' conduct as interfering and impeding with the Debtor's business is a conclusory statement that is not to be taken as true for purposes of the Motion.

7.      Indeed, there is no allegation as to what the Funds and Advisors allegedly did to interfere with the CLOs' sale of AVYA and SKY securities aside from "refusing to settle" the sale.  But the Complaint does not contain any allegations that would tend to show that this conduct amounted to an interference.  As an analogy, a plaintiff has no claim against a third party with whom it has no contractual relationship if it were to make a demand against that third party that the third party refused to comply with.  The Complaint also fails to allege that these sales did not in fact go through, or that the Funds and Advisors have prevented any sales from being executed.  Accordingly, there are no factual assertions that would support a finding of any interference or harm to the Debtor, and correspondingly, the Debtor has not stated a claim for relief.

8.      The allegations in the Complaint that are premised on the December Letters similarly fail to support a claim under any cognizable legal theory.  The Debtor has not alleged

how correspondence exclusively between its counsel and counsel to the Funds and Advisors somehow caused any actual interference with its business. Moreover, the Debtor has not alleged that it felt threatened by the December Letters, that the December Letters coerced or induced the Debtor to act in a certain way, or even that the December Letters had any impact at all on how the Debtor conducted its business. Finally, the December Letters themselves are abundantly clear, by way of express statements, that the Funds and Advisors intended to act within the confines of the Court, existing Court orders in the bankruptcy case and the requirements of the automatic stay. The Debtor has not alleged that the Funds and Advisors have taken any action to terminate the CLO management agreements or that it has in fact terminated them. There are simply no allegations relating to the December Letters that support a claim for relief, either for violation of the automatic stay or tortious interference with contract.

## II.   The Funds and Advisors Do Not Have a Burden to Present Evidence on a Motion to Dismiss

9.     Second, the Debtor asserts that the Funds and Advisors failed to provide any evidentiary basis for disputing the Debtor's allegations. This argument should be disregarded by the Court. The matter before the Court is not a motion for summary judgment; it is a motion to dismiss under Rule 12.

10.    At this stage in the proceeding, it is the Debtor's burden, as plaintiff, to simply make sufficient allegations of fact to support its requested relief. It has not done so. And the Debtor cannot escape this burden by arguing that the Funds and Advisors failed to produce any evidence. The Funds and Advisors have no burden to produce evidence to succeed on the Motion.

11. In sum, Debtor's argument that the Funds and Advisors "offer no admissible evidence to support the relief requested" is irrelevant. It does not matter whether factual support exists where the plaintiff simply has not satisfied its burden of pleading.

### III. Subject Matter Jurisdiction Does Not Exist

12. Finally, the Debtor argues that subject matter jurisdiction exists because it has sufficiently alleged actual and imminent threat of repeated injury. However, any alleged threat of injury is speculative at best and fails to support jurisdiction.

13. As the Debtor admits, the Funds and Advisors have not taken any action to terminate the CLO management agreements. Nor have the Funds and Advisors sought any judicial relief to do so. They are not required to act or to seek judicial relief, and they may never do so. Any argument that the possibility that the Funds and Advisors might at some point in the future seek to terminate certain agreements that the Debtor has assumed is specious, lacking sufficient facts, and simply cannot support jurisdiction.

### IV. Other Specific Arguments

14. The Funds and Advisors respond specifically to certain other arguments of the Debtor as follows.

#### A. *Count I: Declaratory Relief*

15. The Funds and Advisors respond specifically to the Debtor's requested declaration that "Each of the Defendants is directly or indirectly controlled by Mr. Dondero," to the extent the Debtor cites to a statement in the Court's February 24, 2021 Order in Adversary Proceeding No. 21-03010. The statement in the February 24, 2021 Order does not have the preclusive effect that the Debtor seeks to establish, given that the Order found that the dispute precipitating the Order was moot. Mootness is a jurisdictional issue, and if the court finds that a

matter is moot, it lacks subject matter jurisdiction and must dismiss the matter. *In re Andrews*, 2009 WL 1076831, at *8 (Bankr. S.D. Tex. Apr. 2, 2009) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). A dismissal on jurisdictional grounds has no claim preclusive effect, and serves as issue preclusion only to bar relitigation of the specific issues that the court relied upon in making its jurisdictional determination. *Bank v. Spark En. Holdings, LLC*, 2014 WL 2805114, at *4-5 (E.D.N.Y. June 20, 2014). Mr. Dondero's relationship to the Funds and Advisors was not relevant to the Court's determination that the dispute in that matter was moot, and therefore, the statement referenced above cannot be relied upon by the Debtor in this proceeding to bind the Funds and Advisors.

        B.      *Count II: Violation of the Automatic Stay*

      16.      The Debtor argues that the Court must find that this claim is "implausible" in order to dismiss it. However, plausibility turns on whether a complaint alleges "enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must do more than make conclusory allegations; it must allege facts that plausibly state a claim for relief. However, as stated in the Motion and in this Reply, the Debtor failed to make sufficient factual allegations.

      17.      Moreover, there is a clear distinction between correspondence sent directly to a debtor, and especially an individual debtor, which can certainly be construed as threatening and coercive, and correspondence between counsel. *See In re Trevino*, 535 B.R. 110, 146-47 (Bankr. S.D. Tex. 2015) (letters from bank to chapter 13 debtor). Contrary to what is stated in the Opposition, *In re Trevino* does not stand for the proposition that correspondence between counsel is "precisely the type of activity that § 362(a)(3) is designed to curtail" -- rather, the

activity in *Trevino* involved "attempts to force payment [from chapter 13 debtors] in a lump sum" to the local taxing authority.  *Id.*  There is a clear distinction between a communication which is in the nature of an attempt to coerce or collect a debt, which may well be stayed, and what happened here, which was one lawyer communicating to another lawyer that a given action may be taken.  Taken literally, the Debtor's argument boils down to the position that a lawyer stating that it may file a motion for relief from stay is itself a violation of the automatic stay—an absurd result and one that would lead to a stay violation in virtually every case.

   C.  <u>Count III: Tortious Interference</u>

   18.  The Debtor's claim for tortious interference fails as a matter of law because the Debtor has not alleged that there has been any breach of contract.  The CLO management agreements are governed by New York law, and under New York law, breach of contract is a necessary element to a tortious interference claim.  *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375 (N.Y. App. Div. 1996) ("Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom"; plaintiff did not state claim for tortious interference with contract where the complaint contained no allegation that there was in fact a breach of contract); *see also Flushing Expo, Inc. v. New World Mall, LLC*, 116 A.D.3d 826 (N.Y. App. Div. 2014) (dismissal of claim for tortious interference proper where no valid contract existed as a matter of law, and therefore, the defendant could not have procured any breach).

   19.  There is authority that Texas similarly requires an actual breach to state a claim for tortious interference with contract.  *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F.

Supp. 2d 780, 784 (S.D. Tex. 2010) (surviving motion to dismiss where plaintiff alleged that defendant intentionally induced breaches of agreements; stating that "the defendant must knowingly induce one of the contracting parties to breach its obligations."); *see also RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 190 (Tex. App. 2020) (a claim for tortious interference requires evidence of actual interference and "that some obligatory provision of the contract has been breached"); *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 730 (Tex. App. 2000) (affirming judgment notwithstanding verdict on tortious interference claim because there was no evidence that the defendant persuaded anyone to breach contractual relationships with plaintiff). However, even if actual breach of contract is not a requirement, "the defendant's intent must have been to effect a breach of the contract." *Moore v. Bushman*, 559 S.W.3d 645, 651 (Tex. App. 2018). The Complaint does not allege that the Funds and Advisors intended to effect any breach of the CLO management agreements. While the Debtor cites to cases that allow tortious interference claims to proceed without an actual breach of contract, those are lower court opinions at variance with Supreme Court of Texas and Fifth Circuit precedent, and the Funds and Advisors have not located any decision by the Supreme Court of Texas or New York that would allow such claims.

20. Furthermore, the Funds and Advisors' alleged interference, consisting of statements relating to termination of the CLO management agreements, was not tortious. "Ordinarily, merely inducing a contract obligor to do what it has a right to do is not actionable interference." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). As discussed in the Motion, the CLO management agreements allow the holders of preference shares to instruct the CLOs to remove the portfolio manager for cause (and in some instances, without cause).

D.  *Count IV: Injunctive Relief*

21. The Debtor's claim for injunctive relief is moot by virtue of the Court's order confirming the Debtor's plan. It is unclear what further relief, if any, remains available for the Debtor to pursue that is not already provided for in the confirmed plan.

## CONCLUSION

22. For the reasons stated in this Reply and in the Motion, the Funds and Advisors request that the Court overrule the Debtor's Opposition and dismiss the Complaint.

*[Remainder of page intentionally left blank]*

Dated: March 17, 2021

**K&L GATES LLP**

*/s/ A. Lee Hogewood, III*
A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
E-mail: lee.hogewood@klgates.com

Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5659
E-mail: artoush.varshosaz@klgates.com

- and -

**MUNSCH HARDT KOPF & HARR, P.C.**

Davor Rukavina
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile:  (214) 855-7584
E-mail: drukavina@munsch.com

*Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2021, I caused the foregoing document to be served via electronic email through the Court's CM/ECF system to the parties that have requested or consented to such service.

*/s/  A. Lee Hogewood, III*
A. Lee Hogewood, III